**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and
Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Duro Dyne National Corp., *et al.*[1] | Case No. 18 – 27963 (MBK) |
| Debtors. | Jointly Administered |

**DEBTORS' REPLY IN SUPPORT OF MOTION TO APPOINT
THE PROPOSED FUTURE CLAIMANTS' REPRESENTATIVE**

The Debtors[2] submit this reply in support of the Debtors' Motion For an Order

Appointing A Legal Representative for Future Asbestos Personal Injury Claimants Effective as

of the Petition Date (the "**FCR Motion**") and in response to the objections raised by the U.S.

Trustee and Certain Insurers[3] (collectively, the "**Objectors**") to the FCR Motion.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Duro Dyne National Corp. (4664); Duro Dyne Machinery Corp. (9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne Midwest Corp. (4662).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the FCR Motion.

[3] "**Certain Insurers**" means Federal Insurance Company, North River Insurance Company, and Hartford Accident and Indemnity Company, which have either filed objections or joinders to objections to the Debtors' Motion for an Order Appointing Lawrence Fitzpatrick as Representative for Future Asbestos Claimants.

## I.     The Focus of These Cases Is Duro Dyne's Reorganization

These cases are about the Duro Dyne Debtors, modest-size businesses that seek to

reorganize pursuant to 11 U.S.C. §524(g) and the pre-negotiated Plan that is before the Court. To

that end, the Debtors seek to appoint Lawrence Fitzpatrick as the post-petition Future Claimants'

Representative ("**FCR**"). The Objectors have raised numerous objections based on conjecture

and hyperbole in an attempt to put the entire asbestos trust system on trial. This is neither the

appropriate case nor forum to resolve those labyrinthine issues. The Objectors should not be

permitted to hijack these proceedings by raising spurious and unsubstantiated allegations that do

not relate to the facts and evidence of these cases.

## II.     The Court Permitted Limited Discovery
Regarding the Proposed FCR's Disinterestedness

The Court permitted the Objectors to take limited discovery into Mr. Fitzpatrick's service

as the pre-petition FCR and his disinterestedness:

> I accept the US Trustee's concerns that there should be some examination
> into the pre-petition process, limited. And I'm balancing this with the need
> to have an expedient result. . . . But I am going to allow a limited
> opportunity as long as Mr. Fitzpatrick is willing to participate further, to
> have an examination, take his deposition, go through some limited
> documents as to the issues, I think there were four that Mr. Snyder
> identified, relative to retention and relationships and the actions taken
> during the period from roughly May of 2017 through the entry of a term
> sheet through the filing of the bankruptcy so that the office of the US
> Trustee and other parties in interest can indeed feel comfortable with this
> election, if that's the direction the Court goes with, or raise valid concerns
> with concrete facts demonstrating a problem.

*In re Duro Dyne Nat'l Corp.*, No. 18-27963 (MBK) (Bankr. D. N.J. Oct. 1, 2018), Transcript of

Second Day Hearing at 78-79 (hereafter "**Duro Dyne Tr.**").

The Court further prescribed that the standard to be applied in assessing Mr. Fitzpatrick's

is that of 11 U.S.C. §101(14):

These are concrete narrow discreet issues as to Mr. Fitzpatrick's
disinterestedness. And I use that word with a purpose. I see no reason to
deviate from my colleagues on the Council as far as the appropriate
standard. Disinterestedness is the standard for Chapter 11 trustees on 1104
who are representatives of the bankruptcy estate who need to address the
concerns of multiple constituent bodies, all claimants. They can indeed
hire professionals. . . . And yet we look to them to be disinterested and I
am unfamiliar with any cases that impose a higher burden, so why would I
impose a differing standard by another type of representative of even a
smaller group in essence, a smaller segment of the creditor constituency.
So, yes, I'm going to allow a limited discovery and to Mr. Fitzpatrick . . .
as to his disinterestedness.

Duro Dyne Tr. at 79-80.

Mr. Fitzpatrick produced more than 2300 pages and 630 documents to the Objectors. The
Debtors and the ad hoc committee also produced documents to the Objectors. Mr. Fitzpatrick and
Mr. Hinden (on behalf of the Debtors) provided deposition testimony. Consistent with the
Court's directives, Mr. Fitzpatrick and the Debtors provided discovery to the Objectors on the
following topics:

- The terms of Mr. Fitzpatrick's pre-petition employment;

- Whether any promises or inducements were made to Mr. Fitzpatrick;

- Mr. Fitzpatrick's service as a future claimants' representative in other bankruptcy
  cases; and

- Mr. Fitzpatrick's relationships, if any, to members of the ad hoc committee.

## III.   Discovery Revealed No "Concrete Facts Demonstrating A Problem" With the Appointment of the Proposed FCR

The discovery that Mr. Fitzpatrick and the Debtors provided to the Objectors further
supported, and disclosed nothing that contravenes, the representations and facts that were
disclosed in the FCR Motion and Mr. Fitzpatrick's certification in support of the FCR Motion.
The discovery confirmed that Mr. Fitzpatrick is disinterested. It confirmed that he had no contact
with the plaintiffs' bar or counsel for the ad hoc committee with respect to this case, except

through his own counsel. It showed that Mr. Fitzpatrick had no relationship with the Company prior to being interviewed by Mr. Hinden and Company counsel.

The discovery also confirmed that there was no *quid pro quo* requiring anyone to appoint Mr. Fitzpatrick as the FCR for the bankruptcy case or the trust. Mr. Fitzpatrick's proposed service as the FCR for the trust was not even in the term sheet and is not something for which he bargained.[4] Mr. Fitzpatrick is not beholden to anyone or anything other than his own conscience.

If the discovery accomplished anything, it confirmed that Mr. Fitzpatrick is a highly qualified, experienced FCR who lacks any conflicting interests that may compromise his independence. Courts have approved Mr. Fitzpatrick as the FCR in seven asbestos bankruptcy cases and five asbestos settlement trusts. He has deep experience resolving claims for defendants, having served as an attorney for Owens Illinois, and then running the Asbestos Claims Facility and the Center for Claims Resolution. Mr. Fitzpatrick knows the merits of

---

[4] It is standard for the FCR in a bankruptcy case to be appointed as the FCR for the post-bankruptcy settlement trust. *See, e.g., In re G-I Holdings Inc.*, Case No. 01-30135 (RG), Doc. No. 9787 (Bankr. D. N.J. Nov. 12, 2009), Order Confirming Eighth Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc. Pursuant to Chapter 11 of the Bankruptcy Code at 35; *In re State Insulation Corporation*, Case No. 11-15110 (MBK), Doc. No. 404 (Bankr. D. N.J. Mar. 14, 2012), Order Authorizing Confirmation of the Second Amended Chapter 11 Plan of Reorganization for State Insulation Corporation at 12; *In re United Gilsonite Laboratories*, Case No. 11-2032 (RNO), Doc. No. 2190 (Bankr. M.D. Pa. Dec. 8, 2014), Findings of Fact, Conclusions of Law, And Order Approving Exit Facility and Confirming the Modified First Amended Plan of Reorganization of United Gilsonite Laboratories Under Chapter 11 of the Bankruptcy Code at 58; *In re Metex Mfg. Corporation*, Case No. 12-14554 (BRL), Doc. No. 567 (Bankr. S.D.N.Y. June 23, 2014), Findings of Fact, Conclusions of Law, and Order Confirming Plan of Reorganization of Metex Mfg. Corporation Under Chapter 11 of the Bankruptcy Code at 33; *In re Owens Corning*, Case No. 00-3837 (JKF) (Bankr. D. Del. Sept. 26, 2006), Order Confirming the Sixth Amended Joint Plan of Reorganization for Owens Corning and Its Affiliated Debtors and Debtors-In-Possession (As Modified) at 30; *In re Armstrong World Industries, Inc.*, 348 B.R. 223, 231 (Bankr. D. Del. Aug. 18, 2006); *In re ABB Lummus Global, Inc.*, Case No. 06-10401 (JKF), 2006 Bankr. LEXIS 1472, at *12 (Bankr. D. Del. June 29, 2006); *In re USG Corp.*, Case No. 01-2094 (JKF) (D. Del. and Bankr. D. Del. June 15, 2006), Order Confirming the First Amended Joint Plan of Reorganization of USG Corporation and Its Debtor Subsidiaries, As Modified at 26; *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. D. Del. Feb. 6, 2006), Order Confirming the Second Amended Joint Plan of Reorganization of Kaiser Aluminum Corporation, Kaiser Aluminum & Chemical Corporation and Certain of Their Debtor Affiliates, As Modified (Exh. A, Plan §14.1); *In re United States Mineral Products Co.*, Case No. 01-2471 (JKF), 2005 Bankr. LEXIS 3259, at *33 (Bankr. D. Del. Nov. 29, 2005); *In re Fuller-Austin Insulation Co.*, Case No. 98-2038 (JJF), 1998 U.S. Dist. LEXIS 23567, at *30 (Bankr. D. Del. Nov. 13, 1998).

asbestos claims; he knows the issues that are important to plaintiffs and the evidence that is relevant to defendants. His integrity and experience allow Mr. Fitzpatrick to be efficient and effective.[5] He is trusted on all sides. The Debtors made a reasonable choice in selecting Mr. Fitzpatrick based on, among other things, his integrity and experience.

Discovery confirmed that it was the Debtors who selected Mr. Fitzpatrick after interviewing him. Unsurprisingly, discovery also confirmed that the ad hoc committee supported the appointment of Mr. Fitzpatrick as the post-petition FCR. Counsel to the Committee and most of the members of the Committee are involved in other bankruptcy cases and trusts where Mr. Fitzpatrick is the FCR. They know that he is a diligent, experienced FCR that has been approved by numerous courts and has achieved successful outcomes for future claimants.

Discovery showed that as part of his pre-petition service, Mr. Fitzpatrick and his professionals engaged in due diligence to determine a fair level of funding for the proposed trust. They received information and analysis from Charter Oak Financial Consultants, LLC, and from Gilbert, LLP, which also served as financial advisors and insurance counsel respectively to the ad hoc committee. In determining the funding for the trust, the interests of the current and future claimants are aligned because they are essentially establishing the size of the asset pool available to current and future claimants and all claimants are motivated to maximize the asset pool. Moreover, based on the size of the Debtors and other circumstances, Mr. Fitzpatrick and the ad hoc committee determined that it was an appropriate use of resources to share these advisors.

---

[5] This Court acknowledged the benefits that Mr. Fitzpatrick's experience provides to Future Claimants. *See* Duro Dyne Tr. at 75 ("The Court desires not to lose the forest for the trees, and that the issue is not the abilities, the motivations or the ethics, certainly not, or qualifications of Mr. Fitzpatrick. There's no question as to his experience and knowledge, his relationships and skills and what they offer for all the constituent parties here, the Debtor, the present creditors and the future claimants. And, in fact, I agree with Judge Simandle's admonitions and assessments as to the true value of having an experienced FCR in the process.").

As the record to be developed at the Oct. 15 hearing on the FCR Motion will show, consistent with his role as the pre-petition FCR, Mr. Fitzpatrick was motivated to reach a settlement in his negotiations with the Debtors and the ad hoc committee. This is because Future Claimants will benefit greatly from Duro Dyne successfully reorganizing under Section 524(g). Leaving Duro Dyne to wither away in the tort system would be catastrophic for the Future Claimants. It is far more beneficial to the Future Claimants to reach a deal where the Debtors will contribute a fair funding level. Mr. Fitzpatrick firmly believes that protecting the value in a trust designed to pay claims over the next 30+ years is preferable to leaving the Company in the tort system where the Future Claimants will lose the "race to the courthouse". Left in the tort system, the Company's resources would dwindle, potentially leaving no value for Future Claimants. If the Company were to liquidate, that would also make it more difficult for claimants to reach the insurance assets.

Efficiency and limiting the duration of these bankruptcy cases are valid concerns for the Court to consider here, especially in the context of a pre-negotiated plan. Bankruptcy cases involving asbestos liability tend to be complex and lengthy. As Federal Insurance's objection notes (at 8, n.19), of the asbestos bankruptcy cases in which Mr. Fitzpatrick has served as FCR, one took as little as two years from filing to plan confirmation, one took three years, one took six years, two took 11 years, and one took 16 years.  A pre-negotiated plan can save the estate millions of dollars in professional fees.[6] The Court has already noted that these Debtors cannot

---

[6] *See* Eric D. Green, et al., Prepackaged Asbestos Bankruptcies: Down But Not Out, 63 N.Y.U. Ann. Surv. Am. L. 727, 749 (2008) ("Because of the reduced time in bankruptcy, prepacks can save a debtor's estate millions of dollars in bankruptcy-related professional fees. For instance, in Halliburton, a prepack asbestos bankruptcy, the total professional fees amounted to $27.6 million dollars, whereas in the conventional asbestos bankruptcy In re W.R. Grace, fees and expenses totaled $283.6 million dollars through September 30, 2007. As such, total bankruptcy-related professional fees in well-structured asbestos prepacks have been remarkably lower (as much as eight times lower) than conventional bankruptcy filings for similarly sized companies.").

withstand a prolonged bankruptcy process.[7] Appointing Mr. Fitzpatrick will advance the interests

of the estate and all asbestos claimants.

## IV.    Mr. Fitzpatrick Is a Disinterested and Independent Representative

### A.    Mr. Fitzpatrick Is Disinterested Pursuant to 11 U.S.C. § 101(14)

#### 1.    The Section 101(14) Standard of Disinterested

As this Court stated, the standard applicable to appointment of an FCR is whether he is

"disinterested" under 11 U.S.C. §101(14).[8] That Section defines a "disinterested person" as one

who:

> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of the
> petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the estate
> or of any class of creditors or equity security holders, by reason of any
> direct or indirect relationship to, connection with, or interest in, the debtor,
> or for any other reason.

11 U.S.C. §101(14). No one questions that Mr. Fitzpatrick is "not a creditor, an equity security

holder, or an insider" pursuant to Section 101(14)(A). Contrary to the Objectors' assertions, Mr.

Fitzpatrick is also disinterested under both Sections 101(14)(B) and 101(14)(C).

#### 2.    Mr. Fitzpatrick Was Not An Employee of the Debtor

Mr. Fitzpatrick is disinterested because he is not and was not within the past two years an

"employee of the debtor" (or a director or officer of the debtor) pursuant to Section 101(B). His

service as the pre-petition FCR did not render him an employee of the Debtors. Mr. Fitzpatrick's

---

[7] Duro Dyne Tr. at 77-78 ("In fact, the 3rd Circuit even noted in *Congoleum* the obligation of a
Bankruptcy Court to prevent unnecessary expenditures in the administration of an estate. And prolonged
discovery, extensive discovery and extensive motion practice undercuts efficiency. It is not my intent and
I will strive not to let this be a repeat of the *Congoleum* case, with no aspersions to any party or
professional involved. But this company cannot survive if we go the route of I don't know how many, 10,
11 modified plans, and litigation that's wrong and appeals to the Circuits and District Courts. Again, we
lose the forest for the trees because this company will not survive and there will be limited resources for
the benefit of any of these victims. So we need -- I need to balance those concerns, this Court needs to
balance the concerns.").
[8] Duro Dyne Tr. at 79-80.

engagement as the pre-petition FCR bears none of the hallmarks associated with an employer-

employee relationship. Factors relevant to that relationship include:

> (1) the employer's right to control the means and manner of the worker's
> performance; (2) the kind of occupation—supervised or unsupervised; (3)
> skill; (4) who furnishes the equipment and workplace; (5) the length of
> time in which the individual has worked; (6) the method of payment; (7)
> the manner of termination of the work relationship; (8) whether there is
> annual leave; (9) whether the work is an integral part of the business of the
> "employer"; (10) whether the worker accrues retirement benefits; (11)
> whether the "employer" pays social security taxes; and (12) the
> intention of the parties.

*Estate of Kotsovka v. Liebman*, 116 A.3d 1, 16 (NJ 2015).

Here, the engagement letter between Mr. Fitzpatrick and the Company (see FCR Motion,

Exhibit B) expressly stated that the Company would have no control or supervision over how,

when, or where Mr. Fitzpatrick or his professionals provided services, and that Mr. Fitzpatrick's

sole responsibility and loyalty was to the Future Claimants. Indeed, other than an interview prior

to his engagement, the Debtors had no communications with Mr. Fitzpatrick other than

negotiations through counsel over the term sheet, the Plan, and other Plan-related documents.

The engagement letter also noted that Mr. Fitzpatrick's retention would terminate upon

the filing of a bankruptcy petition and that any engagement thereafter would be subject to court

approval. The Company could terminate the engagement but would have to identify "cause" to

do so. As pre-petition FCR, Mr. Fitzpatrick supplied a very discrete skill and his work was

completely unrelated to the normal business of the Debtors.

The fee structure of the engagement is not typical of an employment relationship. The

Company paid a $50,000 retainer to Mr. Fitzpatrick for him and his counsel to bill against upon

the submission of invoices showing services provided at his $500 hourly rate. There was no cap

on Mr. Fitzpatrick's fees (or those of his professionals), but there was a requirement that Mr.

Fitzpatrick provide advance notice if the fees would exceed $25,000 in a particular month. The Debtors did not provide him a salary or any benefits, and did not withhold taxes from his payments.

Finally, the engagement letter clearly stated the parties' intent that they were not establishing an employment relationship. The letter also indicated that Mr. Fitzpatrick would be retaining counsel and other professionals to assist him, at the Company's expense, which further refutes the existence of an employer-employee relationship. Every case to consider this issue has held that pre-petition FCR work with respect to attempts to achieve a pre-negotiated or pre-packaged plan does not establish an employment relationship with the debtors. *See, e.g., In re Leslie Controls, Inc.*, No. 11-0013 (Simandle, J.) (D. Del. Mar. 25, 2011), Additional Findings in Support of Affirmation Order at 6-7 ("The fact that, of necessity, the pre-petition FCR was selected and paid by the debtor, who could terminate the FCR at will, are factors that must be weighed against the FCR's actual performance in assessing the FCR's independence of the debtor. In this case, the FCR's engagement letter clearly determined that his loyalty was owed exclusively to the future claimants, and it evidenced no intent to create an employer-employee relationship.").

### 3.    Mr. Fitzpatrick Holds No Material Interest Adverse to the Future Claimants

Mr. Fitzpatrick is disinterested under Section 101(14)(C). The focus of the inquiry here is whether Mr. Fitzpatrick holds an interest materially adverse to the class of creditors comprised of the Future Claimants. Nothing about Mr. Fitzpatrick's service as the pre-petition FCR gives rise to a relationship to, connection with, or interest in the Debtors that poses a material interest adverse to the Future Claimants. Likewise, nothing about his service as pre-petition FCR for

Duro Dyne or his service as an FCR in other matters gives rise to a material interest adverse to

the Future Claimants "for another reason".

In the context of a debtor's retention of a professional under 11 U.S.C. § 327, courts have

interpreted the similar phrase "hold an interest adverse to the estate" as meaning:

> (1) to possess or assert any economic interest that would tend to lessen the
> value of the bankruptcy estate or that would create either an actual or
> potential dispute in which the estate is a rival claimant; or (2) to possess a
> predisposition under circumstance that render such a bias against the
> estate.

*In re Dancing Bear Land, LLC*, No. 10-39584 MER, 2011 WL 6779561 (Bankr. D. Colo. Dec.

16, 2011) (*quoting In re Roberts*, 46 B.R. 815, 826-27 (Bankr. D. Utah 1985)). A professional

can hold an adverse interest and be disinterested so long as the interest is not "material". *In re*

*Pinebrook, LLC*, 441 B.R. 67, 69 (Bankr. E.D. Va. 2009) ("Congress clearly anticipated the

possibility of there being some adversity. Congress clearly felt that not every adversity was a

disqualification. The adversity must be material.").

The "or for any other reason" at the end of Section 101(14)(C) is "a catch all clause that

is 'sufficiently broad to include any professional with an interest or relationship that would even

faintly color the independence and impartial attitude required by the Code.'" *In re LTHM*

*Houston-Operations, LLC*, No. 14-33899, 2014 WL 5449737 (Bankr. S.D. Tex. Oct. 24, 2014)

(*quoting In re BH&P Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991)(indicating that a lack of

disinterest by a retained professional does not automatically mandate removal for cause)). This

requires a fact-based inquiry based on the "totality of the circumstances" and the "taking into

account [of] 'the facts of a particular bankruptcy case and the overall objectives of the

bankruptcy system.'" *In re Barnes*, 2013 WL 3760570 (Bankr. D. Ore. July 16, 2013); *LTHM,*

2014 WL 5449737, *5 (*quoting In re Harold & Williams Development Co.*, 977 F.2d 906, 910

(4th Cir. 1992)).

The Third Circuit Court of Appeals has clarified that the "catch all" should not be used to

disqualify a professional even for an "appearance of impropriety" because to do so "would allow

'horrible imaginings alone' to carry the day" despite the fact that "'[n]ot every conceivable

conflict must result in sending [the professional] away to lick his wounds.'" *In re Marvel Entmt

Grp., Inc.*, 140 F.3d 463 (3d Cir. 1998) (*quoting BH&P*, 949 F.2d at 1313 and clarifying that, in

the context of employing trustee's counsel, Section 101(14) in conjunction with Section 327

imposes a per se disqualification of an attorney who has an <u>actual</u> conflict of interest, that the

court may use its discretion to disqualify an attorney with a <u>potential</u> conflict of interest, but that

the court may not disqualify an attorney solely on the <u>appearance</u> of conflict).

### a.     Mr. Fitzpatrick's Pecuniary Interests Are Not Materially Adverse to the Future Claimants

Mr. Fitzpatrick does not hold any improper pecuniary interest that affects his

disinterestedness. Mr. Fitzpatrick produced invoices covering the pre-petition services rendered

by his counsel and him. The invoices provide a record not only of Mr. Fitzpatrick's fees but also

his involvement in the pre-petition proceedings. The Objectors can point to nothing in those

invoices that demonstrates the fees paid were anything but reasonable. With his deep experience

and familiarity with the issues and documents necessary in an asbestos bankruptcy case, Mr.

Fitzpatrick was (and is) able to carry out his duties efficiently and effectively. He was also

assisted by experienced counsel, whom he instructed as to his goals and expected outcomes for

these cases.

Likewise, Mr. Fitzpatrick's proposed service as FCR for the post-confirmation trust does

not give him an improper financial interest in the Plan as "lucrative employment" or a

"sinecure." It is standard for the FCR in a bankruptcy case to remain in service as the FCR for the post-confirmation trust.[9] All the terms upon which Mr. Fitzpatrick would serve as the trust's FCR are disclosed in the proposed trust agreement on file with the Plan. Moreover, there is nothing improper or independence-altering about a fiduciary being paid a reasonable fee to provide his services. *See* 12 Del. C. § 3560(a) ("Trustees under wills, trustees under inter vivos deeds of trust, both revocable and irrevocable, and successors to such trustees, are entitled to reasonable compensation for their services in accordance with the instrument creating the trust."); Restatement (First) of Trusts § 242 ("[T]he trustee is entitled to compensation out of the trust estate for his services as trustee, unless it is otherwise provided by the terms of the trust or unless he agrees to forego or waives compensation.").

The fees paid to Mr. Fitzpatrick are publicly disclosed in fee applications he submits in the bankruptcy cases where he is FCR and in the annual reports filed with the bankruptcy courts by the trusts for which he serves as FCR. As a highly experienced, senior professional, Mr. Fitzpatrick derives a modest income from all his work on asbestos matters. Significantly, his fees are subject to approval by bankruptcy courts or the respective trustees of the asbestos trusts.

>           **b.**      **Mr. Fitzpatrick's Other FCR Roles Do Not Give Rise to Any**
>                       **Interest Materially Adverse to the Future Claimants**

Mr. Fitzpatrick has fully disclosed his roles in other asbestos trusts and bankruptcy cases. *See* FCR Motion, Exhibit A (Fitzpatrick Certification). None of those connections constitute conflicting interests. Discovery further confirmed the absence of any conflicting interests relating to Mr. Fitzpatrick's connections with law firms involved in this matter or his roles in other matters.  Nothing substantiates the Objectors' allegations that Mr. Fitzpatrick labors under any conflicting interest that affects his ability to be a disinterested FCR in this (or any other) matter.

---

[9] *See* cases cited in footnote 4.

Likewise, the Objectors cite nothing but conjecture that commonality of certain professionals serving in multiple asbestos trusts or bankruptcy cases indicates conflicting interests or lack of independence among those professionals, including Mr. Fitzpatrick. As the U.S. Trustee conceded in its objection to the FCR Motion, the "mere repeated interaction of law firms and professionals in different cases is not necessarily grounds for disqualification." (Objection of the United States Trustee to Debtors' Motion for an Order Appointing Lawrence Fitzpatrick as Representative for Future Claimants at 30).

Discovery confirmed that the other law firms and professionals involved in the matters in which Mr. Fitzpatrick serves do not control or improperly influence his decisions, or otherwise affect his independence as an FCR. Much of the communications during the pre-petition negotiations for Duro Dyne were handled by counsel, including Young Conaway on behalf of Mr. Fitzpatrick. Mr. Fitzpatrick has no direct contact with members of the plaintiffs' bar. All of his contact with plaintiffs' attorneys is solely in the context of his role as an FCR in other cases and always through or in the presence of his counsel.

**4.      Mr. Fitzpatrick is Disinterested Under Section 101(14)**

Mr. Fitzpatrick has fully disclosed the terms upon which he served as the pre-petition FCR. Discovery confirmed that there are no facts showing that he holds any actual or even potential conflict of interest that is materially adverse to the Future Claimants. Nothing reveals any predisposition or bias affecting his loyalty to the Future Claimants and his independence from the Debtors and the ad hoc committee. All that the Objectors can point to are "horrible imaginings" based on spurious and unsubstantiated allegations that there is an "appearance of impropriety." The gist of these arguments is that Mr. Fitzpatrick must lack independence because the Debtors and committee selected him as pre-petition FCR and held out the "carrot" of further "employment", and that he is the FCR in other matters that are part of what the Objectors paint

as a system tainted with rampant fraud. These are "horrible imaginings" based on mere

appearance of impropriety that are not a valid basis for disqualification. Nothing disclosed in

discovery (or that will be placed in the record going forward) demonstrates any actual or

potential compromise in Mr. Fitzpatrick's loyalty to the Future Claimants based on the

proceedings in these cases or his service in other matters.

      Every court that has addressed the same arguments raised by the Objectors has rejected

them and found the proposed FCR to be disinterested. *See In re Leslie Controls, Inc.*, No. 10-

12199 (CSS) (Bankr. D. Del. Aug. 9, 2010) Transcript at 70 -73 ("THE COURT: . . . I would

note that the disinterested test is the highest level of duty or standard in the Bankruptcy Code for

the appointment of anybody. . . . There are issues about appearance, you know, actual conflict of

interest versus implied conflict of interest, et cetera that could be applied. But in any

event, I don't believe and I find that there are no such allegations or concerns in this case. I think

the appointment of a future claims representative to assist in connection with negotiating the

prepackaged plan is appropriate and in many ways I would say preferable. . . . The point is

whether having Mr. Patton operating as an FCR pre-petition and post petition somehow is so

improper or makes him not disinterested in such a way as to prevent him being hired on a post-

petition basis. And it -- clearly in my mind it does not. I do not believe and do not find as -- I

find that Mr. Patton was not an employee of the debtor within the previous two years. I believe

that the analogy of an ad hoc committee, if you will, where the debtor is marrying the burden of

paying the cost of its adversaries is not uncommon and, you know, the debtor should get used to

it because once they file bankruptcy it gets even worse. So that doesn't -- that -- in this situation,

that does not violate the disinterestedness test."); *Fed. Ins. Co. v. W.R. Grace*, Nos. 04-844 and

04-845, 2004 WL 5517843, *7-8 (D. Del. Nov. 22, 2004)(applying Section 101(14) and

affirming bankruptcy court finding that proposed FCR was disinterested despite his being

nominated "by constituencies with conflicting interests" and having "repeated employment as a

legal representative for future claimants in multiple bankruptcies"); *In re Thorpe Insulation Co.*,

No. LA07-19271-BB (Bankr. C.D. Cal. Dec. 12, 2007), Transcript at 44-47 ("THE COURT:

[W]henever I look at professionals in bankruptcy, I'm asked to appoint somebody only if they're

disinterested. And that's a pretty high standard. As we all know, it's different from what would

be a conflict of interest out in the real world. And to be disinterested, it seems to me that

disinterested in the standard is sufficient here, and that the kinds of connections that you're

talking about, the kinds of past experiences, the kind of -- you know, having done this work

before, having worked in cases where the other -- the other parties have played similar roles is

not enough to disqualify you or to keep you from being disinterested. And again, as far as the

prepetition representation goes, I don't think that's problematic either in that it is an aligned

representation. It's aligned with the representations he's doing now. It's not that he represented

something different before. However, were I do [*sic*] solicit nominees and parties were to come

forward to me, and if [the proposed FCR] were one of them, I would not be concerned about the

prior experience that you're describing. In fact, I think it's -- I think here it's a good thing. He's

done this kind of thing before. He knows how to do this kind of thing. He's already hit the

ground running because he's already been involved. He already knows the specific facts of this

case. I think there's some cost savings to be achieved, some time savings to be achieved. . . . And

I think somebody who was already at the table prepetition is a good party to pick for that reason

because that person, as I say, is already doing the work, is already in it, doesn't have to start

fresh. . . . And were we to disqualify I don't think 101-14 applies per se. . . . I think somebody

ought to be disinterested. I wouldn't appoint somebody who I thought they represented or

currently represent, you know, an interest that is in conflict. So I think that that is a proxy for the standard I ought to be using. . . .").

The fact that Mr. Fitzpatrick represented the Future Claimants pre-petition does not give rise to a material adverse interest that disqualifies him from representing them post-petition. If that were the standard, the Debtors could not continue to employ its own bankruptcy counsel and counsel retained by creditors and creditors' committees formed pre-bankruptcy could not serve as committee counsel. Professionals that represent creditors prior to the commencement of a chapter 11 case routinely represent them post-petition, just as the debtor may continue to employ its own professionals. *See* 11 U.S.C. §§ 327(c) (pre-bankruptcy representation of creditor not disqualifying for estate professional), 1103(b) pre-bankruptcy representation of creditor not disqualifying for committee counsel), and 1107(b) ("[A] person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.").

After having spent substantial amounts on professional fees for its advisors and the advisors to a disinterested ad hoc committee and a disinterested pre-petition legal representative to negotiate and document the pre-negotiated plan, the Debtors should not now have to renegotiate the Plan with a new legal representative who will need to familiarize himself with the parties, the Debtors' historic and anticipated liabilities, and the Plan.  Rather, the Debtors are entitled to move forward expeditiously with the Plan confirmation process during which all parties in interest will be entitled to support or oppose confirmation.  And, the Future Claimants are entitled to representation of the experienced and knowledgeable legal representative and professionals that represented them pre-petition,  just as the Debtors and the present claimants are entitled to retain the same professionals that represented them pre-petition.

## CONCLUSION

For the reasons set forth above, the Court should (1) overrule the Objectors' objections

and (2) enter an order appointing Lawrence Fitzpatrick as the Future Claimants' Representative.

Dated: October 12, 2018                    **LOWENSTEIN SANDLER LLP**

                                           By: */s/Jeffrey D. Prol*
                                           Kenneth A. Rosen, Esq. (KR 4963)
                                           Jeffrey D. Prol, Esq.
                                           One Lowenstein Drive
                                           Roseland, New Jersey 07068
                                           Tel: (973) 597-2500
                                           Fax: (973) 597-2400

                                           *Proposed Counsel to the Debtors and*
                                           *Debtors-in-Possession*