SHIPMAN & GOODWIN LLP
Stephen M. Forte, Esq.
400 Park Avenue, Fifth Floor
New York, NY 10022-4406
Tel: (212) 376-3015
Fax: (212) 376-3024
Email: sforte@goodwin.com

James P. Ruggeri (*pro hac vice*)
Joshua D. Weinberg (*pro hac vice*)
Abigail W. Williams (*pro hac vice*)
SHIPMAN & GOODWIN LLP
1875 K Street, NW, Suite 600
Washington, D.C. 20006-1251
Tel:   (202) 469-7750
Fax:   (202) 469-7751
Email: jruggeri@goodwin.com
       jweinberg@goodwin.com
       awilliams@goodwin.com

*Attorneys for Hartford Accident and Indemnity Company*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: | Chapter 11 |
| DURO DYNE NATIONAL CORP., *et al.*,[1] | Case No. 18-27963 MBK |
| Debtors. | (Jointly Administered) |
| | Hearing Date: December 10, 2018, 11 a.m. |

**OPPOSITION OF CERTAIN INSURERS TO JOINT MOTION TO EXEMPT**
**ASBESTOS CLAIMS AND DEMANDS FROM THE**
**JANUARY 8, 2019 CLAIMS BAR DATE**

Hartford Accident and Indemnity Company ("Hartford"), the North River Insurance

Company ("North River") and Federal Insurance Company ("Federal," and collectively with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Duro Dyne National Corp. (4664); Duro Dyne Machinery Corp. (9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne Midwest Corp. (4662).

Hartford and North River, "Certain Insurers"), creditors and parties-in-interest in these related Chapter 11 cases, respectfully oppose the Joint Motion to Exempt Asbestos Claims and Demands From the January 8, 2019 Bar Date (the "Joint Motion") to the extent that the Joint Motion seeks to exempt present Class 7 claim holders from filing timely proofs of claim.[2] Proofs of claim from the asbestos claimants are essential in this case. The asbestos claimants will vote in Class 7 with the objecting insurers, and the two groups have potentially competing incentives with respect to plan confirmation. The objecting insurers accordingly are entitled to exercise their statutory right to object to claims and ensure that only valid holders of asbestos claims vote in Class 7. None of the plan proponents, in contrast, has demonstrated that there is any prejudice at all by requiring the claimants simply to follow the rules and file proofs of claim. The Court should deny the Joint Motion.

## ARGUMENT

The Joint Motion casts itself as a mere housekeeping measure, intended to avoid inconvenience. Not so. From day one in this bankruptcy case, Debtors have rolled out the red carpet for one group of creditors -- the asbestos claimants -- while attempting to silence another group of creditors -- the insurers that defended and paid asbestos claims against Debtors for years -- even going so far as to argue the insurers lack standing to protect their own interests.

The Joint Motion is the latest maneuver in support of that strategy. As the Court knows, the plan proponents announced for the first time at the November 5 disclosure statement hearing that the Plan would treat the insurers' indemnity claims, like the asbestos claimants' claims, as Class 7 claims that would be channeled to the putative asbestos trust. Unlike the asbestos

---

[2] Certain Insurers have no objection to the motion insofar as the Joint Motion seeks to exempt future demand holders that do not presently have Claims (as defined in the Bankruptcy Code) against one or more debtors from filing timely proofs of claim.

claimants, however, who would be eligible to receive payment for their injury claims (including up to $150,000, subject to the payment percentage, for mesothelioma claims), the insurers would receive *nothing* for their claims under the proposed TDPs.  Assuming that these widely disparate claims -- asbestos personal injury claims and insurer reimbursement claims -- can be properly classified together, the proposed Plan sets up a stark dichotomy.[3]  The asbestos claimants have a strong interest in plan confirmation because they will receive tens of thousands of dollars for their Class 7 claims.  But the insurers will receive nothing under the proposed plan and likely will vote to reject the plan.

Plan proponents need Class 7 to approve the plan to have any chance to meet the requirements for confirmation.  *See* 11 U.S.C. § 1129(a)(10).  Given the potential intra-class conflict that plan proponents have created, it should come as no surprise that the plan proponents want to minimize the value of insurer indemnity claims in Class 7, while maximizing the number and value of asbestos personal injury claims.  To that end, the Debtors' balloting order gives a default value of $1.00 to the insurer Class 7 claims, while allowing the asbestos claimants to vote at their full TDP values (even ignoring any payment percentage).[4]

The insurers can (and intend to) file proofs of claim, motions under Rule 3018, and take other appropriate steps to request that the Court give proper value to their claims that are presently classified in Class 7.  Those measures do not give proper weight to the insurer Class 7

---

[3]  Certain Insurers do not concede that classification of their indemnity reimbursement claim along with channeled personal injury claims is appropriate or permitted under the Code. Certain Insurers expressly reserve the right to assert any appropriate objections to plan confirmation, including that the claims have been misclassified and that, to the extent the plan provides that certain Class 7 claims will not be paid, Class 7 should be deemed to reject the plan.

[4]  The motive behind plan proponents' decision to "set" the insurer indemnity claims at $1.00 each for voting purposes is particularly apparent when one considers that, in Class 6, where insurers and asbestos claimants are not competing creditors, plan proponents set the Class 6 claims for Hartford and North River at an average of over $1 million each.

claims, however, if the asbestos claimants can, in effect, stuff the ballot box by voting with claims that are invalid, illegitimate, or otherwise not entitled to payment. Creditors – including Certain Insurers -- are statutorily empowered to object to claims, in part to ensure that their own claims are not improperly diluted. *See* 11 U.S.C. § 502(b).[5] Similarly, determination of whether the votes in favor of the plan are sufficient to meet the supermajority voting requirements of Section 524(g)(B)(ii)(IV)(bb) should be determined with reference only to holders of legitimate, enforceable pre-petition claims against Duro Dyne. By seeking to exempt asbestos claimants from the statutory requirement that they file proofs of claim, the plan proponents would deprive the insurers of their statutory and common law right to contest claims that are invalid, illegitimate, or that would otherwise not be compensable in the tort system. When the ballots are counted to determine whether Class 7 has voted, both by number and by dollar amount, in favor or against the Plan, claims that would not have been entitled to payment, or that were not enforceable against the Debtors pre-petition should not be used to determine whether the class as a whole has voted to approve the Plan.

As a result, the Joint Motion's recitation of holdings from other cases that claim allowance should be determined by the trust is inapposite here. It is far from the case that exemption from the bar date is the ordinary practice; plan proponents' brief ignores that, in many other cases, bankruptcy courts have required asbestos claimants to file proofs of claim, rejecting

---

[5] There is no question that the insurers have standing to object to claims in this bankruptcy case. Debtors acknowledge that the insurers are creditors, and the Bankruptcy Code expressly authorizes creditors to object to claims. *See* 11 U.S.C. § 502(b). Moreover, the Plan expressly provides that claimants may be permitted to bring suit against non-settling insurers in order to recover the value of their asbestos claims. *See* Second Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., et al., Under Chapter 11 of the Bankruptcy Code (Nov. 16, 2018) [Doc. No. 279] at § 4.07. The insurers are entitled to object to claims that they may ultimately be called upon to pay. *See In re Standard Insulations, Inc.*, 138 B.R. 947, 950-951 (Bankr. E.D. Mo. 1992).

arguments that it would be burdensome or unfairly prejudicial. *See e.g., In re USG Corp.*, 290 B.R. 223, 227 (D. Del. 2003) (finding that submitting proofs of claim would not be too burdensome on asbestos claimants because the claim form could "serve also as the claim against a 524(g) trust" and many "claimants may have already filed claim forms in other bankruptcy cases."); *In re Garlock Sealing Technologies LLC,* No. 10-31607, Order Approving Disclosure Statement and Establishing Asbestos Claims Bar Date and Procedures for Solicitation (Bankr. W.D.N.C. April 10, 2015) (Doc. No. 4542); *In re W.R. Grace & Co.*, No. 01-01139, Order as to All Pre-Petition Asbestos PI Litigation Claims, Including Settled Claims, (I) Establishing Bar Dates; (II) Approving Proof of Claim Form; (III) Approving Notice of Pre-Petition Asbestos Personal-Injury Claims Bar Date (Bankr. D. Del. Aug. 24, 2006) (Doc. No. 13061). Moreover, in the other cases that the Joint Motion cites, the asbestos claimants were classified by themselves, such that approval by that class was never in doubt; at the very least, there was no reason to believe that asbestos claimants needed to increase their voting number in order to get a supermajority of voting dollars in favor of the plan. As a result, in many of the cases that plan proponents cite, no one objected to exempting asbestos claims from filing proofs of claim because ferreting out which claimants have legitimate claims would have been immaterial for voting purposes.

Here, the opposite is true. Plan proponents have not merely an incentive, but a need, to ensure that as many asbestos claimants as possible vote in Class 7 to try to reach a two-thirds majority (by dollar value). Requiring those claimants to file proofs of claim may result in scrutiny, and even disallowance or exclusion, of some claims.[6] And any examination of claim

---

[6] Although they have not yet done so, in reply, the plan proponents will almost certainly once again try to raise the complaint that the insurers seek to further delay this case. Once again, the Court should disregard that refrain. The insurers have met every deadline this Court has set

5

*bona fides* is what the ACC (and counsel representing asbestos claimants) hope to avoid. Indeed, as Debtors have stated in their disclosure statement and elsewhere, Duro Dyne is a sheet metal product manufacturer that was responsible for a very specific asbestos-containing product during a period of only a few years. Requiring claimants to disclose through proofs of claim that they had exposure to Duro Dyne products may reduce the value of other claims they are pursuing in the tort system because it may make exposure to other asbestos-containing products in other industries less likely or, at a minimum, may lessen the solvent defendants' shares of fault. Indeed, the point of the *Garlock* estimation opinion was that certain plaintiffs' firms had driven up the value of settlements in the tort system by failing to disclose evidence of exposure in claims made to trusts. *See In re Garlock Sealing Technologies*, 504 B.R. 71, 86-87 (Bankr. W.D.N.C. 2014) ("The withholding of exposure evidence by plaintiffs and their lawyers was significant and had the effect of unfairly inflating the recoveries against Garlock from 2000 through 2010"). The plaintiffs' bar undoubtedly seeks to secure the same lack of transparency here. But that desire for secrecy should not prevail where, as here, the insurers with Class 7 claims have standing and a statutory right to ensure that only legitimate, allowable claims vote.

Finally, in contrast to the palpable prejudice that the insurers would suffer were the Court to grant the Joint Motion, there is *no* prejudice in requiring asbestos claimants to submit proofs of claim.[7] Indeed, the asbestos claimants do not even *allege* prejudice or burden, much less prove it, because they cannot do so. A number of the cases that the Joint Motion cites, for

---

and, indeed, it is only *Debtors* that have sought continuances of hearings that this Court has set. More important, simply requiring claimants to file proofs of claim on or before January 8 need not cause any delay. Proofs of claim are presumed valid unless objected to, and the Court can efficiently deal with objections that are raised, if any, prior to, or at, any confirmation hearing.

[7] The insurers not seeking to require future demand holders that are unaware of their claims to file proofs of claim in advance of the claims bar date. Accordingly, the due process concerns that the plan proponents raise in their motion are inapplicable.

example, attempted to place unusual or undue restrictions on the asbestos claimants that would have created unusual burdens in filing a claim. In *Congoleum*, for example, the Court was ruling on a proposal by the bondholders to require each asbestos claimant to complete a 26-page questionnaire that would have required substantially more information that what is customarily required. *See In re Congoleum Corp.*, No. 03-51524, 2008 WL 314699, at *5 (Bankr. D.N J. Feb. 4, 2008) (noting that motion sought to require completion of 26-page questionnaire). Certain Insurers are not seeking any such restrictions or requirements here. All that Certain Insurers seek is that the asbestos claimants fill out the same basic proof of claim form and submit the same type of qualifying information that is required of anyone who seeks to establish a claim that may be contested in a bankruptcy case. Claimants that assert claims for mesothelioma under the plan may be eligible for payment of up to $150,000; non-tort creditors who seek far less fill out proofs of claim in the ordinary course in bankruptcy cases throughout the nation. There is nothing unfair or unduly burdensome about requiring present claimants to provide basic information to substantiate their claim.

## **CONCLUSION**

For the foregoing reasons, Certain Insurers respectfully request that the Court deny the Joint Motion with respect to Class 7 claims arising prior to the bar date.

Dated:  December 3, 2018                         Respectfully submitted,

<div style="margin-left:2em">

/s/ *Stephen M. Forte*
Stephen M. Forte, Esq.
SHIPMAN & GOODWIN LLP
400 Park Avenue, Fifth Floor
New York, NY 10022-4406
Tel:   (212) 376-3015
Fax:   (212) 376-3024
Email: sforte@goodwin.com

-and-

James P. Ruggeri (admitted *pro hac vice*)
Joshua D. Weinberg (admitted *pro hac vice*)
Abigail W. Williams (admitted *pro hac vice*)
SHIPMAN & GOODWIN LLP
1875 K Street, NW, Suite 600
Washington, DC 20006-1251
Tel:   (202) 469-7750
Fax:   (202) 469-7751
Email: jruggeri@goodwin.com
         jweinberg@goodwin.com
         awilliams@goodwin.com

*Attorneys for Hartford Accident and Indemnity Company*

KENNEDYS CMK LLP

 /s/ Margaret Catalano
Margaret F. Catalano
Christina R. Salem
570 Lexington Avenue, 8th Floor
New York, N.Y. 10022
(212) 252-0004
Emails:  meg.catalano@ kennedyscmk.com
          christina.salem@kennedyscmk.com

-and-

IFRAH PLLC
George R. Calhoun, V (*pro hac vice*)
Ifrah PLLC
1717 Pennsylvania Ave., NW

</div>

8

Washington, D.C. 20006
202.525.4147
Email: george@ifrahlaw.com

*Attorneys for The North River Insurance Company*

    */s/ Mark S. Lichtenstein*
Mark S. Lichtenstein, Esq.
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:    (212) 223-4000
Facsimile:    (212) 223-4001
Email:    mlichtenstein@crowell.com

Mark D. Plevin (admitted *pro hac vice*)
Tacie H. Yoon (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Telephone:    (202) 624-2500
Facsimile:    (202) 628-5116
Email:    mplevin@crowell.com
    tyoon@crowell.com

Attorneys for Federal Insurance Company