| LOWENSTEIN SANDLER LLP | CAPLIN & DRYSDALE, CHARTERED | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|---|
| Kenneth A. Rosen, Esq. | James P. Wehner, Esq. (admitted *pro hac vice*) | Edwin J. Harron, Esq. |
| Jeffrey D. Prol, Esq. | Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*) | Sara Beth A. R. Kohut, Esq. (admitted *pro hac vice*) |
| One Lowenstein Drive | One Thomas Circle, N.W. | Rodney Square |
| Roseland, NJ 07068 | Washington, DC 20005 | 1000 North King Street |
| Telephone: (973) 597-2500 | Telephone: (202) 862-5000 | Wilmington, DE 19801 |
| Facsimile: (973) 597-2400 | Facsimile: (202) 429-3301 | Telephone: (302) 571-6703 |
| krosen@lowenstein.com | jwehner@capdale.com | Facsimile: (302) 576-3298 |
| jprol@lowenstein.com | jliesemer@capdale.com | eharron@ycst.com |
|  |  | skohut@ycst.com |
| *Counsel to the Debtors and Debtors in Possession* | *Counsel to the Asbestos Claimants Committee* | *Counsel to the Legal Representative* |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Case No. 18-27963-MBK |
| DURO DYNE NATIONAL CORP., *et al.*, | : | Chapter 11 |
| Debtors.[1] | : | Jointly Administered |

**REPLY MEMORANDUM IN SUPPORT OF PLAN PROPONENTS'**
**MOTION TO EXEMPT ASBESTOS CLAIMS FROM THE BAR DATE**

The above-captioned Debtors and debtors-in-possession, the Official Committee of Asbestos Claimants, and Lawrence Fitzpatrick in his official capacity as Legal Representative (collectively, "**Plan Proponents**"), by and through their undersigned counsel, hereby submit this reply memorandum in further support of their *Joint Application to Exempt Asbestos Claims and Demands from the January 8, 2019 Claims Bar Date*, filed on November 16, 2018 (Dkt. No.

---

[1]   The "**Debtors**" in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are Duro Dyne National Corp. (4664), Duro Dyne Machinery Corp. (9699), Duro Dyne Corporation (3616), Duro Dyne West Corp. (5943), and Duro Dyne Midwest Corp. (4662).

280-1) ("**Motion**") and in response to the objections to the Motion lodged by certain insurers ("**Objecting Insurers**").[2]

## OVERVIEW

The Plan Proponents filed their Motion to exempt all Channeled Asbestos Claims from the applicability of the January 8, 2019 general bar date ("**Bar Date**"), a date set automatically by local rule.[3] The principal grounds for the Motion are that bar dates and resulting proofs of claims are preludes to allowance proceedings under 11 U.S.C. § 502(b). Such proceedings are unnecessary and, indeed, would be wasteful exercises with respect to Channeled Asbestos Claims because those Claims will be channeled to and resolved by the Asbestos Trust under the Plan now before this Court. The Objecting Insurers oppose the Motion, arguing that proofs of claims from Channeled Asbestos Claimants are necessary so that the Objecting Insurers can test the merits of Channeled Asbestos Claims in litigation to ensure that "only legitimate, allowable claims vote."[4] But this Court has already decided voting eligibility through the amended order approving the Disclosure Statement and solicitation procedures ("**Solicitation Order**").[5] Indeed,

---

[2] *See Opp. of Certain Insurers to Joint Mot. to Exempt Asbestos Claims and Demands from the January 8, 2019 Claims Bar Date*, Dec. 3, 2018 (Dkt. No. 308) ("**Certain Insurers' Opp'n**"); *Opp. of MidStates Reinsurance Corp., f/k/a Mead Reinsurance Corp., to Joint Application to Exempt Asbestos Claims and Demands from the January 8, 2019 Claims Bar Date*, Dec. 3, 2018 (Dkt. No. 311).

[3] Capitalized terms used herein but not otherwise defined have the meanings ascribed to them in the *Second Am. Prenegotiated Plan of Reorganization for Duro Dyne National Corp.*, et al., *Under Chapter 11 of the Bankruptcy Code*, Nov. 16, 2018 (Dkt. No. 279) (as it may be further amended, modified, or restated, the "**Plan**").

[4] Certain Insurers' Opp'n at 6.

[5] *See* Am. Order (I) Approving Second Am. Disclosure Statement as Providing Adequate Information Within the Meaning of Section 1125(a) of the Bankruptcy Code; (II) Establishing Procedures for Solicitation and Tabulation of Votes on Am. Plan of Reorganization; (III) Approving the Form of Ballots; (IV) Scheduling a Hearing on Confirmation of the Plan; (V) Approving the Form, Manner and Scope of Mailed and Publication Notices of the Time Fixed to (A) Vote on the Am. Plan, (B) File Objs. to Confirmation of the Am. Plan; and (VI) Granting

the Solicitation Order followed the well-established path of dealing with a multitude of contingent, unliquidated, and disputed tort claims in chapter 11 cases by temporarily allowing the Class 7 asbestos claims for voting purposes and fixing the voting amounts in advance by disease categories. The Objecting Insurers never opposed any aspect of the voting procedures approved by this Court, so they cannot now be heard to propose an alternative means of defining voter eligibility. Moreover, the alternative means they propose will create massive amounts of time-consuming and costly litigation because, apparently in their minds, a "legitimate" claim for voting purposes is a claim that would garner a plaintiff's verdict in the tort system. And the only way to determine which claims would win a plaintiff's verdict is to litigate all the claims to judgment in the U.S. District Court. With nearly a thousand claims pending against the Debtors on the Petition Date, and with more claimants being diagnosed with asbestos-related diseases during this postpetition period, the Bar Date and related allowance proceedings would trigger the due-process and jury-trial rights of individual asbestos claimants and embroil the parties, this Court, and the District Court in claims contests more numerous and protracted than could possibly be administered consistent with an efficient reorganization. For this reason, the vast majority of courts in asbestos bankruptcies have eschewed bar dates for asbestos claims. This Court should do the same.

---

Related Relief, Nov. 20, 2018 (Dkt. No. 289).

# REPLY ARGUMENT

## I. The Path Urged by the Objecting Insurers Would Lead to Intractable and Unmanageable Litigation That Would Prolong the Chapter 11 Cases and Waste the Resources of the Estates, This Court, and the District Court

To show how misguided the path urged by the Objecting Insurers really is, it is worthwhile considering, step-by-step, the outcomes that would predictably flow from imposing the Bar Date on Channeled Asbestos Claimants:

*First*, experience teaches that, in mass-tort bankruptcies, general bar dates stimulate the filing of enormous numbers of claims. There are several explanations for this phenomenon, but a principal one is that bar dates create strong incentives for risk-averse lawyers to submit claims rather than incurring potential responsibility to clients for allowing those claims to be barred. A well-documented example is the *A.H. Robins* case, where a bar date triggered an avalanche of claims. *Robins* was a bankruptcy caused by tort claims involving intrauterine contraceptive devices. At the petition date, only 5,000 suits were pending against the debtor, and it was then thought that there were "perhaps an equal number not filed."[6] As it turned out, more than 327,000 claims were filed in response to the bar date.[7] Here, there were close to 1,000 asbestos personal-injury cases pending against the Debtors on the Petition Date.[8] Moreover, additional claims are arising continuously as persons previously exposed to asbestos-containing products manifest long-latent asbestos-related diseases. All of this suggests that, if the Motion were not granted, the Bar Date would spur the filing of hundreds, if not thousands, of proofs of claims, all of which would have to be dealt with in contested allowance proceedings, as the Objecting

---

[6] *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986).

[7] *See* Richard B. Sobol, Bending the Law: The Story of the Dalkon Shield Bankruptcy 98 (Univ. Chicago Press 1991).

[8] *See* Second Am. Disclosure Statement for Second Am. Prenegotiated Plan of Reorganization for Duro Dyne National Corp., *et al.*, at 13, Nov. 16, 2018 (Dkt. No. 278).

Insurers would seek to exercise their "statutory right" to object to claims in order to determine which ones are "legitimate."

*Second*, asbestos claims do not spring fully formed and "trial-ready" from the minds of claimants. Preparing an asbestos case for trial requires time-consuming and painstaking investigation and discovery, as documents, fact witnesses, and experts have to be found to establish, *inter alia*, product ID, causation, and damages. The asbestos claims that would be filed in response to the Bar Date would be scattered along a continuum between "trial-ready" on one end and newly diagnosed asbestos diseases on the other. Complicating this situation is that asbestos claimants, including those with newly diagnosed diseases, will require discovery from the Debtors to develop their cases. In addition, a proof of claim filled out on an Official Form B 410 will not illuminate the factual underpinnings and strength of a given claim. In rejecting a bar date for asbestos claimants in the *Quigley* case, Chief Bankruptcy Judge Bernstein of the Southern District of New York recognized as much, stating that "the filing of a one page proof of claim . . . with minimal information and an exorbitant or unliquidated demand is not helpful."[9] The Objecting Insurers appear to acknowledge the same, as they are demanding not only the "basic proof of claim form" from each claimant but also the "type of qualifying information that is required of anyone who seeks to establish a claim that may be contested in a bankruptcy case."[10] Garnering such "qualifying information" would mean discovery and all the litigation attendant to discovery, since due process and fairness would dictate providing claimants with time and discovery for claims preparation.[11] And, as the direct targets of the asbestos claims, the

---

[9] *In re Quigley Co.*, 346 B.R. 647, 653 (Bankr. S.D.N.Y. 2006).

[10] Certain Insurers' Opp'n at 7.

[11] *See, e.g.*, Fed. R. Bankr. P. 3007 advisory committee's note (stating that claims objections commence contested matters governed by Bankruptcy Rule 9014); *id*. 9014(c) (making civil discovery rules applicable in contested matters).

Debtors would not be immune from such discovery, which means substantial costs would be inflicted on their Estates, and their reorganization would be prolonged.  In sum, any notion that asbestos claims should be reviewed for factual merit before voting is impracticable, since it would entail significant delays and burden the parties and this Court.  *See In re Johns-Manville Corp.*, 843 F.2d 636, 646 (2d Cir. 1988) (noting that valuing disputed claims for voting purposes would delay reorganization proceedings for years); *In re USG Corp.*, 290 B.R. 223, 226 (Bankr. D. Del. 2003) (observing that litigating only 1% of debtor's asbestos-related liabilities for purposes of extrapolating results would require "unmanageable" litigation of 1,900 claims).

*Third*, determining the merits of each filed asbestos claim "would require that each claimant be afforded the procedural protections of the due process clause of the Fifth Amendment, thereby requiring cases that presented disputed issues of fact a trial by jury."[12] Each asbestos claimant's constitutional right to a jury trial is expressly preserved in bankruptcy proceedings.[13]  In addition, "the liquidation . . . of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" is not a core proceeding.[14]  Although the Objecting Insurers seek to characterize their suggested proof-of-claim exercise as one for voting purposes and not distribution, it is simply inescapable that determining the merits of asbestos claims in § 502 allowance proceedings is ultimately for distribution purposes.  The upshot of all this is that asbestos claims would be have to be tried before juries in the U.S. District Court, thereby adding another complicating layer to the process, as time would have to be found in the District Court's calendar for jury trials of potentially

---

[12] *In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005).

[13] 28 U.S.C. § 1411(a).

[14] *Id*. § 157(b)(2)(B).

hundreds of asbestos claims.[15] This would do nothing but further prolong and frustrate the Debtors' reorganization.

In sum, leaving the Bar Date in place for asbestos claims would predictably result in the filing of hundreds, if not thousands, of proofs of claim. Litigating these in any sense would come at enormous cost to current claimants, lead to prolonged and unmanageable litigation that would unnecessarily tax the resources of the Estates, this Court, and the District Court, and make it impossible to confirm a plan within any reasonable period of time. The overwhelming majority of courts in asbestos bankruptcies, including those in the District of New Jersey, have refrained from imposing bar dates on asbestos claims for these and other practical reasons.[16] This Court should follow their example and grant the Motion.

**II.     The Objecting Insurers' Reliance on *USG*, *W.R. Grace*, and *Garlock* Is Misplaced**

Instead of inviting this Court to follow the overwhelming majority of asbestos bankruptcies that refrained from imposing a bar date, the Objecting Insurers urge this Court to take the road less traveled and follow the distinct minority of cases—namely, *USG*, *W.R. Grace & Co.*, and *Garlock*—where an asbestos claims bar date was ordered.[17] But none of these cases

---

[15]   Trials would occur either in the U.S. District Court for the District of New Jersey or another federal district court designated by the former. *See id.* § 157(b)(5).

[16]   These cases include *Quigley*, 346 B.R. at 653 (noting that adjudication of asbestos claims is "cumbersome and best postponed for submission to the post-confirmation trust"); *In re G-I Holdings, Inc.*, No. 01-30135, Dkt. No. 8257, at 5–6 (Bankr. D.N.J. Sept. 5, 2008); *In re Congoleum Corp.*, No. 03-51524, 2008 WL 314699, at *4 (Bankr. D.N.J. Feb. 4, 2008). *See also, e.g.*, *In re Sepco Corp.*, No. 16-50058, Dkt. No. 416, at 4 (Bankr. N.D. Ohio July 19, 2018); *In re Geo. V. Hamilton, Inc.*, No. 15-23704, Dkt. No. 216, at 1–2 (Bankr. W.D. Pa. Jan. 12, 2016); *In re Yarway Corp.*, No. 13-11025, Dkt. No. 720, at 3 (Bankr. D. Del. Jan. 12, 2015); *In re Plant Insulation Co.*, No. 09-31347, Dkt. No. 243, at 2 (Bankr. N.D. Cal. July 13, 2009); *In re Thorpe Insulation Co.*, No. 2:07-19271-BB, Doc. No. 437, at 2 (Bankr. C.D. Cal. Jan. 10, 2008); *In re J.T. Thorpe, Inc.*, No. 02-14216, Dkt. No. 423-1, at 2 (Bankr. C.D. Cal. Feb. 9, 2005); *In re Flintkote Co.*, No. 04-11300, Dkt. No. 317, at 1–2 (Bankr. D. Del. Oct. 13, 2004).

[17]   Certain Insurers' Opp'n at 4–5.

is a useful guide since the bar dates there either were never actually implemented (*USG*) or were abandoned in the face of a consensual resolution reached between the debtors and the claimants' representatives (*Grace*). And, although a bar date was imposed on a limited set of asbestos claims in *Garlock*, that occurred only after the bankruptcy court had rejected the debtors' previous requests for a bar date for the very reasons explained above.

In *USG*, a bar date order was entered with respect to cancer claims only, so that the debtor's solvency could be determined.[18] However, the bar date was never imposed, as the debtor and the asbestos claimants committee filed a consensual plan, which was confirmed after an uncontested confirmation hearing.[19]

In *Grace*, a bar date was imposed as a means of implementing, for estimation purposes, a questionnaire process as to personal injury claimants who had lawsuits pending as of the petition date. Ultimately, the debtors and the asbestos claimants' representatives agreed on a § 524(g) plan, and the bar date—which had generated the filing of more than 100,000 asbestos-related personal injury claims, at enormous cost—did not play any material role in the reorganization. Under Grace's reorganization plan, an asbestos personal injury claimant can receive a distribution from the § 524(g) trust regardless of whether he or she timely filed a proof of claim during the bankruptcy.[20]

In *Garlock*, Bankruptcy Judge Hodges—who authored the estimation opinion oft-cited by the Objecting Insurers—rejected the debtors' requests for a general asbestos claims bar date

---

[18]  *See USG Corp.*, 290 B.R. at 227.

[19]  *See* Findings of Fact and Conclusions of Law Regarding Confirmation of the First Amended Joint Plan of Reorganization of USG Corporation and Its Debtor Subsidiaries, as Modified, *In re USG Corp.*, No. 01-2094 (Bankr. D. Del. June 16, 2006) (Dkt. No. 11687).

[20]  *In re W.R. Grace & Co.*, 446 B.R. 96 (Bankr. D. Del. 2011), *amended by* No. 01-1139 (JKF), 2011 WL 832940 (Bankr. D. Del. Mar. 4, 2011).

*three times* after concluding that a bar date would not be practical or useful.[21] He recognized that allowance proceedings would trigger the due process rights of individual claimants,[22] and embroil the parties and the court in numerous and protracted claims contests that could not be administered consistently with efficient reorganization.[23] He therefore ordered the parties to proceed instead to estimation of the debtors' aggregate liability for mesothelioma claims. Eventually, after a new bankruptcy judge took over the case, a bar date was ordered for a limited set of holders of unliquidated asbestos claims,[24] but that bar date was principally in service of a *non-524(g) plan*, which was ultimately and resoundingly rejected by the class of current asbestos claimants.[25] Later, the debtors and the asbestos claimants' representatives agreed to a consensual

---

[21] *See* Order on Motion of the Official Committee of Asbestos Personal Injury Claimants for Entry of a Scheduling Order and Debtors' Motion for Establishment of Asbestos Claims Bar Date, etc., *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. Dec. 9, 2010) (Dkt. No. 853) (denying Debtors' motion to impose bar date and initiate allowance proceedings for asbestos claims); Order Denying the Second Amendment to Debtors' Motion for (A) Establishment of Asbestos Claims Bar Date, (B) Approval of Asbestos Proof of Claim Form, (C) Approval of Form and Manner of Notice, (D) Estimation of Asbestos Claims, and (E) Approval of Initial Case Management Schedule, *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. May 19, 2011) (Dkt. No. 1348) (same); Order for Estimation of Mesothelioma Claims, *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. Apr. 13, 2012) (Dkt. No. 2102) (same).

[22] *See* Hr'g Tr. 1295:16–18, *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. Nov. 19, 2010) (Dkt. No. 807) ("[T]he proof of claim process . . . runs the risk of creating due process rights that we might wish we had never created.").

[23] *See id.* at 1295:18–23 ("[E]ven if there was some wildly successful . . . effort at . . . eliminating the vast numbers of these claims, you could still end up with a thousand or more jury trials pending before the district court which to-date hasn't tried a civil case this year.").

[24] *See* Order Approving Disclosure Statement and Establishing Asbestos Claims Bar Date and Procedures for Solicitation, *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. Apr. 10, 2015) (Dkt. No. 4542).

[25] A separate bar date was also ordered for settled asbestos claims, which constituted a small fraction and discrete subset of the total claims. *See* Order on Debtors' Motion to Establish Bar Date for Settled Asbestos Claims and Related Relief ¶ 4, at 2, *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. July 9, 2014) (Dkt. No. 3854).

524(g) plan that foreclosed the possibility of protracted allowance proceedings, but only after substantial time, litigation, and costs had been incurred.

All three of these cases are object lessons that the better path is to eschew a bar date for asbestos claims and instead permit those claims to be channeled to and resolved by an asbestos settlement trust, in accordance with § 524(g).

### III. This Court Has Already Determined the Voting Eligibility of Asbestos Claimants Through the Well-Established Path of Temporary Allowance; as a Result, a Bar Date for Asbestos Claims Is Unnecessary for Voting

Temporary allowance for voting purposes is common in chapter 11 cases generally and provides the well-established and efficient model for asbestos bankruptcies.[26] The Bankruptcy Rules expressly permit temporary allowance for voting purposes.[27] Temporary allowance enables the holders of contingent and disputed claims to cast their votes and have their votes counted, while avoiding protracted disputes over the merits of those claims: "*Since claims litigation is often drawn out*, thereby defeating one of the essential purposes of the Code, *i.e.* expedited and efficient administration of the bankruptcy estate, . . . [Bankruptcy Rule 3018] provide[s] that, for voting purposes only, the court can temporarily allow a claim in such an amount as the 'court deems proper.'"[28] Thus, temporary allowance for voting purposes obviates pre-confirmation allowance and disallowance proceedings and avoids the imponderable administrative burdens and delays of litigating hundreds, if not thousands, of disputed tort claims to final resolution before a debtor can reorganize.

---

[26] *See In re Quigley Co.*, 383 B.R. 19, 24 (Bankr. S.D.N.Y. 2008).

[27] *See* Fed. R. Bankr. P. 3018(a).

[28] *In re Stone Hedge Props.*, 191 B.R. 59, 63 (Bankr. M.D. Pa. 1995) (quoting Fed. R. Bankr. P. 3018(a)) (emphasis added).

This Court has already temporarily allowed the asbestos claims in Class 7 and fixed their voting amounts by way of the Solicitation Order. In particular, the Solicitation Order denotes that the Asbestos Claims in Class 7 are "temporarily allowed" for voting purposes, approves the forms of ballots to be used by the holders of those claims, and fixes the temporary allowed voting amounts by asbestos disease category.[29] The Solicitation Order also provides that, except as otherwise directed by the Court, "any questions with respect to the validity, form, *eligibility* . . ., and acceptance of Ballots will be determined by the Debtors in their sole discretion."[30] Additionally, the form of Class 7 ballots approved by this Court require those signing the ballots to certify (1) that the ballots are being cast by or on behalf of a holder of a "Channeled Asbestos Claim," as broadly defined, and (2) that the disease category marked on the ballot is the disease attributable to the Asbestos Claim being voted, based on medical records and similar documentation.[31] No further requirements are necessary to vote and to have that vote counted. This approach is consistent with the voting procedures approved in other asbestos-driven reorganizations, whereby asbestos claimants were permitted "to self-determine that they have a claim (*i.e.*, essentially to allow the claim themselves for voting purposes) and, based on that determination, . . . [making them eligible] to vote."[32]

Just because an asbestos tort claim is disputed does not mean it is "illegitimate" and disqualified from voting altogether. The Plan definitions embodied in the term "Channeled Asbestos Claims" are exceedingly broad, and include, among others, claims that are "*disputed*,"

---

[29] Solicitation Order, *supra* note 5, ¶¶ 8–11, 18, at 5, 7. Asbestos Insurers and holders of Indirect Trust Claims are given a temporarily allowed voting amount of $1.00, unless this Court approves a different voting amount in accordance with Bankruptcy Rule 3018(a). *See id.* ¶ 19, at 7–8.

[30] *Id.* ¶ 23, at 10.

[31] *Id.*, Ex. C at 3, Ex. D at 6.

[32] *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 423 (Bankr. D. Md. 2007).

"unliquidated," or "contingent."[33]  Under the Plan, *all* Channeled Asbestos Claims will be channeled to the Asbestos Trust, regardless of their ultimate merit and eligibility for compensation under the Trust Distribution Procedures.  As a result, holders of asbestos claims or their attorneys, who sign the certifications in the Court-approved ballots, should be given the opportunity to vote and to have their votes counted.  It is simply unnecessary, and would be improper, to confine voting eligibility to only those holding claims that are deemed by the Objecting Insurers to be "legitimate."

Although the Objecting Insurers opposed approval of the Disclosure Statement, they never objected to the solicitation and voting procedures eventually approved by this Court.  With the Solicitation Order entered, they cannot be heard now to urge additional eligibility requirements for voting that are beyond what this Court has already ordered.

*(the remainder of this page has intentionally been left blank)*

---

[33]  11 U.S.C. § 101(5) (emphasis added) *see also* Plan § 1.01(42), at 7 (incorporating the § 101(5) definition of "claim" into the Plan's definition of "Claim").

## CONCLUSION

The Debtors filed for chapter 11 relief and have sought confirmation of their prenegotiated Plan under § 524(g) in part to avoid the drain on their resources that continuing litigation of asbestos tort claims on their merits would cause. By opposing the Motion in order to preserve their "statutory right" to object to claims, the Objecting Insurers are seeking to inject that same litigation into the chapter 11 process, embroil the parties in costly and protracted claims disputes, and hold up the Debtors' reorganization for an untold period of time. The Court should not permit this. For all the reasons explained herein, this Court should overrule the objections of the Objecting Insurers and grant the Motion in its entirety.

Respectfully submitted,

| LOWENSTEIN SANDLER LLP | THE LAW OFFICE OF JOHN A. FIALCOWITZ, LLC | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|---|
| /s/ Jeffrey D. Prol<br>Kenneth A. Rosen, Esq.<br>Jeffrey D. Prol, Esq.<br>One Lowenstein Drive<br>Roseland, NJ 07068<br>Telephone: (973) 597-2500<br>Facsimile: (973) 597-2400<br>*Counsel to the Debtors and Debtors in Possession* | /s/John A. Fialcowitz<br>John A. Fialcowitz<br>89 Headquarters Plaza<br>North Suite 1216<br>Morristown, NJ 07960<br>Telephone: (973) 532-7208<br>Facsimile: (973) 993-1857<br><br>—and—<br><br>CAPLIN & DRYSDALE, CHARTERED<br>James P. Wehner, Esq.<br>Jeffrey A. Liesemer, Esq.<br>One Thomas Circle, N.W.<br>Washington, DC 20005<br>Telephone: (202) 862-5000<br>Facsimile: (202) 429-3301<br>*Co-Counsel to the Asbestos Claimants Committee* | /s/ Edwin J. Harron<br>Edwin J. Harron, Esq.<br>Sara Beth A. R. Kohut, Esq.<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6703<br>Facsimile: (302) 576-3298<br>*Counsel to the Legal Representative* |

Dated: December 6, 2018