| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in compliance with D.N.J. LBR 9004-1(b)**<br><br>**Duane Morris LLP**<br>Sommer L. Ross, Esq. (004112005)<br>222 Delaware Avenue, Suite 1600<br>Wilmington, DE 19801-1659<br>T: (302) 657-4951<br>F: (302) 657-4901<br><br>Jeff D. Kahane, Esq. (*Pro Hac Vice*)<br>865 South Figueroa Street, Suite 3100<br>Los Angeles, CA 90017-5450<br>T: (213) 689-7431<br>F: (213) 403-6372<br><br>**London Fischer LLP**<br>James T.H. Deaver, Esq. (*Pro Hac Vice*)<br>59 Maiden Lane, 39th Floor<br>New York, New York 10038<br>Telephone: (212) 331-9580<br>Fax:  (212) 972-1030<br><br>*Co-Counsel to MidStates Reinsurance Corporation,*<br>*f/k/a Mead Reinsurance Corporation* |

| | |
|---|---|
| In re: | Chapter 11 |
| Duro Dyne National Corp., *et al.*,[1] | (Jointly Administered) |
| Debtors. | Case No. 18-27963 (MBK) |

**MIDSTATES REINSURANCE CORPORATION'S (I) JOINDER IN SUPPORT OF THE JOINT OBJECTION OF CERTAIN INSURERS TO DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION FOR DURO DYNE NATIONAL CORP., ET AL., UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) SUPPLEMENTAL PLAN OBJECTIONS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Duro Dyne National Corp. (4664); Duro Dyne Machinery Corp. (9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne Midwest Corp. (4662).

DM3\5609738.1

MidStates Reinsurance Corporation, f/k/a Mead Reinsurance Corporation ("MidStates"), a party-in-interest in the above-captioned jointly administered chapter 11 cases ("Chapter 11 Cases"), acting by and through its undersigned counsel, hereby files this (i) joinder ("Joinder") in support of the *Joint Objection of Certain Insurers to Debtors' Second Amended Plan of Reorganization for Duro Dyne Natinal Corp., et. al., Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 445] ("Certain Insurers' Joint Plan Objection") and (ii) supplement in order to assert additional objections to the Plan ("MidStates' Supplemental Plan Objection" and, together with the Joinder, "Joinder and Supplemental Plan Objection").[2]  In support of this Joinder and Supplemental Plan Objection, MidStates respectfully states as follows:

## JOINDER

1.    MidStates hereby joins in and adopts the arguments and set forth in Certain Insurers' Joint Plan Objection as if set forth herein at length.

## SUPPLEMENTAL PLAN OBJECTION

2.    In addition to the arguments set forth in Certain Insurers' Joint Plan Objection, MidStates respectfully submits the Plan should not be confirmed for the following reasons.

    **A.**    **The Plan Violates Sections 1102 and 1129(a)(1) By Seeking to Modify the Definition of "Substantial Consummation"**[3]

3.    Section 13.05 of the Plan impermissibly seeks to modify the definition of "substantial consummation" set forth in 11 U.S.C. § 1101(2).

---

[2] Capitalized terms used but not otherwise defined in this Joinder and Supplemental Objection shall have the meanings ascribed to them in Certain Insurers' Joint Plan Objection.

[3] Certain Insurers' Joint Plan Objection categories the Plan Proponents' modification of the definition of "substantial consummation" as evidence that the Plan was not proposed in good faith.  However, the Plan Proponents modification of the definition of "substantial consummation" is, in and of itself, a violation of Sections 1102 and 1129(a)(1) and an independent ground to deny confirmation.  As a result, this argument is set forth herein in full for the Court's consideration.

4. The Plan states:

> Section 13.05. Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

Plan at 56.

5. This is inconsistent with the Bankruptcy Code and legally unsupported by case law. Section 1127(b) limits the modification of chapter 11 plans to before the occurrence of substantial consummation. Substantial consummation is defined in 11 U.S.C. § 1101(2). It occurs only when there is:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

6. Thus, the Plan seeks to substantially vary the statutory definition. It changes it from when all three conditions set forth in 11 U.S.C. § 1101(2) have occurred to the date that the Plan will begin to be implemented ("Effective Date"). Under the Plan, the Effective Date occurs after either (a) "the conditions precedent to the effectiveness of the Plan specified in Section 10.02 hereof have been satisfied" *or* (b) such preconditions have been "waived pursuant to the terms thereof." Plan § 1.01(65). This waiver provision applies broadly to "each of the conditions precedent . . . in whole or in part" and may be performed "by the Plan Proponents, acting jointly." Plan § 10.04. Waiver requires no order or hearing. *See id.* The conditions that may be waived include the transfer of all or any part, of the property to be transferred to the Trust by the Plan. *Id.* §10.02(d)-(f).

7. This is not a subtle change. Under the statutory definition of substantial consummation, the Plan would not be substantially consummated without these property transfers. *See* 11 U.S.C. § 1101(2)(a). Moreover, it is extremely unlikely that the Trust will make any distributions to asbestos claimants by the Effective Date. The usual procedure for asbestos-related trusts is to first distribute claim forms. It is only after the claim forms have been distributed, returned and assessed—after a substantial delay—that the Trust will begin paying claims. Nonetheless, the Plan would deem itself substantially consummated. Thus, the Plan improperly amends the statutory definition of substantial consummation to accelerate the Effective Date by at least several months.

8. The reason for this is evident. The Plan proponents seek to insulate the Plan's confirmation from appeals. Under the doctrine of equitable mootness, an appellate court may refuse to grant meritorious relief if it "will undermine the finality and reliability of consummated plans of reorganization." *In re Tribune Media Co.*, 799 F.3d 272, 277 (3d Cir. 2015). Courts look to five factors to determine if an appeal has become equitably moot: "(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." *In re Cont'l Airlines*, 91 F.3d 553, 560 (3d Cir. 1996). Of these five factors, "the foremost consideration has been whether the reorganization plan has been substantially consummated." *Id.* "[T]he importance of substantial consummation in rendering a claim equitably moot raises concerns that a debtor can 'stack the deck' in its favor to expedite implementation of its plan and foreclose review of questionable plan components." *In re One2One Commc'ns, LLC*, 805 F.3d 428, 448 n. 1 (3d Cir. 2015) (citation omitted).

9. For this reason, substantial consummation must be based on the facts, not an arbitrary definition. *In re H & L Developers, Inc.*, 178 B.R. 77, 80 (Bankr. E.D. Pa. 1994) ("Whether a plan has been substantially consummated is a question of fact to be determined upon the circumstances of each case and the evidence provided by the parties."). By re-defining substantial consummation, the Plan guts this protection.

10. Section 1129(a)(1) requires a plan to comply with all applicable provisions of the Bankruptcy Code. By re-defining substantial consummation, the Plan violates Section 1101(2) and eliminates a statutory protection for plan opponents. Thus, the Plan cannot be confirmed.

**B.** **The Plan's Judgment Reduction Clause Is Inadequate**

11. The Plan enjoins the non-settling insurers' contribution claims against the settling insurers. Plan § 9.06. But it does not adequately protect the non-settling insurers from this injunction's adverse financial effect. Courts must ensure that non-settling parties are not prejudiced by such injunctive relief. "While a bar order encourages settlement, it must also be fair to the non-settling defendants, who are losing contribution and indemnification claims, by providing an appropriate right of set-off from any judgment imposed against them." *In re Tribune Co.*, 464 B.R. 126, 177 (Bankr. D. Del. 2011) (citations omitted). To protect non-settling parties, the settlement must provide them with "proportionate judgment reduction". This requires "the equivalent of a contribution claim; the non-settling defendants are only responsible for their portion of the liability." *Eichenholtz v. Brennan*, 52 F.3d 478, 487 (3d Cir. 1995).

12. New York law allows insurers to recover from coinsurers defense and indemnity costs exceeding their equitable share. *Hard v. Mingle*, 206 N.Y. 179, 184 (N.Y. 1912). An insurer's contributions right extend to controversies resolved by settlement. *U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 885 (2d Cir. 1988).

13. The Plan's judgment reduction clause ("Judgment Reduction Clause") provides:

> If any Non-Settling Asbestos Insurer against whom a judgment-enforcement action or direct action is brought asserts as a defense that it would have an Asbestos Insurance Policy Claim as a result of contribution rights against one or more Settling Asbestos Insurers with respect to the Channeled Asbestos Claimant's claim that it could have asserted but for the Injunctions (hereinafter, "*Contribution Claims*"), the liability, if any, of the Non-Settling Asbestos Insurer to the Channeled Asbestos Claimant shall be reduced dollar-for-dollar by the amount, if any, **of any judgment** establishing the Contribution Claims in accordance with Section 4.14(b).

Plan § 4.14(a) (emphasis added).

14. By its terms, the Judgment Reduction Clause applies only after the entry of a "judgment establishing the Contribution Claims". This is problematic for many reasons.

15. First, a Non-Settling Insurer might prevail on the defense of the claim. This is the most likely result. In such probable event, the Non-Settling Insurer would have no way to offset their costs of defense because there is no judgment against which they can offset their contribution claims. In this event, they will bear 100%, of the liability for the defense of such claim.

16. Second, a Non-Settling Insurer might settle the claim. In such event, the Non-Settling Insurer will pay not only the defense, but also the settlement payment. There will be no way for the Non-Settling Insurer to offset their liability for the costs of defense and settlement because there will be no judgment. Again, the Non-Settling Insurer will pay 100% of the costs associated with such claim.

17. Third, an asbestos claimant might obtain a judgment against the Non-Settling Insurer. This is the one instance where the Judgment Reduction Clause might theoretically work. However, the Plan contemplates that a Non-Settling Insurer will offset against the amount of the judgment its contribution claims against a settling insurer. If, but only if, the judgment exceeds the amount of such, which has both indemnity and defense components, does the Plan adequately protect the Non-Settling Insurer. Even in these circumstances, should the amount of the judgment not exceed the amount of such claim including the Non-Settling Insurer's claim for contribution

for defense, the amount paid by the Non-Settling Insurer will exceed its share under New York law.

### C. The Proposed Supplemental Injunction Exceeds Section 524(g)'s Scope

18. Section 524(g) provides supplemental injunctive relief that is available only if a debtor satisfies certain prerequisites in addition to standard plan confirmation requirements. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 (3d Cir. 2004). Even then, "§ 524(g) limits the situations where a channeling injunction may enjoin actions against third parties to those where a third party has derivative liability for the claims against the debtor[.]" *Id.* It cannot extend to "non-derivative third party actions." *Id.* Qualifying third party actions arise only in four circumstances:

> "[T]he third party's ownership of a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor";
>
> "[T]he third party's involvement in the management of the debtor or a predecessor in interest of the debtor, or service as an officer, director or employee of the debtor or a related party"
>
> "[T]he third party's provision of insurance to the debtor or a related party"; or
>
> "[T]he third part's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party".

11 U.S.C. § 524(g)(4)(A)(ii)(I)-(IV).

19. The Plan's proposed supplemental injunction exceeds this limited scope because it extends to the "Protected Parties". Plan § 9.05(a). The Plan defined Protected Parties to include:

> Any current or former affiliate of each of the debtors or reorganized debtor;
>
> Each of the "Hinden Family Members" on account of their being or having been an affiliate of a debtor or the reorganized debtor; and
>
> Each of the "Hinden Family Entities" on account of their being or having been an affiliate of a debtor or the reorganized debtor.

Plan §1.01(102)(d)-(e).

20.     The Plan protects each of these Protected Parties merely because they are an affiliate of one or more of the Debtors.  But affiliates, without more, are not among the four enumerated third parties eligible for the supplemental injunction.  *See* 11 U.S.C. § 524(g)(4).  This conclusion arises not only from the statute, but also from black letter law that a corporation's affiliates are not derivatively liable for that corporation's debts solely on account of their relationship.  *See Meshel v. Resorts Int'l of New York, Inc.*, 160 A.D.2d 211, 213 (N.Y. App. Div. 1990) ("In the absence of a clear indication of dominion and control, parent, subsidiary or affiliated corporations are treated separately and independently for purposes of assigning legal responsibility.").

21.     The Plan improperly extends a supplemental injunction beyond that permitted under Section 524(g).  The Court may only enjoin claims against the Protected Parties that allege that the Protected Parties are derivatively liable for the debtor's conduct for one of the four reasons specified in Section 524(g)(4)(A)(ii)(I)-(IV).  No other cause of action may be enjoined.

**D.     Any Confirmation Order Should Include Insurance Neutrality Language**

22.     MidStates objects to the Plan unless it contains insurance neutrality language ("INL")[4] of the type approved by the Court of Appeals for the Third Circuit in *In re Combustion Engineering*, 391 F.3d 190 (3d Cir. 2004), clarifying that the Plan and Confirmation Order will not in any way adversely affect MidStates' rights as an insurer.

23.     The Plan purports to preserve the insurers' rights in Section 4.17, which provides:

> In any action commenced against the Reorganized Debtor under Section 4.13 hereof or against a Non-Settling Asbestos Insurer under Section 4.14, (a) subject to Section 4.15(b) hereof, any payments made by the Asbestos Trust to the Channeled Asbestos Claimant commencing such action shall be taken into account in such action in accordance with rule of law or evidence related to any credit, offset, or reduction of damages allowed by applicable nonbankruptcy law; and (b) nothing

---

[4] Originally called "super-preemptory language".  *See, e.g.*, *In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004)).

pertaining to this Plan, the confirmation of this Plan, the entry of the Confirmation Order, the creation of the Asbestos Trust, and the implementation of the TDP shall be construed as a waiver or admission with respect to any Asbestos-Related Defenses, and all parties (including the Asbestos Insurers) shall be free to make any contention permitted by applicable nonbankruptcy law with respect to such defenses.

Plan § 4.17.

24. However, Section 4.17 of the Plan is inadequate to protect the rights of non-settling insurers. INL's purpose is to "broadly preserve[] insurers' pre-petition rights under the subject insurance policies and settlements." *In re Combustion Eng'g, Inc.*, 391 F.3d at 217. This ensures that nothing in the Plan "diminishes their property, increases their burdens, or impairs their rights." *Id.* Simply, it must provide that "*nothing* impairs their rights." *Id.* (citation omitted) (emphasis in the original). Indeed, this provision would strip MidStates' standing to object to the Plan. *See id.*

25. The Plan fails to meet this standard. It merely preserves certain defenses.

26. As a result, MidStates objects to the Plan unless any order confirming the Plan ("Confirmation Order") includes the following INL specifying that the Plan and Confirmation Order do not adversely affect MidStates' rights:

Notwithstanding anything in the Plan or the Confirmation Order, nothing in the Plan or Confirmation Order (including any other provision that purports to be preemptory or supervening) shall in any way operate to impair, or have the effect of impairing, MidStates' legal, equitable or contractual rights in any respect. The rights of MidStates shall be determined under MidStates insurance policies and applicable state law.

27. This unambiguous language is the only way to ensure that neither the Plan nor the Confirmation Order would affect MidStates' rights in any way. *See In re Pittsburgh Corning Bankr. Corp.*, 453 B.R. 570, 589 (Bankr. W.D. Pa. 2011) ("If the goal of the Debtor is to create a plan with insurance neutrality, the insurance neutrality language must follow the *Combustion Engineering* analysis without the multitude of qualifications that create ambiguity in the Modified Third Amended Plan at bench."); *contrast with Motor Vehicle Cas. Co. v. Thorpe Insulation Co.*

*(In re Thorpe Insulation Co.)*, 677 F.3d 869, 886 (9th Cir. 2012) ("Here, the express exceptions to [insurers'] defenses signal that the plan is not insurance neutral.").

28. Section 4.17 of the Plan is also inadequate to preserve insurers' rights in general.

29. Courts in the Third Circuit and elsewhere have regularly included INL in orders to ensure that a plan, order, or settlement agreement will not be interpreted as prejudicing insurers' rights. *See, e.g.*, *In re Global Indus. Techs.*, 645 F.3d 201 (3d Cir. 2011); *In re Combustion Eng'g, Inc.*, 391 F.3d at 209; *see also In re TK Holdings, Inc.*, No. 17-11375 (BLS), 2018 Bankr. LEXIS 756, at *117 (Bankr. D. Del. Feb. 21, 2018); *In re UAL Corp.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill.), *slip op.* (Jan. 15, 2003) at 3-4; *In re Solutia Inc.*, Case No. 03-17949 (PCB) (Bankr. S.D.N.Y.), *slip op.* (July 28, 2005) at 2, 5; *In re A.P.I., Inc.*, 331 B.R. 828 (Bankr. D. Minn. 2005); Fourth Amended and Restated Joint Prepackaged Plan of Reorganization for Mid-Valley, Inc., DII Industries, LLC, Kellogg Brown & Root, Inc., KBR Technical Services, Inc., Kellogg Brown & Root Engineering Corporation, Kellogg Brown & Root International, Inc. (a Delaware Corporation), Kellogg Brown & Root, Inc. (a Panamanian Corporation), and BPM Minerals, LLC under Chapter 11 of the United States Bankruptcy Code, § 11.4 at 25, filed May 17, 2004, in *In re Mid-Valley, Inc.*, Case No. 03-35592 (Bankr. W.D. Pa.) at Dkt. No. 1513; Fourth Amended and Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code (as Modified as of March 28, 2008), § 10.4 at 38, filed March 28, 2008, in *In re Quigley Company, Inc.*, Case No. 04-15739 (Bankr. S.D.N.Y.) at Dkt. No. 1380.

30. Here, if the Plan includes the proposed INL, then MidStates' rights could not be affected by the Plan, and MidStates would have no standing to object to the Plan.

## CONCLUSION

31. For the foregoing reasons and for the reasons stated in Certain Insurers' Joint Plan Objection, MidStates respectfully requests that this Court enter an order (i) denying confirmation of the Plan and (ii) granting any other further relief it deems just and appropriate.

Respectfully submitted,

Dated: February 8, 2019

/s/ Sommer L. Ross
DUANE MORRIS LLP
Sommer L. Ross, Esq. (NJ Bar No. 004112005)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: slross@duanemorris.com

Jeff D. Kahane, Esq. (*Pro Hac Vice*)
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: (213) 689-7431
Facsimile: (213) 403-6372
E-mail: jkahane@duanemorris.com

and

LONDON FISCHER LLP
James T.H. Deaver, Esq. (*Pro Hac Vice*)
59 Maiden Lane, 39th Floor
New York, New York 10038
Telephone: (212) 331-9580
Fax: (212) 972-1030
E-mail: jdeaver@londonfischer.com

*Co-Counsel for MidStates Reinsurance Corporation, f/k/a Mead Reinsurance Corporation*