UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| In re: | : | Case No. 18-27963 (MBK) |
| | : | |
| DURO DYNE NATIONAL CORP., *et al.*, | : | Chapter 11 |
| | : | |
| Debtors.[1] | : | Jointly Administered |
| | : | |

## AMENDED PLAN SUPPLEMENT FOR SECOND AMENDED PRENEGOTIATED PLAN OF REORGANIZATION FOR DURODYNE NATIONAL CORP., ET AL.

LOWENSTEIN SANDLER LLP
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Facsimile:  (973) 597-2400
krosen@lowenstein.com
jprol@lowenstein.com

*Counsel to the Debtors and Debtors in Possession*

CAPLIN & DRYSDALE, CHARTERED
James P. Wehner, Esq.
Jeffrey A. Liesemer, Esq.
One Thomas Circle, N.W.
Washington, DC 20005
Telephone:  (202) 862-5000
Facsimile: (202) 429-3301
jwehner@capdale.com
jliesemer@capdale.com

*Counsel to the Official Committee of Asbestos Claimants*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Edwin J. Harron, Esq.
Sara Beth A. R. Kohut, Esq.
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6703
Facsimile:  (302) 576-3298
eharron@ycst.com
skohut@ycst.com

*Counsel to the Legal Representative*

---

[1]     The Debtors subject to this Disclosure Statement and the Prenegotiated Plan of Reorganization referred to herein are Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp.

## Schedule 1.01(13)

(Each agreement between any Debtor and an Asbestos Insurer)

See attached.

### Interim Settlement Funding And Non-Waiver Agreement

Federal Insurance Company ("Federal"), MidStates Reinsurance Corporation, as successor to Mead Reinsurance Corporation ("MidStates"),  The North River Insurance Company ("North River"), and Hartford Accident & Indemnity Company ("Hartford") (collectively, the "Excess Insurers"), and Duro Dyne Corporation and its insured parents, subsidiaries, and affiliates ("Duro Dyne") hereby enter into this Interim Settlement Funding And Non-Waiver Agreement (the "Agreement").  Each of the foregoing is a "Party" and collectively they are the "Parties."

The Parties agree that all rights at law and in equity are fully preserved and not waived or estopped in any way by entering into or performing under this Agreement, including, but in no way limited to, the Parties' rights of reallocation and/or recoupment from each other or third-parties.  In order to resolve as many as possible of the following six claims – *Rocha, Donnelly, Hasty, Bollman, Carpenter* and *Stoepplewerth*, Duro Dyne and the Excess Carriers each commit to paying up to the following amounts, subject to a cap of $2.1 million in total:

| | |
|---|---|
| Duro Dyne | $270,000 |
| North River | $230,000 |
| Hartford | $400,000 |
| MidStates | $400,000 |
| Federal | $800,000 |

These amounts are equivalent to the following percentage shares, which shall be used for calculating each Party's contribution toward each individual settlement:  Duro Dyne 12.86%; North River 10.95%; MidStates 19.04%; Hartford 19.04%, and Federal 38.11%.

If all six cases can be resolved for less than $2.1 million, all Parties will share in the savings, pro rata, per these percentages.  Thus, each Party's total contribution toward all six settlements may be less than the respective total limit for each Party's contribution toward the cap set forth above.

The Parties agree that the payment(s) by each Excess Carrier shall reduce its applicable limit of liability under its relevant policy or policies, absent any future actual recoupment by such Excess Carrier of any relevant part of its payment(s) toward the resolution of the six claims listed above from another Party to this Agreement.

The Parties agree to a mutual non-waiver clause and an express agreement that all Parties to this Agreement have preserved the right to seek to recoup their respective contributions toward the settlement of the six cases from the other Parties or anyone else.  Nothing in this Agreement, in the payments and/or in any action by any Party in accordance with this Agreement, shall in any way bar or be construed as a waiver and/or constitute any estoppel with respect to any Parties' rights, at law, in equity or under any policy of insurance issued by any Party to this Agreement to Duro Dyne.  Instead, all such rights including, but not limited to, the right of recoupment are preserved.



1

This Agreement will be effective immediately upon Duro Dyne's written acceptance of this proposal for purposes of resolving the *Rocha* Claim, subject to the specific amount of settlement authority authorized at any relevant time by Duro Dyne, Hartford, Federal, MidStates and North River.

The Parties will use best efforts to promptly memorialize and execute this Agreement. In addition, the Parties will further evidence their acceptance and agreement to be bound by the terms of this Agreement for purposes of any resolution through settlement of the *Donnelly, Hasty, Bollman, Carpenter* and *Stoepplewerth* claims and related lawsuits by executing a copy of this email using the signature lines below. Alternatively, at the written request of any Party to this Agreement, the Parties will instead prepare a separate written agreement that is fully consistent with the substantive terms set forth above. In that event, the Parties will use best efforts to promptly memorialize and execute this temporary interim funding agreement in such form with wording acceptable to all Parties.

Email confirmation of each Party's acceptance of this Agreement shall be binding on each Party once all Parties to this Agreement have provided such email confirmation, whether through counsel or otherwise, and will be followed by signature from the Party.


Federal Insurance Company


By: _____

Print Name and Title _____

Date:_____


MidStates Reinsurance Corporation, as successor to Mead Reinsurance Corporation


By: _____

Print Name and Title _____


Date:_____


The North River Insurance Company


By: _____



Print Name and Title _____

Date:_____

Hartford Accident & Indemnity Company

By: _____

Print Name and Title _____

Date:_____

Duro Dyne Corporation, including any insured parents, subsidiaries, and affiliates

By: _____

Print Name and Title _Randall Hinden, President & CEO_

Date:____10/31/13_____

EAST\64780092.1

3

### Interim Settlement Funding And Non-Waiver Agreement

Federal Insurance Company ("Federal"), MidStates Reinsurance Corporation, as successor to Mead Reinsurance Corporation ("MidStates"), The North River Insurance Company ("North River"), and Hartford Accident & Indemnity Company ("Hartford") (collectively, the "Excess Insurers"), and Duro Dyne Corporation and its insured parents, subsidiaries, and affiliates ("Duro Dyne") hereby enter into this Interim Settlement Funding And Non-Waiver Agreement (the "Agreement"). Each of the foregoing is a "Party" and collectively they are the "Parties."

The Parties agree that all rights at law and in equity are fully preserved and not waived or estopped in any way by entering into or performing under this Agreement, including, but in no way limited to, the Parties' rights of reallocation and/or recoupment from each other or third-parties. In order to resolve as many as possible of the following six claims – *Rocha, Donnelly, Hasty, Bollman, Carpenter* and *Stoepplewerth*, Duro Dyne and the Excess Carriers each commit to paying up to the following amounts, subject to a cap of $2.1 million in total:

| | |
|---|---|
| Duro Dyne | $270,000 |
| North River | $230,000 |
| Hartford | $400,000 |
| MidStates | $400,000 |
| Federal | $800,000 |

These amounts are equivalent to the following percentage shares, which shall be used for calculating each Party's contribution toward each individual settlement: Duro Dyne 12.86%; North River 10.95%; MidStates 19.04%; Hartford 19.04%, and Federal 38.11%.

If all six cases can be resolved for less than $2.1 million, all Parties will share in the savings, pro rata, per these percentages. Thus, each Party's total contribution toward all six settlements may be less than the respective total limit for each Party's contribution toward the cap set forth above.

The Parties agree that the payment(s) by each Excess Carrier shall reduce its applicable limit of liability under its relevant policy or policies, absent any future actual recoupment by such Excess Carrier of any relevant part of its payment(s) toward the resolution of the six claims listed above from another Party to this Agreement.

The Parties agree to a mutual non-waiver clause and an express agreement that all Parties to this Agreement have preserved the right to seek to recoup their respective contributions toward the settlement of the six cases from the other Parties or anyone else. Nothing in this Agreement, in the payments and/or in any action by any Party in accordance with this Agreement shall in any way bar or be construed as a waiver and/or constitute any estoppel with respect to any Parties' rights, at law, in equity or under any policy of insurance issued by any Party to this Agreement to Duro Dyne. Instead, all such rights including, but not limited to, the right of recoupment are preserved.

This Agreement will be effective immediately upon Duro Dyne's written acceptance of this proposal for purposes of resolving the *Rocha* Claim, subject to the specific amount of settlement authority authorized at any relevant time by Duro Dyne, Hartford, Federal, MidStates and North River.

The Parties will use best efforts to promptly memorialize and execute this Agreement. In addition, the Parties will further evidence their acceptance and agreement to be bound by the terms of this Agreement for purposes of any resolution through settlement of the *Donnelly, Hasty, Bollman, Carpenter* and *Stoepplewerth* claims and related lawsuits by executing a copy of this email using the signature lines below. Alternatively, at the written request of any Party to this Agreement, the Parties will instead prepare a separate written agreement that is fully consistent with the substantive terms set forth above. In that event, the Parties will use best efforts to promptly memorialize and execute this temporary interim funding agreement in such form with wording acceptable to all Parties.

Email confirmation of each Party's acceptance of this Agreement shall be binding on each Party once all Parties to this Agreement have provided such email confirmation, whether through counsel or otherwise, and will be followed by signature from the Party.

Federal Insurance Company

By: _____

Print Name and Title _Kevin Shanoski, Assistant Vice President_

Date: _10/31/13_____

MidStates Reinsurance Corporation, as successor to Mead Reinsurance Corporation

By: _____

Print Name and Title _____

Date:_____

The North River Insurance Company

By: _____

2

Print Name and Title _____

Date:_____

Hartford Accident & Indemnity Company

By: _____

Print Name and Title _____

Date:_____

Duro Dyne Corporation, including any insured parents, subsidiaries, and affiliates

By: _____

Print Name and Title _____

Date:_____

EAST\64780092.1

3

This Agreement will be effective immediately upon Duro Dyne's written acceptance of this proposal for purposes of resolving the *Rocha* Claim, subject to the specific amount of settlement authority authorized at any relevant time by Duro Dyne, Hartford, Federal, MidStates and North River.

The Parties will use best efforts to promptly memorialize and execute this Agreement.   In addition, the Parties will further evidence their acceptance and agreement to be bound by the terms of this Agreement for purposes of any resolution through settlement of the *Donnelly, Hasty, Bollman, Carpenter* and *Stoepplewerth* claims and related lawsuits by executing a copy of this email using the signature lines below.   Alternatively, at the written request of any Party to this Agreement, the Parties will instead prepare a separate written agreement that is fully consistent with the substantive terms set forth above.   In that event, the Parties will use best efforts to promptly memorialize and execute this temporary interim funding agreement in such form with wording acceptable to all Parties.

Email confirmation of each Party's acceptance of this Agreement shall be binding on each Party once all Parties to this Agreement have provided such email confirmation, whether through counsel or otherwise, and will be followed by signature from the Party.

Federal Insurance Company

By: _____

Print Name and Title _____

Date:_____

MidStates Reinsurance Corporation, as successor to Mead Reinsurance Corporation

By: _____

Print Name and Title _____

Date:_____

The North River Insurance Company

By: _____

Timothy Donlon, as authorized representative
of North River

Print Name and Title _Vice President of Claims, RiverStone Claims Mngt._

Date: _10 / 31 / 2013_ _____

Hartford Accident & Indemnity Company

By: _____

Print Name and Title _____

Date:_____

Duro Dyne Corporation, including any insured parents, subsidiaries, and affiliates

By: _____

Print Name and Title _____

Date:_____

EAST\64780092.1

3

Print Name and Title _____

Date:_____

Hartford Accident & Indemnity Company

By: _____

Print Name and Title _M. Nendic(C., AVP_

Date:_ 10/31/2015 _____

Duro Dyne Corporation, including any insured parents, subsidiaries, and affiliates

By: _____

Print Name and Title _____

Date:_____

EAST\64780092.1

3

## Interim Settlement Funding And Non-Waiver Agreement

Federal Insurance Company ("Federal"), MidStates Reinsurance Corporation, as successor to Mead Reinsurance Corporation ("MidStates"), The North River Insurance Company ("North River"), and Hartford Accident & Indemnity Company ("Hartford") (collectively, the "Excess Insurers"), and Duro Dyne Corporation and its insured parents, subsidiaries, and affiliates ("Duro Dyne") hereby enter into this Interim Settlement Funding And Non-Waiver Agreement (the "Agreement"). Each of the foregoing is a "Party" and collectively they are the "Parties."

The Parties agree that all rights at law and in equity are fully preserved and not waived or estopped in any way by entering into or performing under this Agreement, including, but in no way limited to, the Parties' rights of reallocation and/or recoupment from each other or third-parties. In order to resolve as many as possible of the following six claims – *Rocha, Donnelly, Hasty, Bollman, Carpenter* and *Stoepplewerth*, Duro Dyne and the Excess Carriers each commit to paying up to the following amounts, subject to a cap of $2.1 million in total:

| | |
|---|---|
| Duro Dyne | $270,000 |
| North River | $230,000 |
| Hartford | $400,000 |
| MidStates | $400,000 |
| Federal | $800,000 |

These amounts are equivalent to the following percentage shares, which shall be used for calculating each Party's contribution toward each individual settlement: Duro Dyne 12.86%; North River 10.95%; MidStates 19.04%; Hartford 19.04%, and Federal 38.11%.

If all six cases can be resolved for less than $2.1 million, all Parties will share in the savings, pro rata, per these percentages. Thus, each Party's total contribution toward all six settlements may be less than the respective total limit for each Party's contribution toward the cap set forth above.

The Parties agree that the payment(s) by each Excess Carrier shall reduce its applicable limit of liability under its relevant policy or policies, absent any future actual recoupment by such Excess Carrier of any relevant part of its payment(s) toward the resolution of the six claims listed above from another Party to this Agreement.

The Parties agree to a mutual non-waiver clause and an express agreement that all Parties to this Agreement have preserved the right to seek to recoup their respective contributions toward the settlement of the six cases from the other Parties or anyone else. Nothing in this Agreement, in the payments and/or in any action by any Party in accordance with this Agreement shall in any way bar or be construed as a waiver and/or constitute any estoppel with respect to any Parties' rights, at law, in equity or under any policy of insurance issued by any Party to this Agreement to Duro Dyne. Instead, all such rights including, but not limited to, the right of recoupment are preserved.

1

This Agreement will be effective immediately upon Duro Dyne's written acceptance of this proposal for purposes of resolving the *Rocha* Claim, subject to the specific amount of settlement authority authorized at any relevant time by Duro Dyne, Hartford, Federal, MidStates and North River.

The Parties will use best efforts to promptly memorialize and execute this Agreement. In addition, the Parties will further evidence their acceptance and agreement to be bound by the terms of this Agreement for purposes of any resolution through settlement of the *Donnelly, Hasty, Bollman, Carpenter* and *Stoepplewerth* claims and related lawsuits by executing a copy of this email using the signature lines below. Alternatively, at the written request of any Party to this Agreement, the Parties will instead prepare a separate written agreement that is fully consistent with the substantive terms set forth above. In that event, the Parties will use best efforts to promptly memorialize and execute this temporary interim funding agreement in such form with wording acceptable to all Parties.

Email confirmation of each Party's acceptance of this Agreement shall be binding on each Party once all Parties to this Agreement have provided such email confirmation, whether through counsel or otherwise, and will be followed by signature from the Party.

Federal Insurance Company

By: _____

Print Name and Title _____

Date: _____

MidStates Reinsurance Corporation, as successor to Mead Reinsurance Corporation

By: _____

Print Name and Title *Partner, Landin Fischer, LLP*

Date: *Oct 31, 2013*

The North River Insurance Company

By: _____

Print Name and Title _____

Date:_____

Hartford Accident & Indemnity Company

By: _____

Print Name and Title _____

Date:_____

Duro Dyne Corporation, including any insured parents, subsidiaries, and affiliates

By: _____

Print Name and Title _____

Date:_____

EAST\64780092.1

3

| | |
|---|---|
| **From:** | Ruggeri, James P. |
| **To:** | "Malone, Cort" |
| **Cc:** | Howard Gross (hgross@wgplaw.com) |
| **Subject:** | RE: Duro Dyne -- Crass |
| **Date:** | Thursday, May 01, 2014 3:32:59 PM |

Hartford and North River are so agreeable.  I understand we generally make checks payable to defense counsel's trust account, so let's do the same here.  Thanks

**From:** Malone, Cort [mailto:Cmalone@andersonkill.com]
**Sent:** Thursday, May 01, 2014 11:35 AM
**To:** Ruggeri, James P.
**Cc:** Howard Gross (hgross@wgplaw.com)
**Subject:** RE: Duro Dyne -- Crass

CONFIDENTIAL SETTLEMENT COMMUNICATION
Jim,

Subject to all the same terms of the prior cost-share agreement (other than the limit to the six enumerated cases and the "cap" on the total dollars in the available "pool" of money), including all reservations of rights and the prohibition against using the payments as evidence in any proceeding, Duro Dyne is willing to contribute 33% of the total settlement amount for the Crass case ($16,500, with Hartford and North River combining to contribute the remaining 67%), with one additional condition:

Duro Dyne would like to add three other cases to this agreement, each of which involves minimal settlement amounts.  The cases are:
(1) Fadoir (MI case) for $1000;
(2) Wise (Ill case) for $2000; and
(3) Kwiatkowski (MI case) for $1000.  Duro Dyne would contribute $330 toward each of the $1000 cases and $660 toward the Wise case.

Let me know if Hartford and North River agree to the above and how you want to handle funding for Crass and alerting defense counsel.
Thanks,
Cort

**From:** Ruggeri, James P. [mailto:JRuggeri@goodwin.com]
**Sent:** Thursday, May 01, 2014 9:43 AM
**To:** Malone, Cort
**Subject:** Duro Dyne -- Crass

Cort:  Please get back to me today re Crass so we know where things stand before tomorrow's motion to enforce.  Thanks.

This electronic mail transmission may contain privileged, confidential and/or proprietary information intended only for the person(s) named. Any use, distribution, copying or disclosure to another person is strictly prohibited. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed therein.

## Howard Gross

| | |
|---|---|
| From: | "Malone, Cort" <Cmalone@andersonkill.com> |
| To: | "Ruggeri, James P." <JRuggeri@goodwin.com> |
| Copies to: | "Howard Gross (hgross@wgplaw.com)" <hgross@wgplaw.com> |
| Subject: | RE: Duro Dyne -- Crass |
| Date sent: | Thu, 1 May 2014 15:34:47 +0000 |

CONFIDENTIAL SETTLEMENT COMMUNICATION

Jim,

Subject to all the same terms of the prior cost-share agreement (other than the limit to the six enumerated cases and the "cap" on the total dollars in the available "pool" of money), including all reservations of rights and the prohibition against using the payments as evidence in any proceeding, Duro Dyne is willing to contribute 33% of the total settlement amount for the Crass case ($16,500, with Hartford and North River combining to contribute the remaining 67%), with one additional condition:

Duro Dyne would like to add three other cases to this agreement, each of which involves minimal settlement amounts.  The cases are:

(1) Fadoir (MI case) for $1000;

(2) Wise (Ill case) for $2000; and

(3) Kwiatkowski (MI case) for $1000.  Duro Dyne would contribute $330 toward each of the $1000 cases and $660 toward the Wise case.

Let me know if Hartford and North River agree to the above and how you want to handle funding for Crass and alerting defense counsel.

Thanks,

Cort

---

**From:** Ruggeri, James P. [mailto:JRuggeri@goodwin.com]
**Sent:** Thursday, May 01, 2014 9:43 AM
**To:** Malone, Cort
**Subject:** Duro Dyne -- Crass

---

Cort:  Please get back to me today re Crass so we know where things stand before tomorrow's motion to enforce.  Thanks.

This electronic mail transmission may contain privileged, confidential and/or proprietary information intended only for the person(s) named. Any use, distribution, copying or disclosure to another person is strictly prohibited. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed therein.

## Duro-Dyne Umbrella/Excess Policies

| Insurance Company | Policy Period | Policy Number | Address Information |
|---|---|---|---|
| Federal Insurance Company | 05/15/1972-08/01/1975 | (77)7770-2037 | 436 Walnut Street Philadelphia, PA 19106 |
| Federal Insurance Company | 08/01/1975-03/08/1978 | (78)7923-7702 | 436 Walnut Street Philadelphia, PA 19106 |
| Great Atlantic Insurance Company (Insolvent) | 03/08/1978-03/08/1979 | UL0166 | N/A |
| Great Atlantic Insurance Company (Insolvent) | 03/08/1979-03/08/1980 | UL1074 | N/A |
| Great Atlantic Insurance Company (Insolvent) | 03/08/1980-03/08/1981 | UL1203 | N/A |
| Mead Reinsurance Company (nka Midstates Reinsurance Corp.) | 05/23/1980-05/11/1981 | UMB1080 | 10560 Success Lane Suite A Dayton, OH  045458 |
| Mead Reinsurance Company (nka Midstates Reinsurance Corp.) | 05/11/1981-05/11/1982 | UMB1193 | 10560 Success Lane Suite A Dayton, OH  045458 |
| Mead Reinsurance Company (nka Midstates Reinsurance Corp.) | 05/11/1982-05/11/1983 | UMB1373 | 10560 Success Lane Suite A Dayton, OH  045458 |
| The North River Insurance Company | 05/11/1983-05/11/1984 | 523-2551247 | 305 Madison Avenue Morristown, NJ  07960 |
| The North River Insurance Company | 05/11/1984-05/11/1985 | 523-3083336 | 305 Madison Avenue Morristown, NJ  07960 |
| The North River Insurance Company | 05/11/1985-06/01/1986 | 523-4207778 | 305 Madison Avenue Morristown, NJ  07960 |
| Hartford Accident and Indemnity Company | 06/23/1986-06/23/1987 | 12RHUVJ9777 | One Hartford Plaza Hartford, CT  06155 |
| Hartford Accident and Indemnity Company | 06/23/1987-06/23/1988 | 12RHUVJ9777 | One Hartford Plaza Hartford, CT  06155 |
| Hartford Accident and Indemnity Company | 06/23/1988-06/23/1989 | 12RHUVG9777 | One Hartford Plaza Hartford, CT  06155 |
| American Reinsurance Company (nka Munich Reinsurance America Inc.) | 09/09/1977-09/09/1978 | M1666475 | 555 College Road East Princeton, NJ  08543 |
| American Reinsurance Company (nka Munich Reinsurance America Inc.) | 09/09/1978-09/09/1979 | EUR4000592 | 555 College Road East Princeton, NJ  08543 |
| American Excess Insurance Company (nka Munich Reinsurance America Inc.) | 09/09/1979-05/23/1980 | EUL5070240 | 555 College Road East Princeton, NJ  08543 |

## Duro-Dyne Primary Policies

| Insurance Company | Policy Period | Policy Number | Address Information |
|---|---|---|---|
| Federal Insurance Company | 08/01/1968–08/01/1975 | FMPO6943054 | 436 Walnut Street Philadelphia, PA 19106 |
| Federal Insurance Company | 08/01/1975–03/01/1978 | MP35025112 | 436 Walnut Street Philadelphia, PA 19106 |
| Federal Insurance Company | 03/01/1978–05/11/1979 | MP35025112 | 436 Walnut Street Philadelphia, PA 19106 |
| AETNA Insurance Company (nka ACE Property & Casualty Insurance Company) | 05/11/1981–05/11/1982 | CPP347835 | 436 Walnut Street Philadelphia, PA 19106 |
| AETNA Insurance Company (nka ACE Property & Casualty Insurance Company) | 05/11/1982-05/11/1983 | CPO349690 | 436 Walnut Street Philadelphia, PA 19106 |
| INA Insurance Company of North America (successor - Century Indemnity Company) | 05/11/1983–05/11/1984 | MFCD0758179 | 436 Walnut Street Philadelphia, PA 19106 |
| INA Insurance Company of North America (successor - Century Indemnity Company) | 05/11/1985-05/11/1986 | MFCD1429823A | 436 Walnut Street Philadelphia, PA 19106 |
| Hartford Accident & Indemnity Company | 06/23/1986–06/23/1987 | 12CBPZB1729 | One Hartford Plaza Hartford, CT  06155 |
| Hartford Accident & Indemnity Company | 06/23/1987–06/23/1988 | 12CBPMB9150 | One Hartford Plaza Hartford, CT  06155 |
| Hartford Accident & Indemnity Company | 06/23/1988 – 06/23/1989 | 12UUNMB9150 | One Hartford Plaza Hartford, CT  06155 |
| The North River Insurance Company | 06/23/1989-06/23/1990 | 5030420949 | 305 Madison Avenue Morristown, NJ  07960 |
| The North River Insurance Company | 06/23/1990-06/23/1091 | 5030356707 | 305 Madison Avenue Morristown, NJ  07960 |

## <u>Schedule 1.01(102)(f)</u>

(Each Settling Asbestos Insurer)

Hartford Accident and Indemnity Company

## **Schedule 5.01(a)**

(Merger Documents)

See attached.

## CERTIFICATE OF OWNERSHIP

### Dated as of March ___, 2019

The undersigned hereby certifies that:

1.      He is the **president** and the **secretary** of Duro Dyne National Corp., a New York corporation (the "***Surviving Corporation***").

2.      The Surviving Corporation owns 100% of the outstanding shares of Duro Dyne West Corp., a California corporation.

3.      The Board of Directors of the Surviving Corporation duly adopted the following resolution:

RESOLVED, that the Surviving Corporation merge Duro Dyne West Corp., its wholly-owned subsidiary corporation, into itself and assume all its obligations pursuant to California Corporations Code section 1110.

[SIGNATURE PAGE FOLLOWS]

31035/2
51548853.2

The undersigned further declares under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of his own knowledge. This Certificate of Ownership is dated as of the date first date written above.

_____

Patrick Rosetto, President and Secretary

**Certificate of Merger**

**of**

**Duro Dyne Corporation**

**and**

**Duro Dyne Machinery Corp.**

**into**

**Duro Dyne National Corp.**

Under Section 905 of the Business Corporation Law

It is hereby certified by Duro Dyne National Corp., a New York corporation (the "***Surviving Corporation***") as follows:

FIRST:  The Board of Directors of the Surviving Corporation has adopted a plan of merger setting forth the terms and conditions of merging Duro Dyne Corporation, a New York corporation and Duro Dyne Machinery Corp., a New York corporation (together, the "***Subsidiary Corporations***"), each a wholly-owned subsidiary of the Surviving Corporation, into the Surviving Corporation.

SECOND:  The certificate of incorporation of Duro Dyne Corporation was filed by the Department of State on September 23, 1954, and the name under which it was formed is Duro-Dyne Corporation.

The certificate of incorporation of Duro Dyne Machinery Corp. was filed by the Department of State on April 30, 1952, and the name under which it was formed is Duro-Dyne Corporation.

THIRD:  The certificate of incorporation of the Surviving Corporation was filed by the Department of State on December 27, 1978.

FOURTH:  The designation and number of outstanding shares of each class of the Subsidiary Corporations, and the number of such shares of each owned by the Surviving Corporation, as set forth in the plan of merger, are as follows:

31035/2
51550653.1

| SUBSIDARY NAME | DESIGNATION | NUMBER | NUMBER OWNED BY SURVIVING CORPORATION |
|---|---|---|---|
| Duro Dyne Corporation | | | |
| Duro Dyne Machinery Corp. | | | |

[SIGNATURE PAGE FOLLOWS]

Signed on _____, 2019.

**DURO DYNE NATIONAL CORP.**

By:_____

Name: Patrick Rosetto

Title:   President

# CERTIFICATE OF MERGER

# OF

# DURO DYNE CORPORATION

# AND

# DURO DYNE MACHINERY CORP.

# INTO

# DURO DYNE NATIONAL CORP.

Under Section 905 of the Business Corporation Law

Filed by:  Lowenstein Sandler LLP_____
           (Name)
           One Lowenstein Drive_____
           (Mailing address)
            Roseland, New York 07068_____
           (City, State and Zip code)

**Certificate of Merger**

**of**

**Duro Dyne Midwest Corp.**
an Ohio corporation

**into**

**Duro Dyne National Corp.**
a New York corporation

Under Sections 905 of the Business Corporation Law

It is hereby certified by Duro Dyne National Corp., a New York corporation (the "***Surviving Corporation***"), as follows:

FIRST:  The Board of Directors of the Surviving Corporation has adopted a plan of merger setting forth the terms and conditions of merging Duro Dyne Midwest Corp., an Ohio corporation (the "***Subsidiary Corporation***"), a wholly-owned subsidiary of the Surviving Corporation, into the Surviving Corporation.

SECOND:  The laws of the jurisdiction of incorporation of the Subsidiary Corporation permit a merger of the kind certified herein.

THIRD:  The Subsidiary Corporation was organized under the laws of the State of Ohio on December 27, 1978. The name under which the Subsidiary Corporation was incorporated under laws of the State of Ohio was Duro Dyne Ohio, Inc. No Application for Authority in the State of New York of the Subsidiary Corporation to transact business as a foreign corporation therein was filed by the Department of State of the State of New York.

FOURTH:  The certificate of incorporation of the Surviving Corporation was filed by the Department of State on December 27, 1978.

FIFTH:  The designation and number of outstanding shares of each class of the Subsidiary Corporation, and the number of such shares owned by the Surviving Corporation, as set forth in the plan of merger, are as follows:

| DESIGNATION | NUMBER | NUMBER OWNED BY SURVIVING CORPORATION |
|---|---|---|
| Common | 750 | 750 |

31035/2
51550364.1

SIXTH:  The merger of the Subsidiary Corporation into the Surviving Corporation has been authorized under the laws of the jurisdiction of incorporation of the Subsidiary Corporation.

[SIGNATURE PAGE FOLLOWS]

Signed on _____, 2019.


**DURO DYNE NATIONAL CORP.**


By:_____
Name: Patrick Rosetto
Title:   President

# CERTIFICATE OF MERGER

# OF

# DURO DYNE MIDWEST CORP.

# INTO

# DURO DYNE NATIONAL CORP.

Under Sections 905 of the Business Corporation Law.

Filed by:  <u>Lowenstein Sandler LLP</u>
           (Name)
           <u>One Lowenstein Drive</u>
           (Mailing address)
           <u> Roseland, New Jersey 07068</u>
           (City, State and Zip code)

**Certificate of Merger**

**of**

**Duro Dyne West Corp.**
a California corporation

**into**

**Duro Dyne National Corp.**
a New York corporation

Under Sections 905 of the Business Corporation Law

It is hereby certified by Duro Dyne National Corp., a New York corporation (the "***Surviving Corporation***"), as follows:

FIRST:  The Board of Directors of the Surviving Corporation has adopted a plan of merger setting forth the terms and conditions of merging Duro Dyne West Corp., a California corporation (the "***Subsidiary Corporation***"), a wholly-owned subsidiary of the Surviving Corporation, into the Surviving Corporation.

SECOND:   The laws of the jurisdiction of incorporation of the Subsidiary Corporation permit a merger of the kind certified herein.

THIRD:  The Subsidiary Corporation was organized under the laws of the State of California on November 29, 1961. No Application for Authority in the State of New York of the Subsidiary Corporation to transact business as a foreign corporation therein was filed by the Department of State of the State of New York.

FOURTH:  The certificate of incorporation of the Surviving Corporation was filed by the Department of State on December 27, 1978.

FIFTH:  The designation and number of outstanding shares of each class of the Subsidiary Corporation, and the number of such shares owned by the Surviving Corporation, as set forth in the plan of merger, are as follows:

| DESIGNATION | NUMBER | NUMBER OWNED BY SURVIVING CORPORATION |
| --- | --- | --- |
| Common | 100 | 100 |

31035/2
51548987.2

SIXTH:  The merger of the Subsidiary Corporation into the Surviving Corporation has been authorized under the laws of the jurisdiction of incorporation of the Subsidiary Corporation.

[SIGNATURE PAGE FOLLOWS]

Signed on _____, 2019.


**DURO DYNE NATIONAL CORP.**


By:_____

Name: Patrick Rosetto

Title:    President

# CERTIFICATE OF MERGER

## OF

## DURO DYNE WEST CORP.

## INTO

## DURO DYNE NATIONAL CORP.

Under Sections 905 of the Business Corporation Law.

Filed by:  Lowenstein Sandler LLP
           (Name)
           One Lowenstein Drive
           (Mailing address)
            Roseland, New Jersey 07068
           (City, State and Zip code)

**PLAN OF MERGER**

**OF**

**DURO DYNE CORPORATION,**
**a New York corporation**

**and**

**DURO DYNE MACHINERY CORP.,**
**a New York corporation**

**WITH AND INTO**

**DURO DYNE NATIONAL CORP.,**
**a New York corporation**
**(Surviving Entity)**

**Dated as of: _____, 2019**

THIS PLAN OF MERGER (the "Plan") is made and entered into as of the date set forth above, by and between DURO DYNE CORPORATION, a corporation organized and existing under the laws of the State of New York, DURO DYNE MACHINERY CORP., a corporation organized and existing under the laws of the State of New York (together with Duro Dyne Corporation, the "Merged Entities") and DURO DYNE NATIONAL CORP. (the "Surviving Entity"), a corporation organized and existing under the laws of the State of New York;

Each of the Merged Entities and the Surviving Entity hereby agree as follows:

**ARTICLE I**
**MERGER**

1.1    At the Effective Time (as defined below), each of the Merged Entities shall be merged with and into the Surviving Entity in accordance with the applicable sections of New York Business Corporation Law (the "Merger"), whereupon the separate existence of each of the Merged Entities shall cease and the Surviving Entity shall be the surviving entity of the Merger and shall succeed to all of the rights, obligations, assets, and liabilities of each of the Merged Entities as provided by applicable law. The existing Certificate of Incorporation and By-laws of the Surviving Entity shall not be amended as a result of the Merger. The persons who are directors and officers of the Surviving Entity immediately prior to the Effective Time, shall, after the Merger, continue as directors and officers of the Surviving Entity without change, to serve, subject to the provisions of the By-laws of the Surviving Entity, until their successors have been duly elected and

qualified in accordance with the laws of the State of New York and the Certificate of Incorporation and By-laws of the Surviving Entity.

1.2   The name that the Surviving Entity is to have after the Effective Time shall be "Duro Dyne National Corp."

## ARTICLE II
## TERMS AND CONDITIONS OF THE MERGER

The terms and conditions of the Merger shall be as follows:

2.1   The Merger shall be effective immediately upon the filing of a Certificate of Merger with the Department of State of the State of New York (the "<u>Effective Time</u>").

2.2   Prior to the Effective Time, each of the Merged Entities and the Surviving Entity shall take all such actions as shall be necessary or appropriate in order to effect the Merger.  If, at any time after the Effective Time, the Surviving Entity shall determine that any further conveyance, assignment or other documents or any further action is necessary or desirable in order to vest in, or confirm to the Surviving Entity full title to all of the property, assets, rights, privileges and franchises of each of the Merged Entities, then the officers of each of the Merged Entities shall promptly execute and deliver to the Surviving Entity all such instruments and take all such further actions as the Surviving Entity may determine to be necessary or desirable in order to vest in and confirm to the Surviving Entity title to and possession of all such property, assets, rights, privileges, immunities and franchises and otherwise to carry out the purposes of this Plan.

## ARTICLE III
## CONVERSION OF STOCK

3.1   The respective issued shares of each of the Merged Entities shall not be converted in any manner, but each said share which is issued as of the Effective Time of the merger shall be surrendered and extinguished.

3.2   The issued shares of the Surviving Entity shall not be converted in any manner, but each said share which is issued as of the Effective Time of the merger shall continue to represent one issued share of the Surviving Entity.

**ARTICLE IV**
**MISCELLANEOUS**

4.1    Notwithstanding anything herein to the contrary, each of the Board of Directors of the Surviving Entity or the Officers of each of the Merged Entities may, at any time prior to the filing with the Department of State of New York of the necessary certificate of merger giving effect to the Merger, by resolution duly adopted, abandon the Merger if it shall deem such action necessary, desirable and in the best interests of the respective companies' owners.   In the event of such determination and the abandonment of this Plan pursuant to the provisions of this Section 4.1, this Plan shall become null and void and shall have no further effect. Such termination shall not give rise to any liability on the part of either the Surviving Entity or either of the Merged Entities or their respective directors, officers, or stockholders.

4.2    This Plan constitutes the entire agreement between the parties with respect to the matters covered hereby and supersedes all previous written, oral or implied understandings between them with respect to such matters.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Plan to be duly executed as of the day and year first above written.

**DURO DYNE CORPORATION**
(a New York corporation)

By: _____
      Name:    Patrick Rosetto
      Title:     President

**DURO DYNE MACHINERY CORP.**
(a New York corporation)

By: _____
      Name:    Patrick Rosetto
      Title:     President

**DURO DYNE NATIONAL CORP.**
(a new York corporation)

By: _____
      Name:    Patrick Rosetto
      Title:     President

:

**PLAN OF MERGER**

**OF**

**DURO DYNE WEST CORP.,**
**a California corporation**
**(Merged Entity)**

**WITH AND INTO**

**DURO DYNE NATIONAL CORP.,**
**a New York corporation**
**(Surviving Entity)**

**Dated as of: _____, 2019**

THIS PLAN OF MERGER (the "Plan") is made and entered into as of the date set forth above, by and between DURO DYNE WEST CORP. (the "Merged Entity"), a corporation organized and existing under the laws of the State of California, and DURO DYNE NATIONAL CORP. (the "Surviving Entity"), a corporation organized and existing under the laws of the State of New York;

The Merged Entity and the Surviving Entity hereby agree as follows:

**ARTICLE I**
**MERGER**

1.1    At the Effective Time (as defined below), the Merged Entity shall be merged with and into the Surviving Entity in accordance with the applicable sections of the California Corporations Code and the New York Business Corporation Law (the "Merger"), whereupon the separate existence of the Merged Entity shall cease and the Surviving Entity shall be the surviving entity of the Merger and shall succeed to all of the rights, obligations, assets, and liabilities of the Merged Entity as provided by applicable law. The existing Certificate of Incorporation and By-laws of the Surviving Entity shall not be amended as a result of the Merger. The persons who are directors and officers of the Surviving Entity immediately prior to the Effective Time, shall, after the Merger, continue as directors and officers of the Surviving Entity without change, to serve, subject to the provisions of the By-laws of the Surviving Entity, until their successors have been duly elected and qualified in accordance with the laws of the State of New York and the Certificate of Incorporation and By-laws of the Surviving Entity.

1.2    The name that the Surviving Entity is to have after the Effective Time shall be "Duro Dyne National Corp."

## ARTICLE II
## TERMS AND CONDITIONS OF THE MERGER

The terms and conditions of the Merger shall be as follows:

2.1     The Merger shall be effective immediately upon the last to occur of the filing of Certificate of Ownership with the Secretary of State of the State of California and the filing of a Certificate of Merger with the Department of State of the State of New York (the "<u>Effective Time</u>").

2.2     Prior to the Effective Time, the Merged Entity and the Surviving Entity shall take all such actions as shall be necessary or appropriate in order to effect the Merger. If, at any time after the Effective Time, the Surviving Entity shall determine that any further conveyance, assignment or other documents or any further action is necessary or desirable in order to vest in, or confirm to the Surviving Entity full title to all of the property, assets, rights, privileges and franchises of the Merged Entity, then the officers of the Merged Entity shall promptly execute and deliver to the Surviving Entity all such instruments and take all such further actions as the Surviving Entity may determine to be necessary or desirable in order to vest in and confirm to the Surviving Entity title to and possession of all such property, assets, rights, privileges, immunities and franchises and otherwise to carry out the purposes of this Plan.

## ARTICLE III
## CONVERSION OF STOCK

3.1     The issued shares of Merged Entity shall not be converted in any manner, but each said share which is issued as of the Effective Time of the merger shall be surrendered and extinguished.

3.2     The issued shares of the Surviving Entity shall not be converted in any manner, but each said share which is issued as of the Effective Time of the merger shall continue to represent one issued share of the Surviving Entity.

## ARTICLE IV
## MISCELLANEOUS

4.1     Notwithstanding anything herein to the contrary, each of the Board of Directors of the Surviving Entity or the Officers of the Merged Entity may, at any time prior to the filing with the Department of State of New York and the Secretary of State of the State of California of the necessary certificates of merger giving effect to the Merger, by resolution duly adopted, abandon the Merger if it shall deem such action necessary, desirable and in the best interests of the respective companies' owners.  In the event of such determination and the abandonment of this Plan

pursuant to the provisions of this <u>Section 4.1</u>, this Plan shall become null and void and shall have no further effect. Such termination shall not give rise to any liability on the part of either the Surviving Entity or the Merged Entity or their respective directors, officers, or stockholders.

4.2     This Plan constitutes the entire agreement between the parties with respect to the matters covered hereby and supersedes all previous written, oral or implied understandings between them with respect to such matters.

[*Remainder of page intentionally left blank*]

**IN WITNESS WHEREOF**, the parties hereto have caused this Plan to be duly executed as of the day and year first above written.

**DURO DYNE WEST CORP.**
(a California corporation)

By: _____
     Name:   Patrick Rosetto
     Title:    President

**DURO DYNE NATIONAL CORP.**
(a new York corporation)

By: _____
     Name:   Patrick Rosetto
     Title:    President

Form 551 Prescribed by:



**JON HUSTED**
Ohio Secretary of State

Toll Free: (877) SOS-FILE  (877-767-3453)
Central Ohio: (614) 466-3910

*www.OhioSecretaryofState.gov*
*busserv@OhioSecretaryofState.gov*

File online or for more information: *www.OHBusinessCentral.com*

Mail this form to one of the following:

Regular Filing (non expedite)
P.O. Box 1329
Columbus, OH  43216

Expedite Filing **(Two business day processing time.**
**Requires an additional $100.00)**
P.O. Box 1390
Columbus, OH  43216

For screen readers, follow instructions located at this path.

# Certificate of Merger
### Filing Fee: $99
### (154-MER)
### Forms Must Be Typed

In accordance with the requirements of Ohio law, the undersigned corporations, banks, savings banks, savings and loan associations, limited liability companies, partnerships, limited partnerships and/or limited liability partnerships, desiring to effect a merger, set forth the following facts

**I. (Surviving) Entity**
A. Name of Entity Surviving the Merger

> Duro Dyne National Corp.

B. Name Change: As a result of this merger, the name of the surviving entity has changed to the following

> 

(Complete only if name of surviving entity is changing through the merger)

C. The surviving entity is a   **(Please check the appropriate box and fill in the appropriate blanks)**

**1.**  ☐ **Domestic (Ohio entity)**   ☒ **Foreign (Non-Ohio Entity)**

> New York

Jurisdiction of formation

**2.  Charter/Registration/License Number**

> 

(If licensed in Ohio as domestic or foreign)

**3.**  ☒ For-Profit Corporation

☐ Nonprofit Corporation

☐ For-Profit Limited Liability Company

☐ Nonprofit Limited Liability Company

☐ Partnership

☐ Limited Partnership

☐ Limited Liability Partnership

☐ Unincorporated Nonprofit Association

## II. CONSTITUENT ENTITY

Provide the name, Ohio charter/license/registration number, type of entity, jurisdiction of formation, for each entity merging **out of existence. (If this is insufficient space to reflect all merging entities, please attach a separate sheet listing the additional merging entities).**

| Entity Name | Ohio Charter/License/ Registration Number | Jurisdiction of Formation | Type of Entity |
|---|---|---|---|
| Duro Dyne Midwest Corp. | 527752 | Ohio | For-Profit Corp. |
| | | | |
| | | | |
| | | | |

## III. MERGER AGREEMENT ON FILE

The name and mailing address of the person or entity from whom/which eligible persons may obtain a copy of the merger agreement upon written request

Duro Dyne National Corp.

Name

81 Spence Street

Mailing Address

| Bay Shore | NY | 11706 |
|---|---|---|
| City | State | Zip Code |

## IV. EFFECTIVE DATE OF MERGER

This merger is to be effective on _____ (The date specified must be on or after the date of the filing.  If no date is specified, the date of filing will be the effective date of the merger).

## V. MERGER AUTHORIZED

Each constituent entity has complied with the laws under which it exists and the laws permit the merger. The agreement of merger is authorized on behalf of each constituent entity and each person who signed the certificate on behalf of each entity is authorized to do so.

## VI. STATEMENT OF MERGER
Upon filing this Certificate of Merger, or upon such later date as specified herein, the merging entity/entities listed
herein shall merge into the listed surviving entity.

## VII. STATUTORY AGENT - To be filed ONLY if the surviving entity is a foreign entity not licensed in Ohio.
If the surviving entity is a foreign entity **NOT** licensed to transact business in Ohio, provide the name and address
of a statutory agent upon whom any process, notice or demand may be served.

## VIII. AMENDMENTS
If a domestic corporation, limited liability company or limited partnership survives the merger, any
amendments to the entity's articles of incorporation, articles of organization, or certificate of limited partnership
of the surviving domestic entity shall be filed with the certificate of merger.

☐ Amendments are attached          ☐ No Amendments

**If you are amending the total number of shares, please complete this box so the appropriate
filing fee is charged.**

Total number of shares previously listed in the Articles or other Amendments with the Ohio Secretary of State: ☐

With the submission of this amendment, NEW total number of shares: ☐

## IX. REQUIREMENTS OF CORPORATIONS MERGING OUT OF EXISTENCE
If a domestic corporation or foreign corporation licensed to transact business in Ohio is a constituent entity
and the surviving entity is not a domestic corporation or foreign corporation to be licensed
in Ohio, the certificate of merger must be accompanied by the affidavits, receipts, certificates, or other evidence
required by division (H) of section 1701.86 division (G) of section 1702.47 of the Revised Code with respect to
each domestic constituent corporation, and/or by the affidavits, receipts, certificates, or other evidence required by
division (C) or (D) of section 1703.17 of the Revised Code with respect to each foreign constituent corporation licensed
to transact business in Ohio.

## X. QUALIFICATION OR LICENSE OF FOREIGN SURVIVING ENTITY
A surviving foreign entity that wishes to qualify in Ohio as part of the merger must file an additional form, as listed
below, but no additional filing fee is required.

Foreign Qualifying Corporation - Form 530A or B and Certificate of Good Standing
Foreign Notice (if qualifying entity is a foreign bank, savings bank, or savings and loan association) - Form 552
Foreign Qualifying Limited Liability Company - Form 533B
Foreign Qualifying Limited Partnership - Form 531B
Foreign Qualifying Limited Liability Partnership - Form 537 and Evidence of Existence in Jurisdiction of Formation

The undersigned constituent entities (constituent includes merging and surviving entities) have caused this certificate of merger to be signed by their duly authorized officers, partners and representatives.

| Duro Dyne National Corp. |
| --- |

Name of entity

**By:** _____

Signature

**Its:** Patrick Rosetto, President

Title

| Duro Dyne West Corp. |
| --- |

Name of entity

**By:** _____

Signature

**Its:** Patrick Rosetto, President

Title

| |
| --- |

Name of entity

**By:** _____

Signature

**Its:** _____

Title

**An authorized representative of each constituent corporation, partnership, or entity must sign the merger certificate (ORC 1701.81(A), 1702.43 (A), 1705.38(A), 1776.70(A), 1782.433(A)). this includes all merging and surviving entities.**

# Instructions for Certificate of Merger

This form should be used to file a certificate of merger following the adoption of an agreement of merger.

## Surviving Entity Information

Please provide the following information for the "surviving entity" (the entity that remains active following the merger): (1) entity name; (2) a new name if the surviving entity's name changed as a result of the merger; (3) entity type (for e.g., whether the surviving entity is a corporation, limited liability company, etc.); (4) charter/registration/license number (if any); and (5) jurisdiction of formation (foreign entities only).

## Constituent Entity Information

Please provide the following information for the "constituent entities": (1) entity name; (2) entity type; (3) charter/registration/license number (as appropriate); and (4) jurisdiction of formation (foreign entities only).

## Address for Merger Agreement Requests

Pursuant to Ohio Revised Code §§1701.81, 1702.43, 1705.38, 1776.70 and 1782.433 (as applicable), a mailing address is required for the person or entity that is to provide, in response to any written request made by a shareholder, partner, or other equity holder of a constituent entity, a copy of the agreement of merger.

## Effective Date of Merger

Please provide the effective date of the merger. The date may be **on or after** the date of filing the certificate of merger. If a date is not provided or the date provided is prior to the date of filing, our office will assign the date of filing as the effective date.

## Statements Required By Law

Pursuant to Ohio Revised Code Sections §§1701.81, 1702.43, 1705.38, 1766.70 and 1782.433 (as applicable), by submitting the certificate of merger through an authorized representative, each constituent entity states the following:  (1) the constituent entity will merge with one or more constituent entities into a specified surviving entity; (2) the constituent entity has complied with all of the laws under which it exists; (3) the laws under which the constituent entity exists permit the merger; (4) the merger is authorized on behalf of the constituent entity; and (5) the authorized representative is authorized to sign the certificate of merger on behalf of the constituent entity.

## Appointment of Statutory Agent for Foreign, Unlicensed Surviving Entity

This section must be completed if the surviving entity is a foreign entity not licensed to transact business in Ohio, please provide the name and address of the statutory agent upon whom any process, notice, or demand may be served. The statutory agent must be one of the following: (1) A natural person who is a resident of this state; or (2) A domestic or foreign corporation, nonprofit corporation, limited liability company, partnership, limited partnership, limited liability partnership, limited partnership association, professional association, business trust, or unincorporated nonprofit association that has a business address in this state. If the agent is a business entity then the agent must meet the requirements of Title XVII of the Revised Code to transact business or exercise privileges in Ohio.

**Amendments**

In the case of a merger into a domestic corporation, limited liability company, or limited partnership, any amendments to the articles of incorporation, articles of organization or certificate of limited partnership of the surviving entity shall be filed with the certificate of merger.  Please check the appropriate box to indicate whether amendments are attached to the certificate of merger.

## Requirements of Corporations (Domestic or Foreign) Merging Out of Existence

If a foreign or domestic corporation <u>licensed in Ohio</u> is a constituent entity in the merger <u>and</u> the surviving entity is not a foreign or domestic corporation to be licensed in Ohio, Ohio Revised Code §§1701.81 requires that additional information be submitted with the certificate.

A domestic corporation must provide the affidavits, receipts, certificates or other evidence required by Ohio Revised Code §§1701.86(H).  A foreign corporation must submit the affidavits, receipts, certificates or other evidence required by Ohio Revised Code §§1703.17 (C) or (D).

The required affidavits are attached to this form for your convenience.

## Qualifying Foreign Entities Additional Filing Requirements

All surviving foreign entities that are qualifying to do business in Ohio must attach the appropriate formation document to this form.  The filing fee for that form is not required.  The appropriate forms are listed below

       Foreign Qualifying Corporation      Form 530A or B
       Foreign Notice (if qualifying entity is a foreign bank, savings bank, or savings and loan association) Form 552
       Foreign Qualifying Limited Liability Company Form 533B
       Foreign Qualifying Limited Partnership    Form 531B
       Foreign Qualifying Limited Liability Partnership Form 537

## Additional Provisions

If the space provided on this form is insufficient, please submit any additional information on single-sided, 8 ½ x 11 sheet(s) of paper.

## Signature(s)

After completing all information on the filing form, please make sure that the form is signed by the representatives authorized to sign the certificate on behalf of each constituent entity.  Pursuant to Ohio Revised Code Sections §§1701.81, 1702.43, 1705.38, 1776.70 and 1782.433 (as applicable), please provide the office held or the capacity in which the representative is acting by signing the certificate merger. Constituent entities are defines as those entities existing prior to the merger and the surviving entity.

**\*\*Note:  Our office cannot file or record a document that contains a social security number or tax identification number.  Please do not enter a social security number or tax identification number, in any format, on this form.**

# CERTIFICATE OF OWNERSHIP

## Dated as of March ___, 2019

The undersigned hereby certifies that:

1.      He is the **president** and the **secretary** of Duro Dyne National Corp., a New York corporation (the "***Surviving Corporation***").

2.      The Surviving Corporation owns 100% of the outstanding shares of Duro Dyne West Corp., a California corporation.

3.      The Board of Directors of the Surviving Corporation duly adopted the following resolution:

RESOLVED, that the Surviving Corporation merge Duro Dyne West Corp., its wholly-owned subsidiary corporation, into itself and assume all its obligations pursuant to California Corporations Code section 1110.

[SIGNATURE PAGE FOLLOWS]

31035/2
51548853.2

The undersigned further declares under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of his own knowledge. This Certificate of Ownership is dated as of the date first date written above.

_____

Patrick Rosetto, President and Secretary

**Certificate of Merger**

**of**

**Duro Dyne Corporation**

**and**

**Duro Dyne Machinery Corp.**

**into**

**Duro Dyne National Corp.**

Under Section 905 of the Business Corporation Law

It is hereby certified by Duro Dyne National Corp., a New York corporation (the "***Surviving Corporation***") as follows:

FIRST:  The Board of Directors of the Surviving Corporation has adopted a plan of merger setting forth the terms and conditions of merging Duro Dyne Corporation, a New York corporation and Duro Dyne Machinery Corp., a New York corporation (together, the "***Subsidiary Corporations***"), each a wholly-owned subsidiary of the Surviving Corporation, into the Surviving Corporation.

SECOND:  The certificate of incorporation of Duro Dyne Corporation was filed by the Department of State on September 23, 1954, and the name under which it was formed is Duro-Dyne Corporation.

The certificate of incorporation of Duro Dyne Machinery Corp. was filed by the Department of State on April 30, 1952, and the name under which it was formed is Duro-Dyne Corporation.

THIRD:  The certificate of incorporation of the Surviving Corporation was filed by the Department of State on December 27, 1978.

FOURTH:  The designation and number of outstanding shares of each class of the Subsidiary Corporations, and the number of such shares of each owned by the Surviving Corporation, as set forth in the plan of merger, are as follows:

31035/2
51550653.1

| SUBSIDARY NAME | DESIGNATION | NUMBER | NUMBER OWNED BY SURVIVING CORPORATION |
|---|---|---|---|
| Duro Dyne Corporation | | | |
| Duro Dyne Machinery Corp. | | | |

[SIGNATURE PAGE FOLLOWS]

Signed on _____, 2019.

**DURO DYNE NATIONAL CORP.**

By:_____
Name: Patrick Rosetto
Title:   President

# CERTIFICATE OF MERGER

# OF

# DURO DYNE CORPORATION

# AND

# DURO DYNE MACHINERY CORP.

# INTO

# DURO DYNE NATIONAL CORP.

Under Section 905 of the Business Corporation Law

Filed by: Lowenstein Sandler LLP
(Name)
One Lowenstein Drive
(Mailing address)
 Roseland, New York 07068
(City, State and Zip code)

**Certificate of Merger**

**of**

**Duro Dyne Midwest Corp.**
an Ohio corporation

**into**

**Duro Dyne National Corp.**
a New York corporation

Under Sections 905 of the Business Corporation Law

It is hereby certified by Duro Dyne National Corp., a New York corporation (the "***Surviving Corporation***"), as follows:

FIRST:  The Board of Directors of the Surviving Corporation has adopted a plan of merger setting forth the terms and conditions of merging Duro Dyne Midwest Corp., an Ohio corporation (the "***Subsidiary Corporation***"), a wholly-owned subsidiary of the Surviving Corporation, into the Surviving Corporation.

SECOND:   The laws of the jurisdiction of incorporation of the Subsidiary Corporation permit a merger of the kind certified herein.

THIRD:  The Subsidiary Corporation was organized under the laws of the State of Ohio on December 27, 1978. The name under which the Subsidiary Corporation was incorporated under laws of the State of Ohio was Duro Dyne Ohio, Inc. No Application for Authority in the State of New York of the Subsidiary Corporation to transact business as a foreign corporation therein was filed by the Department of State of the State of New York.

FOURTH:  The certificate of incorporation of the Surviving Corporation was filed by the Department of State on December 27, 1978.

FIFTH:  The designation and number of outstanding shares of each class of the Subsidiary Corporation, and the number of such shares owned by the Surviving Corporation, as set forth in the plan of merger, are as follows:

| DESIGNATION | NUMBER | NUMBER OWNED BY SURVIVING CORPORATION |
|---|---|---|
| Common | 750 | 750 |

31035/2
51550364.1

SIXTH:  The merger of the Subsidiary Corporation into the Surviving Corporation has been authorized under the laws of the jurisdiction of incorporation of the Subsidiary Corporation.

[SIGNATURE PAGE FOLLOWS]

Signed on _____, 2019.

**DURO DYNE NATIONAL CORP.**

By:_____

Name: Patrick Rosetto

Title:   President

# CERTIFICATE OF MERGER

## OF

# DURO DYNE MIDWEST CORP.

## INTO

# DURO DYNE NATIONAL CORP.

Under Sections 905 of the Business Corporation Law.

Filed by:  Lowenstein Sandler LLP
   (Name)
   One Lowenstein Drive
   (Mailing address)
    Roseland, New Jersey 07068
   (City, State and Zip code)

**Certificate of Merger**

**of**

**Duro Dyne West Corp.**
a California corporation

**into**

**Duro Dyne National Corp.**
a New York corporation

Under Sections 905 of the Business Corporation Law


It is hereby certified by Duro Dyne National Corp., a New York corporation (the "***Surviving Corporation***"), as follows:

FIRST:  The Board of Directors of the Surviving Corporation has adopted a plan of merger setting forth the terms and conditions of merging Duro Dyne West Corp., a California corporation (the "***Subsidiary Corporation***"), a wholly-owned subsidiary of the Surviving Corporation, into the Surviving Corporation.

SECOND:   The laws of the jurisdiction of incorporation of the Subsidiary Corporation permit a merger of the kind certified herein.

THIRD:  The Subsidiary Corporation was organized under the laws of the State of California on November 29, 1961. No Application for Authority in the State of New York of the Subsidiary Corporation to transact business as a foreign corporation therein was filed by the Department of State of the State of New York.

FOURTH:  The certificate of incorporation of the Surviving Corporation was filed by the Department of State on December 27, 1978.

FIFTH:  The designation and number of outstanding shares of each class of the Subsidiary Corporation, and the number of such shares owned by the Surviving Corporation, as set forth in the plan of merger, are as follows:

| DESIGNATION | NUMBER | NUMBER OWNED BY SURVIVING CORPORATION |
| --- | --- | --- |
| Common | 100 | 100 |

31035/2
51548987.2

SIXTH:  The merger of the Subsidiary Corporation into the Surviving Corporation has been authorized under the laws of the jurisdiction of incorporation of the Subsidiary Corporation.

[SIGNATURE PAGE FOLLOWS]

Signed on _____, 2019.


**DURO DYNE NATIONAL CORP.**


By:_____
Name: Patrick Rosetto
Title:    President

# CERTIFICATE OF MERGER

## OF

## DURO DYNE WEST CORP.

## INTO

## DURO DYNE NATIONAL CORP.

Under Sections 905 of the Business Corporation Law.

Filed by:  Lowenstein Sandler LLP
          (Name)
          One Lowenstein Drive
          (Mailing address)
           Roseland, New Jersey 07068
          (City, State and Zip code)

# PLAN OF MERGER

## OF

## DURO DYNE CORPORATION,
### a New York corporation

## and

## DURO DYNE MACHINERY CORP.,
### a New York corporation

## WITH AND INTO

## DURO DYNE NATIONAL CORP.,
### a New York corporation
### (Surviving Entity)

**Dated as of: _____, 2019**

THIS PLAN OF MERGER (the "Plan") is made and entered into as of the date set forth above, by and between DURO DYNE CORPORATION, a corporation organized and existing under the laws of the State of New York, DURO DYNE MACHINERY CORP., a corporation organized and existing under the laws of the State of New York (together with Duro Dyne Corporation, the "Merged Entities") and DURO DYNE NATIONAL CORP. (the "Surviving Entity"), a corporation organized and existing under the laws of the State of New York;

Each of the Merged Entities and the Surviving Entity hereby agree as follows:

## ARTICLE I
## MERGER

1.1   At the Effective Time (as defined below), each of the Merged Entities shall be merged with and into the Surviving Entity in accordance with the applicable sections of New York Business Corporation Law (the "Merger"), whereupon the separate existence of each of the Merged Entities shall cease and the Surviving Entity shall be the surviving entity of the Merger and shall succeed to all of the rights, obligations, assets, and liabilities of each of the Merged Entities as provided by applicable law. The existing Certificate of Incorporation and By-laws of the Surviving Entity shall not be amended as a result of the Merger. The persons who are directors and officers of the Surviving Entity immediately prior to the Effective Time, shall, after the Merger, continue as directors and officers of the Surviving Entity without change, to serve, subject to the provisions of the By-laws of the Surviving Entity, until their successors have been duly elected and

qualified in accordance with the laws of the State of New York and the Certificate of Incorporation and By-laws of the Surviving Entity.

1.2     The name that the Surviving Entity is to have after the Effective Time shall be "Duro Dyne National Corp."

## ARTICLE II
## TERMS AND CONDITIONS OF THE MERGER

The terms and conditions of the Merger shall be as follows:

2.1     The Merger shall be effective immediately upon the filing of a Certificate of Merger with the Department of State of the State of New York (the "<u>Effective Time</u>").

2.2     Prior to the Effective Time, each of the Merged Entities and the Surviving Entity shall take all such actions as shall be necessary or appropriate in order to effect the Merger.  If, at any time after the Effective Time, the Surviving Entity shall determine that any further conveyance, assignment or other documents or any further action is necessary or desirable in order to vest in, or confirm to the Surviving Entity full title to all of the property, assets, rights, privileges and franchises of each of the Merged Entities, then the officers of each of the Merged Entities shall promptly execute and deliver to the Surviving Entity all such instruments and take all such further actions as the Surviving Entity may determine to be necessary or desirable in order to vest in and confirm to the Surviving Entity title to and possession of all such property, assets, rights, privileges, immunities and franchises and otherwise to carry out the purposes of this Plan.

## ARTICLE III
## CONVERSION OF STOCK

3.1     The respective issued shares of each of the Merged Entities shall not be converted in any manner, but each said share which is issued as of the Effective Time of the merger shall be surrendered and extinguished.

3.2     The issued shares of the Surviving Entity shall not be converted in any manner, but each said share which is issued as of the Effective Time of the merger shall continue to represent one issued share of the Surviving Entity.

**ARTICLE IV**
**MISCELLANEOUS**

4.1    Notwithstanding anything herein to the contrary, each of the Board of Directors of the Surviving Entity or the Officers of each of the Merged Entities may, at any time prior to the filing with the Department of State of New York of the necessary certificate of merger giving effect to the Merger, by resolution duly adopted, abandon the Merger if it shall deem such action necessary, desirable and in the best interests of the respective companies' owners.   In the event of such determination and the abandonment of this Plan pursuant to the provisions of this Section 4.1, this Plan shall become null and void and shall have no further effect. Such termination shall not give rise to any liability on the part of either the Surviving Entity or either of the Merged Entities or their respective directors, officers, or stockholders.

4.2    This Plan constitutes the entire agreement between the parties with respect to the matters covered hereby and supersedes all previous written, oral or implied understandings between them with respect to such matters.

*[Remainder of page intentionally left blank]*

-3-

**IN WITNESS WHEREOF**, the parties hereto have caused this Plan to be duly executed as of the day and year first above written.

**DURO DYNE CORPORATION**
(a New York corporation)

By: _____
      Name:    Patrick Rosetto
      Title:     President

**DURO DYNE MACHINERY CORP.**
(a New York corporation)

By: _____
      Name:    Patrick Rosetto
      Title:     President

**DURO DYNE NATIONAL CORP.**
(a new York corporation)

By: _____
      Name:    Patrick Rosetto
      Title:     President

:

**PLAN OF MERGER**

**OF**

**DURO DYNE WEST CORP.,**
**a California corporation**
**(Merged Entity)**

**WITH AND INTO**

**DURO DYNE NATIONAL CORP.,**
**a New York corporation**
**(Surviving Entity)**

**Dated as of: _____, 2019**

THIS PLAN OF MERGER (the "Plan") is made and entered into as of the date set forth above, by and between DURO DYNE WEST CORP. (the "Merged Entity"), a corporation organized and existing under the laws of the State of California, and DURO DYNE NATIONAL CORP. (the "Surviving Entity"), a corporation organized and existing under the laws of the State of New York;

The Merged Entity and the Surviving Entity hereby agree as follows:

**ARTICLE I**
**MERGER**

1.1     At the Effective Time (as defined below), the Merged Entity shall be merged with and into the Surviving Entity in accordance with the applicable sections of the California Corporations Code and the New York Business Corporation Law (the "Merger"), whereupon the separate existence of the Merged Entity shall cease and the Surviving Entity shall be the surviving entity of the Merger and shall succeed to all of the rights, obligations, assets, and liabilities of the Merged Entity as provided by applicable law. The existing Certificate of Incorporation and By-laws of the Surviving Entity shall not be amended as a result of the Merger. The persons who are directors and officers of the Surviving Entity immediately prior to the Effective Time, shall, after the Merger, continue as directors and officers of the Surviving Entity without change, to serve, subject to the provisions of the By-laws of the Surviving Entity, until their successors have been duly elected and qualified in accordance with the laws of the State of New York and the Certificate of Incorporation and By-laws of the Surviving Entity.

1.2     The name that the Surviving Entity is to have after the Effective Time shall be "Duro Dyne National Corp."

## ARTICLE II
## TERMS AND CONDITIONS OF THE MERGER

The terms and conditions of the Merger shall be as follows:

2.1  The Merger shall be effective immediately upon the last to occur of the filing of Certificate of Ownership with the Secretary of State of the State of California and the filing of a Certificate of Merger with the Department of State of the State of New York (the "Effective Time").

2.2  Prior to the Effective Time, the Merged Entity and the Surviving Entity shall take all such actions as shall be necessary or appropriate in order to effect the Merger. If, at any time after the Effective Time, the Surviving Entity shall determine that any further conveyance, assignment or other documents or any further action is necessary or desirable in order to vest in, or confirm to the Surviving Entity full title to all of the property, assets, rights, privileges and franchises of the Merged Entity, then the officers of the Merged Entity shall promptly execute and deliver to the Surviving Entity all such instruments and take all such further actions as the Surviving Entity may determine to be necessary or desirable in order to vest in and confirm to the Surviving Entity title to and possession of all such property, assets, rights, privileges, immunities and franchises and otherwise to carry out the purposes of this Plan.

## ARTICLE III
## CONVERSION OF STOCK

3.1  The issued shares of Merged Entity shall not be converted in any manner, but each said share which is issued as of the Effective Time of the merger shall be surrendered and extinguished.

3.2  The issued shares of the Surviving Entity shall not be converted in any manner, but each said share which is issued as of the Effective Time of the merger shall continue to represent one issued share of the Surviving Entity.

## ARTICLE IV
## MISCELLANEOUS

4.1  Notwithstanding anything herein to the contrary, each of the Board of Directors of the Surviving Entity or the Officers of the Merged Entity may, at any time prior to the filing with the Department of State of New York and the Secretary of State of the State of California of the necessary certificates of merger giving effect to the Merger, by resolution duly adopted, abandon the Merger if it shall deem such action necessary, desirable and in the best interests of the respective companies' owners.  In the event of such determination and the abandonment of this Plan

pursuant to the provisions of this <u>Section 4.1</u>, this Plan shall become null and void and shall have no further effect. Such termination shall not give rise to any liability on the part of either the Surviving Entity or the Merged Entity or their respective directors, officers, or stockholders.

4.2    This Plan constitutes the entire agreement between the parties with respect to the matters covered hereby and supersedes all previous written, oral or implied understandings between them with respect to such matters.

*[Remainder of page intentionally left blank]*

-3-

**IN WITNESS WHEREOF**, the parties hereto have caused this Plan to be duly executed as of the day and year first above written.

**DURO DYNE WEST CORP.**
(a California corporation)

By: _____
      Name:    Patrick Rosetto
      Title:     President

**DURO DYNE NATIONAL CORP.**
(a new York corporation)

By: _____
      Name:    Patrick Rosetto
      Title:     President

Form 551 Prescribed by:



**JON HUSTED**
Ohio Secretary of State

Toll Free: (877) SOS-FILE  (877-767-3453)
Central Ohio: (614) 466-3910

*www.OhioSecretaryofState.gov*
*busserv@OhioSecretaryofState.gov*

File online or for more information: *www.OHBusinessCentral.com*

Mail this form to one of the following:

Regular Filing (non expedite)
P.O. Box 1329
Columbus, OH  43216

Expedite Filing **(Two business day processing time.**
**Requires an additional $100.00)**
P.O. Box 1390
Columbus, OH  43216

For screen readers, follow instructions located at this path.

# Certificate of Merger

### Filing Fee: $99
### (154-MER)
### Forms Must Be Typed

In accordance with the requirements of Ohio law, the undersigned corporations, banks, savings banks, savings and loan associations, limited liability companies, partnerships, limited partnerships and/or limited liability partnerships, desiring to effect a merger, set forth the following facts

**I. (Surviving) Entity**
A. Name of Entity Surviving the Merger

Duro Dyne National Corp.

B. Name Change: As a result of this merger, the name of the surviving entity has changed to the following

(Complete only if name of surviving entity is changing through the merger)

C. The surviving entity is a    **(Please check the appropriate box and fill in the appropriate blanks)**

**1.**   ☐ **Domestic (Ohio entity)**      ☒ **Foreign (Non-Ohio Entity)**

New York

Jurisdiction of formation

**2.   Charter/Registration/License Number**

(If licensed in Ohio as domestic or foreign)

**3.**   ☒ For-Profit Corporation

☐ Nonprofit Corporation

☐ For-Profit Limited Liability Company

☐ Nonprofit Limited Liability Company

☐ Partnership

☐ Limited Partnership

☐ Limited Liability Partnership

☐ Unincorporated Nonprofit Association

## II. CONSTITUENT ENTITY

Provide the name, Ohio charter/license/registration number, type of entity, jurisdiction of formation, for each entity merging **out of existence. (If this is insufficient space to reflect all merging entities, please attach a separate sheet listing the additional merging entities).**

| Entity Name | Ohio Charter/License/ Registration Number | Jurisdiction of Formation | Type of Entity |
|---|---|---|---|
| Duro Dyne Midwest Corp. | 527752 | Ohio | For-Profit Corp. |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## III. MERGER AGREEMENT ON FILE

The name and mailing address of the person or entity from whom/which eligible persons may obtain a copy of the merger agreement upon written request

Duro Dyne National Corp.

Name

81 Spence Street

Mailing Address

| Bay Shore | NY | 11706 |
|---|---|---|
| City | State | Zip Code |

## IV. EFFECTIVE DATE OF MERGER

This merger is to be effective on _____ (The date specified must be on or after the date of the filing.  If no date is specified, the date of filing will be the effective date of the merger).

## V. MERGER AUTHORIZED

Each constituent entity has complied with the laws under which it exists and the laws permit the merger. The agreement of merger is authorized on behalf of each constituent entity and each person who signed the certificate on behalf of each entity is authorized to do so.

## VI. STATEMENT OF MERGER

Upon filing this Certificate of Merger, or upon such later date as specified herein, the merging entity/entities listed herein shall merge into the listed surviving entity.

## VII. STATUTORY AGENT - To be filed ONLY if the surviving entity is a foreign entity not licensed in Ohio.

If the surviving entity is a foreign entity **NOT** licensed to transact business in Ohio, provide the name and address of a statutory agent upon whom any process, notice or demand may be served.

## VIII. AMENDMENTS

If a domestic corporation, limited liability company or limited partnership survives the merger, any amendments to the entity's articles of incorporation, articles of organization, or certificate of limited partnership of the surviving domestic entity shall be filed with the certificate of merger.

☐ Amendments are attached            ☐ No Amendments

**If you are amending the total number of shares, please complete this box so the appropriate filing fee is charged.**

Total number of shares previously listed in the Articles or other Amendments with the Ohio Secretary of State: [          ]

With the submission of this amendment, NEW total number of shares: [          ]

## IX. REQUIREMENTS OF CORPORATIONS MERGING OUT OF EXISTENCE

If a domestic corporation or foreign corporation licensed to transact business in Ohio is a constituent entity and the surviving entity is not a domestic corporation or foreign corporation to be licensed in Ohio, the certificate of merger must be accompanied by the affidavits, receipts, certificates, or other evidence required by division (H) of section 1701.86 division (G) of section 1702.47 of the Revised Code with respect to each domestic constituent corporation, and/or by the affidavits, receipts, certificates, or other evidence required by division (C) or (D) of section 1703.17 of the Revised Code with respect to each foreign constituent corporation licensed to transact business in Ohio.

## X. QUALIFICATION OR LICENSE OF FOREIGN SURVIVING ENTITY

A surviving foreign entity that wishes to qualify in Ohio as part of the merger must file an additional form, as listed below, but no additional filing fee is required.

Foreign Qualifying Corporation - Form 530A or B and Certificate of Good Standing
Foreign Notice (if qualifying entity is a foreign bank, savings bank, or savings and loan association) - Form 552
Foreign Qualifying Limited Liability Company - Form 533B
Foreign Qualifying Limited Partnership - Form 531B
Foreign Qualifying Limited Liability Partnership - Form 537 and Evidence of Existence in Jurisdiction of Formation

The undersigned constituent entities (constituent entities include merging and surviving entities) have caused this certificate of merger to be signed by their duly authorized officers, partners and representatives.

| Duro Dyne National Corp. |
|---|

Name of entity

**By:** |  |
|---|

Signature

**Its:** | Patrick Rosetto, President |
|---|

Title

| Duro Dyne West Corp. |
|---|

Name of entity

**By:** |  |
|---|

Signature

**Its:** | Patrick Rosetto, President |
|---|

Title

|  |
|---|

Name of entity

**By:** |  |
|---|

Signature

**Its:** |  |
|---|

Title

**An authorized representative of each constituent corporation, partnership, or entity must sign the merger certificate (ORC 1701.81(A), 1702.43 (A), 1705.38(A), 1776.70(A), 1782.433(A)). this includes all merging and surviving entities.**

# Instructions for Certificate of Merger

This form should be used to file a certificate of merger following the adoption of an agreement of merger.

## Surviving Entity Information

Please provide the following information for the "surviving entity" (the entity that remains active following the merger): (1) entity name; (2) a new name if the surviving entity's name changed as a result of the merger; (3) entity type (for e.g., whether the surviving entity is a corporation, limited liability company, etc.); (4) charter/registration/license number (if any); and (5) jurisdiction of formation (foreign entities only).

## Constituent Entity Information

Please provide the following information for the "constituent entities": (1) entity name; (2) entity type; (3) charter/registration/license number (as appropriate); and (4) jurisdiction of formation (foreign entities only).

## Address for Merger Agreement Requests

Pursuant to Ohio Revised Code §§1701.81, 1702.43, 1705.38, 1776.70 and 1782.433 (as applicable), a mailing address is required for the person or entity that is to provide, in response to any written request made by a shareholder, partner, or other equity holder of a constituent entity, a copy of the agreement of merger.

## Effective Date of Merger

Please provide the effective date of the merger. The date may be **on or after** the date of filing the certificate of merger. If a date is not provided or the date provided is prior to the date of filing, our office will assign the date of filing as the effective date.

## Statements Required By Law

Pursuant to Ohio Revised Code Sections §§1701.81, 1702.43, 1705.38, 1766.70 and 1782.433 (as applicable), by submitting the certificate of merger through an authorized representative, each constituent entity states the following:  (1) the constituent entity will merge with one or more constituent entities into a specified surviving entity; (2) the constituent entity has complied with all of the laws under which it exists; (3) the laws under which the constituent entity exists permit the merger; (4) the merger is authorized on behalf of the constituent entity; and (5) the authorized representative is authorized to sign the certificate of merger on behalf of the constituent entity.

## Appointment of Statutory Agent for Foreign, Unlicensed Surviving Entity

This section must be completed if the surviving entity is a foreign entity not licensed to transact business in Ohio, please provide the name and address of the statutory agent upon whom any process, notice, or demand may be served. The statutory agent must be one of the following: (1) A natural person who is a resident of this state; or (2) A domestic or foreign corporation, nonprofit corporation, limited liability company, partnership, limited partnership, limited liability partnership, limited partnership association, professional association, business trust, or unincorporated nonprofit association that has a business address in this state. If the agent is a business entity then the agent must meet the requirements of Title XVII of the Revised Code to transact business or exercise privileges in Ohio.

## Amendments

In the case of a merger into a domestic corporation, limited liability company, or limited partnership, any amendments to the articles of incorporation, articles of organization or certificate of limited partnership of the surviving entity shall be filed with the certificate of merger.  Please check the appropriate box to indicate whether amendments are attached to the certificate of merger.

## Requirements of Corporations (Domestic or Foreign) Merging Out of Existence

If a foreign or domestic corporation licensed in Ohio is a constituent entity in the merger and the surviving entity is not a foreign or domestic corporation to be licensed in Ohio, Ohio Revised Code §§1701.81 requires that additional information be submitted with the certificate.

A domestic corporation must provide the affidavits, receipts, certificates or other evidence required by Ohio Revised Code §§1701.86(H).  A foreign corporation must submit the affidavits, receipts, certificates or other evidence required by Ohio Revised Code §§1703.17 (C) or (D).

The required affidavits are attached to this form for your convenience.

## Qualifying Foreign Entities Additional Filing Requirements

All surviving foreign entities that are qualifying to do business in Ohio must attach the appropriate formation document to this form.  The filing fee for that form is not required.  The appropriate forms are listed below

     Foreign Qualifying Corporation     Form 530A or B
     Foreign Notice (if qualifying entity is a foreign bank, savings bank, or savings and loan association) Form 552
     Foreign Qualifying Limited Liability Company Form 533B
     Foreign Qualifying Limited Partnership    Form 531B
     Foreign Qualifying Limited Liability Partnership Form 537

## Additional Provisions

If the space provided on this form is insufficient, please submit any additional information on single-sided, 8 ½ x 11 sheet(s) of paper.

## Signature(s)

After completing all information on the filing form, please make sure that the form is signed by the representatives authorized to sign the certificate on behalf of each constituent entity.  Pursuant to Ohio Revised Code Sections §§1701.81, 1702.43, 1705.38, 1776.70 and 1782.433 (as applicable), please provide the office held or the capacity in which the representative is acting by signing the certificate merger. Constituent entities are defines as those entities existing prior to the merger and the surviving entity.

**\*\*Note:  Our office cannot file or record a document that contains a social security number or tax identification number.  Please do not enter a social security number or tax identification number, in any format, on this form.**

## **Schedule 5.02(a)**

(Amended Certificate of Incorporation of the Reorganized Debtor)


See attached.

**Restated Certificate of Incorporation**

**of**

**Duro Dyne National Corp.**

Under Section 807 of the Business Corporation Law

[_____], 2018

_____

FIRST:  The name of the corporation is Duro Dyne National Corp.


SECOND:   The certificate of incorporation of the corporation was filed by the Department of State on December 27, 1978.

THIRD:  The certificate of incorporation, as heretofore amended, is hereby amended or changed to effect one or more of the amendments or changes authorized by the Business Corporation Law, to wit:

(a) To remove from the authorized shares of the corporation a total of 21,097 unissued shares, consisting of (1) 19,097 unissued Class A Non-Voting Common Shares, par value $1.00 per share and (2) 2,000 unissued Class B Voting Common Shares, par value $1.00 per share;

(b) To change 3 authorized Class B Voting Common Shares, par value $1.00 per share, of the corporation, all of which are issued, into 3,000 issued Class B Voting Common Shares, par value $1.00[1] per share, the terms of the change being at the rate of 1,000 issued Class B Voting Common Shares, par value $1.00 per share for 1 issued Class B Voting Common Share, par value $1.00 per share; and

(c) To add a provision prohibiting the further issuance of non-voting equity securities to the extent prohibited by Section 1123(a)(6) of Title 11 of the United States Code as in effect on the date of the filing of this restated certificate of incorporation by the Department of State.

FOURTH:   To accomplish the foregoing amendments, Article FOURTH of the certificate of incorporation of the corporation, relating to the aggregate number of shares which the corporation is authorized to issue, the par value thereof, and the classes into which the shares are divided, is hereby amended to read as set forth in the same numbered article of the certificate of incorporation of the corporation as hereinafter restated.

FIFTH:   The restatement of the certificate of incorporation of the corporation herein provided for was authorized by the written consent of holders of outstanding shares of the

_____

[1] Note to Duro Dyne: The company's accountants will need to take note of the par value per share not changing, meaning that the stated value is increasing by $2,997.

corporation entitled to vote on the said restatement of the certificate of incorporation, having not less than the minimum requisite proportion of votes, which has been given in accordance with Section 615 of the Business Corporation Law.  Written notice has been given as and to the extent required by the said Section 615.

SIXTH:   The text of the certificate of incorporation of the corporation is hereby restated as further amended or changed herein to read as follows:

"FIRST:   The name of the corporation is:

DURO DYNE NATIONAL CORP.

SECOND:   The purposes for which the Corporation is formed is to engage in any lawful act or activity for which corporations may be organized under the New York Business Corporation Law; provided that, the Corporation is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

THIRD:   The office of the Corporation is to be located in Suffolk County, New York.

FOURTH:   (a) The aggregate number of shares which the Corporation shall have the authority to issue is 23,903 shares, of which (i) 20,903 shares, par value $1.00 per share, are designated as "Class A Non-Voting Common Shares"; and (ii) 3,000 shares, par value $1.00 per share, are designated as "Class B Voting Common Shares."

(b) The relative rights, preferences and limitations of the Class A Non-Voting Common Shares and the Class B Voting Common Shares designated above in this Article FOURTH shall be as follows:

(i) The Class A Non-Voting Common Shares shall not be entitled to vote in elections of Directors of the Corporation or in any other proceedings of the Corporation except as otherwise required by the applicable provisions of the New York Business Corporation Law.

(ii) The Class B Voting Common Shares shall be entitled to vote in elections of Directors of the Corporation and in all other proceedings in which shareholders are entitled to vote under the New York Business Corporation Law.

(c) (i) Effective at 9:00 a.m., eastern time on the date of the filing of this restated certificate of incorporation by the Department of State (the "Split Effective Time"), the Class B Voting Common Shares issued and outstanding immediately prior to the Split Effective Time are reclassified into a larger number of shares such that each one (1) Class B Voting Common Share immediately prior to the Split Effective Time is reclassified into 1,000 Class B Voting Common Shares.

(ii) Each stock certificate that, immediately prior to the Split Effective Time, represented Class B Voting Common Shares that were issued and outstanding immediately prior to the Split Effective Time shall, from and after the Split Effective Time, automatically and without the necessity of presenting the same for exchange, represent the number of whole Class B Voting Common Shares after the Split Effective Time into which Class B Voting Common Shares formerly represented by such certificate shall have been reclassified, provided, however, that each person of record holding a certificate that represented Class B Voting Common Shares that were issued and outstanding immediately prior to the Split Effective Time shall receive, upon surrender of such certificate, a new certificate evidencing and representing the number of whole Class B Voting Common Shares after the Split Effective Time into which the Class B Voting Common Shares formerly represented by such certificate shall have been reclassified.

(d) The Corporation shall not issue any nonvoting equity securities to the extent prohibited by Section 1123(a)(6) of Title 11 of the United States Code (the "Bankruptcy Code") as in effect on the date of the filing of this restated certificate of incorporation by the Department of State; provided, however, that this Article FOURTH, Section (d): (i) will have no further force and effect beyond that required under Section 1123 (a)(6) of the Bankruptcy Code, (ii) will have such force and effect, if any, only for so long as Section 1123(a)(6) of the Bankruptcy Code is in effect and applicable to the Corporation, and (iii) in all events may be amended or eliminated in accordance with such applicable law as from time to time may be in effect.

FIFTH:   The Secretary of State is designated as the agent of the Corporation upon whom process against it may be served, and the post office address to which the Secretary of State shall mail a copy of any such process service upon him or her is:

    Duro Dyne National Corp.
    81 Spence Street
    Bay Shore, New York 11706

SIXTH:   (a) To the fullest extent that the New York Business Corporation Law, as now in effect or as may hereafter be amended, permits elimination or limitation of the liability of Directors, no Director of the Corporation shall be liable to the Corporation or its shareholders for damages for any breach of duty in such capacity. Any repeal or modification of this Article by the shareholders of the Corporation shall be prospective only and shall not adversely affect any elimination or limitation of the personal liability of a Director of the Corporation for acts or omissions occurring prior to the effective date of such repeal or modification.

(b) The Corporation shall indemnify and hold harmless each person (and the heirs, executors, or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action,

suit or proceeding, whether civil, criminal, administrative, or investigative, by reason of the fact that such person is or was a Director of officer of the Corporation or is or was serving at the request of the Corporation as a Director or officer of another corporation, partnership, joint venture, trust or other enterprise, to the fullest extent permitted by the New York Business Corporation Law, as the same exists or may hereafter be amended; provided however, that except for proceedings to enforce rights to indemnification, the Corporation shall not be obligated to indemnify any Director or officer (or his or her heirs, executors or administrators) in connection with a proceeding (or part thereof) initiated by such person unless such proceeding (or part thereof) was authorized or consented to by the Board of Directors of the Corporation.

(c) Expenses (including attorneys' fees) incurred by an officer of Director in defending any civil, criminal, administrative or investigative action, suit or proceeding shall be paid by the Corporation in advance of final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such Director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in this Article.

(d) To the extent authorized from time to time by the Board of Directors, the Corporation may provide rights to indemnification and to the advancement of expenses to employees and agents of the Corporation who are not Directors or officers similar to those conferred in this Article to Directors and officers of the Corporation.

(e) The rights to indemnification and to the advancement of expenses conferred in this Article shall not be exclusive of any other right which any person may have or hereafter acquire under this Certificate of Incorporation, the By-laws, any statute, agreement, vote of shareholders or otherwise."

[*Remainder of Page is Intentionally Left Blank; Signature Page Follows*]

**IN WITNESS WHEREOF**, Duro Dyne National Corp. has caused this certificate to be signed as of the date first set forth above.

**DURO DYNE NATIONAL CORP.**

By: _____
    Name: [  ]
    Title: [  ]

# RESTATED CERTIFICATE OF INCORPORATION

# OF

**Duro Dyne National Corp.**

Under Section 807 of the Business Corporation Law.

Filed by:

      [Joseph Mignone
      Corporate Paralegal]
      c/o Lowenstein Sandler LLP
      1251 Avenue of the Americas
      New York, New York 10020

# **Schedule 5.02(b)**

(Bylaws of the Reorganized Debtor)

See attached.

**AMENDED AND RESTATED BY-LAWS**

**OF**

**DURO DYNE NATIONAL CORP.**
**(Effective _____(date))**

- - - - - - - - - - - -

ARTICLE I

OFFICES

SECTION 1. PRINCIPAL OFFICE. - The principal office of the corporation shall be in Bay Shore, New York or at such other location, within or without the State of New York, as shall be determined from time to time by the Board of Directors.

SECTION 2. OTHER OFFICES. - The corporation may have such other offices and places of business, within or without the State of New York, as shall be determined from time to time by the Board of Directors.

ARTICLE II

SHAREHOLDERS

SECTION 1. PLACE OF MEETINGS. - Meetings of the shareholders may be held at such place or places, within or without the State of New York, as shall be fixed by the Board of Directors and stated in the notice of the meeting.

SECTION 2. ANNUAL MEETING. - The annual meeting of shareholders for the election of directors and the transaction of such other business as may properly come before the meeting shall be held each year at such time and place, within or without the State of New York, as the Board of Directors shall determine.

SECTION 3. SPECIAL MEETINGS. - Special meetings of the shareholders for any purpose or purposes may be called by the Board of Directors, the Chief Executive Officer, the President or the Secretary, and must be called upon the written request of the holders of at least twenty-five percent of the stock then outstanding and entitled to vote. The only business which may be conducted at a special meeting, other than procedural matters and matters relating to the conduct of the meeting, shall be the matter or matters described in the notice of such special meeting.

SECTION 4. NOTICE OF MEETINGS. - Written or electronic notice of each meeting of the shareholders shall be given, personally or by mail or electronic transmission, not fewer than ten nor more than 60 days before the date of the meeting; provided, however, that such notice may be given by third class mail not fewer than 24 nor more than 60 days before

the date of the meeting, to each shareholder entitled to vote at such meeting. If mailed, such notice shall be deposited in the United States mail, with postage thereon prepaid, directed to the shareholder at such shareholder's address as it appears on the record of shareholders or, if a shareholder shall have filed with the Secretary of the corporation a written request that notices to such shareholder be mailed to some other address, then directed to such shareholder at such other address. If transmitted electronically, such notice shall be directed to the shareholder's electronic address supplied to the Secretary of the corporation or as otherwise directed pursuant to the shareholder's authorization or instructions. The notice shall state the place, date and hour of the meeting and, unless it is the annual meeting, the purpose or purposes for which the meeting is called and indicate that the notice is being issued by or at the direction of the person or persons calling the meeting. The notice need not refer to the approval of minutes or to other matters normally incident to the conduct of the meeting.

SECTION 5. QUORUM. - At any meeting of the shareholders, the holders of a majority of the shares of stock then entitled to vote shall constitute a quorum for all purposes, except as otherwise provided by law or the Certificate of Incorporation.

SECTION 6. VOTING. - At each meeting of the shareholders, every holder of stock then entitled to vote may vote in person or by proxy, and, except as may be otherwise provided by the Certificate of Incorporation, shall have one vote for each share of stock registered in his, her or its name.

SECTION 7. ADJOURNED MEETINGS. - Any meeting of shareholders may be adjourned to a designated time and place by a vote of a majority in interest of the shareholders present in person or by proxy and entitled to vote, even though less than a quorum is present. No notice of such an adjourned meeting need be given, other than by announcement at the meeting, and any business may be transacted which might have been transacted at the meeting as originally called.

SECTION 8. ACTION BY WRITTEN CONSENT OF SHAREHOLDERS. - Whenever by any provision of statute or of the Certificate of Incorporation or of these By-Laws, the vote of shareholders at a meeting thereof is required or permitted to be taken in connection with any corporate action, the meeting and vote of shareholders may be dispensed with if all the shareholders who would have been entitled to vote upon the action if such meeting were held shall consent in writing to such corporate action being taken.

ARTICLE III

DIRECTORS

SECTION 1. NUMBER. - The number of directors of the corporation shall be five (5), each of whom shall hold office for the term of one year and until his or her successors are elected and qualify. The number of directors may be increased or decreased from time to time by amendment to these By-Laws made by a majority of the Board of Directors or by the shareholders. Directors need not be shareholders.

SECTION 2. POWERS. - The Board of Directors may adopt such rules and regulations for the conduct of its meetings, the exercise of its powers and the management of the affairs of the corporation as it may deem proper, not inconsistent with the laws of the State of New York, the Certificate of Incorporation or these By-Laws.

In addition to the powers and authorities by these By-Laws expressly conferred upon them, the directors may exercise all such powers of the corporation and do such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these By-Laws directed or required to be exercised or done by the shareholders.

SECTION 3. MEETING, QUORUM, ACTION WITHOUT MEETING. - Meetings of the Board of Directors may be held at any place, either within or outside the State of New York, provided a quorum be in attendance. Except as may be otherwise provided by the Certificate of Incorporation or by the New York Business Corporation Law, a majority of the directors in office shall constitute a quorum at any meeting of the Board and the vote of a majority of a quorum of directors shall constitute the act of the Board.

The Board of Directors may hold an annual meeting, without notice, immediately after the annual meeting of shareholders. Regular meetings of the Board of Directors may be established by a resolution adopted by the Board. The Chairman of the Board (if any) or the Chief Executive Officer or the President or Secretary may call, and at the request of any two directors, must call a special meeting of the Board of Directors, five days' notice of which shall be given by mail, or two days' notice of which shall be given personally or by email or fax, to each director.

Any one or more members of the Board of Directors or any Committee thereof may participate in a meeting of such Board or Committee by means of a conference telephone or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time. Participation by such means shall constitute presence in person at a meeting.

Any action required or permitted to be taken by the Board of Directors or any Committee thereof may be taken without a meeting if all members of the Board or the Committee consent in writing to the adoption of a resolution authorizing the action. The resolution and the written consents thereto by the members of the Board or Committee shall be filed with the minutes of the proceedings of the Board or Committee.

SECTION 4. VACANCIES, REMOVAL. - Except as otherwise provided in the Certificate of Incorporation or in the following paragraph, vacancies occurring in the membership of the Board of Directors, from whatever cause arising (including vacancies occurring by reason of the removal of directors without cause and newly created directorships resulting from any increase in the authorized number of directors), may be filled by a majority vote of the remaining directors, though less than a quorum, or such vacancies may be filled by the shareholders.

Except where the Certificate of Incorporation contains provisions authorizing

cumulative voting or the election of one or more directors by class or their election by holders of bonds, or requires all action by shareholders to be by a greater vote, any one or more of the directors may be removed, (a) either for or without cause, at any time, by vote of the shareholders holding a majority of the outstanding stock of the corporation entitled to vote, present in person or by proxy, at any special meeting of the shareholders, or (b) for cause, by action of the Board of Directors at any regular or special meeting of the Board. A vacancy or vacancies occurring from such removal may be filled at the special meeting of shareholders or at a regular or special meeting of the Board of Directors.

SECTION 5. COMMITTEES. - The Board of Directors, by resolution adopted by a majority of the entire Board, may designate from its members an Executive Committee or other committee or committees, each consisting of three or more members, with such powers and authority (to the extent permitted by law) as may be provided in said resolution.

ARTICLE IV

OFFICERS

SECTION 1. EXECUTIVE OFFICERS. - The executive officers of the corporation shall be a President, a Chief Executive Officer, one or more Vice-Presidents, a Treasurer and a Secretary, all of whom shall be elected annually by the directors and shall hold office at the pleasure of the Board. In addition, the Board of Directors may elect a Chairman of the Board of Directors. Except for the offices of President and Secretary, any two or more offices may be held by one person. When all of the issued and outstanding stock of the corporation is owned by one person, such person may hold all or any combination of offices. All vacancies occurring among any of the officers shall be filled by the directors. Any officer may be removed, for or without cause, at any time by the affirmative vote of a majority (unless the Certificate of Incorporation requires a larger vote) of the directors present at a special meeting of directors called for such purpose.

SECTION 2. OTHER OFFICERS. - The Board of Directors may appoint such other officers and agents with such powers and duties as it shall deem necessary.

SECTION 3. THE CHAIRMAN OF THE BOARD. - The Chairman of the Board of Directors, if one be elected, shall preside at all meetings of the Board of Directors and shall have and perform such other duties as from time to time may be assigned to him or her by the Board of Directors or the Executive Committee.

SECTION 4. THE CHIEF EXECUTIVE OFFICER. – Subject to the oversight of the Board of Directors, the Chief Executive Officer, who may, but need not be, a director, shall have general supervision, direction and control of the business and affairs of the corporation.  The Chief Executive Officer shall preside at all meeting of the shareholders and, in the absence of the Chairman of the Board (or if no Chairman of the Board has been elected), at all meetings of the Board.  The Chief Executive Officer shall have the general powers and duties of management usually vested in the office of chief executive officer of a corporation and such other powers and duties as may be assigned by the Board of Directors.

SECTION 5. THE PRESIDENT. – The President, who may, but need not be a director, in the absence or disability of the Chief Executive Officer, shall perform all of the duties of the Chief Executive Officer and when so acting shall have all the powers of, and be subject to all the restrictions upon, the Chief Executive Officer, including the power to sign all instruments and to take all actions which the Chief Executive Officer is authorized to perform by the Board of Directors or these By-Laws.  The President shall have the general powers and duties usually vested in the office of president of a corporation and such other powers and duties as may be prescribed by the Board of Directors.

SECTION 6. THE VICE-PRESIDENT. - The Vice-President, or if there be more than one, the senior Vice-President, as determined by the Board of Directors, in the absence or disability of the President, shall exercise the powers and perform the duties of the President and each Vice-President shall exercise such other powers and perform such other duties as shall be prescribed by the Board of Directors.

SECTION 7. THE TREASURER. - The Treasurer shall have custody of all funds, securities and evidences of indebtedness of the corporation, shall receive and give receipts for moneys paid in on account of the corporation and shall pay out of the funds on hand all bills, payrolls, and other just debts of the corporation, of whatever nature.  The Treasurer shall enter regularly in books to be kept by him or her for that purpose, full and accurate accounts of all moneys received and paid out on account of the corporation, and shall perform all other duties incident to the office of Treasurer and as may be prescribed by the Board of Directors.

SECTION 8. ASSISTANT TREASURERS. – Each Assistant Treasurer may, in the absence or disability of the Treasurer, or at his or her request or the request of the Chief Executive Officer or President, perform the duties and exercise the powers of the Treasurer and shall perform such other duties as may be prescribed by the Board of Directors.

SECTION 9. THE SECRETARY. - The Secretary shall keep the minutes of all proceedings of the directors and of the shareholders, shall attend to the giving and serving of all notices to the shareholders and directors or other notice required by law or by these By-Laws and shall affix the seal of the corporation to deeds, contracts and other instruments in writing requiring a seal. When duly signed or when so ordered by the Board of Directors, the Secretary shall have charge of the certificate books and stock books and such other books and papers as the Board of Directors may direct, and shall perform all other duties incident to the office of Secretary and as may be prescribed by the Board of Directors.

SECTION 10. ASSISTANT SECRETARIES. – Each Assistant Secretary may, in the absence or disability of the Secretary, or at his or her request or the request of the Chief Executive Officer or President, perform the duties and exercise the powers of the Secretary and shall perform such other duties as may be prescribed by the Board of Directors.

SECTION 11.  SALARIES. – The salaries of all officers shall be fixed by the Board of Directors, and the fact that any officer is a director shall not preclude him from receiving a salary as an officer, or from voting upon the resolution providing same.

## ARTICLE V

## CAPITAL STOCK

SECTION 1. FORM AND EXECUTION OF CERTIFICATES. - Certificates of stock shall be in such form as required by the New York Business Corporation Law, and as shall be adopted by the Board of Directors. They shall be numbered and registered in the order issued; shall be signed by the Chairman or a Vice-Chairman of the Board (if any) or by the President or a Vice-President and by the Secretary or an Assistant Secretary or the Treasurer or an Assistant Treasurer and may be sealed with the corporate seal or a facsimile thereof. When such a certificate is countersigned by a transfer agent or registered by a registrar, the signatures of any such officers may be facsimile.

SECTION 2. TRANSFER. - Transfer of shares shall be made only upon the books of the corporation by the registered holder in person or by attorney, duly authorized, and upon surrender of the certificate or certificates for such shares properly assigned for transfer.

SECTION 3. LOST OR DESTROYED CERTIFICATES. - The holder of any certificate representing shares of stock of the corporation may notify the corporation of any loss, theft or destruction thereof, and the Board of Directors may thereupon, in its discretion, cause a new certificate for the same number of shares, to be issued to such holder upon satisfactory proof of such loss, theft or destruction, and the deposit of indemnity by way of bond or otherwise, in such form and amount and with such surety or sureties as the Board of Directors may require, to indemnify the corporation against loss or liability by reason of the issuance of such new certificates.

SECTION 4. RECORD DATE. - In lieu of closing the books of the corporation, the Board of Directors may fix, in advance, a date, not exceeding sixty days, nor less than ten days, as the record date for the determination of shareholders entitled to receive notice of, or to vote at, any meeting of shareholders, or to consent to any proposal without a meeting, or for the purpose of determining shareholders entitled to receive payment of any dividends, or allotment of any rights, or for the purpose of any other action.

## ARTICLE VI

## MISCELLANEOUS

SECTION 1. DIVIDENDS. - The directors may declare dividends from time to time upon the capital stock of the corporation from the surplus or net profits available therefor in accordance with applicable law.

SECTION 2. SEAL. - The directors shall provide a suitable corporate seal which shall be in the charge of the Secretary and shall be used as authorized by the By-Laws.

SECTION 3. FISCAL YEAR. - The fiscal year of the corporation shall be December 31.

SECTION 4. CHECKS, NOTES, ETC. - Checks, notes, drafts, bills of exchange and orders for the payment of money shall be signed or endorsed in such manner as shall be determined by the Board of Directors.

The funds of the corporation shall be deposited in such bank or trust company, and checks drawn against such funds shall be signed in such manner as may be determined from time to time by the Board of Directors.

SECTION 5. NOTICE AND WAIVER OF NOTICE. - Any notice required to be given under these By-Laws may be waived by the person entitled thereto, in writing, by email, fax or mail, and the presence of any person at a meeting shall constitute waiver of notice thereof as to such person.

Whenever any notice is required by these By-Laws to be given, personal notice is not meant unless expressly so stated; and any notice so required shall be deemed to be sufficient if given by depositing it in a post office or post box in a sealed postpaid envelope, addressed to such shareholder, officer or director, or by email or fax, at such address as appears on the books of the corporation and such notice shall be deemed to have been given on the day of such deposit or the day such email or fax was sent.

ARTICLE VII

AMENDMENTS

SECTION 1. BY SHAREHOLDERS. - These By-Laws may be amended at any shareholders' meeting by vote of the shareholders holding a majority (unless the Certificate of Incorporation requires a larger vote) of the outstanding stock having voting power, present either in person or by proxy, provided notice of the amendment is included in the notice or waiver of notice of such meeting.

SECTION 2. BY DIRECTORS. - The Board of Directors may also amend these By-Laws at any regular or special meeting of the Board by a majority (unless the Certificate of Incorporation requires a larger vote) vote of the entire Board, but any By-Laws so made by the Board of Directors may be altered or repealed by the shareholders.

## **Schedule 8.01**

(Lease Rejections)

Bay Alarm Company
740 S. Rochester Ave., Suite D
Ontario, CANADA 91761
(Monitoring/Burglar service)

Mail Finance (Neopost)
478 Wheelers Farm Road
Milford, CT 06461
(Equipment lease)

## Schedule 8.06

(Contracts or personal-property leases with a Related Party)

| Lessor | Property | Agreement Date | Monthly Payment | Maturity Date |
|--------|----------|----------------|-----------------|---------------|
| PROFORMA | Equipment | 8/01/2005 | $12,328.37 | 12/31/2019 |
| PROFORMA II | Equipment | 6/27/2006 | $3,618.28 | 5/31/2018 |
| ISWR Ohio | Real Property | 1/08/2011 | $16,258.73 | 7/31/2021 |
| Spence | Real Property | 6/01/2015 | $82,546.42 | 5/312020 |

## **SCHEDULE 13.14**

(Notice Parties for Reorganized Debtor)


Duro Dyne National Corp.
81 Spence Street
Bay Shore, NY 11706
Attn: Patrick Rossetto, President

And

Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
Attn: Jeffrey D. Prol, Esq.
Counsel to Duro Dyne National