Margaret F. Catalano
Christina R. Salem
570 Lexington Avenue – 8th Floor
New York, New York 10022
(212) 252-0004
meg.catalano@kennedyscmk.com
christina.salem@kennedyscmk.com

IFRAH PLLC
George R. Calhoun, V (*pro hac vice*)
1717 Pennsylvania Ave., NW
Washington, D.C. 20006
(202) 525-4147
george@ifrahlaw.com

*Attorneys for The North River Insurance Company*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| DURO DYNE NATIONAL CORP., *et al.*,[1] | Case No. 18-27963 MBK |
| Debtors. | (Jointly Administered) |

**OBJECTION TO PLAN PROPONENTS' MOTIONS PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2002, 5004, AND 9019(a) FOR AN ORDER AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO A SETTLEMENT AGREEMENT WITH HARTFORD ACCIDENT AND INDEMNITY COMPANY, AND FEDERAL INSURANCE COMPANY AND AUTHORIZING THE SALE OF POLICIES FREE AND CLEAR OF LIENS, CLAIMS, <u>INTERESTS AND OTHER ENCUMBRANCES</u>**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Duro Dyne National Corp. (4664); Duro Dyne Machinery Corp. (9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne Midwest Corp. (4662).

The North River Insurance Company ("North River") respectfully submits the following objection to the motion to approve the settlements between Hartford Accident and Indemnity Company ("Hartford"), Federal Insurance Company ("Federal") (collectively, the "Settling Insurers") and the Debtors. North River does not object to the Settling Insurers' decision to settle with the Debtors, but any such settlement must fully preserve and/or protect North River's and other insurers' rights and claims as to the insurers' payments of the Debtors' defense costs. The proposed settlements do not and the settling parties otherwise seek relief beyond that which the Court can approve.

## PRELIMINARY STATEMENT AND ISSUES

The Court cannot move forward with the hearing on the proposed settlements because inadequate notice has been given. The Plan Proponents, Hartford and Federal seek approval of settlements of disputed coverage issues concerning various policies of insurance issued by Hartford and Federal. Both Bankruptcy Rule 9019 and Section 363 of the Bankruptcy Code require notice and a hearing. The settling parties have refused, however, to disclose the full terms of the settlements to the non-settling insurers that may be asked to pay Hartford's and Federal's share of future defense expenses. North River cannot adequately evaluate and respond to the proposed settlements without knowing the terms of the settlements. Accordingly, the Court should deny the motions or delay any hearing on the proposed settlements until non-settling parties have had adequate opportunity to review and evaluate the proposed settlements in their entirety.

Even if the motions to approve the Hartford and Federal settlements were properly noticed, however, the Plan Proponents cannot satisfy the standard for approval under Bankruptcy Rule 9019 or for a sale of the Hartford and Federal policies pursuant to § 363 of the Bankruptcy

Code. The proposed settlements are an effort to grant the Settling Insurers a discharge of third-party liabilities. While the Bankruptcy Code grants the Court significant powers, those powers are not unlimited. As the Third Circuit has commanded, parties may not use § 363 or § 105 to grant relief broader than that available under § 524(g). Here, the settling parties have failed to adequately protect the rights of non-debtor third parties such as North River as required by § 363 (and 524(g) to the extent applicable). Alternatively, the Court lacks jurisdiction to enjoin North River's third-party claims against Hartford and Federal. In either case, the proposed settlements fail to meet the conditions of approval under the Bankruptcy Code.

## ARGUMENT

A bankruptcy court has the authority to "approve a compromise or settlement" of a claim "after notice and a hearing" on the compromise. Fed. R. Bankr. P. 9019(a). Similarly, pursuant to 11 U.S.C. § 363(b), a debtor may use estate property outside the ordinary course of business, upon notice and a hearing, to settle claims with the approval of the bankruptcy court. *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350 (3d Cir. 1999). The bankruptcy court must then decide whether the settlement is "fair and equitable," *In re Nutraquest Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (*quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)), and "assess and balance the value of the claim that is being compromised against the value to the estate of . . . accept[ing] . . . the compromise" by considering: "(1) the probability of success in ligation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Of course, this includes confirming that the proposed settlements do not contravene the Bankruptcy Code. Here, without knowing the details of the settlements,

North River cannot fully evaluate all of the *Martin* factors. The proposed settlements, however, violate § 363, fail the fourth *Martin* factor, and otherwise fail to satisfy the fair and equitable requirement established by the Third Circuit. As such, the settlements cannot be approved.

A settlement's fidelity to the requirements of the Bankruptcy Code will generally be the most important factor in determining whether a settlement is fair and equitable. *In re Jevic Holding Corp.*, 787 F.3d 173, 184 (3d Cir. 2015) *rev'd on other grounds* in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017). As the Supreme Court has stated, bankruptcy courts can not approve settlements that violate the tenets of the Bankruptcy Code. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. at 983-84.

I.    The Settlement/Sale Is Not Fair and Equitable

It is a tautology that the parties that have entered into an agreement believe it to be a fair and equitable agreement as between them. In a bankruptcy proceeding, the fairness and equity of an agreement necessarily has a broader meaning. The Fifth Circuit has articulated the scope of the intended analysis as follows:

> While it is true that the bankruptcy court has jurisdiction to determine whether a settlement between the debtor and other parties is fair and equitable, "looking only to the fairness of the settlement as between the debtor and the settling claimant [and ignoring third-party rights] contravenes a basic notion of fairness." *In re AWECO, Inc.*, 725 F.2d at 298; *see also F.D.I.C. v. Jones (In re Jones)*, 966 F.2d 169, 173 (5th Cir.1992) (discussing § 105(a) and court's duty to avoid unfairness and injustice); *Cullen v. Riley (In re Masters Mates & Pilots Pension Plan)*, 957 F.2d 1020, 1026, 1031 (2d Cir. 1992) (holding that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval," and requiring determination that "no one has been set apart for unfair treatment").

*Feld v. Zale Corp. (Matter of Zale Corp.*), 62 F.3d 746, 754 (5th Cir. 1995). That is precisely what is happening here – non-settling insurers have "been set apart for unfair treatment."

4

Although the Plan Proponents have concealed critical terms and details of the proposed agreements, it is clear that the proposed deals seek to eliminate the reimbursement, contribution, subrogation and/or indemnification[2] rights of non-settling insurers.  As has been discussed with the Court before, the cost of defending claims against Duro Dyne has significantly exceeded the actual payments to asbestos claims – over 90% of which have been dismissed without payment. In other words, the Settling Insurers are seeking the discharge of millions of dollars in defense costs that they otherwise would potentially be obligated to contribute. Other insurers have direct claims against Hartford and Federal for such obligations under New York law.  Under New York law, the Settling Insurers have no ability to extinguish such reimbursement obligations or duties (outside of a global settlement).  *See, e.g., DaimlerChrysler Ins. Co. v. Universal Underwriters Ins. Co.,* 2010 N.Y. Misc. Lexis 1686 (N.Y. Sup. Ct. N.Y. Cnty Mar. 31, 2010) ("The contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it.  Instead, whatever obligations or rights to contribution may exist between two or more insurers of the same event flow from equitable principles."); *Scotts Co., LLC v. Ace Indem. Ins. Co.,* 18 Misc. 3d 1139(A) (N.Y. Sup. Ct. N.Y. Cnty Feb. 26, 2008) (permitting contribution suit against settled co-insurer); *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 2010 (2d Cir. 2000) (rejecting as "untenable" under New York law the "notion that any settlement by which an insurer obtains a release from its insured, regardless of its terms, insulates that insurer from all contribution claims.").  The Plan Proponents and Settling Insurers' proposed settlements offer the non-settling insurers no protection for these state law rights.  That

---

[2] North River reserves its rights with respect to the classification of such claims for purposes of this filing to the extent those rights and/or claims against Hartford and Federal sound in theories other than reimbursement, contribution, subrogation and/or indemnification (hereinafter collectively labeled "reimbursement" for purposes of this filing).

5

result would be a complete nullification of the parties' state law rights and turns the Bankruptcy Code on its head by allowing the Settling Insurers' to buy releases from liability to third parties by making a payment to the Debtor or asbestos trust. As such, the proposed settlements cannot be found to be fair and equitable.

**II.     The Sale Violates § 363 Because the Debtors Have Not Provided Adequate Protection for North River's Interests**

As the Second Circuit observed in *MacArthur Co. v. Johns–Manville*, cited with approval by the Third Circuit in *Combustion Engineering*, the bankruptcy court has the authority to approve settlements "and to channel claims arising under the policies to the proceeds of the settlement." 837 F.2d at 92–93 (2d Cir. 1988) (citing *In Van Huffel v. Harkelrode*, 284 U.S. 225 (1931)). The Second Circuit found this power under § 363(f) of the Bankruptcy Code, which permits, under certain circumstances, sales of property in the debtor's estate "free and clear of any interest in such property of an entity other than the estate."[3] To do so, however, the interest being stripped must follow and apply with equal force and priority to the proceeds of the settlement.

> It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition. *See Ray v. Norseworthy, supra*, 90 U.S. at 134-35; S. Rep. No. 989, 95th Cong., 2d Sess. 56 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5842 (committee report on 11 U.S.C. § 363(f)) ("Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale.").

---

[3] Although the Bankruptcy Code does not define "interests" in this context, the Third Circuit has interpreted it expansively to include claims against the debtor or settling party arising out of the property to be sold. *See, e.g, In re Trans World Airlines, Inc.* ("TWA"), 322 F.3d 283 (3d Cir. 2003). If the Court were to conclude that North River's claims against Hartford were not an interest in the Debtors' property, then the Court would lack any power or jurisdiction to sell such property free and clear of such claim.

*MacArthur Co. v. Johns–Manville*, 837 F.2d at 93.[4]  Recognizing the common law requirements highlighted by the Second Circuit, Congress codified the protection of third-party interests in 11 U.S.C. § 363(e).  It provides, in relevant part: "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  The Third Circuit has also recognized this controlling principle applicable to claim stripping § 363 sales.  *See, Folger Adam Security, Inc. v. Dematteis/Macgregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale.") (internal citations omitted).  Section 524(g) operates in the same manner.  *In re W.R. Grace & Co.*, 900 F.3d 126, 130 (3d Cir. 2018) ("claims against certain third parties who are alleged to be directly or indirectly liable for the debtor's conduct … are directed to the trust … which assumes the asbestos liabilities.").

Here, the proposed Settlement Orders pay lip service to this requirement in stating that:

> Any and all Interests that the Court determines are entitled to protection under Section 363(e) of the Bankruptcy Code shall attach to the proceeds of sale with the same validity, priority, force, and effect as such Interests had in the Policies and the Released Overseas Policy Interests prior to entry of this Order …

Proposed Orders at 10-11.  The proposed Orders continue to state that such attachment is "*subject to the terms and conditions of any Plan confirmed for the Debtors, to the extent such*

---

[4] *See also Ray v. Norseworthy*, 90 U.S. 128, 134-35 (1874) (court may sell bankrupt's property encumbered by third-party claims as long as third parties retain their respective priorities in the proceeds of the sale); *In re Penn Central Transportation Co.*, 383 F.Supp. 1128, 1130 (E.D. Pa. 1974) (power of a reorganization court to transfer interests in debtor's property to the proceeds of a sale is well established)).

7

*terms and conditions are valid, binding and enforceable.*" *Id.* (emphasis added). This additional language renders the provision illusory because the Plan provides – to the extent it addresses defense cost claims at all – that claims of non-settling insurers are not entitled to any payment. Indeed, the Plan Proponents admit in their Disclosure Statement that "Asbestos Insurers will not receive any payment or distribution from the Asbestos Trust on account of such claims.…" Disclosure Statement at 17. The proposed Trust Distribution Procedures (Exhibit F to the Plan) make no provision for the payment of defense cost claims. To the contrary, "Indirect Asbestos Claims" are only allowed to the extent the indirect claimant paid an underlying asbestos claim. *Id.* at 24-25. So rather than adequate protection required by § 363(e), and despite the illusory provision in the proposed settlement order, the movants ask that the interests of non-settling insurers be voided without any compensation whatsoever.

      This inequitable result pointedly illustrates the Third Circuit recognition that settlements that attempt to alter distribution schemes or third-party rights are ripe for collusion. *Jevic*, 787 F.3d at 184 ("settlements that skip objecting creditors in distributing estate assets raise justifiable concerns about collusion among debtors, creditors, and their attorneys and other professionals."). The Second Circuit raised similar concerns with respect to settlements that attempt to absolve settling parties of third-party liabilities. *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) (A "nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code."). The Second Circuit further explained that the sort of release sought by the settling parties was "precisely [the] conditioning of financial participation by non-debtors on releases that is subject to the sort of abuse foreseen" in Metromedia." *In re Johns-Manville Corp.,* 517 F.3d 52 (2d Cir.

8

2008) *(rev'd on other grounds Travelers Indemn. Co. v. Bailey,* 557 U.S. 137 (2009). It therefore concluded that *"*Although the bankruptcy court had jurisdiction and authority to enter the 1986 orders barring claims 'based upon, arising out of or related to the Policies' … it erred by subsequently interpreting those terms without reference to the court's jurisdictional limits." *Id*. at 66.

### III.     The Third-Party Releases in the Settlements and Proposed Orders Are Impermissible

The settling parties are improperly seeking to discharge Hartford's and Federal's liability to the non-settling insurers. The Bankruptcy Code does not allow such a non-debtor discharge. Although § 524(g) allows the channeling of claims related to a person's provision of insurance to the debtor, the Settling Parties are not seeking a 524(g) injunction. Instead, they are attempting to use § 363 and § 105 to accomplish an otherwise impermissible objective. In seeking to discharge Hartford's obligations, the settling parties seek a result that exceeds the Court's powers and would not be available under state law.

The Debtors cannot accomplish under § 105 that which the Bankruptcy Code requires to be done under § 524(g). Section 105 of the Bankruptcy Code does not provide an independent source of federal subject matter jurisdiction. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 224-225 (3d Cir. 2004). *See also In re Johns–Manville Corp.*, 801 F.2d 60, 63 (2d Cir. 1986) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately"). "Related to" jurisdiction must therefore exist independently of any plan provision purporting to involve or enjoin claims against non-debtors. *In re Zale Corp.*, 62 F.3d 746, 756 (5th Cir. 1995). Although the Plan Proponents likely will contend that the requested

9

injunction under § 105(a) will create a "bigger pot" of assets for asbestos claimants, the exercise of bankruptcy power must be grounded in statutory bankruptcy jurisdiction. *Id.*

The bankruptcy court may not enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate. *In re Johns-Manville Corp.,* 517 F.3d 52 (2d Cir. 2008) *(rev'd on other grounds Travelers Indemn. Co. v. Bailey,* 557 U.S. 137 (2009). If that were possible:

> a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions. As we have made clear, subject matter jurisdiction cannot be conferred by consent of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.

*In re Combustion Eng'g, Inc*., 391 F.3d 190, 228 (3d Cir. 2004) (citation and quotation marks omitted).

In *Combustion Engineering* the Third Circuit discussed the limits of third-party channeling inunctions, noting that such injunctions are limited to those "where a third party … 'is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor.'" *Id.* at 234. The application of a § 524 channeling injunction to enjoin actions against third parties is limited to "situations where ... a third party has derivative liability for the claims against the debtor." *Id*. As the Second and Third circuits have recognized, a bankruptcy court only has jurisdiction to enjoin third-party, non-debtor claims that directly affect the *res* of the bankruptcy estate. "[I]n both instances, third parties seek to collect out of the proceeds of Manville's insurance policies on the basis of Manville's conduct.... [P]laintiffs' claims are inseparable from Manville's own insurance coverage and are consequently well within the Bankruptcy Court's jurisdiction over Manville's assets." *MacArthur*, 837 F.2d at 92–93

10

(emphasis added). Relying on *MacArthur*, the Third Circuit similarly noted that § 524(g)(4)(A)(ii) is consistent with the purposes underlying § 524(g):

> The channeling injunction issued in the Johns–Manville bankruptcy, after which § 524(g) was modeled, see 140 Cong. Rec. H10752, H10765 (1994) ... was limited to third-party actions against non-debtors in which the liability alleged was derivative of the debtor. *See MacArthur Co. v. Johns–Manville*, 837 F.2d at 92–93 (2d Cir. 1988) (explaining that the channeling injunction applied only to third parties [who] seek to collect out of the *proceeds* of Manville's insurance policies on the basis of Manville's conduct).

*Id*. at 235 n. 47 (emphasis added, citations and internal quotation marks omitted).

In contrast, North River's defense costs claims against Hartford and Federal do not involve property of the estate and do not affect the *res* available to pay claims.[5]  For example, defense payments made by Hartford and Federal do not reduce the limits under their policies and thus do not impact the amount available to reimburse claims against the estate.[6]  Because the Hartford and Federal policies provide for the payment of defense costs outside of their policies' limits, reimbursement claims for defense costs by non-settling insurers against the Settling Insurers do not impact the amount of the Settling Insurers' policy limits that might be available

---

[5] The Plan deals with North River's claims for indemnity costs in that it requires that any Hartford liability for indemnity be offset against any amount owed by North River.  As a practical matter, however, no claimant would settle for anything other than actual dollars so this protection likely is illusory.

[6] Each Hartford policy at issue here provides: "With respect to bodily injury, personal injury…The company will (a) defend any suit against the insured seeking damages on account thereof, even if such suit is groundless, false or fraudulent…and the amounts so incurred, except settlement of claims and suits, are not subject the insured's self-insured retention as stated in the declarations and are payable by the company in addition to the applicable limit of liability of this policy." (Section II. INVESTIGATION, DEFENSE, SETTLEMENT).  Similarly, Federal Policy No. FXL 77702037 states, in relevant part, that "THE COMPANY SHALL: (A) DEFEND ANY SUIT AGAINST THE INSURED ALLEGING SUCH INJURY OR DESTRUCTION…AND THE AMOUNTS SO INCURRED, EXCEPT SETTLEMENTS OF CLAIMS AND SUITS ARE PAYABLE BY THE COMPANY IN ADDITION TO THE APPLICABLE LIMIT OF LIABILTIY ON THIS POLICY." (Endorsement No. 4 "Supplementary Payments").

to pay claims.[7] Moreover, such defense costs obligations and/or duties of Hartford and Federal are not payable to the Debtors or asbestos creditors. As such, North River's claims against Hartford and Federal with respect to defense costs have no impact on the Debtors' estate. Consequently, the Court has no jurisdiction over North River's claims against Hartford and Federal (which are governed by New York state law in the New York State Coverage Action) and there is no bankruptcy basis to limit or enjoin North River's rights against the Settling Insurers with respect to defense costs.

## CONCLUSION

Although the Plan Proponents have sought to conceal the amount of the Hartford and Federal settlements, several aspects of the proposed settlements render them unfair and inequitable. The settlements are an effort to grant the Settling Insurers' relief from third-party claims and do not meet the requirements of the Bankruptcy Code – to the extent it is in the power of the Court to grant at all. The Court should refuse to approve the Hartford and Federal settlements.

Dated: March 5, 2019

Respectfully submitted,

KENNEDYS CMK LLP

*/s/ Christina R. Salem*
Margaret F. Catalano
Christina R. Salem
570 Lexington Avenue, 8th Floor
New York, N.Y. 10022
(212) 252-0004
Emails:  meg.catalano@ kennedyscmk.com
            christina.salem@kennedyscmk.com

---

[7] Depending on the amount of the settlement, which has been concealed, substantially more in Hartford and Federal limits might be available to claimants if the Court refused to approve the settlement. Evaluating whether the settlement is in the best interests of creditors is thus impossible without knowing the settlement amount.

-and-

IFRAH PLLC
George R. Calhoun, V (*pro hac vice*)
Ifrah PLLC
1717 Pennsylvania Ave., NW
Washington, D.C. 20006
202.525.4147
Email: george@ifrahlaw.com

*Attorneys for The North River Insurance Company*

13