UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | Case No. 18-27963 (MBK) |
|  | : |  |
| DURO DYNE NATIONAL CORP., *et al.*, | : | Chapter 11 |
|  | : |  |
| Debtors.[1] | : | Jointly Administered |
|  | : |  |

---

**SECOND AMENDED PRENEGOTIATED PLAN OF REORGANIZATION
FOR DURO DYNE NATIONAL CORP., *ET AL.*,
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED**

LOWENSTEIN SANDLER LLP
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Facsimile:  (973) 597-2400
krosen@lowenstein.com
jprol@lowenstein.com

*Counsel to the Debtors and
Debtors in Possession*

CAPLIN & DRYSDALE,
CHARTERED
James P. Wehner, Esq.
Jeffrey A. Liesemer, Esq.
One Thomas Circle, N.W.
Washington, DC 20005
Telephone:  (202) 862-5000
Facsimile: (202) 429-3301
jwehner@capdale.com
jliesemer@capdale.com

*Counsel to the Official
Committee of Asbestos
Claimants*

YOUNG CONAWAY
STARGATT & TAYLOR, LLP
Edwin J. Harron, Esq.
Sara Beth A. R. Kohut, Esq.
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6703
Facsimile:  (302) 576-3298
eharron@ycst.com
skohut@ycst.com

*Counsel to the Legal
Representative*

Dated:  March 5, 2019

---

*This Second Amended Prenegotiated Plan of Reorganization provides for an "Asbestos Permanent Channeling Injunction," a "Settling Asbestos Insurer Injunction," and an "Asbestos Insurer Injunction."  For a description of the causes of action to be enjoined and the identities of the entities that would be subject to these injunctions, see Article IX of this Plan.*

---

[1]    The Debtors subject to this Amended Prenegotiated Plan of Reorganization are Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp.

# TABLE OF CONTENTS

**Page**

ARTICLE I.      DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW ...............................1

Section 1.01.   *Defined Terms* ....................................................................................1

Section 1.02.   *Rules of Interpretation* ......................................................................18

Section 1.03.   *Computation of Time* .........................................................................19

Section 1.04.   *Governing Law* ...................................................................................19

Section 1.05.   *Reference to Monetary Figures* ..........................................................19

Section 1.06.   *Reference to the Debtors or the Reorganized Debtor* .......................19

ARTICLE II.     ADMINISTRATIVE CLAIMS,PRIORITY TAX CLAIMS, AND
STATUTORY FEES .......................................................................19

Section 2.01.   *Administrative Claims* .......................................................................19

Section 2.02.   *Priority Tax Claims* ...........................................................................20

Section 2.03.   *Statutory Fees* ...................................................................................20

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS 20

Section 3.01.   *Classification of Claims and Interests* ..............................................20

Section 3.02.   *Summary of Classification* .................................................................21

Section 3.03.   *Classification and Treatment of Claims and Interests* ......................21

ARTICLE IV.     THE ASBESTOS TRUST ...........................................................25

Section 4.01.   *Creation and Purposes of the Asbestos Trust* ..................................25

Section 4.02.   *Appointment of Asbestos Trustee* ......................................................26

Section 4.03.   *Appointment of Delaware Trustee* .....................................................26

Section 4.04.   *Trust Advisory Committee* .................................................................26

Section 4.05.   *Legal Representative for Demand Holders* ........................................26

Section 4.06.   *Assumption of Certain Liabilities by the Asbestos Trust* ................27

Section 4.07.   *Transfer of Asbestos Insurance Rights* .............................................27

Section 4.08.   *Funding of the Asbestos Trust* ..........................................................27

Section 4.09.   *Securing Payment and Performance Under the Trust Note* ........................28

Section 4.10.   *Vesting of Asbestos Trust Assets* ......................................................28

Section 4.11.   *Earn Out Payments* ...........................................................................28

Section 4.12.   *Financial Reporting and Disclosures* ...............................................30

Section 4.13.   *Actions Against the Reorganized Debtor to Obtain the Benefits of Asbestos Insurance Coverage* ..................................................................30

Section 4.14.   *Actions Against Non-Settling Asbestos Insurers to Obtain the Benefits of Asbestos Insurance Coverage* ......................................................31

Section 4.15.   *Limitations on Recoveries of Insurance Coverage from Non-Settling Asbestos Insurers* ...........................................................................32

Section 4.16.   *Subordination of Related-Party Payments and Related-Party Claims* .........32

Section 4.17.   *Preservation of Asbestos-Related Defenses* ....................................33

Section 4.18.   *Books and Records* ...............................................................33

ARTICLE V.   IMPLEMENTATION OF THE PLAN ..............................................33

Section 5.01.   *Substantive Consolidation* ......................................................33

Section 5.02.   *Corporate Governance* ...........................................................34

Section 5.03.   *Supersedeas Bonds and Payment Assurances* ...............................35

Section 5.04.   *Withholding of Taxes* ............................................................35

Section 5.05.   *Transfer Taxes* ...................................................................36

Section 5.06.   *Recordable Order* .................................................................36

Section 5.07.   *Authority of the Debtors* .........................................................36

ARTICLE VI.   VOTING AND DISTRIBUTIONS UNDER THE PLAN ............................36

Section 6.01.   *Classes Eligible to Vote* .........................................................36

Section 6.02.   *Class 6 and 7 Acceptance Requirements* .......................................36

Section 6.03.   *Voting on Basis of Substantive Consolidation* ...............................37

Section 6.04.   *Issuance of Asbestos Permanent Channeling Injunction Pursuant to Section 524(g) of the Bankruptcy Code* ..........................................37

Section 6.05.   *Nonconsensual Confirmation* ....................................................37

Section 6.06.   *Distributions Under the Plan* ....................................................37

Section 6.07.   *Time Bar to Distributions by Check* ............................................38

Section 6.08.   *Distributions After the Effective Date* .........................................38

Section 6.09.   *Setoffs* ...........................................................................38

Section 6.10.   *Cancellation of Existing Instruments and Other Documents Evidencing Claims* ...............................................................39

Section 6.11.   *Allocation of Plan Distributions Between Principal and Interest* .................39

Section 6.12.   *Tax Obligations and Reporting Requirements* ...............................39

ARTICLE VII.   TREATMENT OF DISPUTED, CONTINGENT, OR UNLIQUIDATED NON-ASBESTOS CLAIMS UNDER THE PLAN .........39

| | | |
|---|---|---|
| Section 7.01. | *Objections to Claims; Prosecution of Disputed Claims* | 39 |
| Section 7.02. | *Estimation of Individual Claims* | 39 |
| Section 7.03. | *Cumulative Remedies* | 40 |
| Section 7.04. | *No Distributions Pending Allowance or Motion* | 40 |
| Section 7.05. | *Distributions After Allowance* | 40 |
| ARTICLE VIII. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 40 |
| Section 8.01. | *General Treatment* | 40 |
| Section 8.02. | *Assumption of Insurance Policies* | 41 |
| Section 8.03. | *Letters of Credit, Surety Bonds, and Guaranties* | 41 |
| Section 8.04. | *Cure of Defaults and Survival of Contingent Claims* | 41 |
| Section 8.05. | *Deadline for Filing Rejection Damages Claims* | 42 |
| Section 8.06. | *Contracts and Leases with Related Parties* | 42 |
| Section 8.07. | *Effect of Confirmation* | 42 |
| ARTICLE IX. | DISCHARGE, RELEASES, AND INJUNCTIONS | 43 |
| Section 9.01. | *Binding Effect* | 43 |
| Section 9.02. | *Title to Assets* | 43 |
| Section 9.03. | *Discharge of Claims* | 43 |
| Section 9.04. | *Discharge Injunction* | 43 |
| Section 9.05. | *Asbestos Permanent Channeling Injunction* | 43 |
| Section 9.06. | *Settling Asbestos Insurer Injunction* | 45 |
| Section 9.07. | *Asbestos Insurer Injunction* | 45 |
| Section 9.08. | *Term of Existing Injunctions or Stays* | 47 |
| Section 9.09. | *Injunction Against Interference with Plan of Reorganization* | 47 |
| Section 9.10. | *Exculpation* | 47 |
| Section 9.11. | *Settlement and Release of Certain Avoidance Actions and Estate Causes of Action* | 47 |
| Section 9.12. | *Reservation of Rights* | 48 |
| ARTICLE X. | CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN | 48 |
| Section 10.01. | *Conditions to Confirmation* | 48 |
| Section 10.02. | *Conditions Precedent to Effective Date of the Plan* | 50 |
| Section 10.03. | *Completed Delivery of the Asbestos Trust Assets* | 51 |

Section 10.04.    *Waiver of Conditions Precedent* ........................................................52

ARTICLE XI.    RETENTION OF JURISDICTION...................................................52

Section 11.01.    *Retention of Jurisdiction* ..................................................................52

Section 11.02.    *Non-Core Proceedings* ......................................................................54

Section 11.03.    *Other Proceedings* .............................................................................54

ARTICLE XII.    MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN .........54

Section 12.01.    *Plan Modification* ..............................................................................54

Section 12.02.    *Revocation, Withdrawal, or Non-Consummation* .........................55

ARTICLE XIII.    MISCELLANEOUS PROVISIONS..................................................55

Section 13.01.    *Expedited Tax Determination* ...........................................................55

Section 13.02.    *Exemption from Registration* ...........................................................55

Section 13.03.    *Statutory Committee and Legal Representative* .............................55

Section 13.04.    *Effective Date Actions Simultaneous* ...............................................56

Section 13.05.    *Substantial Consummation* ..............................................................56

Section 13.06.    *Sections 1125 and 1126 of the Bankruptcy Code* .........................56

Section 13.07.    *Deemed Acts* ......................................................................................57

Section 13.08.    *Binding Effect* ....................................................................................57

Section 13.09.    *Exhibits/Schedules* ............................................................................57

Section 13.10.    *Entire Agreement* ..............................................................................57

Section 13.11.    *Reservation of Rights* ........................................................................57

Section 13.12.    *Further Assurances* ...........................................................................57

Section 13.13.    *Further Authorizations* .....................................................................57

Section 13.14.    *Notices and Deliveries* .......................................................................57

Section 13.15.    *Asbestos Trust Annual Report* ..........................................................58

Section 13.16.    *Inconsistencies* ..................................................................................58

EXHIBIT A:  ASBESTOS TRUST AGREEMENT

EXHIBIT B:  COOPERATION AGREEMENT

EXHIBIT C:  LOAN AND SECURITY AGREEMENT

EXHIBIT D:   NOTE ISSUANCE AGREEMENT

EXHIBIT E:   PLEDGE AND SECURITY AGREEMENT

EXHIBIT F:  TRUST DISTRIBUTION PROCEDURES

## INTRODUCTION

The Plan Proponents hereby propose the following prenegotiated chapter 11 plan of reorganization for the Debtors in accordance with section 1121(a) of title 11 of the United States Code. Capitalized terms used in this prenegotiated plan of reorganization and not otherwise defined shall have the meanings ascribed to them in Section 1.01 hereof.

**This Plan provides, among other things, for the issuance of Injunctions under section 105(a) or section 524(g) of the Bankruptcy Code that will, among other things, result in the channeling of certain asbestos-related liabilities of the Debtors (excluding liabilities for worker compensation claims) to a newly created Asbestos Trust, as more fully described herein. The terms, conditions, and Entities subject to the Injunctions are set forth in Article IX of this Plan. Except as expressly permitted under the terms of the Injunctions, the Injunctions will prohibit any acts to collect, recover, or offset any asbestos-related liabilities of the Debtors against any Debtor, the Reorganized Debtor, certain specified third parties, and various persons or entities related to such parties. Under section 524(g), all distributions paid under this Plan to holders of Asbestos Claims and Demands will be the responsibility of the Asbestos Trust, and the Debtors and Reorganized Debtor shall have no further personal liability for such claims. In addition, subject to the conditions set forth in Article IV of this Plan, holders of Asbestos Claims and Demands may bring an action against the Reorganized Debtor or a Non-Settling Asbestos Insurer solely to obtain the benefits of Asbestos Insurance Coverage. All other claims against the Debtors, with only certain exceptions, will receive distributions from a Disbursing Agent appointed in accordance with this Plan. The general description of this Plan is qualified in its entirety by the terms, conditions, and definitions set forth below.**

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION,COMPUTATION OF TIME, AND GOVERNING LAW

Section 1.01.    *Defined Terms*.  As used in the Plan, capitalized terms have the meanings ascribed to them below. Any capitalized term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

(1)    "*Adjusted EBITDA*" means the consolidated earnings of the Reorganized Debtor and Duro Dyne Canada (a) before interest, taxes, depreciation, and amortization; (b) before deduction of losses or addition of gains associated with non-cash extraordinary, non-recurring, and legacy items; and (c) before deduction of Related-Party Payments. The components of "Adjusted EBITDA," as defined herein, shall be calculated with respect to the Reorganized Debtor and Duro Dyne Canada on a consolidated basis in accordance with generally accepted accounting principles as in effect in the United States of America from time to time, consistently applied in the period in which a calculation is performed.

(2)    "*Administrative Claim*" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:

(a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial, advisory, accounting, and other services, and reimbursement of expenses Allowed pursuant to sections 328, 330(a), 331, or 363 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and through the Effective Date; (c) all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the United States Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.  For the avoidance of doubt, the term "Administrative Claim" includes Professional Claims, as defined herein.

(3)     "*Affiliate*" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

(4)     "*Agent*" means any shareholder, director, officer, employee, partner, principal, member, agent, attorney, accountant, advisor, or other representative of any person or Entity, but solely in their respective capacities as such and not in any other capacity.

(5)     "*Allowed*" means:

(a)     with reference to any Claim (other than an Administrative Claim, Asbestos Claim or Bonded Claim), (i) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (ii) any Claim allowed pursuant to the terms hereof for the purpose of granting the holder of such Claim the right to receive a Distribution on account of such Claim; (iii) any timely filed Claim that is not disputed or as to which no objection to allowance has been timely interposed in accordance with Section 7.01 of the Plan; or (iv) any Claim that, if disputed or listed on the Schedules as contingent or unliquidated, has been allowed under section 502 of the Bankruptcy Code by Final Order; *provided, however*, that Claims allowed solely for the purpose of voting on the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder; and *provided further* that unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from or after the Petition Date;

(b)     with reference to any Administrative Claim, any such Claim that is allowed pursuant to the terms of (i) a Final Order; (ii) an agreement by and between the holder of such Claim and the Debtors or Reorganized Debtor, as applicable; or (iii) the Plan;

(c)     with reference to any Bonded Asbestos Personal Injury Claim, or any Claim that qualifies as a Bonded Asbestos Personal Injury Claim under the applicable definitions of the Plan, but only to the extent that the Bankruptcy Court or other court of competent jurisdiction determines by Final Order, or each of the Plan Proponents and the holder of such Claim agree, that such holder is entitled to some or all of the proceeds of the applicable supersedeas bond or other payment assurance; or

(d)    with reference to any Bonded Non-Asbestos Claim, or any Claim that qualifies as a Bonded Non-Asbestos Claim under the applicable definitions of the Plan, but only to the extent that the Bankruptcy Court or other court of competent jurisdiction determines by Final Order, or the applicable Debtor and the holder of such Claim agree, that such holder is entitled to some or all of the proceeds of the applicable supersedeas bond or other payment assurance.

(6)    "*Allowed Amount*" means the liquidated amount of an Allowed Claim (other than an Asbestos Claim).

(7)    "*Asbestos Claim*" means any (a) Asbestos Personal Injury Claim, (b) Indirect Trust Claim, or (c) any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting the proceeds of any supersedeas bond or other payment assurance to which the holder of such Claim is determined to be entitled by (i) Final Order of the Bankruptcy Court or other court of competent jurisdiction or (ii) agreement of each of the Plan Proponents and the holder of such Claim; *provided, however*, that, for the avoidance of doubt, the term "Asbestos Claim" shall not include or pertain to an Administrative Claim, a Bonded Claim, an Employee Benefit Claim, a General Unsecured Claim, an Intercompany Claim (even if such Claim would constitute an Indirect Trust Claim if it arose in favor of a non-Affiliate), a Priority Non-Tax Claim, a Priority Tax Claim, a Related-Party Claim, or a Worker Compensation Claim; and *provided further* that the term "Asbestos Claim" shall not include a Prepetition Defense-Cost Contribution Claim.

(8)    "*Asbestos Claimants Committee*" means, as applicable, (a) the group of law firms organized prior to the Petition Date to represent certain current asbestos personal injury claimants in connection with the negotiation of the Plan; or (b) after the Petition Date, the official committee of unsecured asbestos creditors appointed by the United States Trustee in the Chapter 11 Cases that is composed of asbestos personal injury claimants or their representatives. Prior to the Petition Date, the Asbestos Claimants Committee consisted of the following law firms:  Brayton Purcell, LLP; Cooney & Conway; Early Lucarelli Sweeney & Meisenkothen; The Ferraro Law Firm; Gori Julian & Associates, PC; Simmons Hanly Conroy LLC; and Weitz & Luxenberg PC.

(9)    "*Asbestos Insurance Coverage*" means all rights, title, privileges, interests, claims, demands, benefits, entitlements to Proceeds, or payments under any Asbestos Insurance Policy relating to any Channeled Asbestos Claim.

(10)    "*Asbestos Insurance Litigation*" means any claims, counterclaim, demand, or cause of action of any of the Debtors or the Asbestos Trust against an Asbestos Insurer, including any Asbestos Insurance Policy Claims of a Debtor, and shall include *North River Insurance Co. v. Duro Dyne National Corp.*, No. 13-62947 (N.Y. Sup. Ct. Suffolk Cnty. Sept. 19, 2013).

(11)    "*Asbestos Insurance Policy*" means any insurance policy that provides or potentially provides for Asbestos Insurance Coverage; *provided, however*, that the term "Asbestos Insurance Policy" shall not include any rights or obligations under any insurance

policy to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for Worker Compensation Claims.

(12)    "*Asbestos Insurance Policy Claim*" means any claim against any Asbestos Insurer based on, arising under, or attributable to any Asbestos Insurance Policy or Asbestos Insurance Settlement, including any claim (a) for declaratory relief, (b) for "bad faith" or extra-contractual liability, (c) under section 11580 of the California Insurance Code, its subdivisions, or any related or similar statute in any jurisdiction, (d) for Asbestos Insurance Coverage, damages, or equitable relief attributable to any Asbestos Insurance Policy, or (e) for contribution, reimbursement, indemnity, or subrogation based on, arising from, or attributable to any Asbestos Insurance Policy.

(13)    "*Asbestos Insurance Settlement*" means (a) each agreement between any Debtor and an Asbestos Insurer that is listed in Schedule 1.01(13) of the Plan Supplement, including any ancillary agreements to such agreements; and (b) each agreement (i) that an Asbestos Insurer and one or more of the Debtors have entered into within fourteen (14) days after entry of an order by the District Court (A) confirming the Plan, or (B) affirming on appeal an order of the Bankruptcy Court confirming the Plan; (ii) that the Asbestos Claimants Committee and the Legal Representative have consented to and determined in writing to be sufficiently comprehensive to warrant that such Asbestos Insurer receive the protections provided under section 105(a) or section 524(g) of the Bankruptcy Code; and (iii) that is approved by a Final Order of the Bankruptcy Court.

(14)    "*Asbestos Insurance Rights*" means any and all of each Debtor's rights, title, privileges, interests, claims, demands, or entitlements to any Proceeds, payments, initial or supplemental dividends, scheme payments, supplemental scheme payments, state guaranty fund payments, causes of action, and choses in action under, for, or related to the following:  (a) the Asbestos Insurance Settlements; (b) the Asbestos Insurance Policies; (c) Asbestos Insurance Litigation; or (d) Asbestos Insurance Coverage.  For the avoidance of doubt, the term "Asbestos Insurance Rights" shall *not* include any cause of action or right to bring a cause of action held by any Channeled Asbestos Claimant directly against any Asbestos Insurer on account of such claimant's Channeled Asbestos Claim, all of which shall be retained by the Channeled Asbestos Claimants (subject, however, to the applicable terms of the Injunctions), and shall not be transferred to the Asbestos Trust.

(15)    "*Asbestos Insurer*" means any Entity that has issued or is responsible for or liable to pay under an Asbestos Insurance Policy, and each of its Affiliates, predecessors in interest, and Agents, but only in relation to such Asbestos Insurance Policy.

(16)    "*Asbestos Insurer Injunction*" means the supplemental injunction issued under section 105(a) of the Bankruptcy Code that is set in Section 9.07 hereof.

(17)    "*Asbestos Permanent Channeling Injunction*" means the injunction issued under section 524(g) of the Bankruptcy Code that is set forth in Section 9.05 hereof.

(18)   "*Asbestos Personal Injury Claim*" means any Claim whenever and wherever arising or asserted against a Debtor, or for which a Debtor is liable, whether in the nature of or sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, for or arising by reason of, directly or indirectly, physical, emotional, bodily, or other personal injury, death, or damages arising from personal injury or death (including any claim or demand for compensatory damages; loss of consortium; proximate, consequential, general, special, or punitive damages; or reimbursement, indemnity, contribution, or subrogation), whether or not diagnosable or manifested before Confirmation or the close of the Chapter 11 Cases, caused or allegedly caused, in whole or in part, directly or indirectly, (a) by asbestos or asbestos-containing products manufactured, supplied, distributed, handled, fabricated, stored, sold, installed, or removed by a Debtor or (b) by services, actions, or operations provided, completed, or taken by a Debtor with respect to asbestos or asbestos-containing products; *provided, however*, that, for the avoidance of doubt, the term "Asbestos Personal Injury Claim" shall not include or pertain to an Administrative Claim, a Bonded Claim, an Employee Benefit Claim, a General Unsecured Claim, an Intercompany Claim, a Priority Non-Tax Claim, a Priority Tax Claim, a Related-Party Claim, or a Worker Compensation Claim; and *provided further* that the term "Asbestos Personal Injury Claim" shall not include a Prepetition Defense-Cost Contribution Claim.

(19)   "*Asbestos-Related Defenses*" means any legal, equitable, or contractual defense that a Debtor has or may have under applicable nonbankruptcy law to the validity or amount of, or liability for, any Channeled Asbestos Claim, including any applicable statutes of limitation or repose.

(20)   "*Asbestos Trust*" means the Duro Dyne Asbestos Personal Injury Trust established pursuant to the Plan and the Asbestos Trust Agreement.

(21)   "*Asbestos Trust Agreement*" means the agreement, effective as of the Effective Date, in substantially the form attached hereto as Exhibit A, to be entered into by and among the Debtors, the Asbestos Claimants Committee, the Legal Representative, the Trust Advisory Committee, and the Asbestos Trustee in connection with the formation of the Asbestos Trust.

(22)   "*Asbestos Trust Assets*" means, collectively, (a) the Debtors' Contribution; (b) the Hinden Contribution; (c) the Asbestos Trust's rights under the Trust Note, the Note Issuance Agreement, the Pledge and Security Agreement, the Bay Shore Mortgage, and the Fairfield Mortgage; (d) the Asbestos Trust's rights in and to the Earn Out Payments; (e) the Asbestos Insurance Rights; (f) the Asbestos-Related Defenses; and (g) following the transfer and vesting of the foregoing pursuant to Article IV hereof, any Proceeds thereof and earnings and income thereon.

(23)   "*Asbestos Trust Expenses*" means any liabilities, costs, taxes, or expenses of, imposed upon, or in respect of the Asbestos Trust or, on and after the Effective Date, the Asbestos Trust Assets, except for payments to Channeled Asbestos Claimants on account of such Channeled Asbestos Claims.

(24)   "*Asbestos Trustee*" means any individual appointed by the Bankruptcy Court to serve as a trustee of the Asbestos Trust, pursuant to the terms of the Plan, the Confirmation

Order, and the Asbestos Trust Agreement, or who subsequently may be appointed pursuant to the terms of the Asbestos Trust Agreement.

(25)    "*Avoidance Actions*" means any avoidance or recovery action under any of sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, whether or not litigation has been commenced with respect to such action as of the Effective Date.

(26)    "*Bankruptcy Code*" means title 11 of the United States Code, as amended from time to time.

(27)    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the District Court.

(28)    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075, as well as the general and local rules of the Bankruptcy Court.

(29)    "*Bay Shore Lease*" means that certain Agreement of Lease pertaining to the Bay Shore Property, dated as of June 1, 2015, by and between Duro Dyne Spence LLC as owner and landlord and Duro Dyne Corporation as tenant.

(30)    "*Bay Shore Mortgage*" means that certain instrument, in substantially the form attached as Exhibit 1 to the Note Issuance Agreement, that will evidence and constitute a Lien on the Bay Shore Property to secure payment and performance under the Trust Note.

(31)    "*Bay Shore Property*" means that certain real property owned by Duro Dyne Spence LLC and located at 81 Spence Street, Bay Shore, New York, and all buildings, structures, improvements, and fixtures thereon, now and hereafter existing.

(32)    "*Bonded Asbestos Personal Injury Claim*" means an Asbestos Personal Injury Claim evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was given or posted by a Debtor or an Affiliate as security for such Claim.

(33)    "*Bonded Claim*" means any Bonded Asbestos Personal Injury Claim or Bonded Non-Asbestos Claim, but shall not include the deficiency portion, if any, of any such Claims.

(34)    "*Bonded Non-Asbestos Claim*" means any Claim, other than an Asbestos Personal Injury Claim or Bonded Asbestos Personal Injury Claim, evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor or by an Affiliate as security for such Claim.

-6-

(35)    "*Business Day*" means a day other than a Saturday, a Sunday, or any other day on which the commercial banks in New York, New York are required or authorized to close by law or executive order.

(36)    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

(37)    "*Catch-Up Amount*" shall have the meaning ascribed to such term in the Note Issuance Agreement.

(38)    "*Catch-Up Payment*" shall have the meaning ascribed to such term in the Note Issuance Agreement.

(39)    "*Channeled Asbestos Claimant*" means a holder of a Channeled Asbestos Claim.

(40)    "*Channeled Asbestos Claims*" means, collectively, the Asbestos Claims and the Demands.

(41)    "*Chapter 11 Cases*" means, (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court or, (b) when used with reference to all Debtors, the jointly administered cases pending for the Debtors in the Bankruptcy Court under Case No. 18-27963(MBK).

(42)    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor or an Estate.

(43)    "*Class*" means a category of Claims or Equity Interests as set forth in <u>Article III</u> hereof.

(44)    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

(45)    "*Confirmation Date*" means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021 or on the docket of the District Court.

(46)    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code and granting other related relief.

(47)    "*Confirmation Order*" means the order or orders of the Bankruptcy Court or the District Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which will contain, *inter alia*, the Asbestos Permanent Channeling Injunction; *provided, however*, that if the District Court does not enter such an order confirming the Plan, then the term "Confirmation Order" shall include an order of the District Court affirming the Confirmation Order entered by the Bankruptcy Court.

(48)     "*Consummation*" means the occurrence of the Effective Date.

(49)     "*Cooperation Agreement*" means the Asbestos Trust Cooperation Agreement to be dated as of the Effective Date, substantially in the form attached hereto as <u>Exhibit B</u>.

(50)     "*DDC Pledge*" means the possessory Lien on or possessory security interest in 50.1% of the Duro Dyne Canada Stock, which Lien or security interest shall be granted to the Asbestos Trust in accordance with the Pledge and Security Agreement.

(51)     "*Debtor*" means any of the Debtors, each in its individual capacity as a debtor and debtor-in-possession in the Chapter 11 Cases.

(52)     "*Debtors*" means, collectively, Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp.

(53)     "*Debtors' Contribution*" means the Cash contribution to the Asbestos Trust, to be made by or on behalf of the Debtors in the amount of $7,500,000.

(54)     "*Deferral Amount*" shall have the meaning ascribed to such term in the Note Issuance Agreement.

(55)     "*Delaware Trustee*" means the Entity appointed in accordance with <u>Section 4.03</u> hereof to serve as the "Delaware Trustee" under the Plan and the Asbestos Trust Agreement.

(56)     "*Demand*" means a demand for payment, present or future, on or against a Debtor, which is referred to in section 524(g)(5) of the Bankruptcy Code, and that (a) was not a Claim during the Chapter 11 Cases, and (b) arises out of the same or similar conduct or events that gave rise to Asbestos Personal Injury Claims and is based on, arises from, or is attributable to asbestos-related personal injury or wrongful death.

(57)     "*Disbursing Agent*" means the Reorganized Debtor or the Entity or Entities chosen by the Reorganized Debtor to make or facilitate Distributions under the Plan.

(58)     "*Disclosure Statement*" means the written disclosure statement that relates to the Plan, including the exhibits and schedules thereto, as approved by the Bankruptcy Court after the Petition Date as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

(59)     "*Distribution*" means any payment or other distribution of Cash or other consideration made by the Disbursing Agent to the holder of an Allowed Claim on account of such Claim pursuant to the terms and provisions of the Plan; *provided, however*, that the term "Distribution" shall not include or pertain to any payment, transfer, or delivery of Cash, property,

or other consideration to the Asbestos Trustee, the Asbestos Trust, or any Channeled Asbestos Claimant.

(60)    "*District Court*" means the United States District Court for the District of New Jersey.

(61)    "*Duro Dyne Canada*" means Duro Dyne Canada Inc.

(62)    "*Duro Dyne Canada Stock*" means the "Voting Stock" (as defined in the Pledge and Security Agreement) of Duro Dyne Canada.

(63)    "*Duro Dyne Pension Plan*" means the frozen defined benefit single-employer pension plan for non-union employees sponsored by Debtor Duro Dyne National Corp. and known as the Duro Dyne National Corp. Pension Plan.

(64)    "*Earn Out Payments*" means the Cash payments made by the Reorganized Debtor to the Asbestos Trust, in accordance with Section 4.11 hereof.

(65)    "*Effective Date*" means the date specified by the Plan Proponents in a notice filed with the Bankruptcy Court as the date on which this Plan shall take effect, which date shall be not more than ten (10) Business Days after the date on which the all conditions precedent specified in Section 10.02 of this Plan have been satisfied (or waived in accordance with Section 10.04 of the Plan).

(66)    "*Employee Benefit Claim*" means any Claim, including accrued but unpaid pension Claims from and after the Petition Date, for compensation or benefits arising out of a claimant's employment with a Debtor, but only to the extent and amount provided for under a written benefit plan sponsored by a Debtor or an Affiliate on or before the Petition Date, including any Claims and liabilities owed or owing as Withdrawal Liability Claims or pursuant to the Duro Dyne Pension Plan or the Sheet Metal Workers' National Pension Fund (including, for the avoidance of doubt, Sheet Metal Workers' National Pension Fund Withdrawal Liability Claims); *provided, however,* that the term "Employee Benefit Claim" shall not include or pertain to Channeled Asbestos Claims, Prepetition Defense-Cost Contribution Claims, Priority Non-Tax Claims, Worker Compensation Claims, and any other Claims for damages or other relief asserted by a current or former employee of a Debtor that is not for compensation or benefits in an amount permitted pursuant to a written benefit plan sponsored by a Debtor or an Affiliate on or before the Petition Date.

(67)    "*Entity*" means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association, a Governmental Unit or subdivision thereof, including the United States Trustee, or any other entity, whether acting in an individual, fiduciary, or other capacity.

(68)    "*Equity Interest*" means shares of capital stock or equity, equity securities, membership interests, or ownership interests in any Entity or any rights arising out of, attributable to, or based upon any of the foregoing, including any (a) options, warrants, or other rights to purchase or acquire any such stock, equity, or interests (whether or not at the time exercisable) or (b) securities by their terms convertible or exchangeable for any such stock, equity, or interests (whether or not at the time so convertible or exchangeable) or options, warrants, or rights to purchase such convertible or exchangeable securities.

(69)    "*Estate*" means the estate created for each Debtor by section 541 of the Bankruptcy Code upon the commencement of its Chapter 11 Case.

(70)    "*Estate Causes of Action*" means (a) any and all claims that are or would have been property of a Debtor's Estate or which a Debtor is or would have been entitled to prosecute as a debtor-in-possession arising under nonbankruptcy law based on or attributable to any allegedly preferential or fraudulent transfers or based on or attributable to any allegedly unlawful payments or transfers or distributions of property made by or on behalf of any Debtor; (b) any and all claims that are or would have been property of a Debtor's Estate or which a Debtor is or would have been entitled to prosecute as a debtor-in-possession, regardless of the legal theory upon which such claims may be predicated, for which an Entity is asserted to be or to have been derivatively liable for any Asbestos Claim, including any claims based on a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, malpractice, breach of fiduciary duty, waste, fraud, or conspiracy; and (c) any and all claims in clauses (a) and (b) above where, in the absence of the Chapter 11 Cases, such claims might, under the substantive law of any jurisdiction, have been treated as claims maintainable not only by a Debtor or a Debtor's Estate, but by creditors of or claimants against a Debtor.

(71)    "*Fairfield Lease*" means that certain lease pertaining to the Fairfield Property, dated as of August 1, 1991, by and between ISWR Ohio LLC as owner and landlord and Duro Dyne Midwest Corp. as tenant, as modified by that certain Lease Modification Agreement, dated January 18, 2011, by and between the same aforesaid parties.

(72)    "*Fairfield Mortgage*" means that certain instrument, in substantially the form attached as <u>Exhibit 2</u> to the Note Issuance Agreement, that will evidence and constitute a Lien on the Fairfield Property to secure payment and performance under the Trust Note.

(73)    "*Fairfield Property*" means that certain real property owned by ISWR Ohio LLC and located at 3825 Symmes Road, Fairfield, Ohio 45011, and all buildings, structures, improvements, and fixtures thereon, now and hereafter existing.

(74)    "*Final Order*" means an order or judgment of the Bankruptcy Court, or any other court of competent jurisdiction, as to which the time to appeal; petition for certiorari; or move for reconsideration, rehearing, or retrial has expired and as to which no appeal; petition for a writ of certiorari; or other proceedings for reconsideration, rehearing, or retrial shall have been filed; and if an appeal; writ of certiorari; or reconsideration, rehearing, or retrial thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed or

certiorari, reconsideration, rehearing, or retrial shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal; petition for a writ of certiorari; or move for reconsideration, rehearing, or retrial shall have expired; *provided, however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 60 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 9024), or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order or judgment shall not cause such order or judgment not to be a "Final Order" hereunder; and *provided further, however*, that notwithstanding the filing of a motion under Rule 59 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 9023) with respect to such order or judgment, the Plan Proponents shall be authorized jointly to deem any such order or judgment a Final Order.

(75)    "*General Unsecured Claim*" means any Claim, regardless of whether such Claim is covered by insurance, to the extent that such Claim is neither secured nor entitled to a priority under applicable law, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) any portion of a Claim that is not a Secured Claim (*i.e.*, a deficiency claim); (c) any deficiency portion of a Bonded Non-Asbestos Claim remaining after crediting the proceeds of a supersedeas bond or other payment assurances to which the holder of such Claim is determined to be entitled by Final Order or by agreement of the holder of such Claim and the applicable Debtor or Reorganized Debtor; and (d) any Claim arising from the provision of goods or services to the Debtors prior to the Petition Date, including any Claim of a commercial trade creditor; *provided however,* that unless otherwise specifically provided herein, the term "General Unsecured Claim" shall not include or pertain to an Administrative Claim, an Asbestos Claim, a Bonded Claim, an Employee Benefit Claim, an Intercompany Claim, a Prepetition Defense-Cost Contribution Claim, a Priority Non-Tax Claim, a Priority Tax Claim, a Related-Party Claim, or a Worker Compensation Claim.

(76)    "*Hinden Contribution*" means the Cash contribution to the Asbestos Trust, to be made by or on behalf of the Hinden Family Members and the Hinden Family Entities in the total amount of $3,000,000.

(77)    "*Hinden Family Entities*" means Duro Dyne Canada, Inc., 4 Site LLC, Rize Enterprises LLC, Rize Enterprises Canada Inc., Pro4ma LLC, Pro4ma II LLC, Foma LLC, ISWR Ohio LLC, Duro Dyne Spence LLC, The Irene Lee Hinden Trust, The Wendy Lynn Geller Trust, The Randall Scott Hinden Trust, and The Hinden Grandchildren Trust, the estate of Sheryl Blumenthal, and the trusts created under the will of Sheryl Blumenthal.

(78)    "*Hinden Family Members*" means Randall Hinden, Wendy Hinden, Irene Hinden, David Brett Krupnick, Lindsay Jill Trant, Tobey Hinden Geller, Joshua Blumenthal, Jessie Geller Cawley, Abby Beth Wein, Hayley Rebekah Geller, and Max Hinden.

(79)    "*Indirect Trust Claim*" means any Claim, now existing or hereafter arising, that is (a) held by an Entity that has been, is, or may be a defendant in an action seeking damages for death, bodily injury, sickness, disease, or other personal injuries (whether physical, emotional, or otherwise) to the extent based on, arising out of, or attributable to an Asbestos Personal Injury Claim, and (b) on account of alleged liability of a Debtor for reimbursement, indemnification,

subrogation, or contribution of any portion of any damages such Entity has paid or may pay on account of physical, emotional, bodily, or other personal injury, death, or damages arising from personal injury or death (including any claim or demand for compensatory damages; loss of consortium; proximate, consequential, general, special, or punitive damages; or reimbursement, indemnity, contribution, or subrogation), whether or not diagnosable or manifested before Confirmation or the close of the Chapter 11 Cases, caused or allegedly caused, in whole or in part, directly or indirectly (i) by asbestos or asbestos-containing products manufactured, supplied, distributed, handled, fabricated, stored, sold, installed, or removed by a Debtor or (ii) by services, actions, or operations provided, completed, or taken by a Debtor with respect to asbestos or asbestos-containing products; *provided, however,* that, for the avoidance of doubt, the term "Indirect Trust Claim" shall not include or pertain to an Administrative Claim, a Bonded Claim, an Employee Benefit Claim, a General Unsecured Claim, an Intercompany Claim, a Priority Non-Tax Claim, a Priority Tax Claim, a Related-Party Claim, or a Worker Compensation Claim; and *provided further* that the term "Indirect Trust Claim" shall not include a Prepetition Defense-Cost Contribution Claim.

(80)    "*Injunctions*" mean the Asbestos Channeling Injunction, the Asbestos Insurer Injunction, and the Settling Asbestos Insurer Injunction.

(81)    "*Impaired*" means a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(82)    "*Intercompany Claim*" means (i) any account reflecting intercompany book entries by one Debtor with respect to any other Debtor, or (ii) any Claim that is not reflected in such book entries and is held by a Debtor against any other Debtor, in each case accruing before or after the Petition Date through the Effective Date, including any Claim for reimbursement, payment as guarantor or surety, or any Claim for contribution or expenses that were allocable between the Debtors.

(83)    "*Intercreditor Agreement*" means an intercreditor agreement between the Asbestos Trust and the Senior Lender, relating to the respective rights of the Asbestos Trust and the Senior Lender in connection with the Trust Note and the Senior Lending Facility.

(84)    "*Legal Representative*" means Lawrence Fitzpatrick, who was engaged by the Debtors to represent the holders of Demands prior to the Petition Date for the purposes of negotiating the Plan.    After the Petition Date, the "Legal Representative" shall mean Mr. Fitzpatrick (or any court-appointed alternative or successor), in his capacity as the court-appointed legal representative for all holders of Demands pursuant to section 524(g) of the Bankruptcy Code.

(85)    "*Lien*" means, with respect to any asset, any mortgage, lien, pledge, charge, encumbrance, hypothecation, security interest, or assignment of any kind or nature in respect of such asset, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction.

(86)    "*Loan and Security Agreement*" means that certain loan and security agreement dated as of the Effective Date, between the Reorganized Debtor (as Borrower thereunder) and the Senior Lender, setting forth the terms and provisions governing the Senior Lending Facility, together with all of the exhibits and schedules thereto and all documents necessary to implement or secure the Senior Lending Facility in substantially the form attached hereto as Exhibit C

(87)    "*Local 210 Unity Pension Fund*" means the Unity Pension Fund-Local 210, a multiemployer pension plan.

(88)    "*LTM Adjusted EBITDA*" means Adjusted EBITDA during the immediately preceding twelve (12) calendar months.

(89)    "*Non-Settling Asbestos Insurer*" means an Asbestos Insurer that is not a Settling Asbestos Insurer.

(90)    "*Note Issuance Agreement*" means the Note Issuance and Security Agreement, in substantially the form attached hereto as Exhibit D, to be dated as of the Effective Date, by and among the Reorganized Debtor, Duro Dyne Spence LLC, ISWR Ohio LLC, and the Asbestos Trust

(91)    "*Petition Date*" means the date on which the Debtors file their respective voluntary petitions under section 301 of the Bankruptcy Code to commence their respective Chapter 11 Cases.

(92)    "*Plan*" means this Second Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., *et al.*, Under Chapter 11 of the Bankruptcy Code, as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

(93)    "*Plan Documents*" means, collectively, (a) the Plan, (b) the Disclosure Statement, (c) the Asbestos Trust Agreement, (d) the Trust Distribution Procedures, (e) the Plan Supplement, (f) all of the exhibits and schedules attached to any of the foregoing, and (g) any other document or instrument necessary to implement the Plan.

(94)    "*Plan Proponents*" means the Debtors, the Asbestos Claimants Committee, and the Legal Representative.

(95)    "*Plan Supplement*" means the supplement to the Plan containing exhibits and schedules to the Plan, which will be served with the Disclosure Statement in connection with the solicitation of votes on the Plan.

(96)    "*Pledge and Security Agreement*" means the Pledge and Security Agreement, in substantially the form attached hereto as Exhibit E, to be dated as of the Effective Date, by and among the shareholders of the Reorganized Debtor and Duro Dyne Canada and the Asbestos Trust.

(97)    "*Prepetition Defense-Cost Contribution Claim*" means a Claim asserted by an Asbestos Insurer for reimbursement for one or more of the Debtors' share of defense costs (a) that arise from or are attributable to an Asbestos Personal Injury Claim and (b) that were incurred prior to the Petition Date.

(98)    "*Priority Non-Tax Claim*" means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under section 507(a) of the Bankruptcy Code.

(99)    "*Priority Tax Claim*" means any Claim of a Governmental Unit against the Debtors entitled to a priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

(100)    "*Proceeds*" means all cash, interest, profits, dividends, proceeds, products, and rents earned, accrued, collected, derived, received, or recovered on account of the liquidation, sale, transfer, enforcement, or other disposition of property, including all "proceeds" as defined under section 9-102(64) of the Uniform Commercial Code, and all proceeds on proceeds.

(101)    "*Professional Claim*" means any Claim for an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

(102)    "*Protected Parties*" means each of the following:

(a)    the Debtors;

(b)    the Reorganized Debtor;

(c)    any current or former Affiliate of each of the Debtors or Reorganized Debtor, only to the extent that any liability is asserted to exist as a result of such Entity's being or having been an Affiliate;

(d)    each of the Hinden Family Members, only to the extent that any liability is asserted to exist as a result of such Hinden Family Member (i) being or having been an Affiliate of a Debtor or the Reorganized Debtor, (ii) owning or having owned a financial interest in a Debtor or the Reorganized Debtor, (iii) being or having been involved in the management of a Debtor or the Reorganized Debtor, or (iv) serving or having served as an officer, director, or employee of a Debtor or the Reorganized Debtor;

(e)    each of the Hinden Family Entities, only to the extent that any liability is asserted to exist as a result of such Hinden Family Entity (i) being or having been an Affiliate of a Debtor or the Reorganized Debtor, (ii) owning or having owned a financial interest in a Debtor or the Reorganized Debtor, or (iii) being or having been involved in the management of a Debtor or the Reorganized Debtor; and

(f)    each Settling Asbestos Insurer identified on Schedule 1.01(102)(f) of the Plan Supplement, but only to the extent (i) provided by section 524(g) of the Bankruptcy Code in respect of any claim that arises by reason of one of the activities or relationships enumerated under section 524(g)(4)(A)(ii) of the Bankruptcy Code; and (ii) that the liability asserted to exist against such Settling Asbestos Insurer is the subject of a release in an Asbestos Insurance Settlement.

(103)    "*RDD Pledge*" means the possessory Lien on or possessory security interest in 50.1% of the Reorganized Duro Dyne Stock, which Lien or security interest shall be granted to the Asbestos Trust in accordance with the Pledge and Security Agreement.

(104)    "*Record Date*" means the record date for Distributions, as set forth in the Confirmation Order.

(105)    "*Related Parties*" means the Hinden Family Members, the Hinden Family Entities, any Affiliates of any of the foregoing, and any Affiliates of any of the Debtors or Reorganized Debtor.

(106)    "*Related-Party Claim*" means any Claim held by one or more Related Parties, including any such Claim that is based on, arises from, or is attributable to a lease or contract with a Debtor.

(107)    "*Related-Party Payment*" means any transfer of assets or cash made or to be made in the form of a dividend, redemption, or other distribution or payment to a Related Party or on account of any debt or obligation owed to, or Equity Interest held by, a Related Party, including (a) any base rental payment made on account of the Bay Shore Lease or the Fairfield Lease and (b) any other lease or rent payment made to a Related Party on account of or with respect to any property, plant, or equipment, but specifically excluding (i) Tax Distributions so long as, prior to and after giving effect to such Tax Distributions, no "Event of Default" (as defined in the Note Issuance Agreement) exists or is caused thereby; and (ii) other payments that are not retained at the discretion of a Related Party and as to which a Related Party serves or functions as a conduit for a transferee that is not a Related Party, including tax payments that are designated as "additional rent" under the Bay Shore Lease or the Fairfield Lease.

(108)    "*Reorganized Debtor*" means the Duro Dyne National Corp., as it exists on and after the Effective Date.

(109)    "*Reorganized Duro Dyne Stock*" means the "Voting Stock" (as defined in the Pledge and Security Agreement) of the Reorganized Debtor.

(110)    "*Schedules*" means the schedules, statements, and lists filed by each of the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been amended or supplemented from time to time.

(111)    "*Secured Claim*" means any Claim that is (a) secured, as of the Petition Date, by a Lien that is valid, perfected, and enforceable under applicable law and is not subject to avoidance

under the Bankruptcy Code or applicable nonbankruptcy law, or (b) subject to setoff under section 553 of the Bankruptcy Code, but with respect to both (a) and (b) above, only to the extent of the value, net of any senior Lien, of the Estate's interest in the assets or property securing any such Claim or the amount subject to setoff, as the case may be; *provided, however,* that the term "Secured Claim" shall not include or pertain to a Related-Party Claim even if the Related-Party Claim is secured by a Lien, is subject to setoff under section 553 of the Bankruptcy Code, or would otherwise satisfy this definition of "Secured Claim" if such Claim were not held by a Related Party.

(112)    "*Semiannual Payment Date*" shall have the meaning ascribed to such term in the Note Issuance Agreement.

(113)    "*Senior Lending Facility*" means an asset-based secured lending facility to be provided by Bank of America, N.A. on or before the Effective Date in the approximate sum of $9,950,000.

(114)    "*Senior Lender*" means Bank of America, N.A., in its capacity as lender under the Senior Lending Facility.

(115)    "*Settling Asbestos Insurer*" means an Asbestos Insurer that has entered into an Asbestos Insurance Settlement.

(116)    "*Settling Asbestos Insurer Injunction*" means the supplemental injunction issued under sections 105(a) and 524(g) of the Bankruptcy Code that is set forth in <u>Section 9.06</u> hereof.

(117)    "*Sheet Metal Workers' National Pension Fund*" means the Sheet Metal Workers' National Pension Fund, a multiemployer pension plan.

(118)    "*Sheet Metal Workers' National Pension Fund Withdrawal Liability Claims*" means Claims (if any) for full or partial withdrawal liability or otherwise to the extent due and owing to or asserted by the Sheet Metal Workers' National Pension Fund, the International Association of Sheet Metal, Air, Rail and Transportation Workers or SMART Local Union No. 170 of the Sheet Metal Workers' International Union in connection with the Debtors' termination of all remaining SMART Local Union No. 170 of the Sheet Metal Workers' International Union  employees on or about June 15, 2018 which thereby relieved the Debtors of any further employee contribution obligations on behalf of the SMART Local Union No. 170 of the Sheet Metal Workers' International Union to the Sheet Metal Workers' National Pension Fund.

(119)    "*Supersedeas Bond Action*" means any rights, defenses, counterclaims, or affirmative causes of action of any of the Debtors or their respective Estates with respect to a Bonded Claim, or with respect to any supersedeas bond or other form of security or payment assurance issued in connection with a Bonded Claim, or against the issuer or insurer of any payment assurance issued in connection with a Bonded Claim.

(120)   "*Tax Distribution*" means a distribution or dividend by the Reorganized Debtor to holders of Equity Interests in the Reorganized Debtor solely to the extent necessary to permit such holders to discharge their respective federal, state, and local income tax liabilities arising directly with respect to their Equity Interests in the Reorganized Debtor (and not in any Affiliate of the Reorganized Debtor), determined (a) based on the assumption that such holders are subject to the highest federal, state, and local income tax rates in effect at the time of such distribution; and (b) after taking into account all tax deductions, credits, refunds, or other benefits reasonably available or attributable to the Reorganized Debtor, including any such deductions, credits, refunds, or benefits arising from contributions to the Asbestos Trust or from net operating loss carrybacks or carryforwards resulting from such contributions.

(121)   "*Trust Advisory Committee*" or "*TAC*" means the committee established pursuant to Section 4.03 hereof and having the powers, duties and obligations set forth in the Asbestos Trust Agreement.

(122)   "*Trust Distribution Procedures*" or "*TDP*" means the procedures, in substantially the form attached hereto as Exhibit F, to be implemented by the Asbestos Trustee pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement to resolve, liquidate, and pay (if entitled to payment) Channeled Asbestos Claims as and to the extent set forth in such procedures.

(123)   "*Trust Note*" means that certain promissory note to be issued by the Reorganized Debtor to the Asbestos Trust, in the principal amount of $13,500,000, bearing interest at 7.15% per annum with a 20-year maturity, in substantially the form attached as Exhibit D to the Note Issuance Agreement.

(124)   "*Unimpaired*" means a Claim or Equity Interest, or a Class of Claims or Equity Interests, that is not Impaired under this Plan.

(125)   "*United States Trustee*" means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the District of New Jersey.

(126)   "*Withdrawal Liability Claim*" means (i) any Sheet Metal Workers' National Pension Fund Withdrawal Liability Claim and (ii) any Claim for withdrawal liability asserted by the Local 210 Unity Pension Fund and/or Local 210, Warehouse & Production Employees Union, AFL-CIO against Debtors related to the withdrawal of the Debtors from the Local 210 Unity Pension Fund on or about November 30, 2017.

(127)   "*Worker Compensation Claim*" means any Claim (a) for benefits under a government-mandated workers' compensation system, which a past, present, or future employee of any of the Debtors or their respective predecessors is receiving, or may in the future have a right to receive, or (b) for reimbursement, contribution, subrogation, or indemnity brought by any insurer or Governmental Unit as a result of payments made to or for the benefit of such employees under such a system and the fees and expenses incurred under any insurance policies or laws or regulations covering such employee claims.

Section 1.02.        *Rules of Interpretation*.  For purposes of this Plan:

(a)      in the appropriate context, each term, whether stated in the singular or in the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, or neuter gender;

(b)      any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions;

(c)      any definition or reference to any agreement, instrument, or other document, including the Bay Shore Lease and the Fairfield Lease, shall be construed as referring to such agreement, instrument, or other document as from time to time amended, supplemented, substituted, replaced, or otherwise modified (subject to any restrictions on such amendments, supplements, substitutions, replacements, or modifications set forth herein);

(d)      unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto;

(e)      unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(f)      the word "will" is to be construed to have the same meaning and effect as the word "shall," and vice-versa;

(g)      the words "includes" and "including" are not limiting;

(h)      captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof;

(i)      unless otherwise specified, the rules of construction in section 102 of the Bankruptcy Code shall apply hereto;

(j)      for purposes of computing time periods, whenever the Plan provides for an event to occur "*within*" a specified number of days of a preceding event, it shall mean that the latter event shall occur before the close of business on the last of the specified days, and the day on which the preceding event occurs shall not be included in the computed in the computation of days elapsed.  In addition, the word "*from*" means "from and including"; "*after*" means "after and excluding"; and "*to*" or "*until*" mean "to and including"; and

(k)      any immaterial effectuating provisions may be interpreted by the Plan Proponents in a manner that is consistent with the overall purpose and intent of the Plan, all without further notice or order of the Bankruptcy Court.

Section 1.03.    ***Computation of Time***.    Unless otherwise stated, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

Section 1.04.    ***Governing Law***.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

Section 1.05.    ***Reference to Monetary Figures***.    All references in the Plan to dollar amounts or other monetary figures refer to the currency of the United States of America, unless otherwise expressly provided.

Section 1.06.    ***Reference to the Debtors or the Reorganized Debtor***.    Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtor shall mean the Debtors and the Reorganized Debtor, as applicable, to the extent the context requires.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

Section 2.01.    ***Administrative Claims***

(a)    *Administrative Claims Other Than for Professional Compensation and Reimbursement*.    Except to the extent that any Entity entitled to payment of any Allowed Administrative Claim agrees to less favorable treatment with the Reorganized Debtor, each holder of an Allowed Administrative Claim (other than a Professional Claim) shall receive Cash in an amount equal to such Allowed Administrative Claim on the later of the Effective Date and the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as reasonably practicable; *provided, however*, that Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor shall be paid in full and performed by the applicable Reorganized Debtor in accordance with the terms and subject to any conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

(b)    *Bar Date for Administrative Claims Other Than Professional Claims.*    All parties seeking payment of an Administrative Claim (other than a Professional Claim) must file with the Bankruptcy Court and serve upon the Reorganized Debtor a request for payment of such Administrative Claim prior to the applicable deadline set forth below; *provided, however*, that parties seeking payment of postpetition ordinary course trade obligations, postpetition payroll obligations incurred in the ordinary course of a Debtor's postpetition business, and amounts arising under agreements approved by the Bankruptcy Court or the Plan need not file such a request. All holders of Administrative Claims (other than Professional Claims) must file with

the Bankruptcy Court and serve on the Debtors or the Reorganized Debtor, as applicable, a request for payment of such Claims so as to be received on or before 4:00 p.m. (Eastern Time) on the first Business Day after the date that is sixty (60) days after the Effective Date, unless otherwise agreed to by the appropriate Debtor or Reorganized Debtor, without further approval by the Bankruptcy Court. ***Failure to comply with these deadlines shall forever bar the holder of an Administrative Claim (other than a Professional Claim) from seeking payment thereof.*** Any holder of an Administrative Claim (other than a Professional Claim) that does not assert such Claim in accordance with this Section 2.01 shall have its Claim deemed disallowed under this Plan and be forever barred from asserting such Claim against any of the Reorganized Debtor, the Debtors, their Estates, or their assets. Any such Claim and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim.

(c)      *Professional Claims.*  Holders of Professional Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the first Business Day after the date that is thirty (30) calendar days after the Effective Date or by such other date as may be fixed by the Bankruptcy Court, and (ii) be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) within seven (7) calendar days after such Professional Claim becomes an Allowed Administrative Claim, or (B) upon such other terms as may be mutually agreed upon between the holder of such Allowed Professional Claim and the Reorganized Debtor.

Section 2.02.      ***Priority Tax Claims***.  Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, on the later of the Effective Date or the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as reasonably practicable, one of the following treatments, at the option of the Reorganized Debtor:  (a) Cash in the amount of such Allowed Priority Tax Claim; (b) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installments over a period of time not to exceed five (5) years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other treatment as may be agreed upon by such holder and the Reorganized Debtor or otherwise determined by order of the Bankruptcy Court.

Section 2.03.      ***Statutory Fees***.  The Debtors shall pay in full, in Cash, any fees due and owing to the United States Trustee, including quarterly fees payable under 28 U.S.C.§ 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 (if any), on all disbursements, including disbursements in and outside the ordinary course of the Debtors' businesses at the time of Confirmation.  On and after the Effective Date, the Reorganized Debtor shall pay the applicable fees to the United States Trustee for the Reorganized Debtor when due in the ordinary course in accordance with applicable law.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Section 3.01.      ***Classification of Claims and Interests***.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is the designation of Classes of Claims and Equity Interests under this Plan.  A Claim or Equity Interest is placed in a particular Class for the purpose of

voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest has not been paid, released, withdrawn, or disallowed before the Effective Date.

Section 3.02.    ***Summary of Classification.***  This Plan constitutes a chapter 11 plan of reorganization for each of the Debtors.  The Plan's classifications of Claims and Equity Interests are set forth below and described in more detail in <u>Section 3.03</u>.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote |
| 3 | Employee Benefit Claims | Unimpaired | Not Entitled to Vote |
| 4 | Worker Compensation Claims | Unimpaired | Not Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote |
| 6 | Prepetition Defense-Cost Contribution Claims | Impaired | Entitled to Vote |
| 7 | Channeled Asbestos Claims | Impaired | Entitled to Vote |
| 8 | Bonded Claims | Unimpaired | Not Entitled to Vote |
| 9 | Intercompany Claims | Impaired | Not Entitled to Vote |
| 10 | Related-Party Claims | Impaired | Not Entitled to Vote |
| 11 | Equity Interests in Duro Dyne National Corp. | Impaired | Not Entitled to Vote |
| 12 | Equity Interests in Duro Dyne Corporation, Duro Dyne Midwest Corp., Duro Dyne West Corp., and Duro Dyne Machinery Corp. | Impaired | Not Entitled to Vote |

Section 3.03.    ***Classification and Treatment of Claims and Interests***.  To the extent a Class contains Claims or Equity Interests with respect to one or more of the Debtors, the classification of Claims and Equity Interests and their respective treatment hereunder are specified below.

(a)    *Class 1 – Priority Non-Tax Claims*

(i)    *Classification:*  Class 1 shall consist of all Priority Non-Tax Claims.

(ii)    *Treatment:* Except to the extent that a holder of an Allowed Priority Non-Tax Claim and the Debtors shall have agreed in writing to a different treatment, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, payment in full in Cash, without interest, in the Allowed Amount of such Allowed Priority Non-Tax Claim as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date when such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

(iii)    *Impairment and Voting:*  Class 1 is Unimpaired.  Holders of Allowed Class 1 Priority Non-Tax Claims are deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and their votes will not be counted.

(b)    *Class 2 – Secured Claims*

(i)      *Classification:*  Class 2 shall consist of all Secured Claims.

(ii)      *Treatment:*  Each holder of an Allowed Secured Claim shall be paid the Allowed Amount of such Claim either, at the option of the Reorganized Debtor, (A) in full, in Cash, on the later of (1) the Effective Date, or as soon as reasonably practicable thereafter, or (2) the date such Secured Claim becomes an Allowed Secured Claim, or as soon as reasonably practicable thereafter; (B) upon such other terms as may be agreed upon between the Reorganized Debtor and the holder of an Allowed Secured Claim and approved by the Bankruptcy Court; (C) by the surrender to the holder or holders of any Allowed Secured Claim of the property securing such Secured Claim; or (D) notwithstanding any contractual provision or applicable law that entitles a holder of a Secured Claim to demand or receive payment thereof prior to the stated maturity upon and after the occurrence of a default, by reinstatement in accordance with section 1124(2)(B) of the Bankruptcy Code.

(iii)      *Impairment and Voting:*  Class 2 Secured Claims are Unimpaired, and holders of Class 2 Secured Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Secured Claims are not entitled to vote to accept or reject the Plan, and their votes will not be solicited.

(c)      *Class 3 – Employee Benefit Claims*

(i)      *Classification:*  Class 3 shall consist of all Employee Benefit Claims.

(ii)      *Treatment:*  This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Allowed Employee Benefit Claim entitles the holder of such Claim, including, for the avoidance of doubt, quarterly installment payments on account of any Allowed Withdrawal Liability Claims as provided pursuant to Title IV of ERISA.

(iii)      *Impairment and Voting:*  Class 3 Employee Benefit Claims are Unimpaired, and holders of Class 3 Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 3 Employee Benefit Claims are not entitled to vote to accept or reject the Plan, and their votes will not be solicited.

(d)      *Class 4 – Worker Compensation Claims*

(i)      *Classification:*  Class 4 shall consist of all Worker Compensation Claims.

(ii)      *Treatment:*  This Plan leaves unaltered the legal, equitable, and contractual rights to which each such Allowed Worker Compensation Claim entitles the holder of such Claim.

(iii)      *Impairment and Voting:*  Class 4 Worker Compensation Claims are Unimpaired, and holders of Class 4 Worker Compensation Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 4 Worker Compensation Claims are not entitled to vote to accept or reject the Plan, and their votes will not be solicited.

(e)     *Class 5 – General Unsecured Claims*

(i)      *Classification:*  Class 5 shall consist of all General Unsecured Claims.

(ii)     *Treatment*:   Except to the extent previously paid during the Chapter 11 Cases or such holder agrees to less favorable treatment, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, (i) payment equal to the Allowed amount of such Claim, in Cash, as an when such Claim becomes due and payable in the ordinary course of the applicable Debtors' business or in accordance with applicable court order or applicable law, or (ii) such other treatment that renders such holder Unimpaired.

(iii)     *Impairment and Voting:* Class 5 General Unsecured Claims are Unimpaired.  Therefore, holders of General Unsecured Claims in Class 5 are not entitled to vote to accept or reject the Plan, and their votes will not be solicited.

(f)     *Class 6 – Prepetition Defense-Cost Contribution Claims*

(i)      *Classification:*   Class 6 shall consist of all Prepetition Defense-Cost Contribution Claims.

(ii)     *Treatment*:   Except to the extent that a holder of an Allowed Prepetition Defense-Cost Contribution Claim agrees to different treatment, each holder of an Allowed Prepetition Defense-Cost Contribution Claim shall receive, in full and complete satisfaction, settlement and release of and in exchange for such Claim, payment in full of the Allowed Amount of such Prepetition Defense-Cost Contribution Claims, to be payable as follows: (a) annual payments of principal based on a twenty (20) year amortization schedule plus interest at the federal judgment rate in effect as of the Petition Date to be made on the first (1st) through seventh (7th) year anniversaries of the Effective Date; and (b) a balloon payment of all outstanding principal and interest on the eighth (8th) anniversary of the Effective Date.

(iii)     *Impairment and Voting:* Class 6 Prepetition Defense-Cost Contribution Claims are Impaired.   Therefore, holders of Prepetition Defense-Cost Contribution Claims in Class 6 are entitled to vote on the Plan, and their votes will be solicited.

(g)     *Class 7 – Channeled Asbestos Claims*

(i)      *Classification:* Class 7 shall consist of all Channeled Asbestos Claims.

(ii)     *Treatment:*  All Class 7 Channeled Asbestos Claims shall be resolved in accordance with the terms, provisions, and procedures of the Asbestos Trust Agreement and the TDP.  All Class 7 Channeled Asbestos Claims that are eligible for payment shall be paid by the Asbestos Trust out of the Asbestos Trust Assets, as and to the extent provided in the Asbestos Trust Agreement and the TDP.

(iii)     *Impairment and Voting:* Class 7 Channeled Asbestos Claims are Impaired. Therefore, holders of Asbestos Claims in Class 7 are entitled to vote on the Plan, and their votes will be solicited.

(h)     *Class 8 – Bonded Claims*

(i)      *Classification:*  Class 8 shall consist of all Bonded Claims.

(ii)     *Treatment:*  On the later of (A) the Effective Date or (B) the date on which a Bonded Claim becomes an Allowed Bonded Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Bonded Claim shall receive in full and final satisfaction of such Allowed Bonded Claim, Cash in the Allowed Amount of the Allowed Bonded Claim; *provided, however*, that (1) in no event shall such Cash distribution exceed the amount of the bond or other payment assurance securing such Allowed Bonded Claim and (2) each such holder of an Allowed Bonded Claim shall look solely to the bond or other payment assurance securing its Claim for such Cash distribution with respect to such Allowed Bonded Claim, and shall receive no property or Distribution from the applicable Debtor, the Reorganized Debtor, or the Asbestos Trust on account of such Allowed Bonded Claim.  If (x) the holder of a Bonded Asbestos Personal Injury Claim and the Plan Proponents or (y) the holder of a Bonded Non-Asbestos Claim and the applicable Debtor or Reorganized Debtor, do not agree on the Allowed Amount of such Bonded Claim, the Bankruptcy Court or other court of competent jurisdiction shall determine the Allowed Amount of such Claim.

(iii)    *Impairment and Voting:*  Class 8 Bonded Claims are Unimpaired, and holders of Class 8 Bonded Claims are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 8 Bonded Claims are not entitled to vote to accept or reject the Plan, and their votes will not be solicited.

(i)     *Class 9 – Intercompany Claims*

(i)      *Classification:*  Class 9 shall consist of all Intercompany Claims.

(ii)     *Treatment:*  Intercompany Claims shall be expunged and no Distributions shall be made on account of any Allowed Intercompany Claim

(iii)    *Impairment and Voting:*  Class 9 is Impaired by this Plan.  Because the holders of Class 9 Intercompany Claims are Insiders of the Debtors, Class 9 is not entitled to vote to accept or reject this Plan.

(j)     *Class 10 – Related-Party Claims*

(i)      *Classification:*  Class 10 shall consist of all Related-Party Claims.

(ii)     *Treatment:*  Related-Party Claims shall be paid in the ordinary course according to any terms or agreements governing such Claims, except that all Related-Party Claims shall be subordinated to the Trust Note in accordance with Section 4.16 hereof and shall be subject to any other applicable terms or provisions set forth in the Plan Documents.  Any personal property or equipment securing any Related-Party Claim as of the Effective Date shall revert to, or be held by, the Reorganized Debtor free and clear of any Lien, interest, or other encumbrance, upon the maturity or satisfaction of such Related-Party Claim.

(iii)    *Impairment and Voting:*  Class 10 is Impaired by this Plan.  Because holders of Class 10 Related-Party Claims are Insiders of the Debtors, Class 10 is not entitled to vote to accept or reject this Plan.

(k)    *Class 11 – Equity Interests in Duro Dyne National Corp.*

(i)    *Classification:*  Class 11 shall consist of all Equity Interests in Duro Dyne National Corp.

(ii)    *Treatment:*  Subject to the provisions of Section 5.02(c), holders of Equity Interests in Debtor Duro Dyne National Corp. shall receive and retain their Equity Interests in Reorganized Duro Dyne National Corp. to the same extent held in the Debtor Duro Dyne National Corp. on the Petition Date.

(iii)    *Impairment and Voting:*  Class 11 Equity Interests are Impaired by this Plan. Because the Holders of Class 11 Equity Interests are Insiders, holders of Class 11 Equity Interests are not entitled to vote to accept or reject this Plan.

(l)    *Class 12 – Equity Interests in Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp.*

(i)    *Classification:*  Class 12 shall consist of all Equity Interests in Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp.

(ii)    *Treatment:*  All Equity Interests in Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp. shall be cancelled and extinguished on the Effective Date and Holders of Equity Interests in Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp. shall receive no distributions on account of such Equity Interests.

(iii)    *Impairment and Voting:*  Class 12 Equity Interests are Impaired by this Plan.  Because each holder of Class 12 Equity Interests is an Insider, holders of Class 12 Equity Interests are not entitled to vote to accept or reject this Plan.

## ARTICLE IV.

## THE ASBESTOS TRUST

Section 4.01.    ***Creation and Purposes of the Asbestos Trust***.    Effective upon Consummation, the Asbestos Trust shall be created and established without further notice, action, or deed, except as provided in the Plan Documents.  The Asbestos Trust shall be a "qualified settlement fund" within the meaning of 26 U.S.C. § 468B.  The purposes of the Asbestos Trust shall be, *inter alia*, (a) to assume and succeed to all liabilities and responsibility for Channeled Asbestos Claims; (b) to direct the processing, resolution, liquidation, and payment of all Channeled Asbestos Claims in accordance with section 524(g) of the Bankruptcy Code, the Plan, the Asbestos Trust Agreement, the TDP, and the Confirmation Order; (c) to preserve, hold, manage, and maximize the Asbestos Trust Assets for use in paying or satisfying Channeled

Asbestos Claims; and (d) to comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code, all in accordance with the Plan and the Asbestos Trust Agreement in such a way that all holders of Channeled Asbestos Claims are treated substantially in the same manner. ***On the Effective Date, except as provided in <u>Sections 4.13 and 4.14</u> hereof, all Channeled Asbestos Claims shall be channeled to the Asbestos Trust pursuant to the Asbestos Permanent Channeling Injunction, and shall be resolved, liquidated, and (if entitled to payment) paid in accordance with the Asbestos Trust Agreement and the TDP***.

Section 4.02.    ***Appointment of Asbestos Trustee***.    On the Confirmation Date, the Bankruptcy Court shall appoint an individual designated by the Asbestos Claimants Committee and the Legal Representative to serve as the initial Asbestos Trustee pursuant to the terms of the Asbestos Trust Agreement and the TDP.  Such appointment shall be effective as of the Effective Date.  The Asbestos Claimants Committee and the Legal Representative have designated Alan Rich to serve as the initial Asbestos Trustee.  Upon termination of the Asbestos Trust, or as otherwise provided in the Asbestos Trust Agreement, the Asbestos Trustee's employment shall be deemed terminated, and the Asbestos Trustee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations with respect to or in connection with the Asbestos Trust and the Chapter 11 Cases.

Section 4.03.    ***Appointment of Delaware Trustee***.    Wilmington Trust has been selected by agreement of the Asbestos Claimants Committee and the Legal Representative to serve as the initial Delaware Trustee and will be appointed pursuant to the Confirmation Order.  All subsequent Delaware Trustees shall be appointed in accordance with the terms of the Asbestos Trust Agreement.

Section 4.04.    ***Trust Advisory Committee***.    Effective on the Effective Date, the TAC shall be established pursuant to the terms of the Asbestos Trust Agreement.  The TAC shall have five members and shall have the functions, duties, and rights provided in the Asbestos Trust Agreement.  The initial members of the TAC selected by the Asbestos Claimants Committee are James Ferraro, Esq of Kelley & Ferraro, LLP, Al Brayton, Esq. of Brayton Purcell, LLP, Kathy Byrne, Esq. of Cooney & Conway,  Joseph Belluck of Belluck & Fox LLP, and Perry Browder of Simmons Hanly Conroy LLC.  Each of the foregoing law firms represents a member of the Asbestos Claimants Committee.   Upon termination of the Asbestos Trust, or as otherwise provided in the Asbestos Trust Agreement, the TAC shall be deemed dissolved and discharged of and from all further authority, duties, responsibilities, and obligations with respect to or in connection with the Asbestos Trust and the Chapter 11 Cases.

Section 4.05.    ***Legal Representative for Demand Holders***.    Effective on the Effective Date, the Legal Representative shall serve in such capacity under the terms of the Asbestos Trust Agreement, and shall have the functions, duties, and rights provided in the Asbestos Trust Agreement.  Upon termination of the Asbestos Trust, or as otherwise provided in the Asbestos Trust Agreement, the Legal Representative shall be discharged of and from all further authorities, duties, responsibilities, and obligations with respect to or in connection with the Asbestos Trust and the Chapter 11 Cases.

Section 4.06.    ***Assumption of Certain Liabilities by the Asbestos Trust***.   On the Effective Date, subject to the terms of the Plan Documents and in accordance with sections 524(g) and 1141 of the Bankruptcy Code, the Asbestos Trust shall assume and succeed to all liability and responsibility for all Channeled Asbestos Claims.   Notwithstanding the Asbestos Trust's assumption of liability and responsibility for all Channeled Asbestos Claims, such assumption shall not itself operate or be construed as a release, accord, or novation of each Debtor's obligations on account of such Claims for purposes of any Asbestos Insurance Rights solely to the extent of suits against the Reorganized Debtor directly in accordance with Section 4.13 hereof (subject, however, to the discharge of any "personal liability" of the Debtors as that term is used in section 524(a) of the Bankruptcy Code and as provided in Section 9.03 hereof).

Section 4.07.    **Transfer of Asbestos Insurance Rights**

(a)    On the Effective Date, by virtue of Confirmation, without further notice, action, or deed, the Asbestos Insurance Rights shall be automatically transferred to, and indefeasibly vested in, the Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, with the exclusive right to enforce any and all of the Asbestos Insurance Rights against any Entity, and the Proceeds of the recoveries of any such Asbestos Insurance Rights shall be the property of, and shall be deposited in, the Asbestos Trust.   The Asbestos Insurance Rights shall be vested in the Asbestos Trust free and clear of all Liens, encumbrances, interests, claims, and causes of action of any Entity.

(b)    If a court of competent jurisdiction determines the transfer of the Asbestos Insurance Rights pursuant to Section 4.07(a) hereof to be invalid, non-binding, or unenforceable, in whole or in part, then the Reorganized Debtor shall (1) upon request by the Asbestos Trust and at the reasonable expense of the Asbestos Trust, take all reasonable actions to pursue any of the Asbestos Insurance Rights for the benefit of, and to the extent required by, the Asbestos Trust; and (2) immediately transfer any Proceeds or property recovered under or on account of any Asbestos Insurance Rights to the Asbestos Trust; *provided, however*, that while any such Proceeds or property are held by or under the control of the Reorganized Debtor, such amounts shall be held in trust solely for the benefit of the Asbestos Trust.

Section 4.08.    ***Funding of the Asbestos Trust***

(a)    On the Effective Date, the Debtors shall pay in full and in Cash the Debtors' Contribution to the Asbestos Trust.

(b)    On the Effective Date, the Hinden Contribution shall be paid in full and in Cash to the Asbestos Trust by or on behalf of the Hinden Family Entities and the Hinden Family Members.

(c)    On the Effective Date, any Proceeds held by the Debtors on account of Asbestos Insurance Rights shall be paid in full and in Cash to the Asbestos Trust.

(d)    On the Effective Date, the Reorganized Debtor shall issue and deliver the Trust Note to the Asbestos Trust.

(e)    The Earn Out Payments in the aggregate amount of $2 million will be paid in accordance with <u>Section 4.11</u>; and

(f)    Effective on the Effective Date, by virtue of Confirmation, any and all other Asbestos Trust Assets shall be transferred to and be vested in the Asbestos Trust, without further notice, deed, or order.

Section 4.09.    ***Securing Payment and Performance Under the Trust Note***

(a)Effective on the Effective Date, the Trust Note shall be secured by the RDD Pledge, the DDC Pledge, the Bay Shore Mortgage, and the Fairfield Mortgage.

(b)    The Bay Shore Mortgage shall be a recorded and first-priority Lien on the Bay Shore Property.  The Fairfield Mortgage shall be a recorded and first-priority Lien on the Fairfield Property.

(c)The DDC Pledge shall be a first-priority Lien and perfected in a manner such that it will not be subordinate to, or *pari passu* with, any other Lien, security interest, pledge, hypothecation, or other encumbrance or interest prior to the release of the DDC Pledge pursuant to the terms of the Pledge and Security Agreement.  On the Effective Date, Duro Dyne Canada shall deliver certificates representing 50.1% of the Duro Dyne Canada Stock, together with stock power executed in blank, to the Asbestos Trust to be held by the Asbestos Trustee in accordance with the Pledge and Security Agreement.

(d)    The RDD Pledge shall be a first-priority Lien and perfected in a manner such that it will not be subordinate to, or *pari passu* with, any other Lien, security interest, pledge, hypothecation, or other encumbrance or interest prior to the release of the RDD Pledge pursuant to the terms of the Pledge and Security Agreement.  On the Effective Date, the Reorganized Debtor shall deliver certificates representing 50.1% of the Reorganized Duro Dyne Stock, together with stock power executed in blank, to the Asbestos Trust to be held by the Asbestos Trustee in accordance with the Pledge and Security Agreement.

Section 4.10.    ***Vesting of Asbestos Trust Assets***.  Upon the transfer of the Asbestos Trust Assets to the Asbestos Trust, all right, title, and interest in and to the Asbestos Trust Assets, and any proceeds thereof, shall be indefeasibly and irrevocably vested in the Asbestos Trust free and clear of all Claims, Demands, Liens, Equity Interests, other interests, and causes of action of any Entity, without any further action of the Bankruptcy Court or any Entity, subject to the Asbestos Permanent Channeling Injunction and other provisions of this Plan; *provided, however*, that to the extent that certain Asbestos Trust Assets, because of their nature or because they will accrue subsequent to the Effective Date, cannot be transferred to and vested in the Asbestos Trust on the Effective Date, such Asbestos Trust Assets shall be transferred to and irrevocably and indefeasibly vested in the Asbestos Trust, free and clear of Claims, Demands, Liens, Equity Interests, other interests, and causes of action of any Entity, as soon as practicable after the Effective Date.

Section 4.11.    ***Earn Out Payments***.  The Reorganized Debtor shall annually pay to the Asbestos Trust, by no later than March 31 of each year, a sum of Cash equal to thirty percent (30%) of the amount of LTM Adjusted EBITDA (as measured at December 31 of each year) that

is in excess of the Earn Out Threshold (defined below), subject to and in accordance with the terms of this Section 4.11.

(a)    For purposes of this Section, the term "*Total Scheduled Rent*" means the total amount of rent scheduled under the Bay Shore Lease and the Fairfield Lease and paid on account of the Bay Shore Lease and the Fairfield Lease during the twelve (12) calendar months immediately preceding January 1 of each year; and the term "*Earn Out Threshold*" means an amount equal to $3,000,000 *plus* Total Scheduled Rent.

(b)    For purposes of calculating the Earn Out Payments under this section, LTM Adjusted EBITDA and Total Scheduled Rent shall be measured at December 31 of the same calendar year.

(c)    By way of illustration and not limitation, if LTM Adjusted EBITDA, as measured at December 31 of a given year, is $7,000,000, and if Total Scheduled Rent, as measured at December 31 of the same year, is $1,100,000, then the Reorganized Debtor shall pay to the Asbestos Trust the sum of $870,000 (*i.e.*, 30% ($7,000,000 *less* ($3,000,000 *plus* $1,100,000))) by March 31 of the immediately following year.

(d)    If the amount of LTM Adjusted EBITDA, as measured at December 31 of a given year, is equal to or less than the Earn Out Threshold, as calculated at December 31 of the same year, there shall be no Earn Out Payment in that same year.

(e)    If a Catch-Up Payment and an Earn Out Payment are due and payable on the same Semiannual Payment Date, then the Reorganized Debtor shall pay the holder of the Trust Note the greater of the Catch-Up Amount and the amount of the Earn Out Payment, and such payment shall be applied first to any accrued and unpaid interest and outstanding Deferral Amounts in accordance with section 3(b)(5) of the Note Issuance Agreement and then, after such interest and Deferral Amounts have been paid in full in accordance with such section, to the amount of the Earn Out Payment that is outstanding.  To the extent all or part of the Earn Out Payment would have been paid to the Asbestos Trust but for the application of the Catch-Up Payment to the unpaid accrued interest and Deferral Amount in accordance with this subsection (e), such unpaid Earn Out Payment shall be deemed a "*Deferred Earn Out Amount*," and no Related-Party Payments shall be made unless and until the Deferred Earn Out Amount is indefeasibly paid in Cash and in full to the Asbestos Trust.

(f)    Notwithstanding any provision in this Section, the Reorganized Debtor shall have no duty or obligation to pay an Earn Out Payment on March 31, 2019 based on LTM Adjusted EBITDA measured at December 31, 2018.

(g)    Once the cumulative total of Earn Out Payments irrevocably and indefeasibly paid to the Asbestos Trust equals $2,000,000, the Reorganized Debtor shall have no duty or obligation to pay further Earn Out Payments to the Asbestos Trust.

(h)    Unless and until the cumulative total of Earn Out Payments irrevocably and indefeasibly paid to the Asbestos Trust equals $2,000,000, the Reorganized Debtor shall not (1) transfer any assets to a Related Party (other than payments authorized under any of the Plan Documents or payments in the ordinary course of the Reorganized Debtor's business to Duro Dyne Canada in exchange for reasonably equivalent value) or to any Entity, the majority of

whose Equity Interests are owned directly or indirectly by the Reorganized Debtor or one or more of the Related Parties; (2) acquire a business, division, or substantially all the assets of any Entity; or (3) acquire fifty percent (50%) or more of the Equity Interests in any Entity, unless, before any asset transfer or acquisition is effectuated, such Related Party or Entity (i) expressly assumes joint and several liability for the Earn Out Payments, (ii) agrees in writing that its books, records, and financial statements, including the calculation of LTM Adjusted EBITDA under this Section, shall be kept and done on a consolidated basis with the Reorganized Debtor and Duro Dyne Canada, (iii) executes and delivers to the Asbestos Trust an assumption agreement that is satisfactory in form and substance to the Asbestos Trust, and (iv) takes all other actions as the Asbestos Trust deems appropriate to ensure payment of the Earn Out Payments hereunder.

Section 4.12.    ***Financial Reporting and Disclosures***.  On and after the Effective Date, and up to and through the maturity date of the Trust Note, the Reorganized Debtor shall furnish the Asbestos Trust with all financial reporting in the same form and at the same time as required by the lender under the Senior Lending Facility or any senior or secured credit agreement in replacement thereof, and any additional information reasonably required to monitor Adjusted EBITDA for purposes of payments under the Trust Note and the Earn Out Payments. All such financial reporting and additional information shall conform to generally accepted accounting principles, consistently applied in each period in which a calculation is performed, if such conformity is not required by the lender under the Secured Lender Facility or any senior or secured credit agreement in replacement thereof.  If the Senior Lending Facility is terminated or not renewed or replaced, the Reorganized Debtor shall furnish the Asbestos Trust with such financial reporting at the same time and with the same level of detail and disclosure previously required under the Senior Lending Facility.

Section 4.13.    ***Actions Against the Reorganized Debtor to Obtain the Benefits of Asbestos Insurance Coverage***.  In addition to the potential for recoveries from the Asbestos Trust under the TDP, and not as an alternative thereto, Channeled Asbestos Claimants shall have the right to commence an action against the Reorganized Debtor and pursue their claims in the tort system to obtain the benefit of Asbestos Insurance Coverage provided by Non-Settling Asbestos Insurers, subject to the applicable provisions of section 5.10 of the TDP.  If a holder of a Channeled Asbestos Claim commences such an action on account of such Claim, any complaint commencing such an action shall name the Reorganized Debtor as a defendant, in lieu of the Debtors, *provided, however*, that, consistent with the Injunctions, no party may identify the Reorganized Debtor using the term "Duro Dyne" or any variation thereof in the caption of any pleading or other filing in connection with the action commenced by such complaint and shall only identify the Reorganized Debtor in such caption as "RDD Company" or such other name for the Reorganized Debtor as may be specified in the Confirmation Order.  Such action may be filed in any court where any Debtor was subject to *in personam* jurisdiction as of the Petition Date and shall be deemed by operation of law to be an action against the Debtors, except that any judgment that may be obtained in such action may not be enforced against the assets of the Reorganized Debtor or the Asbestos Trust, other than the Asbestos Insurance Policies issued by Non-Settling Asbestos Insurers.  Any such action may be served on the Asbestos Trust, who shall tender such actions to Non-Settling Asbestos Insurers.  The Reorganized Debtor shall have no obligation to defend or otherwise appear or incur any costs or expenses in connection with any action brought under this <u>Section 4.13</u>, and any liability of the Reorganized Debtor to any

Entity, including any Channeled Asbestos Claimant or Asbestos Insurer, that is based on, arises from, or is attributable to any action commenced pursuant to this <u>Section 4.13</u> shall be enforceable only against the Asbestos Insurance Coverage provided by Non-Settling Asbestos Insurers, as set forth in <u>Section 4.14</u> below.  The Asbestos Trust shall continue to process the Channeled Asbestos Claim of any Channeled Asbestos Claimant who brings an action under this <u>Section 4.13</u>, including by making payment thereon to such Channeled Asbestos Claimant as and when provided under the TDP.  Subject to the Injunctions, nothing in this <u>Section 4.13</u> is intended to bar any cause of action, or right to bring a cause of action, held by any Channeled Asbestos Claimant directly against any Asbestos Insurer if a Channeled Asbestos Claimant obtains a judgment in any action permitted under this <u>Section 4.13</u>, with such actions governed by the procedures set forth in <u>Section 4.14</u> hereof.

Section 4.14.    ***Actions Against Non-Settling Asbestos Insurers to Obtain the Benefits of Asbestos Insurance Coverage***.  Any Channeled Asbestos Claimant that has obtained a judgment against the Reorganized Debtor pursuant to <u>Section 4.13</u> hereof, or that would otherwise have the right under applicable nonbankruptcy law to join or substitute an Asbestos Insurer in an action filed on account of his Channeled Asbestos Claim, may, in order to obtain the benefits of Asbestos Insurance Coverage, make a request to the Asbestos Trust that the Asbestos Insurer Injunction be lifted so as to permit such Claimant to commence a judgment-enforcement action or direct action against a Non-Settling Asbestos Insurer (an "*Enforcement Request*").  Such an Enforcement Request shall be made in the form of a written request directed to the Asbestos Trust, containing such information as the Asbestos Trust may, in its sole discretion, require as part of any such request.  The Asbestos Trust may require or impose appropriate terms and conditions on Channeled Asbestos Claimants in exchange for the Asbestos Trust's agreement to lift the Asbestos Insurer Injunction with respect to their claims; *provided, however*, that to the extent a Channeled Asbestos Claimant makes an Enforcement Request, the Asbestos Trust shall not lift the Asbestos Insurer Injunction unless the Channeled Asbestos Claimant agrees in writing to stipulate and agree to the following conditions:

(a)    *Judgment Reduction*.  If any Non-Settling Asbestos Insurer against whom a judgment-enforcement action or direct action is brought asserts as a defense that it would have an Asbestos Insurance Policy Claim as a result of contribution rights against one or more Settling Asbestos Insurers with respect to the Channeled Asbestos Claimant's claim that it could have asserted but for the Injunctions (hereinafter, "*Contribution Claims*"), the liability, if any, of the Non-Settling Asbestos Insurer to the Channeled Asbestos Claimant shall be reduced dollar-for-dollar by the amount, if any, of any judgment establishing the Contribution Claims in accordance with <u>Section 4.14(b)</u>.

(b)    *Assertion of Settling Asbestos Insurers' Rights*.  In determining the amount of any Contribution Claim that operates to reduce the amount of liability of a Non-Settling Asbestos Insurer in a judgment-enforcement action or direct action, the Channeled Asbestos Claimant may assert the legal or equitable rights, if any, of the Settling Asbestos Insurers with respect to such Contribution Claims, provided that the Channeled Asbestos Claimant shall not be permitted to argue that any Contribution Claims are not properly asserted against the Channeled Asbestos Claimant, or that the Injunctions bar or affect in any way such Contribution Claims in connection with the Channeled Asbestos Claimant's claim against a Non-Settling Asbestos Insurer.

Section 4.15.    ***Limitations on Recoveries of Insurance Coverage from Non-Settling Asbestos Insurers.***

(a)    *No Coverage for Trust Payments or Claims Resolutions.*  No Non-Settling Asbestos Insurer that has paid a Channeled Asbestos Claim pursuant to the provisions of <u>Section 4.13</u> or <u>Section 4.14</u> above shall be required or requested by the Asbestos Trust, the Debtors, the Reorganized Debtor, or any other Entity to make any payment whatsoever, based on or for (i) amounts paid by the Asbestos Trust to that Channeled Asbestos Claimant in accordance with the TDP or otherwise; (ii) the liquidated value of that Channeled Asbestos Claim resolved by the Asbestos Trust, whether or not paid in whole or in part by the Asbestos Trust; (iii) any amounts that the Asbestos Trust promises or proposes to pay to that Channeled Asbestos Claimant under the TDP or otherwise; or (iv) the amounts set forth in the scheduled values matrix of the TDP that would otherwise be applicable to the paid Channeled Asbestos Claim.  For the avoidance of doubt, this Section does not preclude actions, or recoveries or payments from actions authorized by <u>Section 4.13</u> or <u>Section 4.14</u> hereof, and all Asbestos Insurance Litigation and Asbestos Insurance Policy Claims (including all claims for contribution, reimbursement, indemnity, or subrogation against Non-Settling Asbestos Insurers) are subject to the preceding two sentences of this subsection (a) and to <u>Section 4.14(b)</u>.  No Non-Settling Asbestos Insurer may argue or contend, in any action authorized by <u>Section 4.13</u> or <u>Section 4.14</u> hereof, that a Channeled Asbestos Claimant is barred by this Section from obtaining the benefits of Asbestos Insurance Coverage simply because such Claimant either could or did have his Channeled Asbestos Claim resolved, valued, or paid by the Asbestos Trust.

(b)    *Determination of Credit, Reduction, or Offset*

(i)    The amount of any payments actually received by a Channeled Asbestos Claimant from the Asbestos Trust on account of his Channeled Asbestos Claim shall be credited dollar-for-dollar against the liability of the Reorganized Debtor in any action brought by such Channeled Asbestos Claimant under <u>Section 4.13</u> hereof, and following the full satisfaction of a judgment obtained in such an action or in an action brought under <u>Section 4.14</u> hereof, the Channeled Asbestos Claimant that receives full payment under such a judgment shall be deemed to have assigned the right to payment of any further amounts due from the Asbestos Trust to the Entities that satisfied that judgment.

(ii)    Notwithstanding anything in the Plan to the contrary, if a Non-Settling Asbestos Insurer asserts a claim that it is entitled to a credit, offset, or reduction of damages based on any payment made by the Asbestos Trust or any Debtor, then nothing in this Plan or the TDP shall restrict any right of such Non-Settling Asbestos Insurer to introduce in any action otherwise admissible evidence in support of such claim.  All parties' rights to make arguments as to the admissibility of such evidence under the applicable rules of evidence are reserved.

Section 4.16.    ***Subordination of Related-Party Payments and Related-Party Claims***.  Upon the occurrence and continuance of a default under the Trust Note or an "Event of Default" as defined in the Note Issuance Agreement or in the Pledge and Security Agreement, (a) all obligations under the Trust Note, including principal and accrued interest, shall be paid in Cash and in full before any Related-Party Payment or any payment, whether in cash, property, or securities, on account of a Related-Party Claim is made; and (b) any Related Party receiving a Related-Party Payment or any payment, whether in cash, property, or securities, made on

account of a Related-Party Claim shall be paid or delivered directly to the holder of the Trust Note for application in payment of the same unless and until all obligations under the Trust Note, including principal and accrued interest, are paid in Cash and in full.

Section 4.17.    ***Preservation of Asbestos-Related Defenses***.    In any action commenced against the Reorganized Debtor under Section 4.13 hereof or against a Non-Settling Asbestos Insurer under Section 4.14, (a) subject to Section 4.15(b) hereof, any payments made by the Asbestos Trust to the Channeled Asbestos Claimant commencing such action shall be taken into account in such action in accordance with rule of law or evidence related to any credit, offset, or reduction of damages allowed by applicable nonbankruptcy law; and (b) nothing pertaining to this Plan, the confirmation of this Plan, the entry of the Confirmation Order, the creation of the Asbestos Trust, and the implementation of the TDP shall be construed as a waiver or admission with respect to any Asbestos-Related Defenses, and all parties (including the Asbestos Insurers) shall be free to make any contention permitted by applicable nonbankruptcy law with respect to such defenses.

Section 4.18.    ***Books and Records***.    On the Effective Date, the Cooperation Agreement shall become effective, and the Asbestos Records (as defined in the Cooperation Agreement) shall be treated in accordance therewith.

## ARTICLE V.

## IMPLEMENTATION OF THE PLAN

Section 5.01.    ***Substantive Consolidation***

(a)    Confirmation shall constitute approval, pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code, effective upon Consummation, of the substantive consolidation and merger of each of the Debtors and their respective Estates with and into Debtor Duro Dyne National Corp. in accordance with the merger documents substantially in the form contained in Schedule 5.01(a) of the Plan Supplement such that the Reorganized Debtor shall be the surviving Entity on the Effective Date.  As a result of such substantive consolidation and merger,

    (i)    the assets and liabilities of the Debtors will be deemed to be the assets and liabilities of the Reorganized Debtor;

    (ii)    each and every Claim listed on the Schedules or filed in the Chapter 11 Cases against any Debtor shall be considered filed against the Reorganized Debtor and shall be considered one Claim against and obligation of the Reorganized Debtor on and after the Effective Date;

    (iii)    all joint obligations of two or more Debtors, and all multiple Claims against such Entities on account of such joint obligations, shall be considered a single Claim against the Reorganized Debtor;

    (iv)    all guaranties by any of the Debtors of the obligations of any Debtor arising prior to the Effective Date shall be deemed cancelled and eliminated under the Plan so that any Claim against any Debtor and any guaranty thereof executed by any other

Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the Reorganized Debtor; and

(v)      all Equity Interests in Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp. shall be cancelled and extinguished on the Effective Date in accordance with Section 3.03(k)(ii); and

(vi)      all Intercompany Claims shall be cancelled and extinguished on the Effective Date.

(b)      Notwithstanding the terms and provisions of Section 5.01(a), such substantive consolidation and merger shall not (other than for purposes related to funding Distributions under the Plan) affect (i) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed, assumed and assigned, or rejected; (ii) any agreements entered into by the Reorganized Debtor on or after the Effective Date; and (iii) the Debtors' or the Reorganized Debtor's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis.

Section 5.02.      *Corporate Governance*

(a)      *Amendment of Certificate of Incorporation of the Reorganized Debtor.*  The certificate of incorporation of each Reorganized Debtor that is a corporation on the Effective Date shall, as of the Effective Date, be amended in its entirety to read substantially in the form that will be included as Schedule 5.02(a) of the Plan Supplement.  Consistent with, but only to the extent required by, section 1123(a)(6) of the Bankruptcy Code, the amended certificates of incorporation of such Reorganized Debtor shall, *inter alia*, prohibit the issuance of non-voting equity securities.

(b)      *Amendment of Bylaws of the Reorganized Debtor.*  The bylaws of the Reorganized Debtor shall be amended as of the Effective Date to read substantially in the form that will be included as Schedule 5.02(b) of the Plan Supplement and, *inter alia*, to effectuate the provisions of this Plan.

(c)      *Exchange of Equity Interests in Duro Dyne National Corp.*  Prior to the Effective Date, each of the three outstanding shares of voting stock in Debtor Duro Dyne National Corp. shall be exchanged for 1,000 shares of voting stock in Debtor Duro Dyne National Corp., so as to result in a total of 3,000 outstanding shares of voting stock in Debtor Duro Dyne National Corp., and the three holders of voting shares in Duro Dyne National Corp. shall each receive certificates evidencing a total of 1,000 shares of such voting stock.

(d)      *Management of the Reorganized Debtor.*  On and after the Effective Date, the business affairs of the Reorganized Debtor will be managed by the same board of directors and same management that was in place prior to the Petition Date.

(e)      *Effectuating Documents and Further Transactions.*  Each of the officers of the Reorganized Debtor is authorized, in accordance with his or her authority under the resolutions of the applicable governing body of such Reorganized Debtor, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take

such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the other Plan Documents.

(f)    *Corporate Action*.    All matters provided for under the Plan involving the corporate structure of the Debtors or Reorganized Debtor, or any corporate or limited liability company action to be taken by, or required of the Debtors or Reorganized Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by or notice to the holders of Equity Interests in, or the directors or managers of, any of the Debtors or the Reorganized Debtor.

Section 5.03.    ***Supersedeas Bonds and Payment Assurances***

(a)    *Preserved Actions*.    All Supersedeas Bond Actions and the rights and Claims asserted or to be asserted therein shall be preserved and shall be prosecuted or defended, as the case may be, by the Reorganized Debtor on and after the Effective Date.

(b)    *Assumption by the Asbestos Trust*.    As of the Effective Date, the Asbestos Trust shall assume, and shall have exclusive liability for, any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting the proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled.    To the extent the Reorganized Debtor successfully prosecutes or defends against a Supersedeas Bond Action resulting in the discharge or release of the relevant supersedeas bond or other payment assurance provided in connection therewith, any such recoveries shall inure to the benefit of such Reorganized Debtor.

(c)    *Reservation of Rights of Issuers and Insurers of Payment Assurances*. Notwithstanding anything to the contrary contained herein, nothing in the Plan shall be deemed to impair, prejudice, compromise, or otherwise affect any defense or counterclaim asserted by an issuer or insurer of any supersedeas bond or other payment assurance issued on behalf of any of the Debtors, including any defense based on an asserted right of setoff or recoupment, or other defense under applicable nonbankruptcy law.    Any right of setoff or recoupment shall be satisfied out of the assets in the possession of the sureties or insurers providing such supersedeas bond or payment assurance.

(d)    *Compromise and Settlement*.    The Reorganized Debtor shall be entitled to compromise or settle any of the Supersedeas Bond Actions; *provided, however*, that any such compromise or settlement shall require the consent of the Asbestos Trust to the extent the compromise or settlement results in a deficiency portion of a Bonded Asbestos Personal Injury Claim after applying the proceeds of any supersedeas bond or equivalent form of payment assurance.

Section 5.04.    ***Withholding of Taxes***.    The Reorganized Debtor or the Asbestos Trust, as applicable, shall withhold from any assets or property distributed under the Plan any assets or property that must be withheld for foreign, federal, state, or local taxes payable with respect thereto or payable by the Entity entitled to such assets or property to the extent required by applicable law.

Section 5.05.        ***Transfer Taxes***.  The issuance, transfer, or exchange of any of the securities issued under, or the transfer of any other assets or property pursuant to or in connection with the Plan, or the making or delivery of an instrument of transfer under or in connection with the Plan shall not, pursuant to section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

Section 5.06.        ***Recordable Order***.  Upon Confirmation, the Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

Section 5.07.        ***Authority of the Debtors***.  Effective on the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement their respective obligations under the Plan and the other Plan Documents.

## ARTICLE VI.

## VOTING AND DISTRIBUTIONS UNDER THE PLAN

Section 6.01.        ***Classes Eligible to Vote.***

(a)        *Deemed Acceptance of Plan by Unimpaired Classes*.  Class 1 Priority Non-Tax Claims, Class 2 Secured Claims, Class 3 Employee Benefit Claims, Class 4 Worker Compensation Claims, Class 5 General Unsecured Claims and Class 8 Bonded Claims are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, solicitation of votes of holders of Claims in Classes 1, 2, 3, 4, 5, and 8 is not required.

(b)        *Insider Claims Not Entitled to Vote.*  Class 9 Intercompany Claims, Class 10 Related-Party Claims, Class 11 Equity Interests in Duro Dyne National Corp., and Class 12 Equity Interests in Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp. are Claims of Insiders and are not entitled to vote on the Plan. Therefore, solicitation of votes of holders of Claims in Classes 9, 10, 11, and 12 is not required.

(c)        *Only Class 6 Prepetition Defense-Cost Contribution Claims and Class 7 Channeled Asbestos Claims Eligible to Vote*.  Class 6 Prepetition Defense-Cost Contribution Claims and Class 7 Channeled Asbestos Claims are Impaired under the Plan.  Only holders of Class 6 and Class 7 Claims are entitled to vote to accept or reject the Plan.  Accordingly, the solicitation of votes of holders of Prepetition Defense-Cost Contribution Claims in Class 6 and Asbestos Claims in Class 7 is required.

Section 6.02.        ***Class 6 and 7 Acceptance Requirements***.  Class 6 shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the holders of Class 6 Claims actually voting on the Plan. Class 7 shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount of those holders of Class 7 Claims actually voting on the Plan, in accordance with section 1126(c) of the Bankruptcy Code, and if at least seventy-five percent (75%) of those holders of Class 7 Claims

-36-

actually voting on the Plan vote in favor of the Plan, in accordance with section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code.

Section 6.03.    ***Voting on Basis of Substantive Consolidation***.  Voting on the Plan shall be conducted on a substantively consolidated basis with respect to the Debtors, consistent with Section 5.01 hereof.  If the Bankruptcy Court authorizes the Debtors to substantively consolidate less than all of the Debtors' Estates, (a) the Plan shall be treated as a separate plan of reorganization for each Debtor not substantively consolidated, and (b) the Debtors shall not be required to resolicit votes with respect to the Plan.  Notwithstanding the foregoing, the Debtors reserve the right to seek confirmation of the Plan on an Entity-by-Entity basis.

Section 6.04.    ***Issuance of Asbestos Permanent Channeling Injunction Pursuant to Section 524(g) of the Bankruptcy Code***.  The Bankruptcy Court or the District Court, as applicable, shall be asked to issue the Asbestos Permanent Channeling Injunction if at least seventy-five present (75%) in number of the holders of Class 7 Claims that have voted on the Plan have voted in favor of the Plan in accordance with section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code and Section 6.02 hereof.

Section 6.05.    ***Nonconsensual Confirmation***.  If any Impaired Class of Claims or Equity Interests, other than Class 7, fails to accept this Plan in accordance with sections 1126 and 1129 of the Bankruptcy Code, the Plan Proponents will request, to the extent consistent with applicable law, that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class of Claims or Equity Interests (other than Class 7), and this Plan constitutes a motion for such relief.

Section 6.06.    ***Distributions Under the Plan***.  Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.  The Distributions shall be made to the holders of Allowed Claims as of the Record Date and the Debtors and the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Record Date.

(a)    *Distribution Deadlines*.  Any Distribution to be made by the Disbursing Agent pursuant to the Plan shall be deemed to have been timely made if made within twenty-one (21) calendar days after the time therefor specified in the Plan or such other agreements.  No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

(b)    *Distributions with Respect to Allowed Claims*.  Subject to Bankruptcy Rule 9010, all Distributions under the Plan to holders of Allowed Claims shall be made by the Disbursing Agent to the holder of each Allowed Claim in such Classes at the address of such holder as noted on the Schedules as of the Record Date, unless the Debtors or, on and after the Effective Date, the Reorganized Debtor have been notified in writing of a change of address, including by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address noted on the Schedules.  If any Distribution to any such holder is returned as undeliverable, then no further Distributions to such holder shall be made unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed

Distributions shall be made to such holder without interest.  At the expiration of six (6) calendar months after the date on which an undeliverable Distribution was originally sent, mailed, or otherwise transmitted, such undeliverable Distribution will be deemed unclaimed property under section 347(b) of the Bankruptcy Code and will revest in the Reorganized Debtor, and any entitlement of a holder of any Claim to the re-vested Distribution shall be extinguished, discharged, and forever barred.  Nothing contained in the Plan shall require the Reorganized Debtor or the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

(c)    *Responsibility for Transfers and Distributions*.  The Reorganized Debtor and the Disbursing Agent shall be responsible for Distributions required by the Plan, other than distributions to holders of Class 7 Channeled Asbestos Claims. The Asbestos Trust and only the Asbestos Trust shall be responsible for resolving, liquidating, and paying Class 6 Channeled Asbestos Claims in accordance with the Asbestos Trust Agreement and the TDP, except as provided in Sections 4.13 and 4.14 hereof.

(d)    *Manner and Method of Payment Under the Plan*.  Unless the Entity entitled to receive a Distribution agrees otherwise, any payment of such Distribution in Cash shall be made by a check drawn from a domestic bank or wire transfer from a domestic bank; *provided, however*, that no Cash payment of less than one hundred dollars ($100) shall be made to a holder of an Allowed Claim unless a request therefor is made in writing to the Disbursing Agent.

Section 6.07.    **Time Bar to Distributions by Check**.    Checks issued by the Reorganized Debtor in respect of Distributions on account of Allowed Claims shall be null and void if not presented for payment within ninety (90) calendar days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing to the Disbursing Agent by the holder of the Allowed Claim to whom such check originally was issued on or before thirty (30) calendar days after the expiration of the ninety (90) day period following the date of issuance of such check.  After the expiration of the thirty (30) day period, all funds held on account of such void check shall be used to satisfy the costs of administering and fully consummating the Plan or become the property of the Reorganized Debtor, and the Claim of any holder to such Distributions shall be extinguished, discharged, and forever barred.

Section 6.08.    **Distributions After the Effective Date**.  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of the Plan.

Section 6.09.    **Setoffs**.  Pursuant to applicable nonbankruptcy law, and before any Distribution is made on account of any Allowed Claim, the Reorganized Debtor may, but shall not be required to, setoff the claims, rights, and causes of action of any nature that the Reorganized Debtor holds against the holder of such Allowed Claim, other than a Channeled Asbestos Claim, against any Allowed Claims and the Distributions to be made pursuant to the Plan on account thereof; *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claims, rights, and causes of action that the Reorganized Debtor may possess on and after the Effective Date against such holder.

Section 6.10.       ***Cancellation of Existing Instruments and Other Documents Evidencing Claims***.  On the Effective Date, any document, agreement, or instrument evidencing any Claim, other than an Asbestos Claim or any Claim that is Unimpaired, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be discharged.

Section 6.11.       ***Allocation of Plan Distributions Between Principal and Interest***.  To the extent that an Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

Section 6.12.       ***Tax Obligations and Reporting Requirements***.  Notwithstanding any provision herein, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.  Any Entity issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to refrain from making a Distribution, until such holder has made arrangements satisfactory to such Entity for payment of any such tax obligations.

## ARTICLE VII.

## TREATMENT OF DISPUTED, CONTINGENT, OR UNLIQUIDATED NON-ASBESTOS CLAIMS UNDER THE PLAN

Section 7.01.       ***Objections to Claims; Prosecution of Disputed Claims***.   The Reorganized Debtor shall object to the allowance of Claims (other than Channeled Asbestos Claims) filed with the Bankruptcy Court or with a duly appointed claims agent, as applicable, with respect to which the Reorganized Debtor disputes, in whole or in part, liability or the amount of the Claim.  All objections filed by the Reorganized Debtor as provided herein shall be litigated to Final Order by the Reorganized Debtor, as applicable; *provided, however*, that the Reorganized Debtor may compromise, settle, or resolve by any other method any objections to Claims, subject to approval of the Bankruptcy Court.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims shall be served and filed on or before the later of (a) one hundred and eighty (180) calendar days after the Effective Date, or (b) such date as may be fixed by the Bankruptcy Court, after notice and hearing, whether fixed before or after the date specified in clause (a) above.

Section 7.02.       ***Estimation of Individual Claims***.  Unless otherwise limited by an order of the Bankruptcy Court, the Reorganized Debtor may at any time request that the Bankruptcy Court estimate for final Distribution purposes any contingent, unliquidated, or disputed Claim (other than Channeled Asbestos Claims) pursuant to section 502(c) of the Bankruptcy Code or other applicable law, regardless of whether any of the Debtors or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has

ruled on such objection, and the Bankruptcy Court will retain jurisdiction to consider any such request at any time, including during the pendency of any appeal relating to an objection to any Claim.  Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated, or disputed Claim (other than Channeled Asbestos Claims), the estimated amount shall constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; *provided, however*, that, if the estimate constitutes the maximum limitation on such Claim, the Reorganized Debtor may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and *provided further* that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code.

Section 7.03.    ***Cumulative Remedies***.  All of the aforementioned Claims objection, motion, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

Section 7.04.    ***No Distributions Pending Allowance or Motion***.  Notwithstanding any provision hereof, if any portion of a Claim is disputed, contingent, or unliquidated, no Distribution provided for hereunder shall be made on account of any portion of such Claim unless and until such disputed, contingent, or unliquidated Claim becomes an Allowed Claim. No interest shall be paid on account of disputed, contingent, or unliquidated Claims that later become Allowed except to the extent that payment of interest is required under section 506(b) of the Bankruptcy Code.

Section 7.05.    ***Distributions After Allowance***.  To the extent a disputed, contingent, or unliquidated Claim ultimately becomes an Allowed Claim, a Distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction (including any appeal therefrom) allowing any previously disputed, contingent, or unliquidated Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Allowed Claim the Distribution to which such holder is entitled hereunder on account of or in exchange for such Allowed Claim.

## ARTICLE VIII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 8.01.    ***General Treatment***.  The Debtors shall assume, as of the Effective Date, all executory contracts to which they are a party, respectively, except for (a) the executory contracts specifically listed on Schedule 8.01 of the Plan Supplement; or (b) the executory contracts or unexpired leases specifically addressed herein or pursuant to a Final Order of the Bankruptcy Court entered on or before the Effective Date.  The Debtors may, at any time on or before the Effective Date, amend Schedule 8.01 to delete therefrom, or add thereto, any executory contract or unexpired lease.   The Debtors shall provide notice of any such amendments to the parties to the executory contract or unexpired lease affected thereby and to parties on any master service list established by the Bankruptcy Court in the Chapter 11 Cases. The fact that any contract or lease is listed in Schedule 8.01 shall not constitute or be construed

to constitute an admission that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code or that any of the Debtors or any successors in interest to the Debtors (including the Reorganized Debtor) has any liability thereunder.  The Plan shall constitute a motion to assume the executory contracts and unexpired leases not listed in Schedule 8.01 and to reject those executory contracts and unexpired leases that are listed on Schedule 8.01.  Any and all claims held by a Related Party against the Reorganized Debtor that are based on, arise from, or are attributable to a contract or lease assumed under this Section shall be subject to Section 4.16 and Section 8.06.

Section 8.02.    ***Assumption of Insurance Policies***.    Notwithstanding anything contained in the Plan to the contrary, to the extent any Debtor's insurance policies and any agreements, documents, or instruments relating thereto, including Asbestos Insurance Policies or prepetition Asbestos Insurance Settlements, are executory contracts, such policies, agreements, documents, or instruments shall be treated as executory contracts under the Plan and shall be assumed pursuant to the Plan, effective as of the Effective Date, regardless of whether any such policy, agreement, document, or instrument is listed on Schedule 8.01.  The Plan shall constitute a motion to assume such policies, agreements, documents, and instruments.  Nothing contained in this Section 8.02 shall constitute or be deemed a waiver of any cause of action that the Debtors, the Reorganized Debtor, or the Asbestos Trust may hold against any Entity, including the insurer, under any Asbestos Insurance Policy or prepetition Asbestos Insurance Settlements, or any of the Debtors' policies of insurance or insurance-related agreements.

Section 8.03.    ***Letters of Credit, Surety Bonds, and Guaranties***

(a)    *Assumption Under Section 365(a)*.    Unless otherwise designated by the Plan Proponents in Schedule 8.03 of the Plan Supplement, agreed to in writing by the affected parties, or modified by order of the Bankruptcy Court, the Debtors' obligations under letters of credit, surety bonds, guaranties (which, for purposes of this Section include contingent liabilities arising in connection with assigned executory contracts and unexpired leases), or written indemnity agreements with respect to letters of credit, surety bonds, or guaranties existing as of the Effective Date shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under this Plan, effective as of the Effective Date.  In addition, the Debtors' obligations under such letters of credit, surety bonds, guaranties, and written indemnity agreements shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, effective as of the Effective Date.  The Plan shall constitute a motion to assume such letters of credit, surety bonds, guaranties, and written indemnity agreements.

(b)    *Reservation of Rights*.    The Plan Proponents reserve the right, at any time prior to the Effective Date, to amend or modify the list included in Schedule 8.03 of the Plan Supplement to add or remove letters of credit, surety bonds, guaranties, and indemnity agreements with respect to letters of credit, surety bonds, or guaranties existing as of the Effective Date, *provided* that the Plan Proponents shall file a notice with the Bankruptcy Court and serve each affected party with such notice.

Section 8.04.    ***Cure of Defaults and Survival of Contingent Claims***.  Except as may otherwise be agreed to by the applicable parties, on or before the thirtieth (30th) calendar day after the Effective Date, provided the non-Debtor party to any executory contract or unexpired

lease that is assumed pursuant to this Article VIII has filed a proof of claim with respect to a cure amount, the Reorganized Debtor shall cure any and all undisputed defaults under each executory contract or unexpired lease assumed pursuant to this Plan, in accordance with section 365(b) of the Bankruptcy Code.  All disputed defaults required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of a Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the applicable parties.  Unless a proof of claim was timely filed with respect thereto, all cure amounts and all contingent reimbursement or indemnity claims for prepetition amounts expended by the non-Debtor parties to assumed executory contracts and unexpired leases shall be discharged upon Consummation.

Section 8.05.    *Deadline for Filing Rejection Damages Claims*.  If the rejection of a contract or lease pursuant to Section 8.01 or Section 8.03 hereof results in damages to the non-Debtor party to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall forever be barred and shall not be enforceable against the Debtors, or their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court or with a duly appointed claims agent, as applicable, and served upon the Debtors or the Reorganized Debtor on or before thirty (30) calendar days after the later to occur of (a) the Confirmation Date, or (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of such contract or lease.

Section 8.06.    *Contracts and Leases with Related Parties*.

(a)    The Reorganized Debtor shall not make any Related-Party Payments if there is any arrearage, breach, or default with respect to any debt or obligation of the Reorganized Debtor.

(b)    Any contract or personal-property lease with a Related Party, including the contracts and leases assumed under Section 8.01 or listed on Schedule 8.06 of the Plan Supplement, shall terminate in accordance with their respective terms, including on the dates noted on Schedule 8.06 of the Plan Supplement, and shall not be renewed.  Any personal property or equipment that is the subject of such contracts or personal-property leases shall, upon the aforesaid termination, be transferred or delivered to the Reorganized Debtor, which shall thereupon assume or acquire ownership of such personal property or equipment, free and clear of any Lien, interest, or other encumbrance.

(c)    The Reorganized Debtor shall not enter into any contract or personal-property lease (whether an operating lease or a capital lease) with a Related Party that pertains to personal property or equipment, unless such contract or personal-property lease provides that the Reorganized Debtor shall own such personal property or equipment free and clear of any Lien, interest, or other encumbrance after such Related Party has recouped its investment in such personal property or equipment, plus an eight-percent (8%) return.

Section 8.07.    *Effect of Confirmation*.  Entry of the Confirmation Order shall constitute approval of the (a) rejections, (b) assumptions, or (c) assumptions and assignments, as the case may be, that are provided for in this Article VIII, in accordance with sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, and a finding by the Bankruptcy Court that each such rejection, assumption, or assumption and assignment is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases.

## ARTICLE IX.

## DISCHARGE, RELEASES, AND INJUNCTIONS

Section 9.01.     ***Binding Effect***.  This Plan shall be binding upon, and enforceable against, the Debtors and all holders of Claims, Demands, Equity Interests, or other interests (regardless of whether such holders agree to the Plan or whether such Claims, Demands, Equity Interests or other interests are impaired by the Plan), and their respective successors and assigns, including the Reorganized Debtor.

Section 9.02.     ***Title to Assets***.  Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estates shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests created prior to the Effective Date, except as provided in this Plan and the other Plan Documents.  On and after the Effective Date, the Reorganized Debtor may operate its businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

Section 9.03.     ***<u>Discharge of Claims</u>.  In accordance with and not in limitation of sections 524(a) and 1141(d) of the Bankruptcy Code, and except as provided in the Plan, upon the occurrence of the Effective Date, all Claims, including, to the fullest extent permitted by law, Channeled Asbestos Claims, shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be, to the fullest extent permitted by law, precluded and enjoined from asserting against the Debtors and the Reorganized Debtor, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim.***

Section 9.04.     ***<u>Discharge Injunction</u>.  Except as specifically provided in this Plan or any of the Plan Documents, the discharge set forth in <u>Section 9.03</u> hereof shall also operate, upon the occurrence of the Effective Date, as an injunction pursuant to sections 105(a), 524(a), and 1141(d) of the Bankruptcy Code, prohibiting and enjoining the commencement or continuation of any action, the employment of process, or any act to collect, recover from, or offset (a) any Claim, including, to the fullest extent permitted by law, any Channeled Asbestos Claim, against or interest in any of the Debtors or the Reorganized Debtor by any Entity, and (b) any cause of action, whether known or unknown, against the Debtors or the Reorganized Debtor arising out of, attributable to, or based on any Claim, including, to the fullest extent permitted by law, any Channeled Asbestos Claim, or interest described in clause (a) of this <u>Section 9.04</u>.***

Section 9.05.     ***<u>Asbestos Permanent Channeling Injunction</u>***.  Pursuant to sections 105(a) and 524(g) of the Bankruptcy Code, the Confirmation Order shall provide for the issuance of the following injunction to take effect upon the occurrence of the Effective Date:

(a)     _Scope of Injunction._  *All Entities that have held or asserted, or hold or assert, or may in the future hold or assert any Channeled Asbestos Claim against one or more of the Protected Parties shall be permanently stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery on account of any Channeled Asbestos Claim, including:*

(i)     *commencing or continuing in any manner any action or other proceeding of any kind on account of any Channeled Asbestos Claim against any of the Protected Parties, or against the property of any Protected Party on account of any such Channeled Asbestos Claim;*

(ii)     *enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree, or order against any of the Protected Parties or against the property of any Protected Party on account of any Channeled Asbestos Claim;*

(iii)     *creating, perfecting, or enforcing any Lien of any kind against any Protected Party or the property of any Protected Party on account of any Channeled Asbestos Claim;*

(iv)     *except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind against any obligation due any Protected Party or against the property of any Protected Party on account of any Channeled Asbestos Claim; and*

(v)     *taking any act, in any manner, in any place whatsoever, against any of the Protected Parties or their property, that does not conform to, or comply with, the provisions of the Plan Documents applicable to a Channeled Asbestos Claim.*

(b)     _Reservations._  *Notwithstanding anything to the contrary above, this Asbestos Permanent Channeling Injunction shall not enjoin:*

(i)     *the rights of Entities to the treatment accorded them under __Articles II and III__ of the Plan, as applicable, including the rights of holders of Channeled Asbestos Claims to have such Channeled Asbestos Claims resolved in accordance with the TDP;*

(ii)     *the rights of Entities to assert any Channeled Asbestos Claim against the Asbestos Trust in accordance with the TDP, or any debt, obligation, or liability for payment of Asbestos Trust Expenses against the Asbestos Trust;*

(iii)     *the rights of the Asbestos Trust or, if applicable, the Reorganized Debtor to prosecute any claim or cause of action based on or arising from any of the Asbestos Trust Assets against any Entity that is not a Protected Party;*

(iv)     *any action under __Section 4.13__ hereof against the Reorganized Debtor that strictly conforms to the pleading requirements of __Section 4.13__; or*

(v)    *any action against any Asbestos Insurer that is neither a Settling Asbestos Insurer nor an Asbestos Insurer protected, at the time such action is brought, by the Asbestos Insurer Injunction.*

Section 9.06.    *Settling Asbestos Insurer Injunction.  In accordance with sections 105(a) and 524(g) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Asbestos Insurance Policy Claim shall be, and hereby are, permanently stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery on account of any such Asbestos Insurance Policy Claim from or against any Settling Asbestos Insurer, only to the extent that such Settling Asbestos Insurer has been released from any claim under one or more Asbestos Insurance Policies in accordance with one or more Asbestos Insurance Settlements, including:*

(a)    *commencing, conducting, or continuing in any manner any action or other proceeding of any kind (including an arbitration or other form of alternative dispute resolution) against any Settling Asbestos Insurer, or against the property of any Settling Asbestos Insurer, on account of any Asbestos Insurance Policy Claim;*

(b)    *enforcing, attaching, levying, collecting, or recovering, by any manner or means, any judgment, award, decree, or other order against any Settling Asbestos Insurer, or against the property of any Settling Asbestos Insurer, on account of any Asbestos Insurance Policy Claim;*

(c)    *creating, perfecting, or enforcing in any manner any Lien of any kind against any Settling Asbestos Insurer, or against the property of any Settling Asbestos Insurer, on account of any Asbestos Insurance Policy Claim;*

(d)    *asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation due any Settling Asbestos Insurer, or against the property of any Settling Asbestos Insurer, on account of any Asbestos Insurance Policy Claim; and*

(e)    *taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Asbestos Insurance Policy Claim.*

Section 9.07.    *Asbestos Insurer Injunction*

(a)    *Scope of Injunction.  In accordance with section 105(a) of the Bankruptcy Code, in order to carry out the provisions of section 524(g) of the Bankruptcy Code, upon the occurrence of the Effective Date, except as expressly allowed in subsection (b) below, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Asbestos Insurance Policy Claim or Channeled Asbestos Claim shall be, and hereby are, permanently stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery on account of*

*any such Asbestos Insurance Policy Claim or Channeled Asbestos Claim from or against any Asbestos Insurer, including:*

> (i)    *commencing, conducting, or continuing in any manner any action or proceeding of any kind (including an arbitration or other form of alternative dispute resolution) against any Asbestos Insurer, or against the property of any Asbestos Insurer, on account of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim;*

> (ii)    *enforcing, attaching, levying, collecting, or recovering, by any manner or means, any judgment, award, decree, or other order against any Asbestos Insurer, or against the property of any Asbestos Insurer, on account of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim;*

> (iii)    *creating, perfecting, or enforcing in any manner any Lien of any kind against any Asbestos Insurer, or against the property of any Asbestos Insurer, on account of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim;*

> (iv)    *asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly against any obligation due any Asbestos Insurer, or against the property of any Asbestos Insurer, on account of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim; and*

> (v)    *taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Asbestos Insurance Policy Claim or Channeled Asbestos Claim.*

(b)    *Reservations.    The provisions of this Asbestos Insurer Injunction shall not preclude the Reorganized Debtor or the Asbestos Trust, to the extent either has the right to do so, from pursuing any claim for Asbestos Insurance Coverage or any claim that may exist under any Asbestos Insurance Policy against any Asbestos Insurer.  The provisions of this Asbestos Insurer Injunction shall not bar, impair, or affect (i) any Asbestos Insurance Litigation brought by the Asbestos Trust or any Debtor against any Asbestos Insurer, by the Asbestos Trust on behalf of the Reorganized Debtor, or by the Reorganized Debtor on behalf of the Asbestos Trust; (ii) any Asbestos Insurance Rights held or acquired by the Asbestos Trust or the Reorganized Debtor; or (iii) the rights of the Asbestos Trust to tender any Channeled Asbestos Claim or any action commenced under __Section 4.13__ hereof to a Non-Settling Asbestos Insurer for coverage, indemnity, or defense, or otherwise to invoke Asbestos Insurance Coverage with respect to a Non-Settling Asbestos Insurer.  Except for the penultimate sentence of this subsection (b), the provisions of this Asbestos Insurer Injunction are not issued for the benefit of any Asbestos Insurer and no such insurer is a third-party beneficiary of this Asbestos Insurer Injunction.  The Asbestos Trust shall have the sole and exclusive authority at any time, upon written notice to any affected Asbestos Insurer, to terminate, or reduce or limit the scope of this Asbestos Insurer Injunction with respect to any Asbestos Insurer, including for the purpose of allowing any Channeled Asbestos Claimant to bring any Asbestos Insurance Policy Claim or Channeled Asbestos Claim against such Asbestos Insurer; provided, however, that the Asbestos Trust may not permit the assertion of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim by a Channeled Asbestos Claimant against a Non-Settling Asbestos Insurer unless and until such Channeled Asbestos*

*Claimant agrees in writing to stipulate to and be bound by the provisions of <u>Section 4.14</u> hereof pertaining to the right of Non-Settling Asbestos Insurers to obtain a dollar-for-dollar reduction of any liability to such Channeled Asbestos Claimant based on the Non-Settling Asbestos Insurer's Asbestos Insurance Policy Claims against any and all Settling Asbestos Insurers that could have been asserted against such Settling Asbestos Insurers but for the Injunctions.  For the avoidance of doubt, the provisions of this Asbestos Insurance Injunction shall not impair or affect any claims between or among Non-Settling Asbestos Insurers.  Notwithstanding any provision of the Plan to the contrary, including this Asbestos Insurer Injunction, no new equitable contribution rights are created in favor of the Non-Settling Asbestos Insurers.*

Section 9.08.    *Term of Existing Injunctions or Stays*.  Unless otherwise provided in the Plan, all injunctions or stays issued or rendered in the Chapter 11 Cases, or in any adversary proceeding relating thereto, pursuant to section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 9.09.    ***<u>Injunction Against Interference with Plan of Reorganization</u>.*** *Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, on and after the Confirmation Date, all holders of Claims and Equity Interests, Affiliates, and other parties in interest, along with their respective present or former Agents shall be enjoined from taking any action to interfere with the implementation and Consummation of the Plan, except for actions necessary to attain judicial review.*

Section 9.10.    ***<u>Exculpation</u>.  None of the Plan Proponents, the members of the Asbestos Claimants Committee, or any of their respective employees, advisors, attorneys, financial advisors, accountants, agents, or other professionals retained with Bankruptcy Court approval, in their capacities as such, shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including the negotiation of the Plan, pursuit of confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Plan.***

Section 9.11.    *Settlement and Release of Certain Avoidance Actions and Estate Causes of Action*.  Effective upon Consummation, each Debtor and the Reorganized Debtor hereby settle and fully, finally, and forever release, relinquish, and discharge (a) each and every Avoidance Action against a Protected Party; (b) each and every Avoidance Action against any holder of a Channeled Asbestos Claim (satisfied or pending) or any such holder's Agents; (c) each and every Avoidance Action against holders of Allowed Class 5 Claims; and (d) any and all Estate Causes of Action against any Protected Party, holder of a Channeled Asbestos Claim (satisfied or pending), or any Agent of such holder.  Such released Claims and Avoidance Actions shall in no event be asserted against or paid by the Asbestos Trust.  This Plan constitutes a motion to approve the settlement of the foregoing Claims and Avoidance Actions pursuant to Bankruptcy Rule 9019(a).

**Section 9.12.**    ***Reservation of Rights***.  Except as otherwise specifically provided in the Plan, nothing herein shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtor, or the Asbestos Trust may have against any Entity other than a Protected Party in connection with or arising out of a Channeled Asbestos Claim, and the Injunctions shall not apply to the assertion of any such claim, right, or cause of action by the Debtors, the Reorganized Debtor, or the Asbestos Trust.

## ARTICLE X.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

Section 10.01.    ***Conditions to Confirmation***.  The Confirmation Date shall not occur unless and until each of the following conditions has been satisfied or duly waived in accordance with <u>Section 10.04</u> hereof:

(a)    at least two-thirds (2/3) in amount and seventy-five percent (75%) in number of holders of Asbestos Claims actually voting on the Plan have voted in favor of the Plan;

(b)    at least two-thirds (2/3) in amount and more than fifty percent (50%) in number of the holders of Prepetition Defense-Cost Contribution Claims actually voting on the Plan have voted to accept the Plan or the Bankruptcy Court has determined that the requirements of section 1129(b)(1) of the Bankruptcy Code have been satisfied with respect to Class 6 (Prepetition Defense-Cost Contribution Claims);

(c)    the Confirmation Order shall be in form and substance acceptable to each of the Plan Proponents and shall have been entered by (i) the District Court or (ii) the Bankruptcy Court and affirmed by the District Court; and

(d)    the Confirmation Order shall contain the following findings of fact and conclusions of law, and shall approve the following relief, among others:

(i)    the Asbestos Permanent Channeling Injunction is issued in accordance with the Plan and section 524(g) of the Bankruptcy Code;

(ii)    the Plan Documents comply with section 524(g) of the Bankruptcy Code for the issuance of an irrevocable injunction against Claims and Demands subject to the exclusive subject-matter jurisdiction of the District Court;

(iii)    as of the Petition Date, the Debtors have been named as a defendant in personal injury and wrongful death actions seeking recovery for damages allegedly caused by exposure to asbestos or asbestos-containing products;

(iv)    the Asbestos Trust, as of the Effective Date, will assume all the liabilities of the Debtors and the Reorganized Debtor for all Channeled Asbestos Claims, except as provided in <u>Sections 4.13 and 4.14</u> of the Plan;

(v)     the Asbestos Trust is to hold, for purposes of section 524(g) of the Bankruptcy Code, a pledge of 50.1% of the voting stock of the Reorganized Debtor and 50.1% of the voting stock of Duro Dyne Canada;

(vi)    the Debtors (and the Reorganized Debtor in the absence of the Asbestos Permanent Channeling Injunction) are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Claims that are addressed by the Asbestos Permanent Channeling Injunction;

(vii)   the actual amounts, numbers, and timing of the future Demands referenced in Section 10.01(e)(vii) above cannot be determined;

(viii)  pursuit of the Demands referenced in Section 10.01(e)(vii) above outside the procedures described by the Plan is likely to threaten the Plan's purpose to deal equitably with Asbestos Claims and Demands;

(ix)    the terms of the Asbestos Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan and the Disclosure Statement;

(x)     the Plan establishes in Class 7 (Channeled Asbestos Claims) a separate class of claimants whose Claims are to be addressed by the Asbestos Trust;

(xi)    the Legal Representative was appointed as part of the proceedings leading to the issuance of the Asbestos Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert unknown Asbestos Claims and Demands that are addressed in the Asbestos Permanent Channeling Injunction and channeled to the Asbestos Trust;

(xii)   applying the Asbestos Permanent Channeling Injunction to each Protected Party is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Trust by or on behalf of any such Protected Party;

(xiii)  Class 7 (Channeled Asbestos Claims) has voted, by at least seventy-five percent (75%) of those voting on the Plan, in favor of the Plan;

(xiv)   pursuant to court orders or otherwise, the Asbestos Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Trust will liquidate, and be in a financial position to pay, Asbestos Claims and Demands that involve similar Claims in substantially the same manner;

(xv)    the Settling Asbestos Insurer Injunction is issued in accordance with the Plan and sections 105(a) and 524(g) of the Bankruptcy Code;

(xvi)   to carry out the provisions of section 524(g) of the Bankruptcy Code, the Asbestos Insurer Injunction is issued in accordance with section 105(a) of the Bankruptcy Code; and

(xvii)   each of the Plan Documents shall be a valid and binding instrument, in full force and effect, and enforceable in accordance with its terms, as of the Effective Date;

(e)    the Loan and Security Agreement and all documents related thereto shall be in form and substance acceptable to the Asbestos Claimants Committee and the Legal Representative, and the Asbestos Claimants Committee and the Legal Representative shall have registered such acceptance in writing; and

(f)    the Intercreditor Agreement and all documents relating thereto, including exhibits, schedules, and implementing documents, shall be in form and substance acceptable to the Asbestos Claimants Committee and the Legal Representative, and the Asbestos Claimants Committee and the Legal Representative shall have registered such acceptance in writing.

Section 10.02.    ***Conditions Precedent to Effective Date of the Plan***.  The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived in accordance with Section 10.04 hereof:

(a)    the Confirmation Order shall have been entered and shall have become a Final Order;

(b)    the Bankruptcy Court or the District Court, as required, shall have entered or affirmed the Asbestos Permanent Channeling Injunction (which may be included in the Confirmation Order), which shall contain terms satisfactory to the Plan Proponents;

(c)    the Asbestos Trust Agreement shall have been fully executed, and the Asbestos Trust shall have been established;

(d)    the Asbestos Trust shall have received full payment of the Debtors' Contribution in accordance with Section 4.08(a);

(e)    the Asbestos Trust shall have received full payment of the Hinden Contribution in accordance with Section 4.08(b);

(f)    the Asbestos Trust shall have received full payment of the Asbestos Insurance Settlement Proceeds in accordance with Section 4.08(c);

(g)    the Cooperation Agreement shall have been fully executed and be held in escrow, to be released therefrom and delivered to each of the parties thereto upon Consummation;

(h)    the Note Issuance Agreement shall have been fully executed and be held in escrow, to be released therefrom and promptly delivered to each of the parties thereto upon Consummation;

(i)    the Trust Note shall have been duly executed and be held in escrow, to be released therefrom and promptly delivered to the Asbestos Trust upon Consummation;

(j)      the Pledge and Security Agreement shall have been fully executed and be held in escrow, to be released therefrom and promptly delivered to each of the parties thereto upon Consummation;

(k)      the three outstanding shares of voting stock in Duro Dyne National Corp. shall have been exchanged for 3,000 outstanding shares of voting stock in Duro Dyne National Corp. and delivered to the holders of such voting stock in accordance with Section 5.02(c).

(l)      certificates representing 50.1% of the Duro Dyne Canada Stock, together with stock power executed in blank, shall have been issued and be held in escrow, to be released therefrom and promptly delivered to the Asbestos Trust upon Consummation;

(m)      certificates representing 50.1% of the Reorganized Duro Dyne Stock, together with stock power executed in blank, shall have been issued and be held in escrow, to be released therefrom and promptly delivered to the Asbestos Trust upon Consummation;

(n)      the Bay Shore Mortgage shall have been duly executed and be held in escrow, to be released therefrom and promptly delivered to the Asbestos Trust upon Consummation;

(o)      the Fairfield Mortgage shall have been duly executed and be held in escrow, to be released therefrom and promptly delivered to the Asbestos Trust upon Consummation;

(p)      the Loan and Security Agreement shall have been duly executed and delivered, and the financing contemplated under the Senior Lending Facility shall be available to the Reorganized Debtor in an amount that will provide the Reorganized Debtor with sufficient Cash, when combined with other available sources, to make all payments due under the Plan as of the Effective Date and to provide sufficient working capital to fund the operation of the Reorganized Debtor;

(q)      the Debtors shall have delivered to the other Plan Proponents a copy of any loan commitment pertaining to the Senior Lending Facility and any pre-closing approvals received from the Senior Lender within two (2) Business Days of the Debtors' receipt of same;

(r)      the Debtors shall have delivered to the other Plan Proponents a copy of any pre-closing "Borrowing Base Report" (as defined in the Loan and Security Agreement) and other pre-closing documents required by the Senior Lender at the same time that such documents are delivered to the Senior Lender;

(s)      all other agreements and instruments that are exhibits to the Plan or included in the Plan Supplement that require execution shall have been fully executed and held in escrow, to be released therefrom and promptly delivered to the applicable parties upon Consummation;

(t)      such other actions and documents as the Plan Proponents deem necessary to implement the Plan shall have been effected or executed; and

(u)      all conditions to closing set forth in any of the Plan Documents shall have been fulfilled to the reasonable satisfaction of the Plan Proponents.

Section 10.03.      ***Completed Delivery of the Asbestos Trust Assets***.  For the avoidance of doubt, notwithstanding any term or provision to the contrary in the Plan or the other Plan

Documents, the Effective Date shall not occur, and the discharge, injunctions, exculpations, and releases set forth in Article IX hereof or the Confirmation Order, shall not become effective or enforceable unless and until the Asbestos Trust Assets are transferred or delivered, and the Debtors' Contribution and the Hinden Contribution are paid in full to the Asbestos Trust, as provided in Section 4.08, and all other conditions precedent to the Effective Date set forth in Section 10.02 are satisfied or waived.

Section 10.04.    *Waiver of Conditions Precedent*.  To the extent practicable and legally permissible, each of the conditions precedent in Section 10.01 or Section 10.02 may be waived, in whole or in part, by the Plan Proponents, acting jointly.  Any such waiver of a condition precedent may be effected at any time in a writing executed by, or on behalf of, each of the Plan Proponents.  If any Plan Proponent desires to waive a condition precedent to facilitate Confirmation or Consummation of the Plan, the other Plan Proponents shall confer promptly with it as to whether or not the suggested waiver should be given, in recognition that time is of the essence.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Section 11.01.    *Retention of Jurisdiction*.  The Bankruptcy Court shall retain the jurisdiction it has over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, including the following:

(a)    to interpret, enforce, and administer the terms of the Plan, the other Plan Documents (including all annexes, schedules, and exhibits thereto), and the Confirmation Order;

(b)    to resolve any matters related to the assumption, assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable; to hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

(c)    to enter such orders as may be necessary or appropriate to implement or consummate the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan; *provided, however,* that nothing in the Plan Documents shall detract from or contravene any jurisdictional or other provisions therein, including Sections 4.13 and 4.14 of this Plan, that permit or require legal actions or proceedings to be brought in another court;

(d)    to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor, the Asbestos Claimants Committee, the Legal Representative, or the Asbestos Trust, after the Effective Date, including any claims to recover assets for the benefit of the Estates or the holders of Channeled Asbestos Claims, except for matters waived or released under this Plan;

(e)    to ensure that Distributions to holders of Allowed Claims (other than Channeled Asbestos Claims) are accomplished as provided herein;

(f)      to hear and determine any timely objections to Administrative Claims or to proofs of Claim (other than Channeled Asbestos Claims), both before and after the Confirmation Date, including any objections to the classification of any Claim (other than Channeled Asbestos Claims), and to allow, disallow, determine, designate, liquidate, classify, estimate, or establish the priority of or the secured or unsecured status of, any Claim (other than Channeled Asbestos Claims), in whole or in part;

(g)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(h)      to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i)      to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(j)      to hear and determine all applications for allowance and payment of compensation and reimbursement of expenses of professionals under sections 330 and 331 of the Bankruptcy Code, and any other fees and expenses authorized to be paid or reimbursed under the Plan, except as provided in Section 13.03 hereof;

(k)      to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(l)      to issue or enforce injunctions, enter or implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan or Confirmation Order;

(m)      to recover all assets of the Debtors and property of the Estates, wherever located;

(n)      to resolve any disputed Claims;

(o)      to determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

(p)      to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, agreement, or document created in connection with the Plan or the Disclosure Statement, including any of the Plan Documents;

(q)      to the extent that the Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim (excluding any Channeled Asbestos Claim) or cause of action by or against any of the Estates;

(r)      to hear and determine any other matters that may be set forth in the Plan, the Confirmation Order, or any of the Injunctions, or that may arise in connection with the Plan, the Confirmation Order, or any of the Injunctions;

(s)      to hear and determine any proceeding that involves the validity, application, construction, or enforceability of any of the Injunctions, or that may arise in connection with the Plan, the Confirmation Order, or any of the Injunctions;

(t)      to hear and determine matters concerning federal, state, and local taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including the expedited determination of tax under section 505(b) of the Bankruptcy Code;

(u)      to enter a final decree closing the Chapter 11 Cases; and

(v)      to hear and determine all objections to the termination of the Asbestos Trust.

Section 11.02.      ***Non-Core Proceedings***.  To the extent any of the foregoing matters described in Section 11.01 hereof does not qualify as a core proceeding under 28 U.S.C.§ 157(b), or to the extent the Bankruptcy Court is otherwise not permitted to render dispositive orders or judgments in any such matters, the reference to the "Bankruptcy Court" in Section 11.01 hereof shall be deemed to be replaced by the "District Court."

Section 11.03.      ***Other Proceedings***.  Except as provided in Section 4.13 and Section 4.14 hereof, (a) the resolution and payment of Channeled Asbestos Claims, and the forum in which such resolution and payment will be determined, will be governed exclusively by and in accordance with the Asbestos Trust Agreement or the TDP; and (b) the Bankruptcy Court and the District Court shall have concurrent rather than exclusive jurisdiction with respect to disputes relating to the Debtors' rights to insurance with respect to Worker Compensation Claims.

## ARTICLE XII.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

Section 12.01.      ***Plan Modification***.  Prior to the Confirmation Date, the Plan Proponents, in their sole discretion, acting jointly, may amend, modify, or supplement the terms and provisions of the Plan or any of the other Plan Documents, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  After the Confirmation Date but prior to the Effective Date, the Plan Proponents, acting jointly, may alter, amend or modify the Plan or any of the other Plan Documents in accordance with section 1127 of the Bankruptcy Code.  If any Plan Proponent suggests a modification of the Plan to facilitate Confirmation, the other Plan Proponents shall confer promptly with it as to whether or not to modify the Plan, accordingly, in recognition that time is of the essence.

Section 12.02.        ***Revocation, Withdrawal, or Non-Consummation***

(a)        If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity, or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings pending in, arising in, or relating to the Chapter 11 Cases.

(b)        In the event that the Confirmation Order has been entered but the Effective Date does not occur within a time period thereafter as may be agreed to by the Plan Proponents acting jointly, the Plan Proponents may revoke or withdraw the Plan, in which case the parties shall be returned to the position they would have held had the Confirmation Order not been entered, and nothing in the Plan, the Disclosure Statement, any of the Plan Documents, or any pleading filed or statement made in court with respect to the Plan or any of the Plan Documents shall be deemed to constitute an admission or waiver of any sort or in any way limit, impair, or affect the rights of any Entity.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

Section 13.01.        ***Expedited Tax Determination***.  The Reorganized Debtor may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

Section 13.02.        ***Exemption from Registration***.  Pursuant to section 1145 of the Bankruptcy Code, and except as provided in subsection (b) thereof, the issuance of any securities pursuant to the Plan shall be exempt from registration pursuant to section 5 of the Securities Act of 1933, as amended, and all other applicable nonbankruptcy laws and regulations.

Section 13.03.        ***Statutory Committee and Legal Representative***

(a)        Except as provided below, the Asbestos Claimants Committee and the Legal Representative shall continue in existence until the Effective Date.

(b)        Except as provided below, on and after the Effective Date, the rights, duties, and responsibilities of the Legal Representative shall be as set forth in the Asbestos Trust Agreement.

(c)        On and after the Effective Date, the Asbestos Claimants Committee and the Legal Representative shall continue in existence and shall have post-Effective Date standing and capacity (i) to complete matters, if any, including litigation, appeals, or negotiations pending as of the Effective Date that are not released pursuant to the Plan; (ii) to grant or withhold, in their sole discretion, any consent contemplated or required under the Plan; (iii) to object to or defend any Professional Claims; (iv) to oppose any appeals of the Confirmation Order; and (v) to prepare and prosecute applications for the payment of fees and reimbursement of expenses of their respective professionals.

(d)    In all events, the Asbestos Claimants Committee's professionals, and the Legal Representative and his professionals, shall have the right to seek, and shall be entitled to, reasonable fees and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code for services rendered, including those services arising from or connected with any matter authorized or described in Section 13.03(c) hereof.  The Debtors shall pay such reasonable fees and expenses incurred through the Effective Date, in accordance with the fee and expense procedures set forth in the Bankruptcy Code and Bankruptcy Rules or otherwise promulgated during the Chapter 11 Cases.  The Reorganized Debtor shall pay such reasonable fees and expenses relating to any post-Effective Date activities authorized or described in Section 13.03(c) hereof without the necessity of approval by the Bankruptcy Court.

(e)    Upon (i) the completion of all matters authorized and described in Section 13.03(c) hereof and (ii) the irrevocable and indefeasible payment in full by the Reorganized Debtor of all Allowed Professional Claims, the Asbestos Claimants Committee shall be dissolved, and the members thereof shall be discharged of and from all further authority, duties, responsibilities, liabilities, and obligations related to, or arising from, the Chapter 11 Cases.  Upon dissolution of the Asbestos Claimants Committee, the Trust Advisory Committee shall succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Asbestos Claimants Committee and shall enjoy the work product protections that were applicable or available to the Asbestos Claimants Committee before its dissolution.

Section 13.04.    ***Effective Date Actions Simultaneous***.    Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  Actions required to be taken after the Effective Date or as soon thereafter as is reasonably practicable shall be deemed to have been taken on the Effective Date.

Section 13.05.    ***Substantial Consummation***.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

Section 13.06.    ***Sections 1125 and 1126 of the Bankruptcy Code***.    As of and subject to the occurrence of the Confirmation Date: (a) the Plan Proponents shall be deemed to have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and (e) of the Bankruptcy Code, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with solicitation; and (b) the Reorganized Debtor and the Plan Proponents and each of their respective members, attorneys, advisors, and agents shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

Section 13.07.    ***Deemed Acts***.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

Section 13.08.    ***Binding Effect***.  The Plan shall be binding upon and inure to the benefit of the Plan Proponents, the Debtors, the holders of Claims, Demands (to the fullest extent permitted by law), and interests, and their respective successors and assigns, including the Reorganized Debtor.

Section 13.09.    ***Exhibits/Schedules***.  All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are part of the Plan as if set forth in full herein.

Section 13.10.    ***Entire Agreement***.  On the Effective Date, the Plan, the other Plan Documents, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

Section 13.11.    ***Reservation of Rights***.  If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Cases are and shall be reserved in full.  Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Cases shall be bound or deemed prejudiced by any such concession or settlement.  Moreover, if the Plan does not become effective, no party in interest in the Chapter 11 Cases shall be bound or prejudiced by any representation, written or oral, made by any party in connection with the Plan or the negotiation or prosecution of the Plan, including the representations made in the Plan, the Disclosure Statement, the other Plan Documents, or the Confirmation Order.

Section 13.12.    ***Further Assurances***.  The Debtors, the Reorganized Debtor, the Protected Parties, the Asbestos Trust, all Entities receiving Distributions under this Plan, and all other parties in interest shall, and shall be authorized to, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred after the Effective Date in connection therewith.

Section 13.13.    ***Further Authorizations***.  Prior to the Effective Date, the Plan Proponents may seek such orders, judgments, injunctions, and rulings that they, by unanimous agreement, deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan or any of the other Plan Documents, and any costs incurred in connection therewith shall be borne by the Debtors' Estates.  On and after the Effective Date, the Reorganized Debtor and the Asbestos Trust may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan or any of the other Plan Documents, with each such Entity to bear its own costs in connection therewith.

Section 13.14.    ***Notices and Deliveries***.  Any notice, request, or other communication required or permitted to be given under this Plan shall be in writing and deemed to have been

properly given (a) when delivered in person or when sent by facsimile or other electronic means and electronic confirmation of error-free receipt is received, or (b) three (3) days after being sent by certified or registered United States mail, return receipt requested, postage prepaid, and addressed to the Entity at the address listed in <u>Schedule 13.14</u> of the Plan Supplement.  Any Entity may change its address for notices by giving notice of such change to the other Entities in the manner set forth in this <u>Section 13.14</u>.

Section 13.15.    ***Asbestos Trust Annual Report***.  Notwithstanding the closing of the Chapter 11 Cases under section 350 of the Bankruptcy Code, the Clerk of the Bankruptcy Court shall accept for filing the Asbestos Trust's annual report without the requirement that any party in interest file a request to reopen the case.

Section 13.16.    ***Inconsistencies***.  To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.


Dated: March 5, 2019                            Respectfully Submitted,

                                                Duro Dyne National Corp., et al.

                                                By: <u>/s/Randall Hinden</u>
                                                    Randall Hinden, CEO


                                                Legal Representative

                                                By: <u>/s/Lawrence Fitzpatrick</u>
                                                    Lawrence Fitzpatrick


                                                Caplin & Drysdale, Chartered

                                                By: <u>/s/Jeffrey Liesemer</u>
                                                    Jeffrey A. Liesemer
                                                    Counsel to the Official Asbestos
                                                    Claimants Committee