| LOWENSTEIN SANDLER LLP | CAPLIN & DRYSDALE, CHARTERED | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|---|
| Kenneth A. Rosen, Esq. | James P. Wehner, Esq. | Edwin J. Harron, Esq. |
| Jeffrey D. Prol, Esq. | (admitted *pro hac vice*) | Sara Beth A. R. Kohut, Esq. |
| One Lowenstein Drive | Jeffrey A. Liesemer, Esq. | (admitted *pro hac vice*) |
| Roseland, NJ 07068 | (admitted *pro hac vice*) | Rodney Square |
| Telephone: (973) 597-2500 | One Thomas Circle, N.W. | 1000 North King Street |
| Facsimile: (973) 597-2400 | Washington, DC 20005 | Wilmington, DE 19801 |
| krosen@lowenstein.com | Telephone: (202) 862-5000 | Telephone: (302) 571-6703 |
| jprol@lowenstein.com | Facsimile: (202) 429-3301 | Facsimile: (302) 576-3298 |
| | jwehner@capdale.com | eharron@ycst.com |
| | jliesemer@capdale.com | skohut@ycst.com |
| *Counsel to the Debtors and Debtors in Possession* | *Counsel to the Asbestos Claimants Committee* | *Counsel to the Legal Representative* |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| DURO DYNE NATIONAL CORP., *et al.*, | Case No. 18-27963-MBK |
| Debtors.[1] | Jointly Administered |

**PLAN PROPONENTS' REPLY TO THE NORTH RIVER INSURANCE COMPANY'S OBJECTIONS TO MOTION PURSUANT TO
11 U.S.C. §§ 107(b) AND 105(a), FEDERAL RULE OF BANKRUPTCY PROCEDURE 9018, AND LOCAL CIVIL RULE 5.3 FOR AUTHORITY TO
(I) FILE DOCUMENTS UNDER SEAL AND (II) REDACT
<u>COMMERCIALLY SENSITIVE, NONPUBLIC INFORMATION</u>**

TO THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY JUDGE:

In support of their *Reply to the The North River Insurance Company's Objection to Motions Pursuant To 11 U.S.C. §§ 107(b) And 105(a), Federal Rule of Bankruptcy Procedure 9018, and Local Civil Rule 5.3 For Authority to (I) File Documents Under Seal And (II) Redact*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Duro Dyne National Corp. (4664); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); Duro Dyne Midwest Corp. (4662); and Duro Dyne Machinery Corp. (9699).

*Commercially Sensitive, Nonpublic Information*, ECF No. 511 (the "North River Objection"), Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp., the above-captioned debtors and debtors-in-possession (the "Debtors"), the Official Committee of Asbestos Claimants (the "Committee"), and Lawrence Fitzpatrick in his official capacity as Legal Representative (the "FCR") (the Debtors, Committee, and FCR collectively, "Plan Proponents"), respectfully represent as follows:

## ARGUMENT

North River's objection, couched as concern for "parties-in-interest" who purportedly will be denied the opportunity to "properly evaluate the proposed settlements" between the Debtors and the settling insurers (the "Agreements")[2] if the Settlement Amounts contained in those Agreements are sealed, is a transparent effort to obtain an upper hand in settlement negotiations with the Debtors. North River fails to identify—and indeed cannot identify—any public interest that outweighs the Plan Proponents' interest in protecting information that North River seeks to use for improper purposes.

**I.    North River Mischaracterizes the Applicable Standard for Motions to Seal.**

North River and the Plan Proponents agree that Section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 are designed to protect "commercial information" from disclosure that reasonably could be expected to cause injury to the movant. As stated in North River's own cited cases, however, "[e]very court has supervisory power over its own records," and bankruptcy courts "must deny access to judicial documents . . . where an open inspection may be used as a vehicle for improper purposes." *See In re Motions Seeking Access to 2019 Statements*,

---

[2] Capitalized terms used but not defined in this Reply shall have the same meanings given to them in the Agreements.

2

585 B.R. 733, 753 (D. Del. 2018) (citing *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

North River spends much of its brief arguing that "commercial information" eligible for protection under applicable bankruptcy law *only* includes information which would cause "unfair advantage to competitors" if disclosed. North River Objection at 7-8. Numerous courts, however, have interpreted "commercial information" as information whose disclosure could cause a broad range of commercial harms to a party. For example, in *In re Lomas Financial Corporation*, No. 90 Civ. 7827, 1991 WL 21231 (S.D.N.Y. Feb. 11, 1991), the court rejected the exact interpretation of "commercial information" under Section 107 that North River proposes here as "too narrow," affirming the bankruptcy court's sealing of information that would "have a chilling effect on negotiations" between the debtors and creditors committee or otherwise affect the viability of the debtors. *See also In re 50-Off Stores, Inc.*, 213 B.R. 646, 657 (Bankr. W.D. Tex. 1997) (finding that purpose of Section 107 was to "accomplish efficient bankruptcy administration" and granting motion to seal transcript of retention hearing where disclosure "could have threatened ability of the estate to pursue litigation to any effect"); *Robbins v. Tripp*, 510 B.R. 61, 66 (E.D. Va. 2014) (interpreting "commercial information" broadly to include court-requested report regarding the improper conduct of an attorney in the case, reasoning that outside of the "Bankruptcy Court, the Report would have remained confidential"); *In re EPIC Associates V*, 54 B.R. 445, 447 (Bankr. E.D. Va. 1985) (interpreting "commercial information" protected by Section 107 broadly to include identities of savings institutions holding debtors' mortgages or mortgage-backed certificates on the basis that "public disclosure of the identities of institutions holding [debtors]' paper would cause a loss of public confidence in those institutions and trigger runs of withdrawals by their customers").

Contrary to North River's assertions, courts have interpreted Section 107 similarly in the context of evaluating whether to seal settlement agreements.  In *In re Hemple*, 295 B.R. 200, 201 (Bankr. D. Vt. 2003), the court concluded that Section 107 was "generally intended to protect debtors as they would be protected in the commercial setting, when such protection does not compromise the public's need or right to have access to bankruptcy cases."  On this basis, the court found that the criteria for sealing settlement terms "must be flexible and vary according to the nature of the settlement and the specific extent and core-ness of the impact of the settlement on the bankruptcy cases."  *Id*.  Such factors included, among others:

(1) "whether the debtor will suffer irreparable harm if the settlement agreement is not filed under seal;"

(2) whether any objection "demonstrates harm to the public's need to know;"

(3) "whose interests are being protected by allowing the filing of the settlement agreement under seal and whether there is any negative impact either on the estate or in the treatment of other interested parties in the case;"

(4) "the necessity of the settlement to the viability of the bankruptcy case;" and

(5) whether the parties would be able to maintain the confidentiality of the information outside of bankruptcy.

*Id.* at 202.  On these grounds and others, numerous bankruptcy courts in this Circuit and across the country have granted motions to seal settlement agreements pursuant to Section 107 without reference to whether such information would cause "unfair advantage to competitors."[3]

---

[3] *See, e.g., In re Brahmacom, Inc.*, 04-15243-RS, 2005 WL 3240584, at *2 (Bankr. D. Mass. June 3, 2005) (sealing settlement terms based on balance of *Hemple* factors, including damage to movant's financial and litigation position in pending and future disputes); *In re Liberty Harbor Holding, LLC*, Nos. 12-19958 (NLW), 13-13090 (NLW), 2013 WL 7022464, at *1 (Bankr. D.N.J. Dec. 30, 2013); *In re Visteon Corp.*, No. 09-11786 (CSS), 2011 WL 6013615 (Bankr. D. Del. Oct. 11, 2011); *In re Int'l Garden Prods., Inc.*, No. 10-13207 (KJC), 2012 WL 407399 (Bankr. D. Del. Feb. 2, 2012); *In re Camp Cooley Ltd.*, No. 09-61311, No. 2011 WL 5037561 (Bankr. W.D. Tex. Jan. 28, 2011); *In re Crescent Oil Co.*, No. 09-20258, 2011 WL 6401037 (Bankr. D. Kan. Dec. 12, 2011); *In re CSD, LLC*, No. BK-S-12-21668-BAM, 2013 WL 2282201, at *1 (Bankr. D. Nev. Apr. 22, 2013); *In re Universal Health Care Group, Inc.*, No. 13BK01520, 2014 WL 585336, at *2 (Bankr. M.D. Fla. Jan. 10, 2014); *In re Scholl Forest Indus., Inc.*, Nos. 09-35962, 09-35963, 2009 WL 8189538 (Bankr. S.D. Tex. Aug. 14, 2009).

Here, the balance of *Hemple* factors weigh strongly in favor of sealing. With respect to the first four factors, the Plan Proponents have identified a strong interest in protecting the Settlement Amounts, whereas North River's objection has demonstrated no harm to the public's "need to know" the results of these negotiations between private parties. As noted in the Plan Proponent's Motion to Seal, if the Settlement Amounts are not protected, the Debtors' ability to settle with North River for an appropriate sum may be seriously impaired, thereby harming the Plan Proponents' interests in maximizing the assets available to the Asbestos Trust (the funding of which is a key aspect of the Debtors' reorganization efforts) and forcing the Debtors to continue to expend assets of the estate on litigation with North River. In response, North River alludes vaguely to the interests of "other" parties-in-interest in "evaluating" the Agreements. However, all other interested parties—*i.e.*, current and potential future asbestos creditors of the Debtors—have been apprised of the Settlement Amount through counsel and have approved the Agreements. Given that any settlement payment by North River to the Debtors would be channeled to the Asbestos Trust to pay injured claimants, those claimants' interests would be harmed, not helped, by North River's ability to leverage the Settlement Amounts in negotiations with the Debtors.

North River similarly fails to offer any credible explanation of how sealing the Settlement Amounts would harm North River. The only potentially appropriate interest in the Settlement Amounts that North River has identified is its need to determine whether there are adequate settlement proceeds for its contribution claims to attach. However, this argument fails to take into account that, pursuant to § 4.14 of the Filed Plan, North River's contribution claims against any settling insurers will be satisfied by set-offs and reductions in judgment. Therefore,

any amount that the Asbestos Trust recovers from the settled insurers is irrelevant to that determination.

The fifth factor—the parties' ability to access the information outside of bankruptcy—similarly weighs in favor of sealing the Settlement Amounts. Outside of the bankruptcy context, North River, a litigation adversary to the Debtors in the Coverage Action, would have no right to access any information regarding the Debtors' settlements with other parties to the Coverage Action. Permitting North River to access such information here would contradict Section 107's purpose of "protect[ing] debtors as they would be protected in the commercial setting." *Id.* at 201.

In light of the foregoing, North River's own self-interest in using the Settlement Amounts "as a vehicle for improper purposes"—*i.e.*, as leverage in its settlement negotiations with the Debtors—does not outweigh the interests of other Plan Proponents and creditors in protecting the information. This is particularly true where the protection sought (the limited redaction of the Settlement Amounts, while keeping all terms of the Agreements public) is as narrow as possible. Contrary to North River's arguments, regardless of whether the potential harm comes from a "competitor" of the Debtors, applicable bankruptcy protections apply.

## II. North River's Cases Do Not Support Disclosure Here.

North River cites a number of cases in support of its proposition that settlement terms do not qualify as "confidential commercial information." None of these cases, however, provides for disclosure at the behest of a debtor's litigation adversary or finds that such a litigant is entitled to know the amount of the settlements reached by its co-defendants—amounts that would certainly be confidential if reached outside of the bankruptcy context. While some cases find that a general concern about hypothetical future litigants is not sufficient to protect

6

settlement information from general disclosure, none require a party to disclose that information to a debtor's adversary in pending litigation. Indeed, most of these cases focused only on non-debtors' concerns regarding their litigation with third parties unrelated to the bankruptcy. The courts rejected the requests to seal the settlements in those cases on the basis that disclosure had no impact on the debtors' estate.[4] The movants in North River's remaining cases made no allegations whatsoever regarding commercial injury to the debtors.[5]

In contrast, here, the Plan Proponents have identified concrete harms against the Debtors' estate and the administration of the reorganization if the Settlement Amounts are disclosed. North River's objections therefore should be dismissed, and the Plan Proponents' seal motion should be granted.

---

[4] *See, e.g., In re Gibbs*, No. 11-03070, 2017 WL 6506324, at *2 (Bankr. D. Haw. Dec. 19, 2017) (rejecting request to seal settlement of improper foreclosure dispute between bankruptcy trustee and Bank of America where only harm suffered was disclosure of bank's litigation strategy in similar matters with other third parties); *Geltzer v. Andersen Worldwide, S.C.*, No. 05 Civ. 3339 (GEL), 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007) (rejecting request to seal terms of professional malpractice settlement between Chapter 7 trustee and accountant because there was "no discernable public interest, or interest of the bankruptcy estates" in preserving third party accountant's settlement leverage against other parties who had sued it); *In re Alterra Healthcare Corp.*, 353 B.R. 66, 76 (Bankr. D. Del. 2006) (granting non-party newspaper's request to unseal settlement agreements between reorganized debtor and tort claimants under Section 107 where release would not reduce value of the estate or reduce recoveries by other tort claimant creditors); *In re Gen. Homes Corp.*, 181 B.R. 898, 903 (Bankr. S.D. Tex. 1995) (declining to retroactively seal court records from prior proceedings regarding creditors committee's misconduct due to harm sealing would cause to proper administration of current and future bankruptcy proceedings).

[5] *See In re Lawlor*, No. 01-11402, 2003 WL 21288634 (Bankr. D. Vt. May 30, 2003) (rejecting motion to seal where movant argued only that agreement included confidentiality provision with penalty for breach; no allegations of commercial injury made); *In re Analytical Sys., Inc.*, 83 B.R. 833 (Bankr. N.D. Ga. 1987) (motion to seal included no allegations regarding commercial injury to debtor).

Respectfully submitted,

| LOWENSTEIN SANDLER LLP | THE LAW OFFICE OF JOHN A. FIALCOWITZ, LLC | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|---|
| */s/ Jeffrey D. Prol*<br>Kenneth A. Rosen, Esq.<br>Jeffrey D. Prol, Esq.<br>One Lowenstein Drive<br>Roseland, NJ 07068<br>Telephone: (973) 597-2500<br>Facsimile: (973) 597-2400<br>krosen@lowenstein.com<br>jprol@lowenstein.com<br><br>*Counsel to the Debtors and Debtors in Possession* | */s/ John A. Fialcowitz*<br>John A. Fialcowitz<br>89 Headquarters Plaza<br>North Suite 1216<br>Morristown, NJ 07960<br>Telephone: (973) 532-7208<br>Facsimile: (973) 993-1857<br><br>—and—<br><br>CAPLIN & DRYSDALE, CHARTERED<br>James P. Wehner, Esq.<br>(admitted *pro hac vice*)<br>Jeffrey A. Liesemer, Esq.<br>(admitted *pro hac vice*)<br>One Thomas Circle, N.W.<br>Washington, DC 20005<br>Telephone: (202) 862-5000<br>Facsimile: (202) 429-3301<br>jwehner@capdale.com<br>jliesemer@capdale.com<br><br>*Counsel to the Asbestos Claimants Committee* | */s/ Edwin J. Harron*<br>Edwin J. Harron, Esq.<br>Sara Beth A. R. Kohut, Esq.<br>(admitted *pro hac vice*)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6703<br>Facsimile: (302) 576-3298<br>eharron@ycst.com<br>skohut@ycst.com<br><br>*Counsel to the Legal Representative* |

Dated: March 7, 2019