## AMENDED AND RESTATED SETTLEMENT AGREEMENT AND RELEASE

This Amended and Restated Settlement Agreement and Release is entered into by and between MRAm and the Debtors (each individually, a "Party," and collectively, the "Parties").   Capitalized terms in this prefatory paragraph, the following recitals, and in the Sections below have the meanings ascribed to them in the list of Definitions below.

### RECITALS

WHEREAS, certain Asbestos Claims have been brought, and in the future may be brought, against one or more of the Debtors, seeking damages and other relief for bodily injury; and

WHEREAS, MRAm (through American Re-Insurance Company and American Excess Insurance Company) issued or allegedly issued certain liability insurance Policies to one or more of the Debtors, or under which one or more of the Debtors allege they are entitled to insurance coverage; and

WHEREAS, a dispute has arisen between the Parties as to the scope of MRAm's obligations to provide coverage for the Asbestos Claims; and

WHEREAS, the Debtors and MRAm are parties to the pending Coverage Action concerning the potential application of the Policies to the Asbestos Claims; and

WHEREAS, the Debtors and MRAm have not asserted Claims against each other in the Coverage Action, but the outcome of the Coverage Action will impact MRAm's potential coverage obligations to the Debtors under the Policies; and

WHEREAS, on September 7, 2018, the Debtors filed voluntary petitions for relief with the Bankruptcy Court under Chapter 11 of Title 11 of the United States Code, commencing their respective Bankruptcy Cases; and

WHEREAS, the Parties wish to resolve the disputes between them, to provide for the dismissal of their respective claims in the Coverage Action, and to provide for the other consideration, promises, releases, and covenants set forth in this Agreement; and

WHEREAS, as part of the compromise and resolution of the Coverage Action, the Debtors have agreed to sell, and MRAm has agreed to purchase, the Policies free and clear of all Interests of any Person, subject and pursuant to the terms of this Agreement;

NOW THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants as set forth below, it is hereby agreed as follows:

## DEFINITIONS

The following definitions apply to this Agreement only and are not intended to be used for any other purpose.  In addition, the singular form of a word includes the plural and vice versa; the disjunctive "or" is not exclusive and thus includes the conjunctive "and"; all pronouns apply to the male, female and neutral genders; the word "any" includes the word "all" and vice versa; the words "includes" or "including" are without limitation; and the past tense of a word includes the present tense and vice versa.

a.     **"Agreement"** means this Amended and Restated Settlement Agreement and Release.

b.     **"Approval Date"** means the date on which the Approval Order, having been entered by the Bankruptcy Court, becomes a Final Order.

c.     **"Approval Motion"** means the motion to be filed by the Debtors in the Bankruptcy Cases under Federal Rule of Bankruptcy Procedure 9019(a) and Sections 105(a) and 363 of the Bankruptcy Code, seeking entry of the Approval Order.

d.    "**Approval Order**" means an order of the Bankruptcy Court approving this Agreement and the compromise, settlement, and sale of the Policies, as memorialized herein, which order shall be substantially in the form of order attached hereto as <u>Exhibit 2</u> or otherwise in form and substance acceptable to the Parties and the Consenting Entities.

e.    "**Asbestos Claims**" has the meaning ascribed to it in the Filed Plan.

f.    "**Asbestos Trust**" has the meaning ascribed to it in the Filed Plan.

g.    "**Bankruptcy Cases**" means (i) the Chapter 11 cases filed by the Debtors on September 7, 2018, in the Bankruptcy Court and jointly administered in the lead Chapter 11 case that is captioned, *In re Duro Dyne National Corp., et al.*, No. 18-27963-MBK; and (ii) any appeal taken from any of the foregoing cases.

h.    "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

i.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Bankruptcy Cases or the United States District Court for the District of New Jersey exercising original jurisdiction over the Bankruptcy Cases or to the extent of the withdrawal of any reference under 28 U.S.C. § 157.

j.    "**Business Days**" shall have the meaning ascribed to it in the Filed Plan.

k.    "**Cash**" has the meaning ascribed to it in the Filed Plan.

l.    "**Channeled Asbestos Claims**" means, collectively, the Asbestos Claims and the Demands.

m.    "**Channeled Asbestos Claimant**" means a holder of a Channeled Asbestos Claim.

n.    **"Claims"** means any and all past, present or future claims, liabilities, demands, obligations, duties, complaints, cross-complaints, cross-claims, third party complaints, counterclaims, requests, administrative proceedings, directives and notices, counts, judgments, executions, attachments, debts, lawsuits, actions, direct actions, writs, liens, inquiries, rights, damages, costs, or any other cause of action or order, including Direct Action Claims, Extra-Contractual Claims, "claims" as that term is defined in 11 U.S.C. § 101(5), and "demands" as that term is defined in 11 U.S.C. § 524(g)(5).

o.    **"Committee"** means the Official Committee of Asbestos Claimants appointed by the United States Trustee in the Bankruptcy Cases on September 26, 2018.

p.    **"Confirmation Order"** means an order entered by the Bankruptcy Court in the Bankruptcy Cases confirming the Filed Plan.

q.    **"Consenting Entities"** means the Committee and the FCR.

r.    **"Coverage Action"** means the case filed on September 19, 2013, by The North River Insurance Company in the Supreme Court of the State of New York, Suffolk County, and bearing the caption, *The North River Insurance Company v. Duro Dyne National Corporation, et al.*, Index No. 062947/2013, including any claims that could have been, or might, but for this Agreement, be asserted by the Duro Dyne Entities against MRAm, or vice versa, under the Policies.

s.    **"Debtors"** means Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp.

t.    **"Direct Action Claim"** means any Claim by a Person against any of the MRAm Entities, on account of, based upon, arising from, or in any way attributable to the rights afforded one or more of the Debtors under a Policy, whether arising by contract, in tort, or under the laws

of any jurisdiction, including any statute that gives a third party a direct cause of action against any of the MRAm Entities.

u.     **"Duro Dyne Entities"** means Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp., and each of their officers, directors, employees, successors (including the Asbestos Trust) and assigns, each solely in their capacities as such.

v.     **"Effective Date"** (also referenced herein as "**Plan Effective Date**") has the meaning ascribed to it in the Filed Plan.

w.     **"Execution Date"** means the earliest date on which this Agreement is signed by all of the Parties.

x.     **"Extra-Contractual Claim"** means any Claim against any of the MRAm Entities, seeking any type of relief based upon conduct prior to the Execution Date, including compensatory, exemplary or punitive damages, on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation or code; any type of alleged misconduct; or any other act or omission of a MRAm Entity of any type for which a Duro Dyne Entity seeks relief other than coverage or benefits under an insurance policy, including any Claims for economic loss, general damages, attorneys' fees or costs in connection with the handling of, or refusal to handle, any Claims against the Debtors.

y.     **"FCR"** means (i) Lawrence Fitzpatrick in his capacity as the court-appointed legal representative for all holders of Demands pursuant to Section 524(g) of the Bankruptcy Code; or (ii) any individual who succeeds him in that capacity.

z.     **"Filed Plan"** means the Second Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., *et al*., Under Chapter 11 of the Bankruptcy Code, filed in the Bankruptcy Court on November 16 , 2018 at ECF No. 279, as it may be modified or amended in the future in accordance with the terms thereof, provided that any such modifications or amendments do not contradict or materially impact the terms of this Agreement.

aa.     "**Final Order**" means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired, and as to which no appeal or petition for review, reconsideration, rehearing, or certiorari has been taken or, if taken, remains pending.

bb.     **"Interests"** means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity.

cc.     **"MRAm"** means Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company.

dd.     **"MRAm Entities"** means MRAm and all of its past, present and future direct and indirect parents, subsidiaries and affiliates, each solely in their capacities as such, and each of its and their respective officers, directors, employees, successors and assigns, each solely in their capacities as such.  For purposes of this Agreement only, "MRAm Entities" also includes American Excess Insurance Company.

ee.     **"Person"** means an individual, a corporation, a partnership, an association, a trust or any other entity or organization, and any federal, state or local governmental or quasi-governmental body or political subdivision or any agency, department, board or instrumentality thereof.

ff.     **"Plan Proponents"** has the meaning ascribed to it in the Filed Plan.

gg.     **"Policies"** means (1) any and all liability insurance policies, known and unknown, that were issued or allegedly issued by MRAm to one or more of the Debtors, or under which one or more of the Debtors is insured or may claim to be insured or entitled to benefits, that provide or are alleged to provide insurance coverage for Asbestos Claims, including the policies issued by American Reinsurance Company listed on <u>Exhibit 1</u> hereto; and (2) the liability policy issued by American Excess Insurance Company listed on <u>Exhibit 1</u> hereto.

hh.     **"Settlement Amount"** means ███████████████████████████████
█████████

ii.     **"Settling Asbestos Insurer"** has the meaning ascribed to it in the Filed Plan.

jj.     **"Trigger Date"** means the earliest date on which all of the following preconditions shall have occurred:  (i) the Approval Order shall have been entered and become a Final Order; (ii) each of the Consenting Entities shall have manifested in writing their approval of and consent to this Agreement; (iii) the Plan Effective Date shall have occurred; and (iv) the Confirmation Order shall have become a Final Order.

## TERMS OF AGREEMENT AND RELEASES

**I.     PAYMENT OF SETTLEMENT AMOUNT**

**A.**     Within seven (7) Business Days after the Trigger Date, MRAm shall irrevocably and indefeasibly pay, in Cash and in full, the Settlement Amount to the Asbestos Trust.

**B.**     MRAm's payment of the Settlement Amount is in addition to any and all payments that may have been paid by any of the MRAm Entities to or for the benefit of any of the Duro Dyne Entities prior to the Trigger Date.  Any and all payments by any of the MRAm Entities under, arising out of, related to, or involving the Policies are deemed final and irrevocable payments, except as provided for in <u>Section V</u> hereto.

**C.** Subject to the terms of this Agreement, the Parties expressly agree that the Settlement Amount is the total amount MRAm is or will ever be obligated to pay on account of any and all Claims by or on behalf of the Debtors arising from or attributable to the Policies.

**D.** The Settlement Amount shall not be subject to any Claims for deductions, setoffs, or charge-backs by any MRAm Entity of any kind, including Claims involving recoupment or deductibles, contribution, self-insured retentions, additional premiums, or retrospective or reinstatement premiums under the Policies.

## II. BANKRUPTCY-RELATED OBLIGATIONS

**A.** Prior to the Execution Date, the Debtors will seek and obtain the Consenting Entities' written consent to the Debtors' entry into this Agreement.

**B.** Within ten (10) Business Days after the Execution Date, or as soon thereafter as reasonably possible, the Debtors shall, at their sole cost and expense, file the Approval Motion and seek entry of the Approval Order by the Bankruptcy Court. The Approval Order shall be substantially in the form of order attached hereto as Exhibit 2 or otherwise in form and substance acceptable to the Parties and the Consenting Entities. The Debtors shall serve notice of the Approval Motion and any hearing on each of those persons identified in Paragraph E of the Approval Order, provided that notice to any asbestos claimant shall be sent to his or her known counsel of record in accordance with the "Notice Procedures" approved in that certain *Order (I) Authorizing the Listing of Addresses of Counsel for Personal Injury Claimants in Creditor Matrix in Lieu of Claimants' Addresses and (II) Approving Notice Procedures for Such Claimants* that the Bankruptcy Court entered on September 11, 2018, in the Bankruptcy Cases [at ECF No. 36]. In addition, the Debtors shall publish notice of the Approval Motion and the injunction in favor of MRAm, and the hearing on the Approval Motion, in both the New York

- 8 -

Times National Edition and USA Today by not later than April 5, 2019. MRAm shall pay the costs of such publication.

**C.**    The Parties shall cooperate in good faith to ensure that the Approval Order is entered and becomes a Final Order.

**D.**    Within seven (7) Business Days after the Execution Date, the Debtors, with the consent of the other Plan Proponents, will designate MRAm as a Settling Asbestos Insurer entitled to the benefits of the Asbestos Permanent Channeling Injunction, subject to the occurrence of the Trigger Date.

**E.**    Subject to the occurrence of the Approval Date, and except to contend that the Debtors have breached this Agreement (including Section II.C), the MRAm Entities shall not object to the Filed Plan, nor in any other way participate in the Bankruptcy Cases, including by seeking discovery from any Debtor or any party-in-interest in the Bankruptcy Cases, including the Committee and the FCR. Promptly following the Execution Date, MRAm shall (1) withdraw any and all motions, briefs, pleadings, proofs of claim, claims, and objections it has made in the Bankruptcy Cases, and any request for relief from the Debtors will be deemed withdrawn; and (2) not pursue any Claims against the Debtors in the Bankruptcy Cases or that have been released pursuant to this Agreement. Such withdrawals shall be without prejudice until the occurrence of the Trigger Date, at which time such withdrawals shall be deemed to be with prejudice. Promptly after the Execution Date, each Party shall:

　　　　1)    withdraw any and all outstanding discovery requests; and

　　　　2)    serve no new discovery requests in the Bankruptcy Cases on any Duro Dyne Entity, any MRAm Entity, the Committee, or the FCR. Such withdrawals shall be

without prejudice until the occurrence of the Trigger Date, at which time such withdrawals shall be deemed to be with prejudice.

F.    On the Trigger Date, the rights and obligations of the Debtors under this Agreement shall be deemed to have been assigned and transferred to the Asbestos Trust without need of further action by any Party or Person, and the Asbestos Trust shall be bound by all of the provisions of this Agreement.  The Debtors (including the reorganized Debtors) shall continue to be bound by this Agreement and shall retain the obligations and benefits hereunder to the extent consistent with the Filed Plan.

## III.    RELEASES

A.    **Release of the MRAm Entities.**  Effective upon MRAm's payment in full of the Settlement Amount to the Asbestos Trust, and in consideration for payment of such Settlement Amount, the Debtors, on behalf of themselves and the other Duro Dyne Entities, hereby (a) fully and forever release the MRAm Entities from any and all Claims by or on behalf of any Duro Dyne Entity based on, arising from, or attributable to the Policies (including but not limited to Asbestos Claims, Direct Action Claims, and Extra-Contractual Claims), to the fullest extent permitted by law, (b) withdraw any and all requests, demands, or tenders for defense or indemnity previously submitted by or on behalf of any Duro Dyne Entity to MRAm under the Policies or, and (c) surrender, relinquish, and release any further right to tender or present any Claims by or on behalf of the Duro Dyne Entities under the Policies.  By virtue of the foregoing release, the MRAm Entities shall have no duty to defend or indemnify any of the Duro Dyne Entities with respect to any Claims based on, arising from, or attributable to the Policies.

B.    **Releases by the MRAm Entities.**  Effective upon the occurrence of the Trigger Date, MRAm, on behalf of itself and the other MRAm Entities, hereby (a) fully and forever

- 10 -

releases the Duro Dyne Entities from any and all Claims based on, arising from, or attributable to the Policies (including Asbestos Claims, Direct Action Claims, and Extra-Contractual Claims), to the fullest extent permitted by law, (b) withdraws any and all requests or demands for defense or indemnity, including reimbursement of payments made by any of the MRAm Entities, previously submitted by or on behalf of any of the MRAm Entities to any Duro Dyne Entity under the Policies, and (c) surrenders, relinquishes, and releases any further right to tender or present any Claims by or on behalf of any of the MRAm Entities under the Policies.  By virtue of the foregoing release, the Duro Dyne Entities shall have no duty to indemnify or reimburse any of the MRAm Entities with respect to any Claims based on, arising from, or attributable to the Policies.

C.    **Unknown or Future Claims.**  The Parties expressly acknowledge that there may be changes in the law or the Parties may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to any and all of the Claims released in Sections III.A and III.B above.  Nevertheless, the Parties hereby agree that (subject to Section V below) the releases set forth in Sections III.A and III.B above shall be and remain effective in all respects, notwithstanding any changes in the law or the discovery of such additional or different facts.  In addition, the Parties acknowledge they have been advised by their respective legal counsel and are familiar with the provisions of Section 1542 of the California Civil Code, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of the executing of the release which if known by him must have materially affected his settlement with the debtor.**

- 11 -

E.    **Agreement Rights and Obligations Not Affected.**    The releases set forth in Sections III.A. and III.B. of this Agreement are not intended to, and shall not, extend to or otherwise release any rights, privileges, benefits, duties, or obligations of the Parties by reason of, or otherwise arising from, this Agreement or the Filed Plan.

## IV.    DISMISSAL OF THE COVERAGE ACTION

The Parties will not (1) file any Claims against each other in the Coverage Action, or (2) file or maintain further any other coverage actions against each other with respect to Claims that are the subject of the releases under this Agreement, unless this Agreement becomes null and void.    The Parties agree that MRAm's pending motion in the Coverage Action, which was opposed by the Debtors, will be withdrawn on the consent of the Parties without decision.

## V.    CONDITIONS PRECEDENT AND VOIDABILITY

A.    This Agreement shall become null and void upon the occurrence of any of the following contingencies:    (1) the entry at any time by the Bankruptcy Court of an order confirming a Chapter 11 plan of reorganization for the Debtors that is not the Filed Plan; (2) the entry by the Bankruptcy Court of an order stating that MRAm is not a Settling Asbestos Insurer or otherwise contravenes the designation of MRAm as a Settling Asbestos Insurer; (3) the entry of an order by the Bankruptcy Court denying approval of this Agreement; (4) the entry prior to the Trigger Date of an order by the Bankruptcy Court converting the Bankruptcy Cases into cases under Chapter 7 of the Bankruptcy Code or dismissing the Bankruptcy Cases; (5) the statement in writing by the Committee or the FCR that such entity refuses to consent to this Agreement; (6) the entry prior to the Trigger Date of an order by the Bankruptcy Court appointing a trustee or an examiner substantially possessing the rights, powers, and duties of a bankruptcy trustee in the Bankruptcy Cases.

**B.**    Notwithstanding anything in this Agreement to the contrary, in the event that this Agreement becomes null and void pursuant to Section V.A above, (1) this Agreement, except for this Section V and any definitions of capitalized terms used herein (which sections shall remain in full force and effect), shall be vitiated and shall be a nullity; (2) MRAm shall not be obligated to pay the Settlement Amount pursuant to this Agreement (if the Settlement Amount has been paid by MRAm, such amount will be returned to MRAm); (3) none of the Parties shall be bound by the terms of any Approval Order; (4) the Debtors shall not be obligated to designate MRAm as a Settling Asbestos Insurer; (5) the MRAm Entities shall not be protected by any injunction in the Filed Plan, the Confirmation Order, or the Approval Order, and the MRAm Entities shall not be entitled under this Agreement to assert as a defense to any Claim any benefit of any injunction contained in the Filed Plan, the Confirmation Order, or the Approval Order; (6) the Parties shall have all of the rights, defenses, and obligations under or with respect to any and all of the Policies that they would have had absent this Agreement; and (7) any and all otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date on which this Agreement becomes null and void in accordance with Section V.A above, and no Party shall assert or rely on any time-related defense to any Claim by any other Party related to such period.

## VI.    JUDGMENT REDUCTION

In the event that the Trigger Date occurs and any other Person or other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from MRAm as a result of a Claim for contribution, subrogation, indemnification, allocation, or other similar Claim against MRAm for MRAm's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense or indemnity obligation of MRAm for any Claims

released in Section III.A or III.B above, the Debtors (or their successors, including the Asbestos Trust) shall voluntarily reduce its judgment(s) or Claim(s) against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, or indemnification Claims against MRAm. To ensure that such a reduction is accomplished, MRAm shall be entitled to assert this paragraph as a defense to any action against it for any such portion of the judgment or Claim and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to MRAm from any liability for the judgment or Claim.

## VII. CONTRIBUTION CLAIMS

Except as otherwise provided in this Agreement, the MRAm Entities shall not assert or file, and will dismiss any pending Claim seeking contribution, indemnity, or defense against another insurer or other Person in order to recover any portion of the Settlement Amount or other amounts previously paid by any MRAm Entity to any of the Duro Dyne Entities under or with respect to the Policies; however, nothing herein shall preclude any MRAm Entity from filing or asserting such a Claim seeking contribution, indemnity, or defense in the event another insurer or other Person asserts a Claim for contribution or indemnity against a MRAm Entity in the first instance, provided that, to the extent that a MRAm Entity recovers from that other insurer or that other Person, the proceeds of such recovery shall be paid by such MRAm Entity per the Asbestos Trust's instruction, after such MRAm Entity is reimbursed from such proceeds for its reasonable fees and costs incurred in prosecuting its Claim against that other insurer or that other Person. Nothing contained in this Agreement shall be construed to prohibit any MRAm Entity from making a Claim against any reinsurer or from pursuing its recoveries from any reinsurer in its capacity as such, regardless of the identity or affiliation of the reinsurer. To the extent that the

any of the Duro Dyne Entities or the Asbestos Trust settles Claims arising out of Claims released in <u>Section III.A</u> above with any other insurer or other Person, such Duro Dyne Entity or the Asbestos Trust, as applicable, will use reasonable best efforts to obtain a waiver of that other insurer's or other Person's Claims seeking contribution, indemnity, or defense against any MRAm Entity based upon, arising out of, or in any way attributable to such Claims.

## VIII.   NO ADMISSIONS AND NON-ADMISSIBILITY OF THE AGREEMENT

Nothing contained in this Agreement, or in any negotiations, discussions, correspondence or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties with respect to any matter or any factual or legal issue of any kind.  Except as may be necessary to seek or obtain entry of the Approval Order in the Bankruptcy Cases, to enforce the terms of this Agreement, or as may be necessary or useful in the pursuit by any MRAm Entity of a reinsurance recovery for sums to be paid under this Agreement, neither this Agreement itself, nor any negotiations, discussions, correspondence, or other materials of any kind relating to this Agreement or relating to the negotiation of this Agreement, shall be discoverable or admissible in any legal or equitable proceeding of any kind, including any lawsuit, mediation, arbitration, administrative proceeding or action, or any other proceeding or action of any kind. Notwithstanding the foregoing, and provided that the Agreement does not become null and void pursuant to <u>Section V</u> hereof, the MRAm Entities shall not object to the Filed Plan unless that plan is materially inconsistent with the rights and benefits provided to the MRAm Entities under this Agreement.  MRAm's entry into this Agreement does not constitute an endorsement of any Chapter 11 plan for the Debtors, including the Filed Plan, nor a statement of position as to whether any such Chapter 11 plan is lawful or reasonable.

## IX.    BINDING EFFECT OF AGREEMENT

All terms and provisions of this Agreement shall be binding on, and shall inure to the benefit of, the Parties, the other Duro Dyne Entities, the other MRAm Entities, and their respective successors and assigns, including the Asbestos Trust.

## X.    DISPUTE RESOLUTION

If any dispute should arise concerning the terms, meaning, or implementation of this Agreement, the Parties agree to use their best efforts to reach a prompt resolution of such dispute, but in the event they are unable to do so, either party may initiate litigation in an appropriate forum, including the Bankruptcy Court.

## XI.    CONSTRUCTION OF AGREEMENT

A.    The Parties represent and acknowledge that they have participated in the preparation and drafting of this Agreement or have each given their approval to all of the language contained in this Agreement, and it is expressly agreed and acknowledged that if any of the Parties later asserts that there is an ambiguity in the language of this Agreement, such asserted ambiguity shall not be presumptively construed for or against any other Party on the basis that one Party drafted the language of this Agreement or played a greater role in the drafting of the language or that one party is an insurer.  This Agreement is not a contract of insurance and any rules of construction or interpretation specifically applicable to insurance policies shall have no weight or effect.

B.    The headings of this Agreement are asserted for convenience and are not part of the provisions hereof and shall have no force or effect.

C.    If any provision of this Agreement or application thereof is held to be invalid or unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as

best to reasonably effect the intent of the Parties.  Notwithstanding the foregoing, the provisions in this Agreement regarding Payment (Section I) and Releases (Section III) and the definitions of the defined terms that appear in those provisions shall not be severable from this Agreement.

## XII.   COOPERATION

**A.**      Each Party shall use its reasonable efforts to obtain the outcomes sought by this Agreement, and to take such steps and execute such documents as may be reasonably necessary and proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.  In the event that any action or proceeding is commenced or prosecuted by any Person to invalidate or prevent the validation, enforcement, or carrying out of all or any provisions of this Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

**B.**      Each of the Parties shall reasonably cooperate with each of the other Parties in responding to or opposing any motion, objection, claim, assertion, or argument by any third party that this Agreement is not binding, or should be avoided, or that valuable and fair consideration or reasonably equivalent value have not been exchanged pursuant to this Agreement.

## XIII.   MEDICARE REPORTING AND MEDICARE PAYMENTS

**A.**      MRAm's payment obligations under this Agreement are solely to pay the Asbestos Trust as set forth in Section I above.  In no event shall MRAm pay or be obligated to pay directly any claimant, representative of any claimant or the Debtors' defense counsel on account of any Asbestos Claim.

**B.**      MRAm shall not have any responsibility to make any required reports (or to make any payments owed or sums to be paid) to Medicare or to the United States government

or any agency or instrumentality thereof pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2) and/or under any regulations promulgated thereunder including 42 C.F.R. § 411.20 et seq. with respect to any payment the Debtors or the Asbestos Trust receives under this Agreement.

  **C.**  The Asbestos Trust shall be designated as the "RRE Agent."

  **D.**  The RRE Agent shall, at its sole expense, act as MRAm's reporting agent, and shall timely submit all reports that are required by a Responsible Reporting Entity under the reporting provisions of Section III of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173) or any other similar statute or regulation ("MMSEA") on account of Asbestos Claims paid by the RRE Agent.  The RRE Agent shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports under MMSEA (collectively, "CMS") to determine whether or not and, if so, how to report to CMS pursuant to MMSEA.

  **E.**  The RRE Agent shall provide a written notification to MRAm within ten (10) Business Days following receipt of any notification from CMS that any report was rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance.

  **1.**  With respect to any reports rejected or otherwise identified as noncompliant by CMS, the RRE Agent shall, at MRAm's request, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports.  The RRE Agent shall reasonably undertake to remedy any issues of noncompliance that CMS identifies and to resubmit such reports to CMS.  Upon request by

MRAm the RRE Agent shall provide copies of such resubmissions.  With respect to copies of original reports and resubmissions provided under this Section XIII.E.1, the RRE Agent may redact from such copies the names, social security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the injured parties, claimants, guardians, conservators, and/or other personal representatives, as applicable.

   **2.**  All documentation that the RRE Agent relies upon in making a determination that a payment does not have to be reported to CMS shall be maintained for a minimum of six (6) years following such determination.

   **F.**  Absent guidance to the contrary from CMS, the Secretary of Health and Human Services or a controlling court, including the United States Court of Appeals for the Third Circuit, the Asbestos Trust (or Debtors, as appropriate) is not required by this Agreement to report any Asbestos Claim for a claimant who alleges that exposure to or ingestion of asbestos or asbestos-containing product for which Duro Dyne allegedly is responsible took place exclusively before December 5, 1980.

   **G.**  In the event that CMS concludes that reporting done by the RRE Agent in accordance with this Section is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the RRE Agent or MRAm a concern with respect to the sufficiency or timeliness of such reporting or non-reporting, then MRAm shall have the right to submit its own reports to CMS under MMSEA, and the RRE Agent shall provide to MRAm such information as MRAm may require to comply with MMSEA including the full reports filed by the RRE Agent without any redactions. MRAm shall keep any information received from the RRE Agent pursuant to this Paragraph

confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

**H.** The Asbestos Trust shall obtain, prior to remittance of funds to claimants' counsel or the claimant, if pro se, in respect of any Asbestos Claim, a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Asbestos Claim. The Asbestos Trust shall provide a certification of its compliance with this Section to MRAm upon MRAm's request, but not more often than quarterly. The Asbestos Trust shall permit reasonable audits by MRAm no more often than quarterly, to confirm the Asbestos Trust's compliance with this Section. MRAm shall keep any information and documents received from any Duro Dyne Entity and the Asbestos Trust pursuant to this Section XIII.H confidential and shall not use such information for any purpose other than meeting obligations under this Section XIII.H.

**I.** Compliance with the requirements of this Section shall be a material obligation of Debtors and/or the Asbestos Trust in favor of MRAm under this Agreement

**XIV. REPRESENTATIONS, WARRANTIES, AND OTHER MISCELLANEOUS PROVISIONS**

**A.** Each Party represents and warrants that, subject to entry of the Approval Order, it has taken all necessary corporate and legal action required to duly approve the making and performance of this Agreement and that no further action is necessary to make this Agreement binding and legally enforceable.

**B.** Each Party represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law or any of

its respective articles of incorporation or bylaws or any contract or agreement by which it is bound.

**C.**     Each Party represents and warrants that (1) it is the owner of the rights and Claims to be compromised and released by it under this Agreement, and (2) it has not assigned or transferred to any Person any such right or Claim or other matter to be compromised and released hereunder.

**D.**     Each Party represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable on and after the Trigger Date.

**E.**     Each Party represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations, with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate, and good faith compromise of disputed Claims, disputed liabilities and disputed issues.

**F.**     Each Party represents and warrants that it has read this Agreement in its entirety, fully understands all of its terms and the consequences thereof, and that the individual signing this Agreement on its behalf has, subject to entry of the Approval Order, full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

**G.**     MRAm represents and warrants that it is duly authorized to act on behalf of the other MRAm Entities so as to bind them to the provisions of this Agreement, including Section II.E and the releases granted under Section III.B, and to make those provisions enforceable against each of the MRAm Entities.

**H.**     The Debtors represent and warrant that they are duly authorized to act on behalf of the other Duro Dyne Entities so as to bind the Duro Dyne Entities to the provisions

- 21 -

of this Agreement, including the releases granted under <u>Section III.A</u>, and to make those provisions enforceable against the Duro Dyne Entities.

**I.**    This Agreement (including the exhibits attached to it) sets forth the entire agreement among the Parties as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or verbal.

**J.**    All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the other Parties and Consenting Entities at the addresses set forth below, or to such other persons or addresses as the Parties or Consenting Entities may designate in writing from time to time:

<u>For MRAm</u>:

William E. McGrath, Jr.
Dilworth Paxson LLP
2 Research Way
Princeton, NJ 08540
(609) 987-6679
wmcgrath@dilworthlaw.com

<u>For the Debtors</u>:

Jeffrey D. Prol, Esq.
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
jprol@lowenstein.com

<u>For the Consenting Entities</u>:

*Committee:*

Kami E. Quinn, Esq.
Gilbert LLP
1100 New York Avenue, N.W.

Suite 700
Washington, DC 20005
quinnk@gilbertlegal.com

*FCR:*

Edwin J. Harron, Esq.
Young Conaway Stargatt & Taylor
1000 North King Street
Wilmington, DE 19801
eharron@ycst.com

**K.**    This Agreement may be amended only by a writing signed by or on behalf of each Party and, if before the Effective Date, each of the Consenting Entities.

**L.**    MRAm represents that it has made a good faith search and that it has located no evidence of any liability policies under which any of the Debtors is insured other than those listed on Exhibit 1, and that it is not aware of any such policy, secondary evidence of any such policy, or any reason to believe such policy exists.

**M.**    The Bankruptcy Court shall retain exclusive jurisdiction to enforce this Agreement and to interpret and resolve any disputes relating to this Agreement.   If the Bankruptcy Court refuses or declines to exercise jurisdiction over any such dispute, the Parties may submit such dispute to any court of competent jurisdiction.

**N.**    This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. Execution of this Agreement may be effected by PDF or other electronic transmission of executed copies of the signature pages delivered to counsel for the Parties.

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the last date indicated below.

DEBTORS (as defined)

By: _____

Name: _Randall Hinden_____

Title: _CEO_____

Date: _3/29/19_____

MRAm (as defined)

By: _____

Name: _Gregory L. Anmuth_

Title: _VP_

Date: _3/5/19_


and


By: _____

Name: _Thomas V O Kane_

Title: _Vice President_

Date: _3/5/19_

**Exhibit 1**
**Insurance Policies**

| Insurance Policies Issued to the Debtors | | |
| --- | --- | --- |
| **Issuing Insurer** | **Policy No.** | **Policy Period** |
| American Reinsurance Company | M1666475 | 9/9/77–9/9/78 |
| American Reinsurance Company | EUR400592 | 9/9/78–9/9/79 |
| American Excess Insurance Company | EUL5070240 | 9/9/79–9/9/80 |

**Exhibit 2**
**Approval Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

LOWENSTEIN SANDLER LLP
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtors and Debtors-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| DURO DYNE NATIONAL CORP., *et al.*, | Case No. 18-27963-MBK |
| Debtors.[1] | Jointly Administered |

**ORDER APPROVING AMENDED AND RESTATED SETTLEMENT AGREEMENT
BETWEEN THE DEBTORS AND MUNICH REINSURANCE AMERICA, INC.,
AND AUTHORIZING THE SALE OF THE POLICIES (AS DEFINED
IN THE AGREEMENT) FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS, AND OTHER ENCUMBRANCES**

The relief set forth on the following pages, numbered two (2) through and including twelve

(12), is hereby **ORDERED**.

---

[1]   The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's
tax identification number, are:  Duro Dyne National Corp. (4664); Duro Dyne Machinery
Corp. (9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne
Midwest Corp. (4662).

- 1 -

This matter came before the Court on the motion (the "Motion"), of Duro Dyne National Corp., Duro Dyne Corporation, Duro Dyne West Corp., Duro Dyne Midwest Corp., and Duro Dyne Machinery Corp., the above-captioned debtors and debtors-in-possession (the "Debtors"), for an order pursuant to Sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing the Debtors to enter into a compromise and settlement with Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company ("MRAm"), as set forth in the Amended and Restated Settlement Agreement and Release (the "Agreement," a copy of which is attached to the Motion as Exhibit A), pursuant to which (among other things) the Debtors, on behalf of the Debtors' bankruptcy estates and the Duro Dyne Entities, will provide the MRAm Entities releases, as set forth in the Agreement; (ii) authorizing the sale of the Policies to MRAm pursuant to the terms and conditions of the Agreement, free and clear of all Interests; (iii) approving the Agreement in all respects; and (iv) enjoining various Claims against MRAm as described in Paragraph 8 below (the "Sale Injunction").[2]  The appearances of all interested parties and all responses and objections to the motion, if any, have been duly noted in the record of the hearing held on _____, 2019 (the "Hearing").  Upon the record of the Hearing, the Motion, said responses and objections, if any, and after due deliberation and sufficient cause appearing therefore, the Court hereby makes the following:

---

[2]        Except as otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Agreement (as defined herein).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

### Jurisdiction, Final Order and Statutory Predicates

A.      The Court has jurisdiction over the Motion and relief requested therein, including responses and objections thereto, if any, pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O), as to which this Court has the statutory and constitutional power to enter a final order.  Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

C.      The statutory predicates for the relief sought in the Motion are Sections 105(a), 363, and 541 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

### Retention of Jurisdiction

D.      It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, to the extent provided under 28 U.S.C. § 1334(b), any and all disputes arising from or relating to the Agreement.

### Notice of the Motion

E.      The Debtors have provided due and adequate notice of the Motion, the Hearing, the Agreement and the subject matter thereof to all parties in interest pursuant to Bankruptcy Rules 2002 and 6004, in the manner authorized by this Court's *Order (I) Authorizing the*

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*Listing of Addresses of Counsel for Personal Injury Claimants in Creditor Matrix in Lieu of Claimants' Addresses and (II) Approving Notice Procedures for Such Claimants* that the Bankruptcy Court entered on September 11, 2018, in the Bankruptcy Cases [at ECF No. 36], and by publishing notice of the motion and the hearing in both the New York Times National Edition and USA Today on April __, 2019 and April __, 2019, respectively. Such notice was good and sufficient under the particular circumstances, and no further notice is necessary. Without limiting the generality of the foregoing, adequate notice of the Motion, the Hearing and the Agreement has been provided, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded, to all parties-in-interest, including (i) the Committee, (ii) the FCR, (iii) all known claimants, including (a) all claimants or counsel for claimants who have voted on the Filed Plan, and (b) all such claimants who are known to the Debtors through participation in the Bankruptcy Cases, the filing of a prepetition lawsuit, or otherwise; (iv) the Office of the United States Trustee for Region 3; and (v) all other Persons that, as of the date the Motion was filed, had filed a notice of appearance and demand for service of papers in the Bankruptcy Cases or were otherwise listed on the master service list maintained by or on behalf of the Debtors in the Bankruptcy Cases.

<u>Sound Business Judgment and Reasonableness</u>

F.     The relief requested in the Motion is in the best interests of the Debtors' bankruptcy estates, their creditors, claimants, and other parties-in-interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion and the approval of the settlement contemplated thereby.

G.    The Agreement, including the sale of the Policies free and clear of any and all Interests and the release of all Claims, is fair and reasonable and in the best interests of the Debtors and their bankruptcy estates.  The Settlement Amount, once it is paid, represents fair and reasonable consideration for the sale of the Policies, the release of Claims, and the other provisions set forth in the Agreement.  The Agreement is also in the best interests of the claimants and other parties in interest, because it is contemplated that the proceeds of the settlement ultimately will be paid to the Asbestos Trust established under the confirmed Filed Plan to pay eligible Channeled Asbestos Claims in accordance with the applicable trust distribution procedures.

H.    The Debtors have demonstrated that the probability of success for the Debtors in litigation over the matters resolved by the Agreement is uncertain; and that the litigation of the matters resolved by the Agreement would be complex and costly to the Debtors' bankruptcy estates.  Entry into the Agreement is necessary and appropriate to maximize the value of the Debtors' estates, is consistent with the reasonable range of potential litigation outcomes, and is in the best interests of the Debtors, their bankruptcy estates, their creditors, and all other parties in interest because, among other reasons, the Agreement contemplates the payment of the Settlement Amount to the Asbestos Trust (provided that the Plan is confirmed and becomes effective).

## Good Faith of Purchaser of the Policies

I.    The Agreement was negotiated by the Parties, in good faith, from arm's-length bargaining positions, and without fraud or collusion.  Each Party to the Agreement was represented by counsel.  The sale consideration to be realized pursuant to the Agreement is fair and reasonable.  MRAm is a good faith purchaser of the Policies for value within the meaning

of Section 363(m) of the Bankruptcy Code and is entitled to the protection thereof.  Neither the

Debtors nor MRAm, nor any of their representatives, have engaged in any conduct that would

(i) cause or permit the Agreement, or the sale of the Policies contemplated therein, to be

avoided under Section 363(n) of the Bankruptcy Code, (ii) cause or permit any amounts, costs,

attorneys' fees, expenses, or punitive damages to be recovered under Section 363(n) of the

Bankruptcy Code, or (iii) prevent the application of Section 363(m) of the Bankruptcy Code.

Satisfaction of Section 363(f) Requirements

J.     The Debtors may sell the Policies free and clear of Interests under Section

363(f) of the Bankruptcy Code because one or more of the criteria set forth in Section

363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Without limiting the generality of the

foregoing, applicable non-bankruptcy law permits the sale of the Policies pursuant to Section

363(f)(1) of the Bankruptcy Code; those holders of Interests against any of the Policies who

did not object, or who withdrew their objections, to the Motion or the relief requested therein

are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code; and each

holder of an Interest in the Policies can be compelled, in a legal or equitable proceeding, to

accept a money satisfaction of such Interest as contemplated by Section 363(f)(5) of the

Bankruptcy Code.

K.     To the extent any Person has demonstrated an Interest in the Policies that is

entitled to adequate protection under the Bankruptcy Code, such Interest is adequately

protected as required by Section 363(e) of the Bankruptcy Code, and in no circumstance will

such Interest be satisfied directly by MRAm.  The Interests of Channeled Asbestos Claimants

and other parties in interest are adequately protected because the Agreement provides that the

Settlement Amount will be paid to the Asbestos Trust established pursuant to the Filed Plan to pay Channeled Asbestos Claims against the Debtors.

<u>No Successor Liability</u>

L.      Apart from the duties and obligations set forth in the Agreement, the transfer of the Policies pursuant to the Agreement does not and will not subject or expose MRAm to any liability, Claim, cause of action, or remedy by reason of such transfer under (a) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity; or (b) any employment contract, understanding, or agreement, including, without limitation, collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

M.      MRAm is not assuming any of the Debtors' obligations to their employees (including any obligations under the Debtors' bankruptcy estate's collective bargaining agreements, if any) by reason of its purchase of the Policies.

N.      No common identity of officers or directors exists between MRAm on the one hand the Debtors and their bankruptcy estates on the other hand.

O.      MRAm is purchasing the Policies pursuant to the Agreement and this Order. MRAm is not purchasing any other assets of Debtors' bankruptcy estates. MRAm shall not have any responsibility or liability with respect to any of the bankruptcy estates' other assets or for any liability of, or Claims against, the Debtors.

P.      A sale of the Policies, other than one free and clear of Interests, if possible at all, would impact adversely on the Debtors' bankruptcy estates and would be of substantially

- 7 -

less benefit to the Debtors, their creditors, and their estates.  MRAm would not purchase the Policies, and pay the Settlement Amount, were the sale not free and clear of all Interests.

Sale Injunction

Q.      Issuing the Sale Injunction under Section 105(a) of the Bankruptcy Code is essential to give effect to the sale of the Policies to MRAm free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code.  The Sale Injunction as set forth in Paragraph 8 below is a necessary prerequisite for MRAm's agreement to the terms and conditions of the Agreement, and MRAm will not consummate the sale of the Policies in the absence of such an injunction from this Court.

R.      The Interests, if any, of any other insurer are adequately protected because Section VI of the Agreement provides that the Debtors or the Asbestos Trust, as applicable, shall reduce any final judgment or final binding arbitration award, Claim against, or settlement with, any such insurer to the extent necessary to eliminate any such insurer's Claim for contribution, subrogation, indemnification, or similar Claim against MRAm (as provided in the Agreement).

 For all of the foregoing reasons and after due deliberation, **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is **GRANTED** and **APPROVED** in all respects.

2.      For the reasons set forth herein and on the record at the Hearing, all objections to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3.    Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors are authorized to enter into and consummate the Agreement, including to (i) sell, transfer and convey the Policies to MRAm in accordance with the terms and subject only to the conditions specified herein and in the Agreement, and (ii) release Claims as set forth in the Agreement.   The Debtors and MRAm are each hereby authorized to take all actions and execute all documents and instruments that the Debtors and MRAm deem necessary or appropriate to implement and effectuate the Agreement.

4.    The terms and provisions of the Agreement are approved in their entirety, and this Order and the Agreement shall be binding upon the Duro Dyne Entities, the MRAm Entities, all Persons holding Interests in the Policies or Claims against the Debtors or their bankruptcy estates, the FCR and each of the Persons whose shared interests or demands he represents, the Committee and each Person whose shared interests it represents, Duro Dyne's insurers other than MRAm, any actual or potential insureds under the Policies, all other parties-in-interest, and, upon its creation, the Asbestos Trust, and each of the foregoing entities' respective successors and assigns.   The sale of the Policies to MRAm, effective upon MRAm's payment in full of the Settlement Amount, shall constitute a legal, valid, and effective transfer of the Policies and shall vest MRAm with all right, title, and interest in and to the Policies free and clear of all Interests pursuant to Section 363(f) of the Bankruptcy Code.

5.    MRAm shall pay to the Asbestos Trust the Settlement Amount as provided in the Agreement.

6.      The sale of the Policies to MRAm under the Agreement constitutes a transfer for reasonably equivalent value and fair consideration for purposes of the Bankruptcy Code and comparable provisions of non-bankruptcy law.

7.      Subject to MRAm's payment in full of the Settlement Amount, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Policies shall be sold and transferred to MRAm, free and clear of any and all Interests of all Persons in, to and with respect to the Policies, including any and all Claims against MRAm for contribution, indemnity, or other liability under, based upon, arising from, or attributable to the Policies (including any Direct Action Claims), whether arising prior to, during, or subsequent to the Bankruptcy Cases or imposed by agreement, understanding, law, equity, or otherwise.  Any and all Interests that the Court determines are entitled to protection under Section 363(e) of the Bankruptcy Code shall attach to the proceeds of sale with the same validity, priority, force, and effect as such Interests had in the Policies prior to entry of this Order, subject to the terms and conditions of any Plan confirmed for the Debtors, to the extent such terms and conditions are valid, binding and enforceable.  Nothing contained herein is intended to nor shall be deemed to constitute a determination of the extent, validity, or priority of any such Interests that may be asserted (including by any other insurance company).

8.      Effective upon payment in full of the Settlement Amount, pursuant to Sections 105(a) and 363 of the Bankruptcy Code, all Persons who have held or asserted, who hold or assert, or who may in the future hold or assert any Claim or Interest of any kind or nature against or in any of the Debtors, their bankruptcy estates, the Policies, or MRAm based upon, arising under or out of, or in any way attributable to the Policies, whenever or wherever arising or asserted (including all thereof in the nature of or sounding in tort, contract, warranty or any

- 10 -

other theory of law, equity or admiralty), shall be permanently stayed, restrained, and enjoined from asserting any such Claims or Interests against MRAm and from continuing, commencing, or otherwise proceeding or taking any action against MRAm to enforce such Interests or Claims or for the purpose of directly or indirectly collecting, recovering or receiving payments from MRAm to recover with respect to any such Claim or Interest.

9.      MRAm is not, and shall not be deemed to be, a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Agreement or otherwise.  MRAm shall not assume any liabilities of the Debtors or their bankruptcy estates.

10.     The transactions contemplated by the Agreement, including the sale of the Policies to MRAm free and clear of all Interests, are undertaken by MRAm in good faith, as that term is used in Section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization to consummate the sale of the Policies and the transactions contemplated by the Agreement shall not affect the validity of the sale of the Policies to MRAm, unless such authorization is duly stayed pending such appeal.  MRAm is a purchaser in good faith of the Policies and shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.  Neither the Debtors nor their bankruptcy estates shall commence any action against MRAm seeking relief under Section 363(n) of the Bankruptcy Code with respect to the Policies.

11.     Pursuant to Bankruptcy Rule 9019(a), the settlement and mutual release of Claims as set forth in the Agreement are hereby approved.  Notwithstanding Bankruptcy Rule 6004(h), and except as to the Sale Injunction in Paragraph 8 above, which will become

effective and enforceable only upon MRAm's payment of the Settlement Amount, this Order shall be effective and enforceable immediately upon its entry..

12.      The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

13.      This Court shall, to the extent authorized by 28 U.S.C. § 1334(b), retain jurisdiction to interpret and enforce the provisions of this Order and the Agreement in all respects.  Such jurisdiction shall be retained even if a Plan is confirmed and/or the Bankruptcy Cases are closed, and the Bankruptcy Cases may be reopened for such purpose.

14.      Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the settlement contemplated by the Agreement and this Order.

15.      The provisions of this Order are mutually dependent and are not severable.

16.      Pursuant to Bankruptcy Rules 5003 and 9021 (and Fed. R. Civ. P. 58), the Clerk of this Court is directed forthwith to enter this Order on the dockets of the Bankruptcy Cases as a final order and judgment.