Margaret F. Catalano
Christina R. Salem
570 Lexington Avenue – 8th Floor
New York, New York 10022
(212) 252-0004
meg.catalano@kennedyscmk.com
christina.salem@kennedyscmk.com

IFRAH PLLC
George R. Calhoun, V (*pro hac vice*)
1717 Pennsylvania Ave., NW
Washington, D.C. 20006
(202) 525-4147
george@ifrahlaw.com

*Attorneys for The North River Insurance Company*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| DURO DYNE NATIONAL CORP., *et al.*,[1] | Case No. 18-27963 MBK |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL OBJECTION TO PLAN PROPONENTS' MOTIONS PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2002, 5004, AND 9019(a) FOR AN ORDER AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO A SETTLEMENT AGREEMENT WITH SETTLING INSURERS AUTHORIZING THE SALE OF POLICIES FREE AND CLEAR OF LIENS, <u>CLAIMS, INTERESTS AND OTHER ENCUMBRANCES</u>**

The North River Insurance Company ("North River") respectfully submits the following

supplemental objection to the motions to approve the settlements between Hartford Accident and

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Duro Dyne National Corp. (4664); Duro Dyne Machinery Corp. (9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne Midwest Corp. (4662).

1

Indemnity Company, Federal Insurance Company, MidStates Reinsurance Corporation, f/k/a Mead Reinsurance Corporation, and Munich Re Insurance Company (collectively, the "Settling Insurers") and the Debtors (together with Settling Insurers, the "Settling Parties"). North River does not object to the Settling Insurers' decision to settle with the Debtors, but any such settlement must fully preserve and/or protect North River's rights and claims, including but not limited to North River's right to contribution from the Settling Insurers. The proposed settlements do not and the Settling Parties otherwise seek relief beyond that which the Court can approve.

## PRELIMINARY STATEMENT AND ISSUES

North River previously objected to the motions to approve settlements with Hartford ad Federal, which were filed on shortened notice. *See* Dkt # 510 (Objection To Plan Proponents' Motions Pursuant To Sections 105(A) and 363 Of The Bankruptcy Code And Bankruptcy Rule 2002, 5004, and 9019(A) For An Order Authorizing And Approving The Debtors' Entry Into A Settlement Agreement With Hartford Accident And Indemnity Company, And Federal Insurance Company And Authorizing The Sale Of Policies Free And Clear Of Liens, Claims, Interests And Other Encumbrances.) Because of their late filing and shortened notice, North River did not have an opportunity to object to the proposed settlements with MidStates or Munich Re. North River hereby adopts and incorporates its earlier objections which apply equally to the proposed MidStates and Munich Re settlements.

As evidenced at the March 6-7, 2019 confirmation hearing, the Plan Proponents intend to strip North River of its rights against the Settling Insurers and propose to give North River no compensation in return. The Plan Proponents cannot satisfy the standard for approval under Bankruptcy Rule 9019 or for a sale of the Settling Insurers' policies pursuant to § 363 of the

2

Bankruptcy Code. While the Court has substantial powers to approve settlements and sales of the Debtors' property, its ability to limit third party rights is constrained by the contours of the Bankruptcy Code. If such a power is not found within the Bankruptcy Code, the Court lacks the power to eliminate or alter a third party's rights. The only source of authority for selling the Settling Insurers' policies back to the Debtors free and clear of North River's claims is Section 363 of the Bankruptcy Code. It is undisputed, however, that the Settling Parties have not proposed to protect North River's interests in any way, much less to provide adequate protection of those interests as required by § 363 (and § 524(g) to the extent applicable). As such, the settlements violate the Bankruptcy Code and cannot be approved.

The Plan Proponents have argued that North River's claims against the Settling Insurers are not "interests" subject to protection under § 363. This argument gets them nowhere. If North River's claims do not constitute "interests," the Court lacks any power to sell the policies free and clear of such claims. In either case, the proposed Settlements fail to meet the conditions of approval under the Bankruptcy Code.

## ARGUMENT

### I. Standard

A bankruptcy court has the authority to "approve a compromise or settlement" of a claim "after notice and a hearing" on the compromise. Fed. R. Bankr. P. 9019(a). Similarly, pursuant to 11 U.S.C. § 363(b), a debtor may use estate property outside the ordinary course of business, upon notice and a hearing, to settle claims with the approval of the bankruptcy court. *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350 (3d Cir. 1999). The bankruptcy court must then decide whether the settlement is "fair and equitable," *In re Nutraquest Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer*

*Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)), and "assess and balance the value of the claim that is being compromised against the value to the estate of . . . accept[ing] . . . the compromise" by considering: "(1) the probability of success in ligation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Of course, this includes confirming that the proposed settlements do not contravene the Bankruptcy Code.

The fairness and equity of an agreement necessarily requires the Court to consider the interests of third parties affected by the settlement. *See Feld v. Zale Corp. (Matter of Zale Corp.)*, 62 F.3d 746, 754 (5th Cir. 1995):

> While it is true that the bankruptcy court has jurisdiction to determine whether a settlement between the debtor and other parties is fair and equitable, "looking only to the fairness of the settlement as between the debtor and the settling claimant [and ignoring third-party rights] contravenes a basic notion of fairness." *In re AWECO, Inc.*, 725 F.2d at 298; *see also F.D.I.C. v. Jones (In re Jones)*, 966 F.2d 169, 173 (5th Cir.1992) (discussing § 105(a) and court's duty to avoid unfairness and injustice); *Cullen v. Riley (In re Masters Mates & Pilots Pension Plan)*, 957 F.2d 1020, 1026, 1031 (2d Cir. 1992) (holding that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval," and requiring determination that "no one has been set apart for unfair treatment").

Further, a settlement's fidelity to the requirements of the Bankruptcy Code will generally be the most important factor in determining whether a settlement is fair and equitable. *In re Jevic Holding Corp.*, 787 F.3d 173, 184 (3d Cir. 2015) *rev'd on other grounds* in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017). As the Supreme Court has stated, bankruptcy courts can not approve settlements that violate the tenets of the Bankruptcy Code. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. at 983–84.

## II. The Proposed Settlements Cannot Be Approved Because They Are Unfair and Inequitable as to North River

As shown by the work of Mr. Scarcella, the potential future defense obligations under the policies subject to the proposed settlements substantially outweigh the potential future indemnity payment requirements. *See* Rpt. of Marc C. Scarcella, M.A. ("Scarcella Rpt."), Dkt. 368-5, at 32, fig. 36.[2] The cost of defending claims against Debtors has significantly exceeded the actual payments to asbestos claims – over 90% of which have been dismissed without payment. *See* Scarcella Rpt. at 9.

The New York State Trial and Appellate Courts have already held that pro rata allocation (amongst all insurers and Duro Dyne) applies to the costs incurred for the Debtors' asbestos claims. The parties dispute the percentages of liability for which each insurer and the Debtors will be responsible. Based on the application of the New York Court of Appeal's decision in *Keyspan Gas East Corp. v Munich Reins. Am., Inc.*, 96 N.E.3d 209 (N.Y. 2018), Mr. Scarcella calculated that the Settling Insurers would be responsible for approximately $7.53 million in future defense costs. Scarcella Rpt. at 32, fig. 36 (median scenario). The Settling Insurers are thus seeking the discharge of millions of dollars in defense costs that they otherwise would potentially be obligated to contribute.

The Plan Proponents will contend that North River will be obligated to fund 100% of the defense costs going forward. Typically, consistent with the New York Court's rulings, North River could seek reimbursement from the Debtors or other insurers for any defense payments advanced by North River in excess of its allocable share or for which such other party is responsible. Under New York law, the Settling Insurers have no ability to extinguish

---

[2] For Federal, indemnity payments outweigh future defense payments in two scenarios because of the differing terms of its policies.

5

reimbursement obligations or duties (outside of a global settlement). *See, e.g.*, *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 2010 (2d Cir. 2000) (rejecting as "untenable" under New York law the "notion that any settlement by which an insurer obtains a release from its insured, regardless of its terms, insulates that insurer from all contribution claims."); *DaimlerChrysler Ins. Co. v. Universal Underwriters Ins. Co.*, 2010 N.Y. Misc. Lexis 1686 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 31, 2010) ("The contract of settlement an insurer enters into with the insured cannot affect the rights of another insurer who is not a party to it. Instead, whatever obligations or rights to contribution may exist between two or more insurers of the same event flow from equitable principles."); *Scotts Co., LLC v. Ace Indem. Ins. Co.*, 18 Misc. 3d 1139(A) (N.Y. Sup. Ct. N.Y. Cnty. Feb. 26, 2008) (permitting contribution suit against settled co-insurer). In the tort system, North River's right to collect from the Settling Insurers would be determined under applicable state law and the solvency of each respective Settling Insurer. No one has disputed that North River likely would be paid in full for any such rights.

The Plan Proponents and Settling Insurers' proposed Settlements offers the non-settling insurers no protection for these state law rights. They ask that the Court eliminate North River's rights by fiat. That result would be a complete nullification of the parties' state law rights and turns the Bankruptcy Code on its head by allowing the Settling Insurers' to buy releases from liability to third parties by making a payment to the Debtor or asbestos Trust.

The Debtors have offered no evidentiary basis for approval of the proposed insurer Settlements. Indeed, at the confirmation hearing, the Debtors adduced no evidence that the proposed sales of their insurance policies (pursuant to the proposed buybacks) is fair and equitable. The FCR testified that Plan Proponents did not even consider it. March 6, 2019 Confirmation Hrn'g Tr. (hereinafter "Mar. 6 Tr.") at 140:4–16. Because North River has

6

significant rights against the Settling Insurers, and the settlements propose to eliminate those interests without protection of any sort, the proposed settlements are not fair and equitable and cannot be approved.

### III. The Proposed Settlements Cannot Be Approved Because the Plan Proponents Have Not Provided Adequate Protection for North River's Interests

The proposed sales violate 11 U.S.C. § 363 because the Debtors have not provided adequate protection for North River's interests. Under § 363, courts have consistently held that a party's interests may be adequately protected if their interests attach to the sale proceeds.

As the Second Circuit observed in *MacArthur Co. v. Johns-Manville*, cited with approval by the Third Circuit in *Combustion Engineering*, the bankruptcy court has the authority to approve settlements "and to channel claims arising under the policies to the proceeds of the settlement." 837 F.2d at 92–93 (2d Cir. 1988) (citing *In Van Huffel v. Harkelrode*, 284 U.S. 225 (1931)). The Second Circuit found this power under § 363(f) of the Bankruptcy Code, which permits, under certain circumstances, sales of property in the debtor's estate "free and clear of any interest in such property of an entity other than the estate." To do so, however, the interest being stripped must follow and apply with equal force and priority to the proceeds of the settlement:

> It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition. *See Ray v. Norseworthy, supra*, 90 U.S. at 134–35; S. Rep. No. 989, 95th Cong., 2d Sess. 56 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5842 (committee report on 11 U.S.C. § 363(f)) ("Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale.").

*MacArthur Co. v. Johns-Manville*, 837 F.2d at 93.[3]

---

[3] *See also Ray v. Norseworthy*, 90 U.S. 128, 134–35 (1874) (court may sell bankrupt's property encumbered by third-party claims as long as third parties retain their respective priorities in the

7

Recognizing the common law requirements highlighted by the Second Circuit, Congress codified the protection of third-party interests in § 363(e). It provides, in relevant part:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11. U.S.C. § 363(e).

The Third Circuit has also recognized this controlling principle applicable to claim stripping § 363 sales. *See Folger Adam Security, Inc. v. Dematteis/Macgregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale.") (internal citations omitted). Section 524(g) operates in the same manner as § 363. *In re W.R. Grace & Co.*, 900 F.3d 126, 130 (3d Cir. 2018) ("claims against certain third parties who are alleged to be directly or indirectly liable for the debtor's conduct . . . are directed to the trust . . . which assumes the asbestos liabilities.").

The Plan Proponents originally paid lip service to this requirement in the proposed orders, which facially provided that North River's interests would attach to the proceeds of the sales. The original proposed Settlement Orders provided that:

> Any and all Interests that the Court determines are entitled to protection under Section 363(e) of the Bankruptcy Code shall attach to the proceeds of sale with the same validity, priority, force, and effect as such Interests had in the Policies and the Released Overseas Policy Interests prior to entry of this Order . . ..

Proposed Orders, Dkts. 470-3 and 502-3, at 10–11. The original proposed orders continued to

---

proceeds of the sale); *In re Penn Central Transportation Co.*, 383 F. Supp. 1128, 1130 (E.D. Pa. 1974) (power of a reorganization court to transfer interests in debtor's property to the proceeds of a sale is well established)).

state that such attachment is "*subject to the terms and conditions of any Plan confirmed for the Debtors, to the extent such terms and conditions are valid, binding and enforceable.*" *Id.* (emphasis added). This additional language renders the provision illusory because the Plan[4] and Trust Distribution Procedures[5] provide – to the extent they address defense cost claims at all – that claims of non-settling insurers are not entitled to any payment.

On or about April 8, 2019, after North River objected that this so-called attachment was illusory because the claims were actually channeled to the Trust where they would be ineligible for payment, the Plan Proponents dropped the charade. The Plan Proponents recently submitted Amended and Restated Agreements and proposed orders that eliminated these provisions. Dkts. 607–609. They now ask the Court to strip North River's claims against the Settling Insurers and provide them no compensation. Section 363(f) does not permit the Court to do so.

The Settling Parties are improperly seeking to discharge Settling Insurers' liability to the non-settling insurers. The Bankruptcy Code does not allow the Settling Parties' contemplated non-debtor discharge. Although § 524(g) allows the channeling of claims related to a person's provision of insurance to the debtor, the Settling Parties purportedly are not seeking a § 524(g) injunction. Instead, they are attempting to use §§ 363 and 105 to accomplish an otherwise-impermissible objective. The Debtors cannot accomplish under § 105 that which the Bankruptcy Code requires to be done under § 524(g). Section 105 of the Bankruptcy Code does not provide an independent source of federal subject matter jurisdiction. *Combustion Eng'g*, 391 F.3d at 224–225. *See also In re Johns-Manville Corp.*, 801 F.2d 60, 63 (2d Cir. 1986) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established

---

[4] Second Amended Plan of Reorganization for Duro Dyne National Corp., *et al.*, Under Chapter 11 of the Bankruptcy Code, as modified (hereinafter the "Plan"), Dkt. 517
[5] Duro Dyne Asbestos Personal Injury Trust Distribution Procedures, Dkt. 279-6.

9

separately"). "Related to" jurisdiction must therefore exist independently of any plan provision purporting to involve or enjoin claims against non-debtors. *In re Zale Corp.*, 62 F.3d 746, 756 (5th Cir. 1995). Although the Plan Proponents likely will contend that the requested injunction under § 105(a) will create a "bigger pot" of assets for asbestos claimants, the exercise of bankruptcy power must be grounded in statutory bankruptcy jurisdiction. *Id.*

The bankruptcy court may not enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate. *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds*, *Travelers Indemn. Co. v. Bailey*, 557 U.S. 137 (2009). If that were possible:

> a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions. As we have made clear, subject matter jurisdiction cannot be conferred by consent of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.

*Combustion Eng'g*, 391 F.3d at 228 (citation and quotation marks omitted).

In *Combustion Engineering*, the Third Circuit discussed the limits of third-party channeling inunctions, noting that such injunctions are limited to those "where a third party . . . 'is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor.'" *Id.* at 234. The application of a § 524 channeling injunction to enjoin actions against third parties is limited to "situations where . . . a third party has derivative liability for the claims against the debtor." *Id.* As the Second and Third Circuits have recognized, a bankruptcy court only has jurisdiction to enjoin third-party, non-debtor claims that directly affect the *res* of the bankruptcy estate. "[I]n both instances, third parties seek to collect out of the proceeds of Manville's insurance policies on the basis of Manville's conduct . . . . [P]laintiffs' claims are inseparable from Manville's own insurance coverage and are consequently well within the

10

Bankruptcy Court's jurisdiction over Manville's assets." *MacArthur*, 837 F.2d at 92–93 (emphasis added).  Relying on *MacArthur*, the Third Circuit similarly noted that § 524(g)(4)(A)(ii) is consistent with the purposes underlying § 524(g):

> The channeling injunction issued in the Johns-Manville bankruptcy, after which § 524(g) was modeled, *see* 140 Cong. Rec. H10752, H10765 (1994) . . . was limited to third-party actions against non-debtors in which the liability alleged was derivative of the debtor. *See MacArthur Co. v. Johns-Manville*, 837 F.2d at 92–93 (2d Cir. 1988) (explaining that the channeling injunction applied only to third parties [who] seek to collect out of the *proceeds* of Manville's insurance policies on the basis of Manville's conduct).

*Combustion Eng'g.*, 391 F.3d at 235 n.47 (emphasis added, citations and internal quotation marks omitted).  Unlike the *Johns-Manville* injunction, North River's claims against the Settling Insurers do not seek to collect from the proceeds of the insurance policies at issue.  North River's defense costs claims against the Settling Insurers do not involve property of the estate and do not affect the *res* available to pay claims.[6]  For example, defense payments made by Hartford do not reduce the limits under their policies and thus do not impact the amount available to reimburse claims against the estate.[7]  Because the Settling Insurers' policies generally provide for the payment of defense costs outside of policies' limits, reimbursement claims for defense costs by

---

[6] The Plan deals, however imperfectly, with North River's claims for indemnity costs in that it requires that any Settling Insurer liability for indemnity be offset against any amount owed by North River.  Plan § 4.14.  As a practical matter, however, no claimant would settle for anything other than actual dollars and so this protection is illusory.

[7] For example, each Hartford policy at issue here provides: "With respect to bodily injury, personal injury . . .. The company will (a) defend any suit against the insured seeking damages on account thereof, even if such suit is groundless, false or fraudulent . . . and the amounts so incurred, except settlement of claims and suits, are not subject the insured's self-insured retention as stated in the declarations and are payable by the company in addition to the applicable limit of liability of this policy." (Section II. INVESTIGATION, DEFENSE, SETTLEMENT).  Similarly, Federal Policy No. FXL 77702037 states, in relevant part, that "THE COMPANY SHALL: (A) DEFEND ANY SUIT AGAINST THE INSURED ALLEGING SUCH INJURY OR DESTRUCTION. . ... AND THE AMOUNTS SO INCURRED, EXCEPT SETTLEMENTS OF CLAIMS AND SUITS ARE PAYABLE BY THE COMPANY IN ADDITION TO THE APPLICABLE LIMIT OF LIABILITY ON THIS POLICY."

non-settling insurers against the Settling Insurers do not impact the amount of the Settling Insurers' policy limits that might be available to pay claims. As such, Plan Proponents' requested injunction is not only unfair, it is impermissible.

IV. **In the Alternative, If North River's Claims Against the Settling Insurers Are Not "Interests," The Court Lacks Jurisdiction to Grant the Requested Relief Under Either § 363 Or § 105.**

In argument, counsel for the Official Committee of Asbestos Claimants claimed that North River had no protectible interest. Mar. 6 Tr. at 122:20–123:14. Further, the Plan Proponents argue that North River's claims against the Settling Insurers are not "interests." March 7, 2019 Confirmation Hrn'g Tr. (hereinafter "Mar. 7. Tr.") at 122–123.[8] If the Court were to conclude that North River's claims against Settling Insurers were not an interest in the Debtors' property, then the Court would lack any power or jurisdiction to sell such property free and clear of such claim.

As noted above, § 363(f) of the Bankruptcy Code permits, under certain circumstances, sales of property in the debtor's estate "free and clear of any interest in such property of an entity other than the estate." Although the Bankruptcy Code does not define "interests" in this context, the Third Circuit has interpreted it expansively to include claims against the debtor or settling party arising out of the property to be sold. *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003).

If North River's claims against Settling Insurers do not constitute interests entitled to adequate protection under § 363(f), then the Court has no jurisdiction over North River's claims against Settling Insurers, which are governed by New York state law in the New York State

---

[8] In so arguing, the Plan Proponents were internally inconsistent, at one point conceding that North River's contribution claims were "an interest – as I think 363(f) would be construed, it would be an interest in that sense." But then contending, without support, that "it's not an interest that's entitled to adequate protection." Mar. 7 Tr. at 123:15–18.

12

Coverage Action, and there is no bankruptcy basis to limit or enjoin North River's rights against the Settling Insurers with respect defense costs.

## **CONCLUSION**

Although the Plan Proponents have sought to conceal the amount of the Settlements, several aspects of the proposed Settlements render them unfair and inequitable. The Settlements are an effort to grant the Settling Insurers' relief from third-party claims and do not meet the requirements of the Bankruptcy Code – to the extent it is in the power of the Court to grant at all. The Court should refuse to approve the Settlements.

Dated: April 24, 2019                               Respectfully submitted,

KENNEDYS CMK LLP

/s/ *Christina R. Salem*
Margaret F. Catalano
Christina R. Salem
570 Lexington Avenue, 8th Floor
New York, N.Y. 10022
(212) 252-0004
Emails: meg.catalano@kennedyscmk.com
christina.salem@kennedyscmk.com

-and-

IFRAH PLLC
George R. Calhoun, V (*pro hac vice*)
Ifrah PLLC
1717 Pennsylvania Ave., NW
Washington, D.C. 20006
202.525.4147
Email: george@ifrahlaw.com

*Attorneys for The North River Insurance Company*