LOWENSTEIN SANDLER LLP
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
krosen@lowenstein.com
jprol@lowenstein.com
*Counsel to the Debtors and
Debtors in Possession*

CAPLIN & DRYSDALE,
CHARTERED
James P. Wehner, Esq.
(*admitted pro hac vice*)
Jeffrey A. Liesemer, Esq.
(*admitted pro hac vice*)
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
jwehner@capdale.com
jliesemer@capdale.com
*Counsel to the Asbestos
Claimants Committee*

YOUNG CONAWAY
STARGATT & TAYLOR, LLP
Edwin J. Harron, Esq.
Sara Beth A. R. Kohut, Esq.
(*admitted pro hac vice*)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6703
Facsimile: (302) 576-3298
eharron@ycst.com
skohut@ycst.com
*Counsel to the Legal
Representative*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| DURO DYNE NATIONAL CORP., *et al.*, | : | Case No. 18-27963-MBK |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

## PLAN PROPONENTS' REPLY BRIEF IN SUPPORT OF
## PROPOSED ASBESTOS INSURANCE SETTLEMENTS AND
## IN RESPONSE TO NORTH RIVER'S OBJECTIONS THERETO

Dated:  May 15, 2019

---

[1] The **"Debtors"** in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are Duro Dyne National Corp. (4664), Duro Dyne Machinery Corp. (9699), Duro Dyne Corporation (3616), Duro Dyne West Corp. (5943), and Duro Dyne Midwest Corp. (4662)

# TABLE OF CONTENTS

Introduction ............................................................................................................... 1

Reply Argument ........................................................................................................ 3

I.    North River Is Not Entitled to Adequate Protection, and Thus Its Claims Cannot
      "Attach" to the Settlement Proceeds .............................................................. 3

II.   North River's Contribution Claims Against the Settling Insurers, if Any, Will Be
      Treated Fairly and Equitably Through Judgment Reduction ............................. 10

III.  The Scope of the Plan Injunctions and Settlement Injunctions Is Proper ............ 14

IV.   Bankruptcy Jurisdiction Exists Regardless of Whether North River's Claims Constitute
      an "Interest" Under § 363(f) ......................................................................... 17

Conclusion ............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3036 Richmond Inc.*,
  No. 00-19226F, 2001 WL 36275467 (Bankr. E.D. Pa. Mar. 13, 2001) ...................................6

*In re Babcock and Wilcox Co.*,
  250 F.3d 955 (5th Cir. 2001) ...................................................................6

*In re Burns & Roe Enters., Inc.*,
  Case No. 00-41610RG, 2005 Bankr. LEXIS 3173 (Bankr. D.N.J. Feb. 17,
  2005) ...................................................................................17

*In re Caribbean Petroleum Corp.*,
  Bankruptcy No. 10-12553(KG), Adversary No. 12-51001(KG), 2013 WL
  950361 (Bankr. D. Del. Mar. 11, 2013), *aff'd*, 580 F. App'x 82 (3d Cir. 2014) ....................16

*In re Chama, Inc.*,
  265 B.R. 662 (Bankr. D. Del. 2000) ...........................................................6

*In re Collins*,
  180 B.R. 447 (Bankr. E.D. Va. 1995) ..........................................................8

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004), *as amended* (Feb. 23, 2005) ................................15, 16

*DaimlerChrysler Ins. Co. v. Universal Underwriters Ins. Co.*,
  Index No. 601238/008, 2010 WL 1459007 (N.Y. Sup. Ct. Mar. 31, 2010) ..........................11

*In re Dispirito*,
  371 B.R. 695 (Bankr. D.N.J. 2007) .......................................................12, 13

*In re Dow Corning Corp.*,
  198 B.R. 214 (Bankr. E.D. Mich. 1996) .......................................................16

*In re Dunes Casino Hotel*,
  69 B.R. 784 (Bankr. D.N.J. 1986) .............................................................4

*In re Energy Future Holdings Corp.*,
  546 B.R. 566 (Bankr. D. Del. 2016) ..........................................................4

*Folger Adam Security, Inc. v. Dematteis/Macgregor, JV*,
  209 F.3d 252 (3d Cir. 2000).................................................................9

*In re Ivan F. Boesky Sec. Litig.*,
  948 F.2d 1358 (2d Cir. 1991)................................................................12

*In re Johns-Manville Corp.*,
   517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem.*
   *Co. v. Bailey*, 557 U.S. 137 (2009) ....................................................................15, 16

*Lee v. Schweiker*,
   739 F.2d 870 (3d Cir. 1984)............................................................................................6

*MacArthur Co. v. Johns-Manville Corp.*,
   837 F.2d 89 (2d Cir. 1988)........................................................................................6, 7

*Md. Cas. Co. v. W.R. Grace & Co.*,
   218 F.3d 204 (2d Cir. 2000)..........................................................................................11

*In re Munford, Inc.*,
   172 B.R. 404 (Bankr. N.D. Ga. 1993), *aff'd*, 97 F.3d 449 (11th Cir. 1996)...........................12

*Olin Corp. v. Lamorak Ins. Co.*,
   332 F. Supp. 3d 818 (S.D.N.Y.), *reconsideration denied,* No. 84-CV-1968
   (JSR), 2018 WL 4360775 (S.D.N.Y. Aug. 17, 2018)............................................................11

*In re Patriot Contracting Corp.*,
   No. 05-33190 DHS, 2006 WL 4452840 (Bankr. D.N.J. Mar. 28, 2006)..................................6

*In re PNC Fin. Servs. Grp., Inc.*,
   440 F. Supp. 2d 421 (W.D. Pa. 2006) ...........................................................................12

*In re Revel AC, Inc.*,
   525 B.R. 12 (D.N.J.), *rev'd on other grounds*, 802 F.3d 558 (3d Cir. 2015) ........................13

*In re Scarborough-St. James Corp.*,
   535 B.R. 60 (Bankr. D. Del. 2015) ................................................................................4

*Scotts Co. v. Ace Indem. Ins. Co.*,
   Index No. 602712/05, 2008 WL 518062 (N.Y. Sup. Ct. Feb. 26, 2008), *aff'd*
   *sub nom Scotts Co., LLC v. Pac. Emp'rs Ins. Co.*, 61 A.D.3d 464 (N.Y. App.
   Div. 2009) .................................................................................................................11

*In re Shaw Indus., Inc.*,
   300 B.R. 861 (Bankr. W.D. Pa. 2003) ..........................................................................13

*In re SunEdison, Inc.*,
   562 B.R. 243 (Bankr. S.D.N.Y. 2017) ...........................................................................6

*In re Sunland, Inc.*,
   No. 13-13301-tr7, 2014 WL 7011747 (Bankr. D.N.M. 2014).................................................16

*In re Tellier*,
   125 B.R. 348 (Bankr. D.R.I. 1991) ...............................................................................4

*In re Tribune Co.*,
464 B.R. 126, 179 (Bankr. D. Del. 2011), *on reconsideration in part*, 464 B.R. 208 (Bankr. D. Del. 2011), *aff'd sub nom. In re Tribune Media Co.*, 587 B.R. 606 (D. Del.), *and aff'd in part*, 587 B.R. 606 (D. Del. 2018) ................................................12

*In re TWA, Inc.*,
322 F.3d 283 (3d Cir. 2003)............................................................... *passim*

*In re TWA, Inc.*,
No. 01-0056, 2001 WL 1820325 (Bankr. D. Del. 2001), *aff'd*, 322 F.3d 283 (3d Cir. 2003)............................................................................................16

*In re W.R. Grace & Co.*,
591 F.3d 164 (3d Cir. 2009)................................................................18

*In re WBQ P'ship*,
189 B.R. 97 (Bankr. E.D. Va. 1995)......................................................9, 18

*In re WorldCom, Inc. ERISA Litig.*,
339 F. Supp. 2d 561 (S.D.N.Y. 2004)...................................................11, 12

**Statutes**

11 U.S.C. § 105.......................................................................................15, 17

11 U.S.C. § 105(a) ....................................................................................16

11 U.S.C. § 361.........................................................................................4, 12

11 U.S.C. § 363.........................................................................................5, 18

11 U.S.C. § 363(e) ................................................................................ *passim*

11 U.S.C. § 363(f) ................................................................................ *passim*

11 U.S.C. § 363(p)(2) ..................................................................................5

11 U.S.C. § 524(g) ............................................................................... *passim*

11 U.S.C. § 524(g)(4)(A)(ii)........................................................................15

11 U.S.C. § 524(g)(4)(A)(ii)(III) ..................................................................15

28 U.S.C. § 157(b)(2)(N)............................................................................17

28 U.S.C. § 1334(b) ...................................................................................17

28 U.S.C. § 1334(e)(1)................................................................................17

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 219(c) (Oct. 22, 1994)..........................5

**Other Authorities**

3 *Collier on Bankruptcy* ¶ 361.02[1] (16th ed. 2014)......................................................................4

1 Steven Plitt & Jordan Ross Plitt, *Practical Tools for Handling Insurance Cases*
§ 8:2 (2018).................................................................................................................................5

The above-captioned Debtors and debtors-in-possession, the Official Committee of Asbestos Claimants, and Lawrence Fitzpatrick in his official capacity as Legal Representative (collectively, "**Plan Proponents**"),[2] by and through their undersigned counsel, hereby submit this reply brief in support of their motions ("**Motions**") to approve the proposed Asbestos Insurance Settlements with Hartford Accident & Indemnity Company, Federal Insurance Company, MidStates Reinsurance Corporation, and Munich Reinsurance America, Inc. (collectively, "**Settling Insurers**"),[3] and in response to the objections filed by The North River Insurance Company ("**North River**").[4]  For the reasons explained below, this Court should overrule North River's objections and grant the Motions.

## INTRODUCTION

When the Debtors filed their Chapter 11 Cases last year, they were (and still are) engaged in insurance coverage litigation with Asbestos Insurers in New York state court.  At the time of their chapter 11 filings, the coverage litigation had been active for a half-decade and showed no sign of ending soon.  It was only in March of this year—after considerable, arm's length

---

[2]    Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the *Plan Proponents' Notice of Filing of Proposed Findings of Fact and Conclusions of Law and Proposed Forms of Orders in Support of Confirmation of the Modified Second Amended Prenegotiated Plan of Reorganization* and accompanying proposed orders, filed by the Plan Proponents on April 15, 2019 (ECF No. 615).

[3]    The Motions are located at ECF Nos. 468-1, 500-1, 518-1, and 522-1.

[4]    *See Objection to Plan Proponents' Motions Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 2002, 5004, and 9019(a) for an Order Authorizing and Approving the Debtors' Entry into a Settlement Agreement with Hartford Accident and Indemnity Company, and Federal Insurance Company and Authorizing the Sale of Policies Free and Clear of Liens, Claims, and Interests and Other Encumbrances*, Mar. 5, 2019 (ECF No. 510); *Supplemental Objection to Plan Proponents' Motions Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 2002, 5004, and 9019(a) for an Order Authorizing and Approving the Debtors' Entry into a Settlement Agreement with Settling Insurers Authorizing the Sale of Policies Free and Clear of Liens, Claims, and Interests and Other Encumbrances*, Apr. 24, 2019 (ECF No. 627) ("**Supp. Obj.**").

negotiations—that the Debtors were able to achieve the proposed settlements with four of the five Asbestos Insurers involved in the New York coverage action.  The proposed settlements are structured as buybacks of the applicable Asbestos Insurance Policies under § 363(f) of the Bankruptcy Code.  If approved, these settlements will result in a significant amount of money being contributed to the Trust to pay eligible asbestos claims under the Plan.  Moreover, these settlements provide for mutual releases of claims by the Settling Insurers and the Debtors' estates.  All in all, these settlements will resolve intractable coverage litigation with the Settling Insurers, pave the way for significant dollars to be contributed to the Trust, and thus benefit the people with the real economic stake in these Chapter 11 Cases—present and future asbestos disease victims.

Only one holdout insurer remains:  North River.  And North River is the only party objecting to these settlements.  In doing so, North River indulges in hyperbolic rhetoric while ignoring the Plan and the proposed settlements in their totality.  For example, North River asserts that the settlements would "strip North River of its rights against the Settling Insurers" and "give North River no compensation in return."[5]  This is inaccurate.  Although the Plan and settlements would enjoin North River from asserting contribution claims against the Settling Insurers, the Plan would grant North River value on account of those claims in the form of Judgment-Reduction Credits.  North River also makes the baffling claim that "the Settling Parties . . . are not seeking a § 524(g) injunction" but instead are relying exclusively on §§ 363 and 105 of the Bankruptcy Code.[6]  But this ignores express language in the settlement agreements that call for the Settling Insurers to be designated as "Settling Asbestos Insurers" under the Plan and thus protected by the

---

[5]    Supp. Obj. at 2.

[6]    *Id*. at 9.

Asbestos Permanent Channeling Injunction and the Settling Asbestos Insurer Injunction.[7]  Both of

those Injunctions are to be issued by the District Court under § 524(g).[8]

In sum, North River chooses to view the proposed settlements in isolation and not as

components of a holistic and comprehensive resolution of the Debtors' asbestos liabilities.  As this

Court recognized at the Confirmation Hearing, the proposed settlements should be seen and

evaluated in the larger context of the Plan and not as isolated occurrences.[9]  For the reasons

explained herein, North River's objections lack merit.  The proposed settlements are fair and

equitable to creditors and should be approved by this Court.

## REPLY ARGUMENT

I.    **North River Is Not Entitled to Adequate Protection, and Thus Its Claims Cannot "Attach" to the Settlement Proceeds**

North River argues that the proposed settlements are not fair and equitable because they

fail to provide "adequate protection" of North River's "interests"—*i.e.*, its unliquidated and

contingent contribution claims against the Settling Insurers.[10]  North River contends that, in order

for its contribution claims to be "adequately protected," they must "attach" to the insurance

settlement proceeds, as if they were liens.[11]  Only recently has North River been explicit about the

---

[7]    *See* Hartford Agreement § II.D, at 10 (ECF No. 477) (providing that "the Hartford Entities shall be designated as Settling Asbestos Insurers under the Plan"); Amended MidStates Agreement § II.D, at 10 (ECF No. 607) (providing that the Debtors "will designate MidStates as a Settling Asbestos Insurer"); Amended Munich Agreement § II.D, at 9 (ECF No. 608) (providing that the Debtors "will designate [Munich] as a Settling Asbestos Insurer"); Amended Federal Agreement § II.D, at 10 (ECF No. 609) (providing that the Debtors "will designate Federal [and certain designated affiliates] as Settling Asbestos Insurers").

[8]    *See* Plan §§ 9.05 & 9.06.

[9]    *See* Hr'g Tr. 9:16-19, Mar. 6, 2019 (observing that all the settlements "include a provision requiring confirmation of the debtor's plan as a triggering event").

[10]    Supp. Obj. at 7.

[11]    *Id.*

full implications of its "adequate protection" argument.  In its opposition to the Plan Proponents'

proposed findings and conclusions, North River asserts that, by "attaching" its claims to the

settlement proceeds "at 100% dollars," North River will be entitled to a "100% payout on

contribution claims."[12]   In other words, North River is demanding "adequate protection" in the

form of a payment priority over asbestos disease victims, as if it were a creditor with a perfected

lien on the settlement proceeds.

North River continues to misapprehend how adequate protection works in bankruptcy.

Adequate protection is not the payment of a claim; rather, "adequate protection is designed to

protect secured creditors against diminution in value of their collateral."[13]   Section 361 of the

Bankruptcy Code emphasizes this point when it specifies that adequate protection is required only

"to the extent" of a "decrease in the value of [an] entity's interest in [estate] property."[14]   Because

adequate protection is intended to prevent or offset diminishing collateral value, it is granted

almost exclusively to lien creditors.[15]   Courts have occasionally, and under certain circumstances,

extended adequate protection to lessors of real or personal property.[16]   But North River is neither

---

[12]   The North River Insurance Company's Objection to Plan Proponents' Proposed Findings of Fact and Conclusions of Law and Proposed Forms of Orders in Support of Confirmation of the Modified Second Amended Prenegotiated Plan of Reorganization ¶¶ 9-10, at 8-9, May 3, 2019 (ECF No. 660) [hereinafter, "**NR Obj. to PP FOF / COL**"].

[13]   *In re Energy Future Holdings Corp.*, 546 B.R. 566, 581 (Bankr. D. Del. 2016).

[14]   11 U.S.C. § 361.

[15]   *See In re Tellier*, 125 B.R. 348, 349 (Bankr. D.R.I. 1991) ("As a matter of policy and constitutional law, adequate protection is afforded *only to secured claims* and unsecured claims are not entitled to such protection."  (emphasis added and internal quotation marks and citation omitted)); *see also In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate protection is designed to preserve the *secured creditor's* position at the time of the bankruptcy."  (emphasis added and citation omitted)).

[16]   *See, e.g.*, *In re Scarborough-St. James Corp.*, 535 B.R. 60, 72-73 (Bankr. D. Del. 2015) (concluding that landlord is entitled to adequate protection to the extent it has an *equitable lien*— *i.e.*, is a secured creditor—and not to the extent it holds an unsecured claim); 3 *Collier on*

a lessor nor a lien creditor.  In a § 363 sale, North River has the burden of proof as to the validity,

priority, or extent of its "interest" in property.[17]  North River has provided *no evidence* of any lien

on or security interest in any of the Asbestos Insurance Policies being repurchased under the

settlements.  Instead, North River merely speculates that it *may* end up in the future paying more

than its fair share of the Debtors' indemnity and defense costs and thus it *may* have equitable

contribution claims against the Settling Insurers.[18]  Yet, these contribution claims are, at best,

*unsecured*, and courts uniformly hold that unsecured creditors are not eligible for adequate

---

*Bankruptcy* ¶ 361.02[1] (16th ed. 2014) (explaining that courts generally hold that a lessor's adequate protection rights are defined by § 365(d)(5), in the case of personal property, and § 365(d)(3), in the case of real property).  In 1994, Congress amended § 363(e) to provide that adequate protection thereunder applies to property "subject to any unexpired lease of personal property[.]"  Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 219(c) (Oct. 22, 1994).

[17]  *See* 11 U.S.C. § 363(p)(2).

[18]  An insurer that pays to settle a covered claim and thinks it paid more than its proper allocation in defense or indemnity costs may seek equitable contribution from coinsurers "that *share the same level of liability on the same risk as to the same insured*," where the coinsurers refused to settle or defend the claim.  1 Steven Plitt & Jordan Ross Plitt, *Practical Tools for Handling Insurance Cases* § 8:2 (2018) (emphasis added).  This means that there is only a valid contribution claim when an insurer's policy *actually covers a risk* and another insurer's policy *actually covers that same risk*.  Here, North River has not established any factual predicate showing that its policies actually have covered the same risk that the Settling Insurers have paid.  In other words, North River has done nothing but speculate that it would have valid equitable contribution claims against the Settling Insurers.

protection.[19]  Indeed, in *Lee v. Schweiker*,[20] the Third Circuit ruled that, because the Social Security

Administration did not have "secured status," it was "not entitled to adequate protection."[21]

Similarly, as an unsecured creditor (at best), North River is not eligible for adequate protection

under § 363(e).

North River asserts that it is entitled to adequate protection based on the Second Circuit's

decision in *MacArthur Co. v. Johns-Manville Corp.*,[22] but North River's reliance is misplaced.

*MacArthur* did not involve an insurance company holding contribution claims that merited

adequate protection.  Rather, the case involved a Manville distributor claiming that it was a

coinsured under some of Manville's policies based on "vendor endorsements" contained in those

policies.[23]  On appeal to the Second Circuit, the distributor challenged the bankruptcy court's

authority to issue asbestos channeling injunctions that, among other things, barred the distributor

from accessing the settled insurance coverage.  Because *MacArthur* predated the enactment of

---

[19]  *See, e.g.*, *In re Babcock and Wilcox Co.*, 250 F.3d 955, 960 n.12 (5th Cir. 2001) (explaining that party "is an unsecured creditor, not a senior lienholder, and thus would not be entitled to adequate protection" (citations omitted)); *In re SunEdison, Inc.*, 562 B.R. 243, 252 (Bankr. S.D.N.Y. 2017) ("Unsecured creditors . . . do not have an interest in property of the estate that merits adequate protection, and *there is no express statutory requirement that unsecured creditors receive adequate protection*." (emphasis added and citation omitted)); *In re Patriot Contracting Corp.*, No. 05-33190 DHS, 2006 WL 4452840, at *4 (Bankr. D.N.J. Mar. 28, 2006) ("As an unsecured creditor of the Debtor, the IRS is not entitled to adequate protection." (citation omitted)); *In re 3036 Richmond Inc.*, No. 00-19226F, 2001 WL 36275467, at *8 (Bankr. E.D. Pa. Mar. 13, 2001) (stating that "creditors who hold only an unsecured claim against the debtor do not, by virtue of such a claim, hold an interest in property entitled to adequate protection" (citations omitted)).

[20]  739 F.2d 870 (3d Cir. 1984).

[21]  *Id*. at 875 n.7; *see also In re Chama, Inc.*, 265 B.R. 662, 669 (Bankr. D. Del. 2000) ("Since the Bank's security interest is avoided, it is a general unsecured creditor.  It is therefore, not entitled to any adequate protection." (citations omitted)).

[22]  837 F.2d 89 (2d Cir. 1988).

[23]  *Id*. at 90.

§ 524(g), the Second Circuit had to look to another Bankruptcy Code provision to support the channeling injunctions granted under § 105(a). The Second Circuit found such a provision in § 363(f) and thus analogized the effect of the injunctions to a sale free and clear of interests, where liens on the assets sold attach to the sale proceeds.[24] The Second Circuit acknowledged that "the insurance settlement and accompanying injunction in this case are not precisely the same as the traditional sale of real property free and clear of liens followed by a channeling of *the liens* to the proceeds of the sale."[25] "Nevertheless," said the court, "the underlying principle of preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court remains the same."[26] Thus, *MacArthur* does not speak to whether insurers holding unsecured claims are entitled to adequate protection or whether those claims must "attach" to the settlement proceeds, as if they were liens. Accordingly, North River cannot use *MacArthur* to argue that it has an interest in the policies that warrants adequate protection under § 363(e).

North River points out that, in the *TWA* case, the Third Circuit interpreted the term "interest in . . . property" in § 363(f) broadly to encompass unsecured successor-liability claims against the asset purchaser, American Airlines.[27] North River suggests that any claims constituting an "interest" under § 363(f), and therefore affected by a free-and-clear sale, must be afforded adequate protection under § 363(e). Nothing in *TWA* supports that argument. Nor is the argument supported by the plain language of the Bankruptcy Code. Section 363(e) provides that, "on request of an entity that has an interest in property," the court "shall prohibit or condition" the "use, sale, or

---

[24]   *See id*. at 94.

[25]   *Id*. (emphasis added).

[26]   *Id*.

[27]   Supp. Obj. at 12.  (citing *In re TWA, Inc.*, 322 F.3d 283 (3d Cir. 2003)).

lease" of such property "*as is necessary to provide adequate protection* of such interest."[28]   In

other words, adequate protection must be "necessary" or required in the first place before a court

is obligated to award it to an interest holder.   And, because adequate protection is designed to

prevent or offset decreasing collateral value, such protection is not required with respect to

unsecured claims affected by a free-and-clear sale under § 363(f).[29]

Moreover, § 363(e) says *nothing* about claims or interests "attaching" to sale proceeds,

even though North River argues that this is the only form of adequate protection mandated here.

To be sure, the "commonly accepted method for adequate[ly] protecting a *secured creditor* when

a sale is authorized under § 363(f) is to order the liens to attach to the proceeds of the sale."[30]   But

North River is not a secured creditor, and a method of adequate protection "commonly accepted"

does not mean that the method is exclusive or mandatory.   North River cites no case, nor have the

Plan Proponents found any case, holding that an insurer with contribution claims has an interest in

the policies of other insurers that warrants adequate protection in the form of its claims "attaching"

to the proceeds under § 363(e).

Additionally, North River's position, if it were accepted, would turn the *TWA* decision on

its head.   In *TWA*, the Third Circuit opined that the purpose of § 363(f)—which is to maximize the

sale value of estate assets—would be defeated if the term "interest in . . . property" did not

encompass potential successor-liability claims against the asset purchaser.[31]   The Third Circuit

also observed that allowing the holders of successor-liability claims to seek recourse from the asset

---

[28]   § 363(e) (emphasis added).

[29]   *See supra* notes 19-21 and cases cited therein.

[30]   *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995) (emphasis added and citations omitted).

[31]   *See TWA, Inc.*, 322 F.3d at 292-93.

purchaser while confining other creditors to the bankruptcy res "would be inconsistent with the Bankruptcy Code's priority scheme."[32] Yet, allowing North River's unsecured contribution claims to "attach" to the settlement proceeds so that North River would have a "right to 100% payout on [those] contribution claims" would also be inconsistent with the Bankruptcy Code's priority scheme and therefore must be rejected.

North River claims that the Third Circuit adopted North River's expansive view of § 363(e) in *Folger Adam Security, Inc. v. Dematteis/Macgregor, JV*.[33]  But *Folger Adam* is inapposite, addressing only whether certain affirmative defenses to a claim for breach of contract constituted an interest in property under § 363(f).[34]  The decision does not even mention § 363(e) or adequate protection.  Indeed, the passage that North River lifts from *Folger Adam*—"the holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of section 363(f) and, therefore, attaches to the proceeds of the sale"—is mere *dictum*.[35]  Moreover, it is *dictum* that describes the holdings of bankruptcy courts from outside the Third Circuit.[36]  For all the reasons stated above, North River's demand for adequate protection in the form of its claims "attaching" to the settlement proceeds lacks merit, and its settlement objections should be overruled.

---

[32]  *Id*. at 292.

[33]  209 F.3d 252 (3d Cir. 2000).

[34]  *Id*. at 253-54.

[35]  *See id*. at 259.

[36]  *See id*. (describing holdings in *In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90 (Bankr. E.D. Va. 1995) and *In re WBQ P'ship*, 189 B.R. 97 (Bankr. E.D. Va. 1995)).

II.     **North River's Contribution Claims Against the Settling Insurers, if Any, Will Be Treated Fairly and Equitably Through Judgment Reduction**

Although North River is not entitled to adequate protection under bankruptcy law, it is wrong when it asserts that the Plan and proposed settlements provide "no protection" with respect to its contribution claims against the Settling Insurers.[37]  This is because North River will receive "protection" in the form of the Judgment-Reduction Credits, which operate as follows:  Under the Plan, any asbestos plaintiff who wishes to pursue a direct action or judgment-enforcement action against North River must first agree that any judgment obtained against North River in such an action will be reduced to account for any lost contribution rights that North River might have against any Settling Insurers.[38]  In determining the amount of the Judgment-Reduction Credit, the asbestos plaintiff pursuing such an action will be able to assert the legal or equitable rights, if any, of the Settling Insurers with respect to North River's contribution claims.[39]  The Judgment-Reduction Credit provides North River with a setoff right that is equivalent to its erstwhile contribution rights.  Although the Judgment-Reduction Credit will not put cash in North River's hands, it will provide North River with *value* in the form of a setoff right that would reduce the amount of any judgment against it.

In addition, the insurance settlement agreements have judgment-reduction provisions that would effectively benefit North River.  Under those provisions, the Debtors or the Trust, as applicable, would reduce any judgment they obtained on account of North River's policies to account for any contribution liability of the Settling Insurers.[40]

---

[37]    Supp. Obj. at 6.

[38]    Plan § 4.14.

[39]    *Id.* § 4.14(b).

[40]    *See* Hartford Agreement § VI, at 15-16 (ECF No. 477); Amended MidStates Agreement

Under New York law, equitable contribution claims exist where "an insurer that insures a common risk with other carriers can demonstrate that it paid more than its fair share of the relevant costs."[41] An insurance settlement can resolve such claims if it provides for setoff rights that would prevent non-settling insurers from paying more than their fair share in the future, which is precisely what judgment reduction in the Plan and settlement agreements provides here.[42] Indeed, in *Olin*, the court held that a non-settling insurer was "not entitled to contribution from any of the settled insurers" in light of its setoff rights, because those rights already accounted for the contribution liability of the settled insurers.[43] In so holding, the court distinguished the *W.R. Grace*, *DaimlerChrysler*, and *Scotts Co.* cases that North River cites for the proposition that insurance settlements cannot resolve and enjoin its contribution claims, because none of the settlements in those cases provided setoff rights.[44]

Providing non-settling litigants with setoffs, credits, or judgment reductions as a means to protect contribution claims is also common and generally regarded as appropriate outside of the context of insurance litigation. For example, as the district court noted in *WorldCom*, "because of the importance of settlement to our litigation system, and because an unlimited right to seek

---

§ VI, at 15 (ECF No. 607); Amended Munich Agreement § VI, at 13-14 (ECF No. 608); Amended Federal Agreement § VI, at 16 (ECF No. 609).

[41] *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212 (2d Cir. 2000).

[42] *See Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 880 (S.D.N.Y.), *reconsideration denied,* No. 84-CV-1968 (JSR), 2018 WL 4360775 (S.D.N.Y. Aug. 17, 2018).

[43] *Id*.

[44] *Id.* at 879 (distinguishing *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204; *DaimlerChrysler Ins. Co. v. Universal Underwriters Ins. Co.*, Index No. 601238/008, 2010 WL 1459007 (N.Y. Sup. Ct. Mar. 31, 2010); *Scotts Co. v. Ace Indem. Ins. Co.*, Index No. 602712/05, 2008 WL 518062 (N.Y. Sup. Ct. Feb. 26, 2008), *aff'd sub nom Scotts Co., LLC v. Pac. Emp'rs Ins. Co.*, 61 A.D.3d 464 (N.Y. App. Div. 2009)).

contribution would 'surely diminish the incentive to settle,' . . . courts may approve provisions in

settlement agreements that bar contribution and indemnification claims between the settling

defendants and non-settling defendants so long as there is a provision that gives the non-settling

defendants an appropriate right of set-off from any judgment imposed against them."[45]  Here, the

Plan and the settlement agreements provide North River with all of the protections it would be

entitled to outside of bankruptcy.  By contrast, the result urged by North River would allow a

holdout insurer to stifle settlements in contravention of well-established public policy and

effectively paralyze the progress of the Plan.[46]

Finally, even if North River were, for the sake of argument, entitled to adequate protection

under § 363(e), the Judgment-Reduction Credits under the Plan and the judgment-reduction

provisions in the settlement agreements would suffice as such.  As noted above, nothing in § 363(e)

mandates that North River's claims "attach" to the settlement proceeds.  And, as this Court

observed in the *Dispirito* case, § 361 of the Bankruptcy Code lists different types of adequate

---

[45] *In re WorldCom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004) (citing *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368–69 (2d Cir. 1991) (affirming approval of settlement holding that, where judgment credit is given to non-settling defendant in amount equal to its proportionate share of liability, its rights are protected even without determination of fairness of settlement); *see also In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421, 438, 452 (W.D. Pa. 2006) (approving partial settlement of Exchange Act claims where non-settling defendants would "enjoy the benefit of a corresponding judgement reduction for the elimination of its contribution claims against any released party"); *In re Tribune Co.*, 464 B.R. 126, 179 (Bankr. D. Del. 2011) (citing *Eichenholtz v. Brennan*, 52 F.3d 478, 487 (3d Cir. 1995)) (bar order included in a proposed Chapter 11 plan was substantively fair to the non-settling defendants because they were protected by the proportionate judgment reduction, which is the equivalent of a contribution claim), *on reconsideration in part*, 464 B.R. 208 (Bankr. D. Del. 2011), *aff'd sub nom. In re Tribune Media Co.*, 587 B.R. 606 (D. Del.), *and aff'd in part*, 587 B.R. 606 (D. Del. 2018); *In re Munford, Inc.*, 172 B.R. 404 (Bankr. N.D. Ga. 1993), *aff'd*, 97 F.3d 449 (11th Cir. 1996) (observing that judgment reduction provisions in settlement agreements between plaintiffs and fewer than all codefendants serve as alternative to contribution and provide means for fairly compensating non-settling defendants for loss of contribution or indemnity claims).

[46]  *Ivan F. Boesky Sec. Litig.*, 948 F.2d at 1369.

protection, but that list is not exclusive.[47]    In other words, the Bankruptcy Code does not exclude

judgment reduction as a permissible form of adequate protection.    Despite North River's assertions

to the contrary, adequate protection need not provide "full" or "ideal" protection; rather, as the

name suggests, adequate protection includes "that which suffices under the circumstances."[48]

Under the circumstances here, judgment reduction suffices to the extent North River is entitled to

adequate protection.    Through judgment reduction, North River will receive value in the form of

setoff rights to account for its enjoined contribution claims against the Settling Insurers.

Accordingly, North River's objection that it would receive "no protection" of its claims under the

proposed settlements should be overruled.

North River's demand for "protection" in the form of a "100% payout on [its] contribution

claims"[49] would effectively grant it a priority position over asbestos disease victims.    There is no

basis for affording North River such extraordinary treatment, which would only lead to impractical

and inequitable outcomes that would be contrary to the paramount interest of creditors.    As

practical matter, granting North River a priority claim against the settlement proceeds would mean

that asbestos disease victims would have to wait an indefinite period of time until North River was

"paid in full" before they even could begin to receive compensation for their claims out of the

settlement proceeds (to the extent any proceeds were left).    Moreover, such treatment would

effectively impose on one set of asbestos claimants (those relying solely on the Trust for

---

[47]    *See In re Dispirito*, 371 B.R. 695, 698 (Bankr. D.N.J. 2007) (Kaplan, J.) ("The Bankruptcy Code does not define adequate protection, but it does provide a non-exclusive list of examples in § 361."); *see also In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The means of adequate protection provided by § 361 are not exclusive."   (quoting *In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993))).

[48]    *In re Revel AC, Inc.,* 525 B.R. 12, 30 (D.N.J.), *rev'd on other grounds*, 802 F.3d 558 (3d Cir. 2015).

[49]    NR Obj. to PP FOF / COL ¶¶ 9-10, at 8-9.

compensation) the costs of litigating against another set of asbestos claimants (those using the tort system).  By earmarking the settlement proceeds exclusively for the benefit of asbestos disease victims and granting North River judgment reduction to account for its enjoined claims against the Settling Insurers, the Plan and proposed settlements strike a proper balance of the competing interests at hand.  On this basis, the proposed settlements are fair and equitable to creditors and should be approved in conjunction with confirmation of the Plan.

## III.    The Scope of the Plan Injunctions and Settlement Injunctions Is Proper

North River accuses the "Settling Parties" of "improperly seeking to discharge Settling Insurers' liability to the non-settling insurers."[50]  North River also makes the mystifying assertion that "the Settling Parties . . . are not seeking a § 524(g) injunction" but rather "are attempting to use §§ 363 and 105 to accomplish an otherwise-impermissible objective."[51]  None of these assertions is accurate.

If the proposed settlements are approved and become effective, the Settling Insurers and their designated affiliates will become "Settling Asbestos Insurers."[52]  Under the Plan, Settling Asbestos Insurers will be shielded from Channeled Asbestos Claims and Asbestos Insurance Policy Claims by the Asbestos Permanent Channeling Injunction and the Settling Asbestos Insurer Injunction.[53]  The Asbestos Permanent Channeling Injunction and the Settling Asbestos Insurer Injunction are to be issued by the District Court in accordance with § 524(g).

---

[50]    Supp. Obj. at 9.

[51]    *Id*.

[52]    *See supra* note 7.

[53]    Plan §§ 9.05 & 9.06.

The Plan defines the term "Asbestos Insurance Policy Claim" as "any claim against *any Asbestos Insurer* based on, arising under, or attributable to any Asbestos Insurance Policy or Asbestos Insurance Settlement, including any claim . . . for *contribution, reimbursement,* indemnity, or subrogation based on, arising from, or attributable to any Asbestos Insurance Policy."[54]    North River's asserted contribution claims against the Settling Insurers handily fit within this definition of Asbestos Insurance Policy Claim.

In addition, Asbestos Insurance Policy Claims may be enjoined by the Settling Asbestos Insurer Injunction in accordance with § 524(g).  This is because Asbestos Insurance Policy Claims fit within one of the "by reason of" categories of claims that may be enjoined under § 524(g)(4)(A)(ii).  Specifically, North River's contribution claims against the Settling Insurers arise indirectly, but nonetheless entirely, "by reason of" the Settling Insurers' "provision of insurance" to the Debtors.[55]    Section 524(g) does not include the word "derivative," but courts, such as the Third Circuit in *Combustion Engineering*, sometimes use the term "derivative liability" as shorthand to refer to the "by reason of" claims categories in § 524(g)(4)(A)(ii).[56]    Because North River's contribution claims fall within one of the "by reason of" categories in § 524(g)(4)(A)(ii), those claims are derivative of the Debtors' asbestos liabilities and are properly enjoined.

North River's reliance on the *Combustion Engineering* and *Johns-Manville* cases to support its "discharge" argument is misplaced.  Those cases involved § 105 injunctions that

---

[54]    *Id*. § 1.01(12) (emphasis added).

[55]    11 U.S.C. § 524(g)(4)(A)(ii)(III).

[56]    *See, e.g.*, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234-35 (3d Cir. 2004), *as amended* (Feb. 23, 2005).

shielded nondebtors from their own independent (*i.e.*, non-derivative) asbestos liabilities, not liabilities that were derivative of the debtors' asbestos torts and enjoined as such.[57]

In addition to the Injunctions under the Plan, each of the proposed forms of orders approving the settlements contains a "Sale Injunction" to be issued under §§ 363 and 105(a) of the Bankruptcy Code.  If granted, the Sale Injunctions will enjoin "any Claim or Interest . . . against or in any of the Debtors, their bankruptcy estates, the Policies, or [the Settling Asbestos Insurer] *based upon, arising under or out of, or in any way attributable to the Policies*[.]"[58]  The scope of the Sale Injunctions is appropriate because it is tied to the "Policies"—*i.e.*, the Asbestos Insurance Policies that were issued to the Debtors and are being repurchased under the settlements.

Here, as in other asbestos or mass-tort cases, an injunction "barring creditors from suing a purchaser of estate assets is sometimes necessary and appropriate to give the 'free and clear' aspect of 363(f) meaning."[59]  Sale injunctions, such as the ones sought here, "are relatively common with § 363(f) sale orders."[60]  Issuing the Sale Injunctions under § 105(a) is necessary to give effect to

---

[57]  *See In re Johns-Manville Corp.*, 517 F.3d 52, 63 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009); *Combustion Eng'g, Inc.*, 391 F.3d at 235.

[58]  Munich Approval Order ¶ 8, at 10 (ECF No. 608); *see also* Harford Approval Order ¶ 8, at 11 (ECF No. 468-2); MidStates Approval Order ¶ 8, at 10-11 (ECF No. 607); Federal Approval Order ¶ 8, at 10 (ECF No. 609-1).

[59]  *In re Dow Corning Corp.*, 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996) (citing cases); *see also In re TWA, Inc.*, No. 01-0056, 2001 WL 1820325, at *8 (Bankr. D. Del. 2001) (approving debtor's § 363(f) sale of estate assets and holding that "the injunctive relief in the Sale Order is appropriate under § 105(a) because it is necessary to carry out the effect and purpose of § 363(f)"), *aff'd*, 322 F.3d 283 (3d Cir. 2003).

[60]  *In re Sunland, Inc.*, No. 13-13301-tr7, 2014 WL 7011747, at *5 (Bankr. D.N.M. 2014); *see also, e.g., TWA, Inc.*, 322 F.3d at 287 (quoting injunction language in sale order); *In re Caribbean Petroleum Corp.*, Bankruptcy No. 10-12553(KG), Adversary No. 12-51001(KG), 2013 WL 950361, at *3 (Bankr. D. Del. Mar. 11, 2013) (quoting with approval injunction previously entered in connection with insurance buyback order), *aff'd*, 580 F. App'x 82 (3d Cir. 2014); *In re Flintkote Co.*, 04-11300 (Bankr. D. Del. Nov. 8, 2007) (ECF No. 5173 (approving insurer's buyback of its

the repurchase of the Asbestos Insurance Policies under § 363(f), in accordance with the settlements.  The Settling Insurers are buying complete peace from their policy obligations to the Debtors and the asbestos-related claims asserted against the Debtors.  The Sale Injunctions are therefore necessary to shield the Settling Insurers from claims that are based on or attributable to the repurchased policies.

## IV. Bankruptcy Jurisdiction Exists Regardless of Whether North River's Claims Constitute an "Interest" Under § 363(f)

North River argues that, if its contribution claims against the Settling Insurers are not an interest in the Debtors' property under § 363(f), "then the Court [will] lack any power or jurisdiction to sell such property free and clear of such claim[s]."[61]  Whether or not North River's asserted claims against the Settling Insurers constitute an "interest" in the policies under § 363(f) is immaterial at the end of the day, because there is sufficient jurisdiction and authority to address those claims in either case.  If North River's claims were determined to be an "interest" in the policies being repurchased under § 363(f)—because, for example, the Settling Insurers could never be found to be sharing the same insured risk as North River but for their policies—then North River's claims will be subject to the free-and-clear sale and enjoined by the Sale Injunctions because they are "attributable to" the repurchased policies.  The policies being repurchased are estate property and thus within this Court's *in rem* jurisdiction.[62]

---

policies and enjoining claims under both §§ 363 and 105); *In re Burns & Roe Enters., Inc.*, Case No. 00-41610RG, 2005 Bankr. LEXIS 3173, at *15-16 (Bankr. D.N.J. Feb. 17, 2005) (approving insurer's buyback of its policies and enjoining claims under § 105).

[61]    Supp. Obj. at 12.

[62]    *See* 28 U.S.C. § 1334(e)(1).  In addition, subject-matter jurisdiction and sufficient adjudicatory authority exists here because a motion to approve a free-and-clear sale under § 363(f) is a proceeding "arising under title 11" (28 U.S.C. § 1334(b)) and is a core proceeding under 28 U.S.C. § 157(b)(2)(N) (orders approving the sale of property).

On the other hand, if North River's claims do not constitute an "interest" in the policies under § 363(f)—because, for example, they can be seen as separate, *in personam* claims against nondebtor third parties (*i.e.*, the Settling Insurers)—those claims will still be "Asbestos Insurance Policy Claims" under the Plan and properly enjoined by the Settling Asbestos Insurer Injunction in accordance with § 524(g).[63]  In that case, there will be bankruptcy "related to" jurisdiction over North River's claims.  The Third Circuit has stated that "related to" jurisdiction includes "suits between third parties that *conceivably* may have an effect on the bankruptcy estate."[64]  Here, North River's claims against the Settling Insurers "conceivably may have an effect" on the Debtors' estates.  If the Settling Insurers are unable to buy complete peace—which includes protection from North River's contribution claims—then, as a practical matter, the Settling Insurers will not settle at all or will settle at a discounted dollar amount to reflect North River's continuing claims against them.  On this basis, North River's contribution claims "conceivably may have an effect" on the value of the Debtors' estate property, so there is "related to" jurisdiction over those claims.[65]  And, on the basis of "related to" jurisdiction, the District Court may issue the Settling Asbestos Insurer Injunction, as the Plan Proponents request, to enjoin North River's contribution claims, among others.

---

[63]  *See supra* notes 51-53 and accompanying text.

[64]  *In re W.R. Grace & Co.*, 591 F.3d 164, 171 (3d Cir. 2009) (citation and internal quotation marks omitted).

[65]  North River is dismissive of this explanation for "related to" jurisdiction.  But the Third Circuit made a similar point in the *TWA* case, albeit in the context of a § 363 sale, when it stated:  "Absent entry of the Bankruptcy Court's order providing for a sale of TWA's assets free and clear of the successor liability claims at issue, American may have offered a discounted bid."  *TWA, Inc.*, 322 F.3d 282, 292-93.  Other courts have made the same point, without reference to evidence or testimony.  *See WBQ P'ship.*, 189 B.R. at 108.

## CONCLUSION

The proposed settlements will resolve long-running and intractable coverage disputes with the Settling Insurers that are being litigated in New York state court.  The settlements will result in cash contributions to the Asbestos Trust and will thus augment the compensation paid to eligible asbestos disease victims.  North River is not entitled to adequate protection, including protection in the form of its claims "attaching" to the settlement proceeds.  But the Plan and the settlements will grant North River judgment reduction to account for its enjoined claims against the Settling Insurers.  For these reasons, the Plan and proposed settlements strike an appropriate balance of competing interests, thus making the settlements fair and equitable to all creditors.  Accordingly, the Plan Proponents request that this Court (1) overrule the objections of North River, (2) grant the Motions in their entirety by entering the proposed form of orders accompanying them, and (3) grant such other and further relief as this Court deems just and appropriate.

*[Signatures of counsel appear on the next page.]*

Respectfully submitted,

| LOWENSTEIN SANDLER LLP | THE LAW OFFICE OF JOHN A. FIALCOWITZ, LLC | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|---|
| */s/ Jeffrey D. Prol* | */s/ John A. Fialcowitz* | */s/ Edwin J. Harron* |
| Kenneth A. Rosen, Esq. | John A. Fialcowitz, Esq. | Edwin J. Harron, Esq. |
| Jeffrey D. Prol, Esq. | 89 Headquarters Plaza | Sara Beth A. R. Kohut, Esq. |
| One Lowenstein Drive | North Suite 1216 | Rodney Square |
| Roseland, NJ 07068 | Morristown, NJ 07960 | 1000 North King Street |
| Telephone: (973) 597-2500 | Telephone: (973) 532-7208 | Wilmington, DE 19801 |
| Facsimile:  (973) 597-2400 | Facsimile: (973) 993-1857 | Telephone: (302) 571-6703 |
|  |  | Facsimile:  (302) 576-3298 |
| *Counsel to the Debtors and Debtors in Possession* | —and— | *Counsel to the Legal Representative* |
|  | CAPLIN & DRYSDALE, CHARTERED |  |
|  | James P. Wehner, Esq. |  |
|  | Jeffrey A. Liesemer, Esq. |  |
|  | One Thomas Circle, N.W. |  |
|  | Washington, DC 20005 |  |
|  | Telephone:  (202) 862-5000 |  |
|  | Facsimile: (202) 429-3301 |  |
|  | *Co-Counsel to the Asbestos Claimants Committee* |  |

Dated:  May 15, 2019