Margaret F. Catalano
Christina R. Salem
570 Lexington Avenue – 8th Floor
New York, New York 10022
(212) 252-0004
meg.catalano@kennedyscmk.com
christina.salem@kennedyscmk.com

IFRAH PLLC
George R. Calhoun, V (*pro hac vice*)
1717 Pennsylvania Ave., NW
Washington, D.C. 20006
(202) 525-4147
george@ifrahlaw.com

*Attorneys for The North River Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: | Chapter 11 |
| DURO DYNE NATIONAL CORP., *et al.*,[1] | Case No. 18-27963 MBK |
| Debtors. | (Jointly Administered) |

**THE NORTH RIVER INSURANCE COMPANY'S LIMITED OPPOSITION TO THE MOTION OF THE OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS AND FUTURE CLAIMANTS' REPRESENTATIVE FOR RELIEF FROM THE AUTOMATIC STAY FOR THE LIMITED PURPOSE OF PRESERVING <u>TESTIMONY OF DYING CLAIMANTS</u>**

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Duro Dyne National Corp. (4664); Duro Dyne Machinery Corp. (9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne Midwest Corp. (4662).

1

The North River Insurance Company ("North River") submits this limited opposition to the Motion of The Official Committee of Asbestos Claimants and Future Claimants' Representative For Relief From The Automatic Stay For The Limited Purpose Of Preserving Testimony of Dying Claimants (Dkt # 895). North River does not oppose relief from the stay to conduct *de bene esse* depositions on a theoretical basis, but the movant's request is so vague and overbroad that that the requested relief is inappropriate.

## ARGUMENT

Although North River does not object to the taking of *de bene* esse depositions in particular cases, the motion presents three problems that prohibit the entry of the order as requested. First, the movants lack standing to seek relief on behalf of individual creditors. Second, the Motion and proposed order are vague and overbroad. The Motion does not identify a single creditor by name or case. The proposed order would have the Court grant relief from the stay to all creditors, who presumably could then use their discretion to determine whether to proceed with deposition discovery because neither the Motion nor the Proposed Order contain any standard for determining when relief from the stay would be appropriate. Finally, the Motion suggests that only the Debtors' insurers would bear costs. That is incorrect. As established by the New York state court, the Debtor is responsible for its share of defense costs. If the Court is to grant any form of the requested relief, it should make clear that the Debtors are responsible for their share of defense costs as an administrative expense and that "settling" insurers also are responsible for payment of defense costs and are not discharged from those claims.

### A. The Movants Lack Standing

As an initial matter, the Motion highlights one plaintiff whose physical condition allegedly has declined to the point that a deposition to preserve his testimony may well be appropriate. The Motion does not identify that plaintiff or the relevant pending state case (if any). No counsel for any individual plaintiff has appeared and sought relief or otherwise demonstrated that cause exists for relief. Rather, the Official Committee of Asbestos Claimants ("ACC") seeks relief, as does the Future Claimants' Representative ("FCR"), apparently as a general policy rather than because there is identifiable cause for relief. Neither entity has standing to assert the rights of individual claimants.

To meet the standing requirements of Article III, a party must satisfy the "irreducible constitutional minimum of standing," by demonstrating that: (a) it has suffered an "injury in fact" to a legally protected interest; (b) there is a "causal connection" between the alleged injury and the challenged action, and the injury is not the result of the independent action of a third party not before the court; and (c) the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Although the ACC is a party in interest, and Section 1109(b) provides that "a … creditors' committee … may raise and may appear and be heard on any issue in a case under the chapter," that provision does not eliminate the "irreducible" constitutional requirement for standing of establishing an injury to a legally protectable interest. *See In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) (section 1109 does not waive other limitations on standing); In re Global Indus. Tech, Inc.*,* 645 F.3d 201, 211-12 (3d Cir. 2011)(to establish standing, a party mush identify an "injury-in-fact" and a "personal stake in the outcome of [the] litigation.") Under the Supreme Court's interpretation of the standing requirements, a party generally cannot assert "the legal rights or interests of third

3

parties." *Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955 (1984) (*quoting Warth v. Seldin*, 422 U.S. 490, 499) (additional citations omitted)

The ACC does not represent individual claimants; it represents the interests of all asbestos claimants. *See* 11 U.S.C. § 1102; *In re Rapid Am. Corp.*, 2018 WL 882395 (S.D.N.Y., Feb. 12, 2018) ("A creditors' committee represents the body of creditors, not individual creditors or sub-groups within its constituency … In short, the Committee lacks standing to assert the rights of the individual [] claimants.") (internal citations omitted). While an official committee certainly has a right to be heard on a motion for relief from the automatic stay, it has no authority to *seek* relief on behalf of individual claimants. The FCR has even less standing to seek relief upon behalf of individual claimants. By definition, the FCR represents parties whose claims have not yet manifested. Nothing in Section 524(g) authorizes an FCR to act on behalf of individual asbestos claimants. In doing so, the FCR raises questions as to the very sort of conflicts raised by the United States Trustee in objecting to his appointment.

The Court should require that movants who contend that cause exists to lift the automatic stay bring those motions so the basis for the cause may be examined and, if appropriate, challenged.

**B. The Scope of the Requested Relief is Overbroad**

Had counsel for any individual plaintiff with a need to preserve testimony sought consent from North River, North River very likely would have given its consent.[2] As indicated by the Debtors' claim history, over 90% of claims against the Debtors have been resolved without

---

[2] The motion for relief references one such possible plaintiff but does not identify the plaintiff or the underlying proceeding. Counsel for TIG indicated to the ACC that TIG likely would consent in such an individual case once the details were provided and confirmed.

4

payment and deposition testimony often shows that the claimant lacks a valid claim against Duro Dyne. The Debtors' insurers thus have a strong incentive to preserve the plaintiff's testimony. The Movants request that the automatic stay be lifted on a blanket basis.

> Specifically, they ask that the Court enter an order providing that:
>
> Pursuant to § 362(d) of the Bankruptcy Code, any party may, without leave of the Court, take reasonable steps to perpetuate the testimony of any tort claimant who is otherwise subject to the automatic stay but who faces significant risk of dying or becoming incapacitated and unable to testify before completion of the above-referenced chapter 11 cases.

Proposed Order, Dkt # 895-1, at ¶ 3. The proposed order does not specify or clarify what is meant by "significant risk of dying or becoming incapacitated."[3] Nor does the proposed order specify any specific individuals for whom the stay is lifted, or require any notice or opportunity to be heard prior to the lifting of the stay in any particular case. This lack of clarity and notice requirements means that a claimant could go forward and appropriate defense counsel may not even know about it, much less have sufficient time to prepare for any deposition. The Court should grant relief, not on a blanket basis, but only to claimants who show individualized cause for relief from the stay as required by the Bankruptcy Code.

---

[3] As support for this broad relief, the movants cite to the *Kaiser Gypsum* case. In that case, however, the debtor sought extension of the stay to third parties and the debtor requested modification of the stay to permit this relief. Moreover, the debtor shortly thereafter sought relief to allow all claims to move forward in full. That case has drastically different facts, primarily because there is a much larger claim pool and a single insurer is responsible for the defense and payment of nearly every claim in that case.

### C. The Court Should Clarify the Treatment of the Expenses Resulting From Relief

Although North River has no theoretical objection to *de bene esse* depositions, the current stage of this case does present some issues that require clarity in advance of lifting the stay. If the Court grants relief from the stay in response to this or any similar motion, it should clarify how the resulting expenses will be treated.

Responsibility for the cost of defending claims against Duro Dyne is disputed. The Debtors and other parties are attempting to divorce themselves from their obligations and force the costs entirely on to North River. North River is contesting those efforts. Because the allocation of defense costs is presently in dispute, allowing a large number of claims to go forward is likely to cause significant confusion and expense. Therefore, only claimants who actually appear and show cause should be granted relief. North River has no objection to such motions being heard on an expedited basis, and – as suggested above –would consent to the relief if the facts show a need to preserve testimony.

Alternatively, the Court should clarify that any insurer who may be liable for defense costs remains liable for that expense and the pending settlements do not relieve such insurer from their obligation to defend Duro Dyne (either through direct payment or through contribution) if claims are allowed to move forward prior to confirmation of a plan.[4] The Court also should clarify that the Debtors' share of post-petition defense costs constitutes an administrative expense that must be paid in full. Although Duro Dyne has contested its responsibility to share in the costs of its defense, it named such costs as one of the reasons for this bankruptcy and the New York courts have repeatedly held that Duro Dyne is required to contribute to defense costs

---

[4] Counsel for North River contacted counsel for the Debtors and Hartford to determine whether they agreed to the treatment of the costs of defending any *de bene esse* depositions. Counsel received no response prior to the filing of this objection.

"to the extent that claims in the underlying actions clearly occurred during the periods it lacked insurance…" *See, e.g., North River Ins. Co. v. Duro Dyne Nat. Corp.,* 153 A.D.3d 844, 61 N.Y.S.3d 78, 2017 N.Y. Slip Op. 06285 (App. Div. 2017). The cost of defending claims against the estate axiomatically is an "actual, necessary cost[] and expense[] of preserving the estate" under 11 U.S.C. § 503(b). If the Court lifts the stay, Duro Dyne and its insurers should be obligated to pay for the defense of any such claims in the same manner as they were pre-petition, and those obligations should be treated as post-petition costs of defending the estate and not otherwise discharged or voided.

## CONCLUSION

The Court should require plaintiffs with a need for relief to assert their own rights. Assuming that relief is granted to one or more identified plaintiffs, the Court should clarify that (i) the defense of such claims constitutes an administrative estate, and (ii) the pending insurer settlements do not relieve any insurer of its obligation to participate in the payment for such defense.

Dated: October 29, 2019                           Respectfully submitted,

                                                  KENNEDYS CMK LLP

                                                   */s/ Christina R. Salem*
                                                  Margaret F. Catalano
                                                  Christina R. Salem
                                                  570 Lexington Avenue, 8th Floor
                                                  New York, N.Y. 10022
                                                  (212) 252-0004
                                                  Emails:  meg.catalano@ kennedyscmk.com
                                                           christina.salem@kennedyscmk.com

                                                  -and-

IFRAH PLLC
George R. Calhoun, V (*pro hac vice*)
Ifrah PLLC
1717 Pennsylvania Ave., NW
Washington, D.C. 20006
202.525.4147
Email: george@ifrahlaw.com

*Attorneys for The North River Insurance Company*