**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Duro Dyne National Corp., *et al.*[1] | Case No. 18-27963 (MBK) |
| Debtors. | (Jointly Administered) |

**NOTICE OF (A) ENTRY OF ORDER (I) APPROVING AND ADOPTING THE BANKRUPTCY COURT'S AMENDED REPORT AND RECOMMENDATION AND (II) CONFIRMING THE THIRD AMENDED PRENEGOTIATED PLAN OF REORGANIZATION FOR DURO DYNE NATIONAL CORP., ET AL. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED AND (B) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. **Confirmation of the Plan.** On October 23, 2020 (the "**Confirmation Date**"), the United States District Court for the District of New Jersey entered the *Order (I) Approving and Adopting the Bankruptcy Court's Amended Report and Recommendation and (II) Confirming the Third Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., et al. Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* (the "**Confirmation Order**") [Docket No. 1322] approving on a final basis the Disclosure Statement and confirming the *Third Amended Prenegotiated Plan of Reorganization for Duro Dyne National Corp., et al., Under Chapter 11 of the Bankruptcy Code, as Modified* (the "**Plan**") [Docket No. 729].[2]

2. **Effective Date of the Plan.** On December 31, 2020, the Effective Date of the Plan occurred. All conditions precedent to the Effective Date set forth in Section 10.02 of the Plan have been satisfied or waived.

3. **Copies of Plan and Confirmation Order.** The Confirmation Order included the Plan as an exhibit thereto. The Confirmation Order, the Plan, the Plan Supplement and the other documents filed in these cases, are available free of charge at https://bmcgroup.com/durodyne or for a nominal fee (with use of a PACER account) at https://ecf.njb.uscourts.gov/.

---

[1] The Debtors in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's tax identification number, are: Duro Dyne National Corp. (4664); Duro Dyne Machinery Corp. (9699); Duro Dyne Corporation (3616); Duro Dyne West Corp. (5943); and Duro Dyne Midwest Corp. (4662).

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Confirmation Order or, if not used therein, in the Plan.

31035/4
01/15/2021 208178633.2

4. **Administrative Claims Bar Date**. Except as otherwise provided in the Plan and as set forth in Section 2.01 of the Plan, all parties seeking payment of an Administrative Claim (other than a Professional Claim) must file with the Bankruptcy Court and serve upon the Reorganized Debtor a request for payment of such Administrative Claim so as to be received on or before 4:00 p.m. (Eastern Time) on the first Business Day after the date that is sixty (60) days after the Effective Date (*i.e.,* **March 1, 2021**) (the "**Administrative Claims Bar Date**"), unless otherwise agreed to by the appropriate Debtor or Reorganized Debtor, without further approval by the Bankruptcy Court; provided, however, that parties seeking payment of postpetition ordinary course trade obligations, postpetition payroll obligations incurred in the ordinary course of a Debtor's postpetition business, and amounts arising under agreements approved by the Bankruptcy Court or the Plan need not file such a request. *Failure to comply with the Administrative Claims Bar Date shall forever bar the holder of an Administrative Claim (other than a Professional Claim) from seeking payment thereof.* Any holder of an Administrative Claim (other than a Professional Claim) that does not assert such Claim in accordance with Section 2.01 of the Plan will have its Claim deemed disallowed under the Plan and be forever barred from asserting such Claim against any of the Reorganized Debtor, the Debtors, their Estates, or their assets. The holder of any such Claim will be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim. Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor will be paid in full and performed by the applicable Reorganized Debtor in accordance with the terms and subject to any conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

5. **Professional Claims Bar Date**. Pursuant to paragraph 20 of the Confirmation Order, Holders of Professional Claims must (i) file with the Bankruptcy Court their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the first Business Day after the date that is thirty (30) calendar days after the Effective Date (*i.e.,* **February 1, 2021**) or by such other date as may be fixed by the Bankruptcy Court, and (ii) be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) within seven (7) calendar days after such Professional Claim becomes an Allowed Administrative Claim, or (B) upon such other terms as may be mutually agreed upon between the holder of such Allowed Professional Claim and the Reorganized Debtor.

6. **Claims Objection Deadline.** The Reorganized Debtor may object to the allowance of Claims (other than Channeled Asbestos Claims) filed with the Bankruptcy Court or with a duly appointed claims agent, as applicable, with respect to which the Reorganized Debtor disputes, in whole or in part, liability or the amount of the Claim. All objections filed by the Reorganized Debtor as provided in Section 7.01 of the Plan shall be litigated to Final Order by the Reorganized Debtor, as applicable; provided, however, that the Reorganized Debtor may compromise, settle, or resolve by any other method any objections to Claims, subject to approval of the Bankruptcy Court. Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims must be served and filed on or before the later of (a) one hundred and eighty (180) calendar days after the Effective Date (*i.e.,* **June 29, 2021**), or (b) such date as may be fixed by the Bankruptcy Court, after notice and hearing, whether fixed before or after the date specified in clause (a) above (the "**Claims Objection Deadline**").

7. **Executory Contracts to Be Assumed and Rejected**. Except as otherwise provided in the Plan and pursuant to Section 8.01 of the Plan, upon the occurrence of the Effective Date, the Debtors assumed all executory contracts to which they are a party, respectively, except for (a) the executory contracts specifically listed on Schedule 8.01 of the Plan Supplement; or (b) the executory contracts or unexpired

leases specifically addressed in the Plan or pursuant to a Final Order of the Bankruptcy Court entered on or before the Effective Date. Upon the occurrence of the Effective Date, the Debtors rejected those executory contracts and unexpired leases that are listed on Schedule 8.01 of the Plan Supplement. Any and all Claims held by a Related Party against the Reorganized Debtor that are based on, arise from, or are attributable to a contract or lease assumed are subject to Section 4.16 and Section 8.06 of the Plan. Entry of the Confirmation Order constituted approval of the (a) rejections, (b) assumptions, or (c) assumptions and assignments, as the case may be, that are provided for in Article VIII of the Plan, in accordance with sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, and a finding by the Bankruptcy Court that each such rejection, assumption, or assumption and assignment is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases.

(a) **Letters of Credit, Surety Bonds, and Guaranties**.  Unless otherwise designated in Schedule 8.03 of the Plan Supplement, agreed to in writing by the affected parties, or modified by order of the Bankruptcy Court, the Debtors' obligations under letters of credit, surety bonds, guaranties (which, for purposes of Section 8.03 of the Plan includes contingent liabilities arising in connection with assigned executory contracts and unexpired leases), or written indemnity agreements with respect to letters of credit, surety bonds, or guaranties existing as of the Effective Date will be deemed to be, and will be treated as though they are, executory contracts that are assumed under this Plan, effective as of the Effective Date.  In addition, the Debtors' obligations under such letters of credit, surety bonds, guaranties, and written indemnity agreements will be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, effective as of the Effective Date.

(b) **Cure of Defaults and Survival of Contingent Claims**.  Except as may otherwise be agreed to by the applicable parties, on or before the thirtieth (30th) calendar day after the Effective Date (*i.e.*, **January 30, 2021**), provided the non-Debtor party to any executory contract or unexpired lease that is assumed pursuant to this Article VIII of the Plan has filed a proof of claim with respect to a cure amount, the Reorganized Debtor will cure any and all undisputed defaults under each executory contract or unexpired lease assumed pursuant to this Plan, in accordance with section 365(b) of the Bankruptcy Code. All disputed defaults required to be cured will be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of a Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the applicable parties. Unless a proof of claim was timely filed with respect thereto, all cure amounts and all contingent reimbursement or indemnity claims for prepetition amounts expended by the non-Debtor parties to assumed executory contracts and unexpired leases will be discharged upon the Effective Date.

(c) **Rejection Damages Bar Date.** Pursuant to paragraph 21 of the Confirmation Order, if the rejection of a contract or lease pursuant to section 8.01 or section 8.03 of the Plan results in damages to the non-Debtor party to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, will forever be barred and will not be enforceable against the Debtors, or their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court or with a duly appointed claims agent, as applicable, and served upon the Debtors or the Reorganized Debtor on or before the later to occur of (a) thirty (30) calendar days after the Confirmation Date (*i.e.*, **November 23, 2020)**, or (b) thirty (30) calendar days after the date of entry of an order by the Bankruptcy Court authorizing rejection of such contract or lease (the "**Rejection Damages Bar Date**").

8.   **Injunctions.** The Plan provides for the issuance of Injunctions under section 105(a) or section 524(g) of the Bankruptcy Code that will, among other things, result in the channeling of certain asbestos-

related liabilities of the Debtors (excluding liabilities for worker compensation claims) to a newly created Asbestos Trust, as more fully described in the Plan. The terms, conditions, and Entities subject to the Injunctions are set forth in Article IX of the Plan. Except as expressly permitted under the terms of the Injunctions, the Injunctions will prohibit any acts to collect, recover, or offset any asbestos-related liabilities of the Debtors against any Debtor, the Reorganized Debtor, certain specified third parties, and various persons or entities related to such parties. On the Effective Date, except as provided in Sections 4.13 and 4.14 of the Plan, all Channeled Asbestos Claims are channeled to the Asbestos Trust pursuant to the Asbestos Permanent Channeling Injunction, and will be resolved, liquidated, and (if entitled to payment) paid in accordance with the Asbestos Trust Agreement and the Trust Distribution Procedures ("**TDP**"). Under section 524(g) of the Bankruptcy Code, all distributions paid under the Plan to holders of Asbestos Claims and Demands will be the responsibility of the Asbestos Trust, and the Debtors and Reorganized Debtor will have no further personal liability for such claims. All other Claims against the Debtors, with only certain exceptions, will receive distributions from a Disbursing Agent appointed in accordance with the Plan. The general description of the Plan is qualified in its entirety by the terms, conditions, and definitions set forth in the Plan.

(a) **Asbestos Permanent Channeling Injunction.** As described in section 9.05 of the Plan and pursuant to paragraph 39 of the Confirmation Order and except as otherwise provided in the Plan, effective on and after the Effective Date, all Entities that have held or asserted, or hold or assert, or may in the future hold or assert any Channeled Asbestos Claim against one or more of the Protected Parties as defined in the Plan are permanently stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery on account of any Channeled Asbestos Claim (the "**Asbestos Permanent Channeling Injunction**"), including: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of any Channeled Asbestos Claim against any of the Protected Parties, or against the property of any Protected Party on account of any such Channeled Asbestos Claim; (b) enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree, or order against any of the Protected Parties or against the property of any Protected Party on account of any Channeled Asbestos Claim; (c) creating, perfecting, or enforcing any Lien of any kind against any Protected Party or the property of any Protected Party on account of any Channeled Asbestos Claim; (d) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind against any obligation due any Protected Party or against the property of any Protected Party on account of any Channeled Asbestos Claim; and (e) taking any act, in any manner, in any place whatsoever, against any of the Protected Parties or their property, that does not conform to, or comply with, the provisions of the Plan Documents applicable to a Channeled Asbestos Claim.

(b) **Settling Asbestos Insurer Injunction.** As described in section 9.06 of the Plan and pursuant to paragraph 40 of the Confirmation Order, upon the occurrence of the Effective Date, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Asbestos Insurance Policy Claim will be, and hereby are, permanently stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery on account of any such Asbestos Insurance Policy Claim from or against any Settling Asbestos Insurer, only to the extent that such Settling Asbestos Insurer has been released from any claim under one or more Asbestos Insurance Policies in accordance with one or more Asbestos Insurance Settlements (the "**Settling Asbestos Insurer Injunction**"), including: (a) commencing, conducting, or continuing in any manner any action or other proceeding of any kind (including an arbitration or other form of alternative dispute resolution) against any Settling Asbestos Insurer, or against the property of any Settling Asbestos Insurer, on account of any

Asbestos Insurance Policy Claim; (b) enforcing, attaching, levying, collecting, or recovering, by any manner or means, any judgment, award, decree, or other order against any Settling Asbestos Insurer, or against the property of any Settling Asbestos Insurer, on account of any Asbestos Insurance Policy Claim; (c) creating, perfecting, or enforcing in any manner any Lien of any kind against any Settling Asbestos Insurer, or against the property of any Settling Asbestos Insurer, on account of any Asbestos Insurance Policy Claim; (d) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation due any Settling Asbestos Insurer, or against the property of any Settling Asbestos Insurer, on account of any Asbestos Insurance Policy Claim; and (e) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Asbestos Insurance Policy Claim.

(c) **Asbestos Insurer Injunction.** As described in section 9.07 of the Plan and pursuant to paragraph 41 of the Confirmation Order, upon the occurrence of the Effective Date, except as expressly allowed in paragraph 42 of the Confirmation Order or otherwise provided in the Plan, all Entities that have held or asserted, that hold or assert, or that may in the future hold or assert any Asbestos Insurance Policy Claim or Channeled Asbestos Claim will be, and hereby are, permanently stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery on account of any such Asbestos Insurance Policy Claim or Channeled Asbestos Claim from or against any Asbestos Insurer (the "**Asbestos Insurer Injunction**"), including: (a) commencing, conducting, or continuing in any manner any action or proceeding of any kind (including an arbitration or other form of alternative dispute resolution) against any Asbestos Insurer, or against the property of any Asbestos Insurer, on account of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim; (b) enforcing, attaching, levying, collecting, or recovering, by any manner or means, any judgment, award, decree, or other order against any Asbestos Insurer, or against the property of any Asbestos Insurer, on account of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim; (c) creating, perfecting, or enforcing in any manner any Lien of any kind against any Asbestos Insurer, or against the property of any Asbestos Insurer, on account of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim; (d) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly against any obligation due any Asbestos Insurer, or against the property of any Asbestos Insurer, on account of any Asbestos Insurance Policy Claim or Channeled Asbestos Claim; and (e) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Asbestos Insurance Policy Claim or Channeled Asbestos Claim.

(d) **Discharge Injunction**. Except as specifically provided in the Plan or the Plan Documents, the discharge set forth in Section 9.03 of the Plan operates, upon the occurrence of the Effective Date, as an injunction pursuant to Bankruptcy Code §§ 105(a), 524(a), and 1141(d) prohibiting and enjoining the commencement or continuation of any action, the employment of process, or any act to collect, recover from, or offset (a) any Claim, including, to the fullest extent permitted by law, any Channeled Asbestos Claim, against or interest in any of the Debtors or the Reorganized Debtor by any Entity, and (b) any cause of action, whether known or unknown, against the Debtors or the Reorganized Debtor arising out of, attributable to, or based on any Claim, including, to the fullest extent permitted by law, any Channeled Asbestos Claim, or interest described in clause (a) of Section 9.04 of the Plan (the "**Discharge Injunction**")

9.    **Closing of Cases.** Pursuant to the *Order Closing Chapter 11 Cases Effective as of December 31, 2020 and Directing Entry of Final Decree* [Docket No. 1367] entered by the Bankruptcy Court on December 29, 2020, the Debtors' Chapter 11 Cases were deemed closed effective as of December 31, 2020. The Bankruptcy Court retained sole and exclusive jurisdiction to hear and determine all matters arising

from or related to any applications for the payment of Professional Claims or requests for the payment of Administrative Claims filed on or after December 31, 2020.

10. **Renewed Request for Post-Effective Date Notice Pursuant to Bankruptcy Rule 2002.** After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all Creditors and other parties in interest must file a renewed notice of appearance with the Bankruptcy Court requesting receipt of documents pursuant to Bankruptcy Rule 2002.

11. **Binding Nature of Plan**. The Plan and its provisions are binding on the Debtors and any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired by the Plan and whether or not such holder voted to accept or reject the Plan.

Dated:     January 15, 2021

**LOWENSTEIN SANDLER LLP**
*/s/ Jeffrey D. Prol*
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtors and*
*Debtors-in-Possession*