**LAW OFFICES OF**
**DOUGLAS T. TABACHNIK, P.C.**
Douglas T. Tabachnik
Woodhull House
63 West Main St., Suite C
Freehold, New Jersey 07728-2141
Telephone:  (732) 780-2760
Facsimile:  (732) 780-2761
dtabachnik@dttlaw.com

-and-

**STUTZMAN, BROMBERG**
**ESSERMAN & PLIFKA,**
**A Professional Corporation**
Sander L. Esserman (Texas Bar No. 06671500)
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999
esserman@sbep-law.com

**ATTORNEYS FOR THE DURO DYNE**
**ASBESTOS PERSONAL INJURY TRUST**

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| Duro Dyne National Corp., et. al, | Case No. 18-27963-MBK |
| Debtors. | |

### <u>NOTICE OF FILING</u>

PLEASE TAKE NOTICE that, on April 29, 2024, the Annual Report of the Duro Dyne Asbestos Personal Injury Trust for the Period from January 1, 2023, to December 31, 2023, was filed electronically by the Law Offices of Douglas T. Tabachnik, P.C. with the United States Bankruptcy Court for the District of New Jersey.

Date: April 29, 2024

**LAW OFFICES OF
DOUGLAS T. TABACHNIK, P.C.**

By: */s/ Douglas T. Tabachnik*____
       Douglas T. Tabachnik

Woodhull House
63 West Main St., Suite C
Freehold, New Jersey 07728-2141
Telephone:  (732) 780-2760
Facsimile:  (732) 780-2761
dtabachnik@dttlaw.com

-and-

**STUTZMAN, BROMBERG
ESSERMAN & PLIFKA,
A Professional Corporation**
Sander L. Esserman (Texas Bar No. 06671500)
Kaitlyn C. Fletcher (Texas Bar No. 24103292)
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999
esserman@sbep-law.com
fletcher@sbep-law.com

**ATTORNEYS FOR THE DURO DYNE
ASBESTOS PERSONAL INJURY TRUST**

## <u>CERTIFICATE OF SERVICE</u>

I, Kaitlyn Fletcher, hereby certify that on the 29th day of April, 2024, I served a true and correct copy of the Annual Report of the Duro Dyne Asbestos Personal Injury Trust for the Period January 1, 2023 to December 31, 2023 and Exhibit A thereto by electronic mail on the members of the Trust Advisory Committee (Joseph W. Belluck, Alan R. Brayton, Perry J. Browder, Kathy Byrne, and James L. Ferraro) and their counsel (Ann McMillan) and the Future Claimants' Representative (Lawrence Fitzpatrick) and his counsel (Ed Harron).

*/s/ Kaitlyn C. Fletcher*
Kaitlyn C. Fletcher

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Duro Dyne National Corp., et. al., | Case No. 18-27963-MBK |
| Debtors. | |

**ANNUAL REPORT OF THE DURO DYNE ASBESTOS PERSONAL INJURY TRUST**
**FOR THE PERIOD FROM JANUARY 1, 2023 TO DECEMBER 31, 2023**

Alan B. Rich, the Trustee of the Duro Dyne Asbestos Personal Injury Trust (the

"**Trust**"), created pursuant to the Third Amended Prenegotiated Plan of Reorganization for Duro

Dyne National Corp, et al., under Chapter 11 of the bankruptcy Code, as Modified, dated June 6,

2019 (collectively the "**Plan**"),[1] hereby files this Annual Report, Financial Statements and

Results of Operations of the Sepco Asbestos Personal Injury Trust for the year ending December

31, 2023 (the "**Annual Report**").

**I. General**

On September 7, 2018, Duro Dyne National Corp., et. al, filed voluntary petition for

relief under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**") in the

United States Bankruptcy Court District of New Jersey.  On October 16, 2020, the Bankruptcy

Court for the District of New Jersey submitted to the United State District Court for the District

of New Jersey ("**District Court**") the *Amended Report and Recommendation for Entry of (a)*

*Findings and conclusions with Respect to the Third Amended Plan of Reorganization; and*

*Confirmation Order*. On October 23, 2020, the District Court entered *an Order (I) Approving*

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to the in the Plan.

*and Adopting the Bankruptcy Court's Amended Report and Recommendation, and (II)*

*Confirming the Third Amended Prenegotiated Plan of Reorganization for Duro Dyne National*

*Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code, as Modified* ("**Confirmation**

**Order**"), which confirmed the Plan of the above-referenced debtors.

Pursuant to the Plan, the Trust was established on December 31, 2020. Pursuant to the

Plan, Joseph W. Belluck, Alan R. Brayton, Perry J. Browder, Kathy Byrne, and James L.

Ferraro, are members of the Trust Advisory Committee ("**TAC**") and Lawrence Fitzpatrick is the

Future Claimants' Representative ("**FCR**").

## II. Reporting Requirements

Section 2.2(c) of the Duro Dyne Asbestos Personal Injury Trust Agreement (the "**Trust**

**Agreement**") requires the Trustee to account to the Bankruptcy Court and file an annual report

containing financial statements of the Trust and a summary of the number and type of claims

disposed of by the Trust during the period covered by the financial statements. Pursuant to

Section 4.5 of the Trust Agreement, the annual report shall also include a description of the

amounts paid during the reporting period to the Trustee, the Delaware Trustee, the TAC, and the

FCR.

### A. Financial Statements

A copy of the Trust's audited special-purpose financial statements for the year ended

December 31, 2023, is attached hereto as **Exhibit A**. Under Section 3.3 of the Trust Agreement,

the Trust reports payments for the Trust expenses. The Trust's operating expenses are listed in

the Special-Purpose Statement of Changes in Net Claimants' Equity, attached hereto.

### B. Asbestos Personal Injury Claims

The Trust began accepting Asbestos Claims on September 20, 2021.[2] From January 1, 2023 through the period ending December 31, 2023, 385 Asbestos Personal Injury Claims have been submitted to the Trust as follows:

| Disease Level | Claims submitted in 2023 |
|---|---|
| Mesothelioma (Level V) | 72 |
| Lung Cancer 1 (Level IV) | 251 |
| Lung Cancer 2 (Level III) | 12 |
| Other Cancer (Level II) | 10 |
| Severe Asbestosis (Level I) | 40 |
| **Total:** | **385** |

Of the 385 Asbestos Personal Injury Claims submitted to the Trust, the Trust has not approved 41 claims because of uncured deficiencies or deferred claims. In 2023, the Trust liquidated and paid 60 Asbestos Personal Injury Claims, totaling $960,406[3] after application of the Payment Percentage.

### C. Compensation and Expenses of the Trustee, TAC and FCR

Pursuant to Sections 4.5(c), 5.6 and 6.5 of the Trust Agreement, the Annual Report shall also include a description of the amounts paid during the Reporting Period to the Trustee, the Delaware Trustee, the Trust Advisory Committee, and the Future Claimants' Representative. The

---

[2] On September 28, 2023, MFR was acquired by Verus Claims Services, LLC. Verus now serves as the Trust's claims processor.
[3] Claims information reported herein may differ from the audited financial statements due to the timing of Payments.

Trust refers the Court to the Special-Purpose Statement of Changes in Net Claimants' Equity in the Trust's financial statements, attached hereto.

Date: April 29, 2024                     Respectfully submitted,


**TRUSTEE**:


 _/s/ Alan B. Rich_
Hon. Alan B. Rich, Trustee


**LAW OFFICES OF**
**DOUGLAS T. TABACHNIK, P.C.**

By:  _/s/ Douglas T. Tabachnik_
        Douglas T. Tabachnik

Woodhull House
63 West Main St., Suite C
Freehold, New Jersey 07728-2141
Telephone:  (732) 780-2760
Facsimile:  (732) 780-2761
dtabachnik@dttlaw.com

-and-

**STUTZMAN, BROMBERG**
**ESSERMAN & PLIFKA,**
**A Professional Corporation**
Sander L. Esserman (Texas Bar No. 06671500)
Kaitlyn C. Fletcher (Texas Bar No. 24103292)
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999
esserman@sbep-law.com
fletcher@sbep-law.com


**ATTORNEYS FOR THE DURO DYNE**
**ASBESTOS PERSONAL INJURY TRUST**

# <u>EXHIBIT A</u>

Duro Dyne Asbestos Personal Injury Trust Special-Purpose Financial Statements For The

Period January 1, 2023 To December 31, 2023

**Duro Dyne Asbestos
Personal Injury Trust**

**Special-Purpose Financial Statements
and Independent Auditor's Report**

**December 31, 2023 and 2022**



**Duro Dyne Asbestos
Personal Injury Trust**

<u>Index</u>

|  | <u>Page</u> |
|---|---|
| Independent Auditor's Report | 2 |
| Special-Purpose Financial Statements | |
|     Special-Purpose Statements of Net Claimants' Equity | 4 |
|     Special-Purpose Statements of Changes in Net Claimants' Equity | 5 |
|     Notes to Special-Purpose Financial Statements | 6 |

CohnReznick LLP
cohnreznick.com



Independent Auditor's Report

To the Trustee
Duro Dyne Asbestos Personal Injury Trust

*Opinion*

We have audited the accompanying special-purpose financial statements of the Duro Dyne Asbestos Personal Injury Trust (the "Trust"), which comprise the special-purpose statements of net claimants' equity as of December 31, 2023 and 2022, and the related special-purpose statements of changes in net claimants' equity for the years then ended, and the related notes to the special-purpose financial statements (collectively, the "Financial Statements").

In our opinion, the accompanying Financial Statements present fairly, in all material respects, the net claimants' equity of the Trust as of December 31, 2023 and 2022, and the changes in net claimants' equity for the years then ended, in accordance with the basis of accounting described in Note 2 to the Financial Statements.

*Basis for Opinion*

We conducted our audits in accordance with auditing standards generally accepted in the United States of America ("GAAS"). Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are required to be independent of the Trust and to meet our other ethical responsibilities in accordance with the relevant ethical requirements relating to our audits. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Basis of Accounting*

We draw attention to Note 2 of the Financial Statements, which describes the basis of accounting. The Financial Statements are prepared on a special-purpose basis of accounting which is a basis of accounting other than accounting principles generally accepted in the United States of America. The special-purpose basis of accounting has been adopted by the Trustee to communicate the amount of equity presently available to fund current and future claims. As a result, the Financial Statements may not be suitable for another purpose. Our opinion is not modified with respect to this matter.

*Responsibilities of Management for the Financial Statements*

Management is responsible for the preparation and fair presentation of these Financial Statements in accordance with the special-purpose basis of accounting; this includes determining that the special-purpose basis of accounting is an acceptable basis for the preparation of the Financial Statements in these circumstances. Management is also responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of the Financial Statements that are free from material misstatement, whether due to fraud or error.

CohnReznick

*Auditor's Responsibilities for the Audit of the Financial Statements*

Our objectives are to obtain reasonable assurance about whether the Financial Statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the Financial Statements.

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.

- Identify and assess the risks of material misstatement of the Financial Statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the Financial Statements.

- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Trust's internal control. Accordingly, no such opinion is expressed.

- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the Financial Statements.

- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about the Trust's ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that we identified during the audit.

*Restriction on Use*

This report is intended solely for the information and use of the management of the Trust, the Trustee, the beneficiaries of the Trust and the United States Bankruptcy Court for the District of New Jersey and is not intended to be and should not be used by anyone other than these specified parties. Upon filing with the United States Bankruptcy Court for the District of New Jersey, the report is a matter of public record, which public filing does not expand the list of specified users.

*CohnReznick LLP*

Dallas, Texas
April 25, 2024

**Duro Dyne Asbestos Personal Injury Trust**

**Special-Purpose Statements of Net Claimants' Equity**
**December 31, 2023 and 2022**

Assets

| | | 2023 | | 2022 |
|---|---|---|---|---|
| Cash and cash equivalents | | | | |
| Unrestricted | $ | 1,583,645 | $ | 1,832,855 |
| Restricted | | 24,800 | | 15,050 |
| Investments in marketable securities | | 43,346,664 | | 40,338,325 |
| Accrued interest and dividend income | | 318,193 | | 309,423 |
| Purchased interest | | 7,398 | | 2,667 |
| Prepaid expenses | | 3,697 | | 3,875 |
| Prepaid and refundable federal income taxes | | 142,779 | | 174,197 |
| Total assets | $ | 45,427,176 | $ | 42,676,392 |

Liabilities and Net Claimants' Equity

| | | 2023 | | 2022 |
|---|---|---|---|---|
| Accrued expenses | $ | 38,071 | $ | 36,654 |
| Claims processing deposits | | 24,800 | | 15,050 |
| Accrued payments to claimants | | 67,965 | | 395,391 |
| Total liabilities | | 130,836 | | 447,095 |
| Net claimants' equity | $ | 45,296,340 | $ | 42,229,297 |

See Notes to Special-Purpose Financial Statements.

4

**Duro Dyne Asbestos Personal Injury Trust**

**Special-Purpose Statements of Changes in Net Claimants' Equity**
**Years Ended December 31, 2023 and December 31, 2022**

|  | 2023 | 2022 |
|---|---|---|
| **Additions** | | |
| Net gain on investments in marketable securities, net of management fees, custody fees and bond amortization | $ 2,653,090 | $ - |
| Interest and dividend income | 1,387,969 | 1,531,201 |
| Income tax benefit, net | - | 446,864 |
| Total additions | 4,041,059 | 1,978,065 |
| **Deductions** | | |
| Net loss on investments in marketable securities, net of management fees, custody fees and bond amortization | - | 6,903,120 |
| Payments to Claimants | 632,980 | 986,276 |
| Legal fees | 78,359 | 80,301 |
| Accounting fees | 54,672 | 53,556 |
| Trustee fees and expenses | 45,456 | 37,811 |
| Future Claimants' Representative fees and expenses | 25,675 | 31,284 |
| Trustee fiduciary fee | 25,000 | 25,000 |
| Financial consulting fees | 20,000 | 20,000 |
| Trust Advisory Committee counsel fees and expenses | 19,740 | 17,340 |
| Claims processing fees | 18,852 | 12,629 |
| Insurance expense | 18,168 | 19,436 |
| Audit fees | 16,301 | 13,476 |
| Consulting fees | 9,000 | 18,810 |
| Foreign taxes paid | 5,813 | 2,533 |
| Delaware Trustee fees and expenses | 4,000 | 4,000 |
| Miscellaneous expenses | - | 5,001 |
| Total deductions | 974,016 | 8,230,573 |
| Net increase (decrease) in net claimants' equity | 3,067,043 | (6,252,508) |
| Net claimants' equity, beginning of year | 42,229,297 | 48,481,805.00 |
| Net claimants' equity, end of year | $ 45,296,340 | $ 42,229,297 |

See Notes to Special-Purpose Financial Statements.

**Duro Dyne Asbestos Personal Injury Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2023 and 2022**

## Note 1 - Nature of trust

### Description of trust

The Duro Dyne Asbestos Personal Injury Trust (the "Trust") was established in accordance with the Third Amended Pre-Negotiated Plan of Reorganization (the "Plan"), of Duro Dyne National Corp., et al., ("Duro Dyne") pursuant to Chapter 11 of the United States Bankruptcy Code. The purpose of the Trust is:

- To assume all liabilities and responsibility for all Asbestos Personal Injury Claims ("Claims");

- To direct the processing, liquidation and payment of all Claims in accordance with the Plan, the Trust Distribution Procedures ("TDP"), and the Confirmation Order;

- To preserve, hold, manage, and maximize the Trust assets for use in paying and satisfying Claims;

- To use the Trust's assets and income to pay holders of all Claims in accordance with the Trust Agreement and the TDP in such a way that holders of Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims; and

- To comply in all respects with the requirements for a trust set forth in Section 524(g)(2)(B) of the Bankruptcy Code.

The Trust was established on December 31, 2020, the Effective Date of the Plan ("Effective Date") and is a Qualified Settlement Fund under Internal Revenue Code (the "Code") Section 468B for holders of Claims ("Qualified Settlement Fund"). The Trust operates as the Duro Dyne Asbestos Personal Injury Trust.

Pursuant to the Plan, at formation of the Trust, Duro Dyne paid $7,640,000 of company cash and $2,860,000 representing the Hinden family cash contribution, for a total cash contribution of $10,500,000. In addition, the Trust received from Duro Dyne a Promissory Note receivable in the amount of $20,000,000 and an Earn Out Payment receivable in the amount of $2,000,000. The Promissory Note receivable, with a maturity date of September 30, 2041 and stated interest of 7.15% was paid in full by June 2021. The Earn Out Payment receivable was paid in full in March 2021. Also, Duro Dyne transferred its rights under insurance policies to the Trust in the amount of $14,950,500, which were received in full by February 28, 2021.

The Trust is governed by a Trust Agreement and TDP that establish the framework and criteria for allowance and payment of Claims by the Trust. The Trust Agreement and TDP were approved by the United States District and Bankruptcy Courts as part of the Plan. There are five disease levels specified in the TDP. Each claimant who meets the medical, occupational and exposure requirements of the TDP for a particular disease level may apply for expedited review and a specified payment amount.

The Trust's assets consist primarily of cash and cash equivalents, investments in marketable securities and a certificate of deposit, which, with the earnings (or losses) on such investments, are intended to be totally consumed by the allowance and payment of claims and operation of the Trust. The percentage amount of each allowed claim that will actually be paid will be determined by projections of total allowed Claims and operational expense of the Trust, on the one hand, and total assets and net earnings (or losses), on the other. The Trust began accepting Claims on September

**Duro Dyne Asbestos Personal Injury Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2023 and 2022**

20, 2021 and began paying claims in May 2022. The initial payment percentage has been set at 20% and is subject to periodic review and adjustment in accordance with the Trust Agreement and the TDP. The Trustee is a fiduciary and is responsible for administering the Trust and the Trust's assets in accordance with the Trust Agreement and the Plan.

**Termination**

The Trust Agreement (Section 7.2) provides that the Trust shall automatically dissolve on the date (the "Dissolution Date") ninety (90) days after the first to occur of the following events:

- The date on which the Trustee decides to dissolve the Trust because (A) the Trustee deems it unlikely that any new Trust Claims will be filed against the Trust , (B) all Trust Claims duly filed with the Trust have been liquidated and, to the extent possible based upon the funds available to the Trust through the Plan, paid to the extent provided in the Trust Agreement and TDP, or have been disallowed by a final, non-appealable order, and (C) twelve (12) consecutive months have elapsed during which no new Trust Claim has been filed with the Trust;

- If the Trustee has procured and has in place irrevocable insurance policies and has established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Trust in a manner consistent with the Trust Agreement and the TDP, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a final order; or

- To the extent that a rule against perpetuities shall be deemed applicable to the Trust, that date which is 21 years less 91 days after the death of the last survivor of all the descendants of the late President Franklin D. Roosevelt, living on the date hereof.

On the Dissolution Date or as soon as reasonably practicable, after the wind-up of the Trust's affairs by the Trustee and payment of all the Trust's liabilities have been provided for as required by applicable law, all remaining assets shall be applied to such charitable purposes, if practicable, which shall be related to the treatment of, research on, or the relief of individuals suffering from asbestos related disorders and such charitable organizations should not have any relationship with Duro Dyne.

Following the dissolution and distribution of the assets of the Trust, the Trust shall terminate, and the Trustee shall execute and file a Certificate of Cancellation.

**Duro Dyne Asbestos Personal Injury Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2023 and 2022**

**Note 2 - Summary of significant accounting policies**

**Basis of accounting**
The Trust's special-purpose financial statements ("Financial Statements") are prepared using special-purpose accounting methods that differ from accounting principles generally accepted in the United States of America ("GAAP"). The special-purpose accounting methods are being used to better communicate the equity available to satisfy current and future claims. Since the accompanying Financial Statements and transactions are not based upon GAAP, accounting treatment by other parties for these same transactions may differ as to timing and amount. These special-purpose accounting methods and the differences from GAAP are summarized as follows:

- The Financial Statements are prepared using the accrual basis of accounting, except as otherwise described herein;

- The statement of net claimants' equity is not classified, resulting in no separation between current and noncurrent assets;

- These Financial Statements do not include a statement of cash flows;

- Cash and cash equivalents are recorded at cost with accrued interest shown separately;

- The funding received from Duro Dyne and insurance settlements has been recorded directly to net claimants' equity. These funds do not represent taxable income to the Trust. Payments to Claimants are reported as deductions from net claimants' equity and do not represent tax-deductible expenses of the Trust;

- At December 31, 2023 and 2022, the liability for accrued payments to claimants reflected in the statements of net claimants' equity represents unpaid outstanding and accepted offers. No liability is recorded for future claims filings and filed claims on which no offer has been made. Net claimants' equity represents funding available to pay present and future claims on which no liability has been recorded;

- The Trust's investments in marketable debt securities are considered as available for sale. The unrealized holdings gains (losses) on these investments are included in net gain on investments in marketable securities, net of management fees, custody fees and bond amortization on the accompanying statement of changes in net claimants' equity. Under GAAP, the unrealized holding gains (losses) on available for sale investments would be included as a component of net claimants' equity reported as accumulated other comprehensive income (loss).

**Use of estimates**
The preparation of Financial Statements in conformity with the special-purpose accounting method requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the special-purpose financial statements and the reported amounts of additions and deductions to net claimants' equity during the reporting period. Significant items subject to such estimates and assumptions include the carrying value of financial instruments and current and deferred income tax expense. Actual results could differ from those estimates.

**Duro Dyne Asbestos Personal Injury Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2023 and 2022**

**Financial instruments**
The Trust's financial instruments are cash and cash equivalents, accrued interest and dividend income, investments in marketable securities, a certificate of deposit, and accrued expenses. The carrying amount of cash and cash equivalents, accrued interest and dividend income and accrued expenses approximate their fair values based on their short-term nature. The carrying amount of investments in marketable securities and certificate of deposit is based on fair value.

**Cash and cash equivalents**
The Trust considers all highly-liquid debt instruments purchased with an original maturity value of three months or less to be cash equivalents. Unrestricted cash and cash equivalents at December 31, 2023 and 2022 is as follows:

|  | 2023 | 2022 |
|---|---|---|
| Money market funds | | |
| Vanguard Prime Fund | $      623,908 | $           - |
| Fidelity Government Fund | 245,681 | 409,141 |
| Texas Capital Bank | 714,056 | 1,423,714 |
| Total | $   1,583,645 | $   1,832,855 |

At December 31, 2023 and 2022, restricted cash represents filing fees received from claimants, which will be refunded if the claim is accepted and retained by the Trust if the claim does not qualify for payment.

**Concentrations of credit risk**
Financial instruments, which potentially subject the Trust to concentrations of credit risk, consist primarily of cash and cash equivalents, investments in marketable securities, and a certificate of deposit. The Trust maintains a portion of its cash and cash equivalents in accounts that are not federally insured but considers them to be of high credit quality. The Trust has not experienced any losses in such accounts, and it does not believe it is exposed to any significant credit risk.

The Trust's investments are exposed to various risks, such as interest rate, market and credit risk. Due to the level of risk associated with investments, it is at least reasonably possible that significant changes in risks in the near term may materially affect the amounts reported in the Financial Statements. However, the Trust has a formal investment policy of placing investments in high-quality financial institutions.

**Investments in marketable securities and related income (loss)**
Investments in marketable securities are reported at fair value in the special-purpose statement of net claimants' equity and changes in the fair value of investments, as well as unrealized and realized gains and losses are included in net gain on investments in marketable securities, net of management fees, custody fees and bond amortization reported in the special-purpose statement of changes in net claimants' equity. Purchases and sales of marketable securities are recorded on the trade date. Realized gains and losses on disposals of investments are determined by the specific identification method.

**Duro Dyne Asbestos Personal Injury Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2023 and 2022**

Investments considered to be permanently impaired in value are written down to their estimated net realizable value and the write down is recorded as a realized loss on investments. Unrealized losses that are other-than-temporary based upon management's estimates using quantitative and qualitative criteria are recognized as realized investment losses. Actual results could differ from those estimates.

**Claims processing deposits**
Claims processing deposits represent filing fees collected for each unliquidated claim, which will be refunded by the Trust if the claim is paid.

**Net claimants' equity**
The Trust, under the adopted special-purpose accounting convention, does not record the liability for future claims expected to be filed over the life of the Trust. The net claimants' equity is available for (i) the payments of allowed asbestos-related claims and (ii) operational expenses of the Trust.

**Income taxes**
Deferred tax assets and liabilities are recorded based on temporary differences between the carrying amounts of assets and liabilities for financial reporting and income tax purposes using the enacted tax rates and laws that will be in effect when the differences are expected to reverse. A valuation allowance is established when it is likely that the deferred tax assets may not be realized. In the opinion of management, the Trust is not subject to state income taxes and therefore, the Financial Statements do not include any provision or liability for state income taxes. Funds received by the Trust from Duro Dyne, the Hinden family, and from insurance settlements and disbursements paid to settle asbestos claims are not taxable or deductible by the Trust.

The Trustee's estimate of the potential outcome of any uncertain tax issues is subject to management's assessment of relevant risks, facts, and circumstances existing at that time. The Trust uses a more likely than not threshold for financial statement recognition and measurement of tax positions taken or expected to be taken in a tax return. To the extent that the Trustees' assessment of such tax position changes, the change in estimate is recorded in the period in which the determination is made. The Trust reports tax-related interest and penalties as a component of income tax expense and operating expenses, respectively. The Trust has recognized no increase in assets or liabilities for unrecognized tax benefits or expenses.

**Subsequent events**
The Trust has evaluated events and transactions subsequent to the date of the Financial Statements for matters requiring recognition or disclosure in the Financial Statements. The accompanying Financial Statements consider events through April 25, 2024, the date on which the Financial Statements were available to be issued.

**Note 3 - Investments in marketable securities**

The Trust measures its investments, at fair value, according to a hierarchy of valuation techniques. The following are the levels of the hierarchy and a brief description of the type of valuation information ("inputs") that qualifies an investment for each level:

Level I - Quoted prices are available in active markets for identical investments as of the reporting date.

**Duro Dyne Asbestos Personal Injury Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2023 and 2022**

Level II - Pricing inputs are other than quoted market prices included in Level I, however are observable indirectly for the investment.

Level III - Pricing inputs are unobservable for the investment and includes situations where there is little, if any, market activity for the investment. The inputs into the determination of fair value require significant management judgment or estimation. The Trust does not carry any Level III investments.

The following section describes the valuation methodologies the Trust uses to measure its financial assets at fair value.

**Mutual funds**
Valued at the closing price reported on the active market on which the individual securities are traded.

**Municipal bonds**
Valued using the documented trade price if trading in an active market. Otherwise, valued using a metrics system provided by the pricing vendors.

The valuations of the Trust's investments in marketable securities by the above fair value hierarch levels and the corresponding cost of the investments as of December 31, 2023 and 2022, are as follows:

| | | December 31, 2023 | | | | | |
|---|---|---|---|---|---|---|---|
| | Level | Fair Value | | Cost | | Unrealized Gains (Losses), Net | |
| Mutual funds - equity funds | 1 | $ | 14,718,271 | $ | 13,830,032 | $ | 888,239 |
| Municipal bonds | 2 | | 28,628,393 | | 29,688,988 | | (1,060,595) |
| Total | | $ | 43,346,664 | $ | 43,519,020 | $ | (172,356) |

| | | December 31, 2022 | | | | | |
|---|---|---|---|---|---|---|---|
| | Level | Fair Value | | Cost | | Unrealized Losses, Net | |
| Mutual funds - equity funds | 1 | $ | 11,747,443 | $ | 13,386,468 | $ | (1,639,025) |
| Municipal bonds | 2 | | 28,590,882 | | 30,681,454 | | (2,090,572) |
| Total | | $ | 40,338,325 | $ | 44,067,922 | $ | (3,729,597) |

**Duro Dyne Asbestos Personal Injury Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2023 and 2022**

Maturities of the Trust's debt securities at December 31, 2023 are as follows:

| | Level | Fair Value | Cost | Unrealized Losses, Net |
|---|---|---|---|---|
| Due in one year or less | 2 | $ 5,586,587 | $ 5,652,907 | $ (66,320) |
| Due after one year through five years | 2 | 10,098,163 | 10,450,449 | (352,286) |
| Due after five years through ten years | 2 | 4,961,232 | 5,314,522 | (353,290) |
| Due after ten years through twenty years | 2 | 4,793,622 | 4,963,182 | (169,560) |
| Due after twenty years | 2 | 3,188,789 | 3,307,928 | (119,139) |
| Total | | $ 28,628,393 | $ 29,688,988 | $ (1,060,595) |

The net gain or loss on investments in marketable securities is calculated as follows for the years ended December 31, 2023 and 2022:

| | 2023 | 2022 |
|---|---|---|
| Realized losses, net | $ (280,010) | $ (1,620,437) |
| Unrealized gains (losses), net | 3,557,240 | (4,551,447) |
| Management fees | (25,447) | (26,656) |
| Custody fees | (13,518) | (12,953) |
| Bond amortization | (585,175) | (691,627) |
| Net gain (loss) on investments | $ 2,653,090 | $ (6,903,120) |

**Note 4 - Taxation**

The Trust reports its income to the Internal Revenue Service as a designated settlement fund which is taxed at the highest rate applicable to trusts under Section I(e) of the Code, which was 37%.

The Trust's federal income tax expense is calculated as follows for the year ended December 31, 2023 and December 31, 2022:

| | 2023 | 2022 |
|---|---|---|
| Modified taxable loss | $ (85,442) | $ (200,659) |
| Tax rate | 37.0% | 37.0% |
| Federal income tax benefit | (31,614) | (74,244) |
| Deferred federal income tax expense (benefit) | 1,215,976 | (2,032,463) |
| Carryback of net capital loss | - | (142,779) |
| Change in valuation allowance | (1,184,362) | 1,802,622 |
| Income tax expense (benefit), net | $        - | $ (446,864) |

12

**Duro Dyne Asbestos Personal Injury Trust**

**Notes to Special-Purpose Financial Statements**
**December 31, 2023 and 2022**

Temporary differences between financial reporting income and taxable income generate deferred tax assets and liabilities as of December 31, 2023 and 2022, as follows:

|  | 2023 | 2022 |
|---|---|---|
| Net operating loss carryfoward | $ 105,857 | $ 74,244 |
| Capital loss carryfoward | 448,631 | 348,428.00 |
| Unrealized loss on investments | 63,772 | 1,379,950 |
| Valuation allowance | (618,260) | (1,802,622) |
| Deferred tax asset/liability, net | $ - | $ - |

At December 31, 2023, the Trust has a net operating loss carryforward of $286,100, with no expiration and a capital loss carryforward of $1,212,500, with $941,697, expiring in year 2027 and $270,803 expiring in year 2028. During the years ended December 31, 2023 and 2022, the Trust did not make any cash payments for income taxes. The future ability of the Trust to benefit from these carryforwards in uncertain; therefore, management has determined that a valuation allowance for the entire deferred tax asset in necessary since it is more likely than not that the benefits will not be full realized. The Trust is generally no longer subject to income tax examinations by the Internal Revenue Service for the years ended December 31, 2019 and prior.

**Note 5 - Trust advisory committee and future claimants' representative**

The Trust Agreement sets forth the role and responsibility of the Trust Advisory Committee ("TAC") and Future Claimants' Representative ("FCR"). The members of the TAC serve in a fiduciary capacity representing all holders of present Asbestos Claims ("Current Claimants"). The Trustee is required to consult with or obtain the consent of the TAC on certain matters identified in the Trust Agreement and the TDP. The TAC is comprised of five members who are engaged by Current Claimants.

The FCR serves in a fiduciary capacity, representing the interests of the individuals who may file an Asbestos Claim in the future, but who at this time are unknown to the Trust ("Future Asbestos Claimants"). His role, in part, is to protect rights of the Future Asbestos Claimants. The Trustee is required to consult with or obtain the consent of the FCR on certain matters identified in the Trust Agreement and the TDP.



**Independent Member of Nexia International**

**cohnreznick.com**